UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| H. JONATHAN FRANK, MORGAN FRANK and FRANK FAMILY 1996 TRUST (on behalf of themselves and REFLEXITE CORPORATION), | : ; : | Civil Action No. 3:03-CV- 1014 (JBA) |
| Plaintiffs, | : : | |
| v. | : : : | |
| ARTHUR LOVETERE, CECIL URSPRUNG, LOUIS J. BACCEI, WORTH LOOMIS, THEODORE PATLOVICH, STEPHEN J. RAFFAY, WILLIAM P. ROWLAND, PETER EIO (individually and in their capacity as members of the Board of Directors of Reflexite Corporation) and REFLEXITE CORPORATION, | : : : : : : | OCTOBER 22, 2003 |
| Defendants. | : | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE
ORDER STAYING INTERIM DISCOVERY PENDING MOTION TO DISMISS**

## TABLE OF CONTENTS

PAGE

Argument ..................................................................................................................5

I.    A Stay of Discovery is Inappropriate as Defendants' Motion to Dismiss, Even if
      Successful, Would Only Affect One of Five of Plaintiffs' Claims......................5

II.   Even as to the Derivative Claim, Plaintiffs Are Entitled to Discovery as to the
      Independence, Good Faith and Diligence of the SLC under Applicable Law....................7

      A.    The Role of a Special Litigation Committee ...........................................8

      B.    Discovery Obligations Following a Special Litigation Committee.......................10

III.  Defendants' Motion to Dismiss Has Little Chance of Prevailing, as Plaintiffs
      Fairly and Adequately Represent the Interests of the Corporation....................11

Conclusion ...............................................................................................................15

## TABLE OF AUTHORITIES

### CASES

*Barrett v. Southern Connecticut Gas Co.*, 374 A.2d 1051 (Conn. 1977) .......................................12

*Burks v. Lasker*, 441 U.S. 471 (1979)...................................................................................................8

*Fink v. Golenbock*, 680 A.2d 1243 (Conn. 1996)...........................................................6, 12, 14

*Galef v. Alexander*, 615 F.2d 51 (2d Cir. 1980) .........................................................................8

*Grimes v. DSC Communications Corp.*, 724 A.2d 561 (Del. Ch. 1998) .......................................10

*Joy v. North*, 519 F. Supp. 1312 (D. Conn. 1981) .......................................................................5, 6

*Joy v. North*, 692 F.2d 880 (2d Cir. 1982)...........................................................................5, 8, 9, 10, 11

*Lewis v. Fuqua*, 502 A.2d 962 (Del. Ch. 1985) .........................................................................8

*In re Oracle Corp. Derivative Litig.*, 824 A.2d 917 (Del. Ch. 2003) ...........................................11

*Parfi Holding AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211 (Del. Ch. 2001)........................9

*Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981) ...............................................................9

### STATUTES

Conn. Gen. Stat. § 33-722.........................................................................................................................2

Conn. Gen. Stat. § 33-724(a) ...............................................................................................................9

Conn. Gen. Stat.§ 33-946...........................................................................................................................2

Conn. Gen. Stat. § 52-572j.......................................................................................................................12

### INTRODUCTION

Plaintiffs H. Jonathan Frank, Morgan Frank and Frank Family 1996 Trust (collectively "the Franks") respectfully submit this Opposition to the motion for a protective of Defendants to stay all discovery pending the filing of a motion to dismiss Plaintiffs' shareholder derivative suit brought on behalf of Reflexite Corporation ("Reflexite" or "the Corporation").

Defendants' motion to stay discovery pending the anticipated filing of a motion to dismiss should be denied for at least three independent reasons. First, according to the Defendants, their motion to dismiss is directed only to the Franks' derivative claim, not to their direct claims against the Defendants for their breaches of fiduciary and other duties. Thus, regardless of the merit of Defendants' contemplated motion to dismiss the Franks' derivative action, it will not dispose of the direct action stemming from the same factual circumstances. A stay of discovery is simply unwarranted.

Second, settled case law makes clear that plaintiffs in a shareholder derivative action have a right to discovery into the findings of a Special Litigation Committee prior to any ruling by the court on a motion to dismiss the action by the corporation. Such motions are decided on a standard akin to a summary judgment standard in that a plaintiff is entitled to discovery into the Committee's independence and diligence in order to make a record prior to resolution of a motion to dismiss. By trumpeting the findings of the Special Litigation Committee as the basis for their motion to dismiss, the Defendants cannot escape the obligation to provide discovery as to whether the Committee was both independent and acted with a reasonable basis, as is required by black letter corporate law.

