dismissed the action. Id.

The case law is clear that a plaintiff with mixed motives and conflicting agendas cannot act as a derivative plaintiff. Fink, 238 Conn. at 205-06; Barrett, 172 Conn. 362. In the instant action, Plaintiffs are acting as self-chosen fiduciaries on behalf of all shareholders and must, of necessity, have "interests and issues co-extensive with those of the class of shareholders [they] seek [] to represent." Barrett, 172 Conn. at 373. Yet, even a cursory reading of the Amended Complaint reveals that the derivative claims are coupled with inflammatory, personal allegations which are uniquely tied to H. Jonathan Frank. The headings set forth in the Amended Complaint; "The Franks Involvement with Reflexite"; "The Franks' Shareholdings in Reflexite"; "Unequal Treatment of the Franks Begins"; "Reflexite and the Board Ignore the Franks' Concerns"; "The Denial of Information Requests"; and "The Demand Letter" all relate to personal issues of the Franks. In fact, one need only examine the demand letter referenced in the Amended Complaint to conclude that the Franks have a personal agenda stemming from their claimed inability to sell their shares as they personally see fit. (See Demand Letter attached hereto as Exhibit B ". . . Reflexite has denied similar opportunities to the Franks, and has wrongfully acted to limit the liquidity and value of the Franks' investment in Reflexite.").[7] It is clear that H. Jonathan Frank has personal issues with the directors/officers of Reflexite. (See e.g.

---

[7] Documents may be considered and reviewed by a Court when deciding a motion to dismiss even though the documents may not have been attached as an exhibit to the original complaint or otherwise incorporated therein. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991) (stock purchase agreement proper to consider on motion to dismiss where the plaintiff did not lack notice of the document and the document was integral to the complaint). If the plaintiff has actual notice of the information in the documents and has relied upon the documents in framing the complaint, the necessity of translating a motion into one under Rule 56 is largely dissipated. See Id. at 48. Clearly, Plaintiffs have referenced the Demand in the Amended Complaint and it is thus proper for the court to review when deciding the motion to dismiss.

Demand; Am. Compl. ¶ 57 (both asserting that the President of Reflexite stated that the Franks "will never get liquid as long as I am President of Reflexite.").)

The Franks are not proper derivative plaintiffs under a cursory review and clearly lack standing taking into account the Fink factors. As set forth in Fink, every factor does not have to be considered or weigh against a plaintiff to conclude that they are an inappropriate, nominal plaintiff. Id. at 206. However, an analysis of every factor in this matter reveals that they each weigh against Plaintiffs and thus, dismissal under 12(b)(1) is warranted.

### 1.    The Franks Seek Individual Remedies Inconsistent With The Derivative Action.

The Franks have asserted a derivative claim in Count One and have merely re-alleged each and ever paragraph and incorporated them into Count Two as their "direct claim." In Count One, the Franks seek the recovery of compensatory and punitive damages for Reflexite and in Counts Two they seek compensatory and punitive damages from Reflexite. In Count Five, they also assert tortious interference with a personal contract by Reflexite and seek individual compensatory and punitive damages from Reflexite. In Count Six the Plaintiffs also seek an accounting from the corporation. In the prayer for relief, Plaintiffs also seek pre-judgment interest, attorneys' fees and costs from Reflexite. The coupling of personal claims for relief with the derivative claims for relief is inconsistent and clearly demonstrates that the Franks are inappropriate derivative plaintiffs. Barrett, 172 Conn. 362; Goodrich v. Libero, 1997 WL 297128; Lavieri, 1994 WL 478629. Thus, the sixth Fink factor weighs in favor of dismissal. Fink, at 205.

### 2.  The Franks Do Not Have Support From Any Other Shareholders.

Plaintiffs claim they are substantial shareholders of Reflexite and purport to be acting on behalf of all of the shareholders of the Corporation. The Franks assert their claim purportedly on behalf of other shareholders without any vote of the approximate 220 shareholders. In fact, there is no indication that any other shareholders support the action. There are no allegations that relate to any other shareholder's desire of attempts to sell their shares or to obtain information from the Corporation and thus, there is no basis to assume that other shareholders support the Plaintiffs claims. Moreover, the Franks' allegations, such as the claim that the stock repurchase program shifted the risk of ownership to larger, non-director shareholders such as the Franks, make it clear that the other, smaller shareholders are not necessarily served by the alleged derivative claim. (Am Compl. ¶ 46.) Thus, under the fourth Fink factor, there is no factual basis to assume that the other shareholders support this action. Fink, at 205.