Third, the asserted grounds of Defendants' proposed motion to dismiss have no merit whatsoever, as there is no reason to believe that Plaintiffs will be unable fairly and adequately to represent the interests of other shareholders. Defendants' motion is simply a gambit to delay this case, and should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves allegations that the directors and officers of Reflexite Corporation, among other things, improperly permitted certain insiders to sell large quantities of Reflexite stock while denying similar opportunities to "outside" shareholders such as the Franks. The Defendants have thus enriched themselves in violation of their fiduciary duties to both the Corporation and its shareholders by channeling corporate assets and resources to Board members and other insiders, and otherwise diverting and wasting corporate assets in furtherance of the Board's personal agendas.

### *The Demand Letter*

On February 10, 2003, the Franks, as shareholders of Reflexite (a Connecticut corporation), issued a formal Demand Letter pursuant to Conn. Gen. Statutes § 33-722 (the "Demand Letter") requesting that Reflexite's Board of Directors bring action on behalf of Reflexite to pursue redress for injuries suffered by the Corporation as a result of a series of self-interested transactions between the Corporation and certain directors and employees (collectively, the "Insiders"). Compl. ¶ 51. In addition, the Demand Letter made a request pursuant to § 33-946 to allow the Franks to inspect and copy records of the Corporation. Id.

Among other things, the Demand Letter addressed transactions in which certain of the Insiders, including Defendant William P. Rowland ("Rowland"), were permitted to sell vast quantities of shares of Reflexite, a privately-held corporation, while other shareholders, including

2

the Franks, were purposefully denied or limited in their opportunities to liquidate and realize the value of their shares in the Corporation. For example, the Board induced Reflexite to incur millions of dollars of debt to make a huge multi-million dollar payout to Director Rowland, while denying opportunities to the Franks or other shareholders to obtain meaningful liquidity of their shareholdings. Compl. ¶ 38. The consequence of this wrongful conduct was that the Insiders were able to enrich themselves and realize the benefit of owning Reflexite stock at the expense of the "outside" shareholders who were prevented from obtaining comparable opportunities and left holding the risk that the value of the company would decline.

The Demand Letter also set forth the concomitant breach of the fiduciary duties owed by individual members of the Board of Reflexite by, among other things, engaging in, permitting or authorizing these self-interested transactions by the Insiders while denying comparable opportunities to other shareholders. The Demand Letter also included a formal request that the Board and Reflexite immediately investigate and cure these breaches.

### *The Special Litigation Committee*

Reflexite's Board purported to form a "Special Litigation Committee" ("SLC") to investigate the wrongful acts identified in the Demand Letter. As the Complaint alleges, however, the SLC's review can only be described as perfunctory. Compl. ¶ 53. The SLC attorneys spent a mere twenty minutes interviewing H. Jonathan Frank. Id. at ¶ 54. The SLC also failed to interview other individuals with pertinent information who were identified by the Franks for the SLC. See id. at ¶ 55. Not surprisingly, the SLC concluded its cursory review by recommending against taking action against any Directors in response to the Demand Letter.

3

**The Lawsuit**

On July 7, 2003, Plaintiffs instituted this action by filing a Complaint (the "Complaint") in the United States District Court for the District of Connecticut. The Complaint makes clear that it has two distinct components. See, e.g., Compl. ¶ 2. The first is a derivative action on behalf of Reflexite that seeks to have the corporation sue the directors who engaged in self-dealing and improper transactions. Id. at ¶¶ 58-71. The second is a direct action against the various directors for breaches of fiduciary duties, for breach of contract against Mr. Rowland, and against all Defendants (except for Mr. Rowland) for tortious interference with contractual relations. Id. at ¶¶ 72-93.

Defendants have not answered the Complaint, but instead have filed requests for a pre-motion conference in advance of a planned motion to dismiss. The Defendants contend that they are entitled to dismissal of the derivative action on the basis of the purported SLC "investigation," as well as on the ground that the Plaintiffs lack standing to prosecute the derivative action. A pre-motion conference with the Court is scheduled for October 30, 2003.

**Discovery in the Lawsuit**

On or about September 5, 2003, Plaintiffs served discovery requests on Reflexite and certain of the Individual Defendants. Specifically, the Franks served document requests and interrogatories on Reflexite and notices of deposition on Reflexite and certain other Defendants.