### 3.  The Franks' Personal Interests Outweigh Their Interest In the Derivative Action.

The seventh Fink factor, the relative magnitude of the Franks' personal interests as compared to their interest in the derivative action itself, weighs against their representation of the shareholders. Fink, at 205. A reading of the Demand asserted by the Franks reveals that it relates to an alleged "oppressive manner toward the Franks with the intent to injure the liquidity of the Franks' investment in Reflexite, and reduce the value of their shareholdings in the Corporation." The Amended Complaint is filled with allegations that the Franks were among the largest shareholders of Reflexite and how they were personally treated unfairly and had their individual requests for information denied. (Am. Compl. at ¶¶ 33-60). As set forth above,

- 13 -

Plaintiffs are seeking personal compensatory and punitive relief <u>from</u> the Corporation. The clear theme of the Amended Complaint is that the Franks are seeking personal redress which outweighs their interest in the derivative action. <u>Barrett</u>, 172 Conn. 362; <u>Goodrich</u>, 1997 WL 297128; <u>Lavieri</u>, 1994 WL 478629. Accordingly, they are inappropriate derivative plaintiffs.

### 4. The Franks Clearly Have Animosity Toward The Directors.

The eighth <u>Fink</u> factor, the plaintiff's vindictiveness toward the other shareholders, is evident from a review of the Demand and the Amended Complaint. <u>Fink</u>, at 205. Throughout each there are references to unequal treatment of the Franks by the other shareholders/directors. Specifically, the Franks have alleged that Mr. Cecil Ursprung, another shareholder, stated that the Franks "will never get liquid as long as I am President of Reflexite." (Demand; Am. Compl. ¶ 57). The Franks repeatedly allege they were treated unfairly and even claim acts were done against them with "malice." (Am. Comp. ¶¶ 49, 57). There is clear vindictiveness on the part of the Franks toward Mr. Ursprung and the shareholders/directors which should preclude them from proceeding as derivative plaintiffs. <u>Goodrich</u>, 1997 WL 297128, at * 3.

### 5. The Named Plaintiff, The Frank Family 1996 Trust, Is Not The Real Party In Interest.

The Frank Family 1996 Trust is the only current shareholder who is named as a plaintiff. As the allegations and headings in the Amended Complaint demonstrates, however, H. Jonathan Frank is the one who claims a history of dealings with Reflexite and alleged problems with its individual officers and directors. It is readily apparent that H. Jonathan Frank is the one who is driving the litigation for personal reasons. The Frank Family 1996 Trust is not the real party in interest and thus, under the first <u>Fink</u> factor, Plaintiffs should not be allowed to proceed with the

- 14 -

derivative claims. Fink, at 205.

### 6. There Is No Indication That Plaintiffs Have A Personal Commitment to the Derivative Action.

Taking into account the factual allegations unique to the H. Jonathan Frank, the personal relief sought and the other Fink factors, it is evident that Plaintiffs are not committed to the derivative action and the interests of the other shareholders. In fact, Plaintiffs have tried to take the derivative claims in Count One and make them their own in Count Two. There is no indication that the rights of the other shareholders are the basis of this action and thus, no indication that Plaintiffs are properly committed to the derivative action as opposed to pursuing their personal disputes with the board of directors. Accordingly, under the sixth Fink factor, dismissal of the derivative action is proper. Fink, at 205.

### 7. Plaintiffs Are Not Familiar With The Litigation And Have Not Demonstrated A Willingness To Learn About The Suit.

The Amended Complaint is filled with conclusory allegations that are plead "upon information and belief." (See e.g. Am. Compl. ¶ 38 stating in part "Upon information and belief, other such prohibited transfers have occurred and the Board has been active in procuring after-the-fact approvals of such sales.") It is readily apparent from the Amended Complaint and the Demand that H. Jonathan Frank is driving this litigation and feels personally slighted because he was not allowed liquidity. There is no indication that the Franks care about the derivative nature of the litigation or have any factual knowledge of any such claims. Thus, under the Second Fink factor, there is no indication that Plaintiffs have any real knowledge of the derivative claims that they are purporting to assert. Fink, at 205.