Defendants responded with the instant motion for protective order seeking a stay of discovery pending their planned motion to dismiss the shareholder derivative action. (Reflexite filed a brief in support of the motion which the other Defendants joined.) Defendants contend that discovery should be stayed because Plaintiffs lack standing to assert a shareholder derivative action and because the SLC purportedly passed on the issues pertinent to the derivative action.

As set forth more fully below, there is no basis for a stay of discovery in this case. The motion to dismiss has no merit, does not even reach all of the claims and facts in this case, and raises issues as to which discovery is required in order to resolve the motion to dismiss.

## ARGUMENT

### I.    A STAY OF DISCOVERY IS INAPPROPRIATE AS DEFENDANTS' MOTION TO DISMISS, EVEN IF SUCCESSFUL, WOULD ONLY AFFECT ONE OF FIVE OF PLAINTIFFS' CLAIMS.

While Defendants' planned motion to dismiss will be without merit (see below), even if it were granted in its entirety, it would affect only one of the five counts of Plaintiffs' Complaint. All of the same facts that relate to the shareholder derivative component of this action -- the only component Defendants seek to dismiss -- would continue to be relevant and subject to discovery as to Plaintiffs' direct claims. Simply put, there would be no purpose to staying discovery, since the dispute between the parties (and this lawsuit) will proceed regardless of the outcome of Defendants' planned motion.

In their brief supporting this motion, Defendants assert two bases to dismiss the derivative action: (i) Plaintiffs' alleged lack of standing to bring the derivative action; and (ii) an assertion that Reflexite has met its statutory obligations to terminate the shareholder derivative action by forming the SLC. Reflexite's Memorandum of Law in Support of Motion for Protective Order ("Br.") at 1-2. These two grounds relate only to the derivative component of the case and have nothing to do with Plaintiffs' direct claims.

As the courts have repeatedly made clear, derivative actions are not the sole remedy available to shareholders who have been harmed by the misconduct of directors of a corporation. See Joy v. North, 519 F. Supp. 1312, 1320-21 (D. Conn. 1981), rev'd on other grounds, 692 F.2d 880 (2d. Cir. 1982). The same set of operative facts may give rise to both a derivative action and

a direct action by an individual shareholder. See Fink v. Golenbock, 680 A.2d 1243, 1254 (Conn. 1996). While a derivative action is brought to enforce the rights of the corporation, a direct action against the corporation and its directors may be brought to seek redress for personal harm caused to an individual shareholder by the illegal actions of the directors. See Joy, 519 F. Supp. at 1320-21. In contrast to shareholder derivative actions, which may be terminated upon a showing that the independent directors, in good faith and in the sound exercise of business judgment, concluded that the best interests of the corporation would not be served by pursuing the action, direct shareholder actions "are not subject to dismissal at the instance of directors." Id. at 1321 (emphasis added).

The Complaint unambiguously states that it comprises "two main components" – a derivative action and a direct action. Compl. ¶ 2. Plaintiffs have brought suit against Defendants to enforce the rights of the Corporation and also to seek redress for direct harm inflicted on the Plaintiffs by the Defendants. In the First Cause of Action of the Complaint, Plaintiffs set forth those facts which give rise to shareholder derivative claims for breach of fiduciary duties by the Individual Defendants that have harmed the Corporation and its shareholders. Compl. ¶¶ 58-71. In the Second Cause of Action, Plaintiffs raise a direct claim for breach of fiduciary duties owed by all Defendants to the Franks. Compl. ¶¶ 72-80. The Complaint specifically alleges:

> 73. In addition to the fiduciary duties owed to Reflexite, the Defendants also owed fiduciary duties to the Franks, who are, and at all relevant times have been, shareholders of Reflexite.
>
> 74. The Defendants' actions set forth above were performed in violation of the Defendants' fiduciary duties owed to the Franks.

Compl. ¶¶ 73-74 (emphasis added). The Complaint also sets forth additional direct claims by stating causes of action for breach of contract against Mr. Rowland, Compl. ¶¶ 81-87, and for

6

tortious interference with contractual relations against all defendants except Mr. Rowland (Compl. ¶¶ 88-95).

Even assuming _arguendo_ that Defendants' are successful in dismissing the derivative action, neither Plaintiffs' alleged lack of standing to bring the derivative action nor Defendants' resort to an SLC is a ground for dismissal of the direct claims asserted by Plaintiffs in the Complaint. Thus, Defendants have failed to articulate any justification, nor does there exist any, to stay discovery related to Plaintiffs' direct claims for breach of fiduciary duties, breach of contract, tortious interference with contract and for an accounting from Defendant Reflexite, all of which stem from the same nucleus of facts. No judicial or party resources would be conserved by a stay. The only result of a stay would be needless delay.