### 8. There Is No Indication That The Attorneys Have Control Over The Litigation.

Again, it is apparent from the Amended Complaint and the Demand that H. Jonathan Frank is driving this litigation and is only concerned with the actions of the Corporation that may affect him, and the relief to which he feels he is personally entitled. Thus, there is no indication that the attorneys in this action have sufficient control over the litigation to ensure that the interests of all of the shareholders and the Corporation are properly considered. There is no indication that anyone's interests other than the Franks will be taken into account. That is not how a derivative claim is supposed to be handled. Accordingly, the third Fink factor weighs in favor of dismissal. Fink, at 205.

All of the Fink factors clearly demonstrate that Plaintiffs are not fair and adequate representatives of the Corporation's interest and shareholders. They have interests that, at a minimum, hold the "potential" of influencing their conduct in a manner inconsistent with the interests of the shareholders. Barrett, 172 Conn. at 377. Therefore, the Franks do not have standing as derivative plaintiffs, and this Court is without subject matter jurisdiction to hear their derivative claims. Barrett, 172 Conn. at 375.

### D.  Count Two Should Be Dismissed.

Count Two should be dismissed pursuant to 12(b)(1) on the same grounds as Count One. Although labeled a "direct claim", Count Two is really a derivative claim which, as set forth above, Plaintiffs lack standing to maintain. Further, Count Two should be dismissed pursuant to 12(b)(6) on the grounds that the allegations fail to state a cause of action. Finally, Count Two should be dismissed to the extent that it seeks injunctive relief, as that remedy is not available to

Plaintiffs.

### 1. Plaintiffs Lack Standing To Maintain Count Two.

Count Two should be dismissed under Rule 12(b)(1) because, although the claim is styled as a direct action, it is in fact a derivative claim and Plaintiffs' standing to act on behalf of fellow shareholders and the Corporation fares no better under this Count than it did under Count One.

In Count Two of the complaint, the Franks purport to assert a direct claim for breach of fiduciary duty. They begin their cause of action by incorporating the entirety of the allegations which they have referenced as supportive of their derivative claim in Count One. (Am. Compl. at ¶ 85.) The Franks then couple that allegation with the conclusory statement that the defendants owed a fiduciary duty to the Franks (not specifying which of the Franks they are referencing) as "shareholders of Reflexite." (Id. at ¶86.) Plaintiffs then claim that the acts that underlie their derivative claim constitute a violation of the defendants' fiduciary duties to the Franks. (Id. at ¶87.) The Franks further claim that the acts of the defendants denied "them their rights as shareholders." (Id. at ¶89.) Finally, the Franks then purport to set forth seven specific acts that the defendants are alleged to have committed in violation of the purported fiduciary duties owed to the Franks. (Id. at ¶89.) Remarkably, on their face, each and every one of those acts relates to a right or claim that the Franks would share along with all other shareholders of the corporation.[8]

As set forth above, the Franks' contentions are motivated for personal reasons, rather than those shared by other shareholders. Their claims, however, if they have merit, are claims

---

[8] Paragraph 89(c) states that the Franks were singled out to be denied information about an opportunity to participate in the liquidity events that were made available to other shareholders. This is the only allegation where they have asserted some specific mistreatment in their role as a shareholder.

- 17 -

common to all shareholders and thus are derivative. As set forth above, due to the Franks' personal motives, the Franks are not proper nominal Plaintiffs for a derivative action. The Franks cannot eliminate the protections afforded to a corporation under the derivative statutes simply by re-labeling a derivative claim as a direct claim as they have tried to do in Count Two.

The Connecticut Supreme Court recognized the "distinction . . . between the right of a shareholder to bring suit in an individual capacity as the sole party injured, and his right to sue derivatively on behalf of the corporation alleged to be injured." Yanow v. Teal Indus., Inc., 178 Conn. 262, 281 (1979) (citation omitted). See also 19 Am. Jur. 2d. Corporations, § 2243 (describing the three general categories of stockholder actions, and noting that a stockholder's derivative action is distinguishable from an action for a direct wrong to an individual stockholder or group of stockholders, or from a strictly representative action which arises where the parties are too numerous to be joined). As a general rule, "individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because mismanagement has rendered their stock of less value, since the injury is generally not to the shareholder individually, but to the corporation – to the shareholders collectively." Yanow, 178 Conn. at 281 (citations omitted). The supreme court further clarified the issue as follows:

> In this regard, it is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding "secondarily," deriving his rights from the corporation which is alleged to have been wronged . . . It is, however, well settled that if the injury is one to the plaintiff as a stockholder, and to him individually, and not to the corporation, as where an alleged fraud perpetrated by the corporation has affected the plaintiff directly, the cause of action is personal and individual . . . In such a case, the plaintiff shareholder sustains a loss separate and distinct from that of the corporation, or

> from that of other shareholders, and thus has the right to seek redress in a personal capacity for a wrong done to him individually.

Id. at 281-82 (citations omitted).

The Yanow case was consistent with the supreme court's earlier decision in Barrett, 172 Conn. 362, and was cited by the court's later decision in Fink. "[I]n contrast" to the right of a shareholder to bring a direct or personal action against a corporation for injuries that are separate and distinct from those suffered by other shareholders or by the corporation itself." Fink, 238 Conn. at 201 (citing Yanow, 179 Conn. at 282, and In Re Ionosphere Clubs, Inc., 17 F.3d 600, 605 (2d Cir. 1994) ("[t]he distinction between derivative and direct claims turns primarily on whether the breach of duty is to the corporation or to the shareholder[s] and whether it is the corporation or the shareholder[s] that should appropriately receive relief").

Therefore, Fink and the applicable cases make it clear that although there is no per se rule in Connecticut prohibiting "dual" pleading, there is strong authority for the proposition that dual actions are prohibited in the absence of injuries that are "separate and distinct from those suffered by other shareholders or by the corporation itself." Id.

This interpretation is consistent with Delaware case law discussing the similarities and differences between derivative and direct actions. See In re the Walt Disney Co. Derivative Litig., 731 A.2d 342, 375 (Del. Ch. 1998) (noting "the well-established doctrinal division between direct shareholder claims and derivative suits"). Cf. In re Ionosphere Clubs, Inc., 17 F. 3d 600, 604 (2d Cir. 1994) ("the Delaware courts have several times undertaken to describe how to distinguish between shareholders' direct and derivative actions").

- 19 -

The Supreme Court of Delaware has, in fact, discussed this issue at length. See, e.g., Kramer v. Western Pacific Indus., Inc., 546 A.2d 348, 351-55 (Del. 1988). In Kramer, the court first discussed the differences between derivative and direct claims. Id. at 351 (in derivative suits, "the shareholder sues on behalf of the corporation for *harm done to it*"; in direct action, shareholder sues "for *injuries done to them* in their individual capacities by corporate fiduciaries"; thus, "[f]or a plaintiff to have standing to bring an individual action, he must be injured *directly* or *independently* of the corporation") (emphasis in original; citations omitted). The Delaware Supreme Court's standard is consistent with Connecticut law, and the general rule in various jurisdictions: "Whether a cause of action is individual or derivative must be determined from the 'nature of the wrong alleged' and the relief, if any, which could result if plaintiff were to prevail." Id. at 352 (citing Elster v. Am. Airlines, Inc., 100 A.2d 219, 221-23 (Del. Ch. 1953)). To determine the nature of the wrong alleged, a court must look to the body of the complaint, not to the plaintiff's designation or stated intention. Id.[9]

With these governing principles in mind, it is clear that Plaintiffs' Count Two is simply a disguised derivative claim subject to the same grounds for dismissal as Count One. A simple comparison of the two claims reveals Plaintiffs' efforts to escape the limits of the derivative statutes must fail. The Franks admit that their standing to assert their claims is as shareholders. (Am. Compl. ¶ 86.) That is the classic standing of a derivative plaintiff under Conn. Gen. Stat. §52-572j. The Franks claim the same fiduciary breaches in both counts. (Compare Am. Compl.

---

[9] The defendant in Kramer argued that the plaintiff was really asserting derivative claims, and that the plaintiff had no standing to bring derivative claims due to a recent merger (eliminating the plaintiff's stock). The plaintiff sought to avoid the loss of standing by arguing that his claims were individual and not derivative claims. 546 A.2d at 352. The court held that the plaintiff's claims were derivative despite the plaintiff's classification, and that the plaintiff had no standing to assert derivative claims.