## II.    EVEN AS TO THE DERIVATIVE CLAIM, PLAINTIFFS ARE ENTITLED TO DISCOVERY AS TO THE INDEPENDENCE, GOOD FAITH AND DILIGENCE OF THE SLC UNDER APPLICABLE LAW.

Even if Plaintiffs had only asserted a derivative claim, they would still be entitled to discovery as a matter of law in this Circuit. Discovery is inevitable, indeed _required_, to determine the merits of Defendants' motion to dismiss, under prevailing law.

Defendants urge this Court to exercise its discretion to stay discovery based on little more than Defendants' bare assertion that the SLC's "investigation was thorough, exhaustive and undertaken in good faith." Br. at 5. This assertion is contradicted by the facts that the SLC spent a mere twenty minutes talking to the Franks, Compl. ¶ 54, failed to interview key witnesses, _id._ at ¶ 55, and produced only a seventeen page report. Br. at 5. Even with the sparse record that currently exists, Defendants' self-serving assertion that they can satisfy their burden of proving the SLC's independence and diligence is highly doubtful.

But the Defendants have not even provided the most basic discovery to the Plaintiffs that would permit a more thorough analysis of the SLC's review process. For example, Defendants have never even bothered to produce to the Plaintiffs a copy of the SLC's report referred to in their brief. Br. at 5. Nor has a single document been produced to the Defendants that identifies the members of the SLC, their affiliations with the interested directors, or the procedures or processes they followed to investigate the serious allegations in the Demand Letter.

As discussed below, where, as here, a Special Litigation Committee seeks to dismiss a derivative action, discovery is required to ascertain whether the SLC has acted independently, in good faith and with the requisite diligence in conducting its review. See Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982).[1] Defendants' attempt to derail discovery must be denied because the case law is clear that discovery into the workings of the SLC is absolutely required to determine whether the SLC's review provides sufficient grounds to dismiss a derivative action.

A.     **The Role of a Special Litigation Committee**

In matters of corporate governance, decisions by a board of directors taken in good faith that are not self-interested are ordinarily afforded deference under the business judgment rule. See, e.g., Galef v. Alexander, 615 F.2d 51, 57 (2d Cir. 1980). In the context of shareholder derivative actions, directors may decide to forego litigation on behalf of a corporation so long as the directors' decision is made in good faith and free of prejudice. Id. at 57; cf. Burks v. Lasker, 441 U.S. 471 (1979). The business judgment rule does not, however, extend to decisions of directors that are tainted by a conflict of interest. "When there is a conflict of interest in the directors' decision not to sue because the directors themselves have profited from the transaction

---

[1]     "Even if the conclusions and recommendations of the Special Litigation Committee had a reasonable basis, this suit should still not be dismissed at this preliminary stage

underlying the litigation or are named as defendants, no demand need be made and shareholders can proceed directly with a derivative suit." Joy, 692 F.2d at 887-88.

Under Connecticut Law,[2] where directors have a conflict of interest with respect to shareholder derivative litigation, the decision of whether to pursue or terminate the action may be made by a special litigation committee comprised of non-interested or "independent" directors appointed by the board of directors. See id.[3] However, a determination of a special committee to terminate a derivative proceeding must be made "in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation." Conn. Gen. Stat. § 33-724(a).[4]

In fact, before granting a motion for judgment in favor of a defendant corporation based on the recommendation of a special litigation committee to terminate a derivate action, the court "should apply far more vigorous scrutiny to that recommendation than occurs under the good faith, independence and thoroughness test." Joy, 692 F.2d at 891 (emphasis added); see also Zapata Corp. v. Maldonado, 430 A.2d 779, 788-89 (Del. 1981).  Thus, courts may make an

---

of the proceedings before the plaintiffs have had an opportunity to conduct discovery." Lewis v. Fuqua, 502 A.2d 962, 971 (Del. Ch. 1985).

[2]    Reflexite is a corporation organized under the laws of Connecticut, and thus Connecticut law determines the rights and obligations of directors and shareholders.

[3]    "[T]he question of independence turns on whether a director is, for any substantial reason, incapable of making a decision with only the best interests of the corporation in mind." Parfi Holding AB v. Mirror Image Internet, Inc., 794 A.2d 1211, 1232 (Del. Ch. 2001) (emphasis in original), rev'd on other grounds, 817 A.2d 149 (Del. 2002).

[4]    The courts view Special Litigation Committees with a wary eye: "The reality is . . . that special litigation committees are appointed by the defendants to that litigation. It is not cynical to expect that such committees will tend to view derivative actions against the other directors with skepticism. . . . The conflict of interest which renders the business judgment rule inapplicable in the case of directors who are defendants is hardly eliminated by the creation of a special litigation committee." Joy, 692 F.2d at 888.

9

independent determination of whether a corporation's best interest would be served by terminating a derivate action.  Joy, 692 F.2d at 891 (stating that "[t]he function of judicial scrutiny of a committee's recommendation is to determine independently whether the action is likely to harm the corporation rather than help it").

### B.    Discovery Obligations Following a Special Litigation Committee

It follows from the requirement that "vigorous scrutiny" be given to the workings of a Special Litigation Committee that a motion to dismiss or terminate a derivative lawsuit will not be granted simply on the say-so of the Special Litigation Committee.  To the contrary, the courts have made clear that the decision by a Special Litigation Committee to dismiss a derivative shareholder action requires a developed record and thus brings special discovery requirements. In Joy, the Second Circuit noted the following in the context of shareholder derivative actions:

> An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.  We simply do not understand the argument that derivative actions may be routinely dismissed on the basis of secret documents.  We cannot say what the effect on investor confidence would be if special litigation committees were routinely allowed to do their work in the dark of night.  We believe, however, that confidence in the administration of justice would be severely weakened.  Indeed, any other rule might well create serious constitutional issues.

Id. at 893.

Following this reasoning, the Joy Court issued a ruling that is dispositive of Defendants' motion:  "[I]f [a] special litigation committee recommends termination and a motion for judgment follows, the committee must disclose to the court and the parties not only its report but all the underlying data."  Id. (emphasis added).[5]  Following discovery, it will be Defendants'

---

[5]    Plaintiffs are entitled, at a minimum, "to receive copies of the Special Committee's report, minutes of the meetings of the Special Committee and minutes of any meeting of the board of directors relating to the creation or functioning of the Special Committee, including any meeting of the board of directors at which the recommendation of the

burden on their motion to dismiss to demonstrate that "(1) [the SLC's] members were independent; (2) that they acted in good faith; and (3) that they had reasonable bases for their recommendations." In re Oracle Corp. Derivative Litig., 824 A.2d 917, 928 (Del. Ch. 2003).

Here, Reflexite's board of directors appointed the SLC to purportedly eliminate the taint of having interested and conflicted directors deciding whether to enforce the Corporation's rights against the directors who engaged in or approved of self-interested or self-dealing transactions. Plaintiffs bring this action, in part, based on the failure of the SLC to "act in an independent, disinterested and diligent manner." (Compl. ¶ 64.) As the Joy Court made clear, in these circumstances, the Plaintiffs are entitled to discovery concerning the actions and recommendations of the SLC prior to any ruling by this Court on the merits of Defendants' motion to dismiss. Defendants' request for a stay is flatly contradicted by the requirements set forth in Joy and other cases which establish the Plaintiffs' right to discovery concerning the independence and diligence of the SLC. Since discovery is inevitable, indeed required, to determine the merits of Defendants' motion to dismiss, their request to stay discovery must be denied.

III.   **DEFENDANTS' MOTION TO DISMISS HAS LITTLE CHANCE OF PREVAILING, AS PLAINTIFFS FAIRLY AND ADEQUATELY REPRESENT THE INTERESTS OF THE CORPORATION.**

Defendants' main argument in support of a stay is that their motion to dismiss is likely to prevail. But Defendants are mistaken. Plaintiffs plainly have standing to assert a derivative action; Defendants' argument is unsupported by the facts and ignores judicial and statutory

---

Special Committee was considered or approved." Grimes v. DSC Communications Corp., 724 A.2d 561, 567 (Del. Ch. 1998).

11

guidance on the issue. Furthermore, as noted above, the SLC's work was not the independent, diligent investigation required to give it the vitality needed to dismiss a complaint.

Under Connecticut statutory law, a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Conn. Gen. Stat. § 52-572j. In assessing whether a plaintiff is a fair and adequate representative of shareholders in a derivative action, the linchpin is whether the plaintiff has "interests and issues coextensive with those of the class of shareholders he seeks to represent and [is] able to assure the trial court that as a representative, he will 'put up a real fight.'" Barrett v. Southern Connecticut Gas Co., 374 A.2d 1051, 1057 (Conn. 1977). The factors that may be considered in making this determination include:

> (1) whether the named plaintiff is the real party in interest; (2) the plaintiff's familiarity with the litigation . . . ; (3) the degree of control exercised by attorney's over the litigation; (4) the degree of support given to the plaintiff by the other shareholders; (5) the plaintiff's personal commitment to the action; (6) the remedies sought by the plaintiff; (7) the relative magnitude of the plaintiff's personal interests as compared to the plaintiff's interest in the derivative action itself; and (8) the plaintiff's vindictiveness toward the other shareholders.

Fink v. Golenbock, 680 A.2d 1243, 1256 (Conn. 1996).

In addition, the Fink Court specifically recognized that a plaintiff is not precluded from bringing a derivative action on behalf of the corporation merely because a plaintiff may have individual claims against the corporation. See id. Rather, "[w]hether a plaintiff is an appropriate representative is fact-specific and depends upon any number of factors." Id.

The mere fact that the Franks have individual claims against the Directors or the Corporation in addition to those they assert on behalf of the Corporation, does not, of itself, create a conflict of interest that requires dismissal of this action for lack of standing. On the

contrary, the Complaint makes clear that the Franks' interests are coextensive with those of other shareholders. For example, the Complaint states that the individual defendants "have breached their fiduciary duties to Reflexite by, among other things, engaging in, permitting or authorizing self-interested transactions while denying comparable opportunities to the Franks and other shareholders." Compl. ¶ 60. The Complaint further states: "In doing so, the Individual Defendants wrongfully diverted assets and resources of Reflexite to the benefit of one or more Board members and other insiders." Id. Among the remedies requested by the Franks on behalf of the corporation is injunctive relief requiring Reflexite to "refrain from engaging in such conduct or diverting the resources of Reflexite in such a manner in the future." Compl. ¶ 69. With respect to direct claims for breach of fiduciary duties by Defendants, the Franks request similar injunctive relief. Compl. ¶ 78. In short, the injury to the Franks' shareholdings is the same injury suffered by Reflexite and all shareholders – with the sole exception of the Defendants who breached their fiduciary duties to the corporation and the shareholders by engaging in self-interested transactions.

These facts demonstrate a clear alignment of interests between the Franks and those shareholders who are similarly situated. No conflict of interests exists because the Franks bring both a derivative action and a direct action against the Individual Defendants and the Corporation with the common objective of ensuring that opportunities to enjoy the benefits of owning shares of this closely-held corporation are afforded to all shareholders and not just a few select insiders.

Nor is there any real or apparent conflict of interest resulting from the Franks contract claim against Mr. Rowland or his tortious interference claim against the other Defendants. The contract claim at issue – that Mr. Rowland had a contractual obligation to make efforts to permit the Franks to sell their shares if Rowland sold his – is consistent with the fiduciary duty claim.

13

Indeed, Rowland's contractual obligations, and the obligations of the other directors not to interfere with those obligations, simply reaffirm their duty not to engage in self-dealing transactions to the exclusion of other shareholders.

Furthermore, the Franks' are well suited to fairly and adequately represent other shareholders based on the other factors articulated by the <u>Fink</u> Court. Defendants raise no claim that Plaintiffs' are not real parties in interest to the derivative action. Nor do Defendants' question the Franks' familiarity with the instant litigation. Similarly, there is no evidence to suggest that the Franks harbor any vindictive sentiments toward other shareholders. Rather, the Franks' are bearing the torch on behalf of other shareholders to ensure fair treatment of those shareholders facing entrenched directors who have maximized their personal benefits of share ownership while neglecting the needs of other shareholders, including the Franks.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' respectfully submit that this Court deny Defendants' motion for a protective order staying discovery in this matter.

Respectfully submitted,

H. JONATHAN FRANK, MORGAN FRANK AND 1996 FRANK FAMILY TRUST,

Michael G. Considine (ct 16023)
Terence J. Gallagher (ct 22415)
DAY, BERRY & HOWARD LLP
One Canterbury Green
Stamford, CT  06901
(203) 977-7300  phone
(203) 977-7301  fax

-and-

Richard A. Strassberg (ct 24905)
Jeffrey A. Simes (ct 24906)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
(212) 813-8800

Their Attorneys

15

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via overnight courier, postage prepaid, this 22nd day of October, 2003, to:

James T. Cowdery, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555

Edward F. Spinella, Esq.
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103
(860) 240-1045

James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Phone:  (203) 330-2000

Craig A. Raabe, Esq.
Jason M. Kuselias, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8299

Terence J. Gallagher