at ¶¶ 74 (a), (b), (g) with ¶89 (a) (self-interested transactions not provided to other shareholders); Compare ¶¶ 74(c), (d), (e) and (g) with ¶89(d), (b) and (c) (failing to disclose information concerning self-interested transactions); Compare ¶¶ 74 (e) and (f) with ¶89 (b) and (c) (general denial of access to books and records); Compare ¶¶ 74 (g) and (j) with ¶89 (c) and (f) (shifting risk of ownership and crediting less liquidity for the Franks); Compare ¶¶ 74 (k) with ¶89 (g) (failing to perform an adequate inventory).)

In both counts, the Franks argue that irreparable harm has been done. (Compare ¶78 with ¶90.) In both counts, the Franks claim injunctive relief. (Compare ¶82 with ¶92.) In both counts, the Franks claim damages. (Compare ¶81 with ¶93.) In both counts they claim compensatory and punitive damages. (Compare ¶84 with ¶94.)

In sum, the two causes of action are identical with no distinction made in the Second Count as to why the Franks have some standing independent of their fellow shareholders to assert the same derivative claims they make in Count One. This is the precise type of case discussed in Fink and Kramer. The Franks have done nothing more than re-title their claim. The Franks tactic is impermissible. If it were permissible, every shareholder of a corporation could bring a direct claim against the company – and thereby bypass the standing, demand and special litigation committee provisions of the statutes – even though the claims were shared by every other shareholder. Count Two should therefore be dismissed under Rule 12(b)(1).

### 2.    The Alleged Conduct Of Reflexite Is Permissible.

Even assuming that Count Two could survive dismissal under Rule 12(b)(1), which it cannot, it is still subject to dismissal for failure to state a claim under Rule 12(b)(6). Count Two should be dismissed in its entirety because its factual allegations fail as a matter of law to state a

claim upon which relief may be granted.

Count Two alleges that the defendants breached their fiduciary duties to the Franks by the following acts of "oppression": (1) unfairly refusing to provide the Franks with equal opportunities to obtain liquidity; and (2) denying the Franks access to information.[10] However, the allegations fail as a matter of law for two reasons: first, there is no requirement that Reflexite provide shareholders with equal opportunity for liquidity, and second, the alleged actions are protected by the business judgment rule.

### a. Reflexite Is Not Required To Provide An Equal Opportunity for Liquidity.

The thrust of the Amended Complaint is that Plaintiffs were treated unfairly because "the Individual Defendants were permitted to sell shares of Reflexite stock and realize the economic benefits of share ownership while denying comparable opportunities to the Franks." (Am. Compl. ¶ 89(a).) Plaintiffs contend that the board's alleged failure to provide them with equal opportunities for "liquidity" constitutes a breach of the defendants' fiduciary duties. (Id. at ¶ 89.) This claim should be dismissed because, as a matter of law, even if the factual allegations of the Amended Complaint are true, the defendants did not breach any fiduciary duty to Plaintiffs.

"An officer and director occupies a fiduciary relationship to the corporation and its stockholders." Katz Corp., 362 A.2d at 979. In Connecticut, a director has a duty to "discharge his duties as a director . . . in good faith . . . with the care an ordinarily prudent person in a like position would exercise under similar circumstances . . . and in a manner he reasonably believes

---

[10] Although the Amended Complaint lists seven "acts of misconduct by the Board of Directors," (Am. Compl. ¶ 89), all of the allegations fall into one of these two categories, i.e., refusal to provide the Franks with equal opportunities for liquidity and denying information to the Franks.

to be in the best interests of the corporation." Conn. Gen. Stat. § 33-756 (2003). This "triad of primary fiduciary duties: due care, loyalty, and good faith" is also imposed upon directors in other states, including Delaware. Emerald Partners v. Berlin, 787 A.2d 85, 90 (Del. 2001). The Amended Complaint does not specify which of these fiduciary duties the defendants are alleged to have breached. In fact, they breached none.

A shareholder has no right to be treated identically to other shareholders. See Amer. Law Inst., Principles of Corp. Governance § 5.04 (1992) (where disinterested directors authorize repurchase of shares from another director, they have "no obligation . . . to make the same opportunity available to other shareholders"). In fact, "[i]t is well established . . . that stockholders need not always be treated equally for all purposes." Nixon v. Blackwell, 626 A.2d 1366, 1376 (Del. 1993) (en banc).

Connecticut has not adopted an "equal opportunity" rule. In fact, it does not appear that any jurisdiction has adopted a strict rule of equal opportunity; to the contrary, "the equal opportunity rule has been rather soundly rejected." Clagett v. Hutchison, 583 F.2d 1259, 1264 (4th Cir. 1978). As noted earlier, most other states, like Connecticut, "commonly look to Delaware law . . . for aid in fashioning rules of corporate law." Mullen v. Acad. Life Ins. Co., 705 F.2d 971, 974 n.3 (8th Cir. 1983). Delaware has squarely rejected the approach. The Delaware Supreme Court held that a lower court "erred as a matter of law in concluding that the liquidity afforded to [certain shareholders] required substantially equal treatment for [other shareholders]." Nixon, 626 A.2d at 1377 (holding that it was error for lower court to "adopt[] the novel legal principle that [the plaintiff] stockholders had a right to 'liquidity' equal to that which the court found to be available to the defendants").

Likewise, the Maryland Supreme Court has held that "[t]he mere fact that a Maryland corporation seeks to purchase some of its own stock does not automatically create a duty to extend the offer to all other holders of shares of the same class." Toner v. Baltimore Envelope Co., 498 A.2d 642, 646 (Md. 1985). Courts in Missouri, New Jersey and Montana have also refused to create an "equal opportunity" rule. See Delahoussaye v. Newhard, 785 S.W.2d 609, 611 (Mo. Ct. App. 1990) (holding that a corporation "and its directors have no legal duty to ratably redeem shares"); Grato v. Grato, 639 A.2d 390, 398 (N.J. Super. Ct. App. Div. 1994) (holding that "the notion of fair treatment of a minority shareholder" does not "require the majority to provide 'an equal opportunity' to participate in [a] new venture"); Daniels v. Thomas, Dean & Hoskins, Inc., 804 P.2d 359, 366 (Mont. 1990) ("[T]he controlling group should not be stymied by a minority stockholder's grievances if the controlling group can demonstrate a legitimate business purpose and the minority shareholder cannot demonstrate a less harmful alternative.").

The few cases in which courts have found a breach of fiduciary duty in connection with a selective repurchase of stock are sharply limited in their scope, and clearly distinguishable from this case. The case most often cited in support of an "equal opportunity" rule is Donahue v. Rodd Electrotype Co. of New England, Inc., 328 N.E.2d 505 (Mass. 1975). In Donahue, the court held that "if the stockholder whose shares were purchased was a member of the controlling group, the controlling stockholders must cause the corporation to offer each stockholder an equal opportunity to sell a ratable number of his shares to the corporation at an identical price." Id. at 518.

The rule set forth in Donahue, by its own terms, is limited to cases in which majority,

- 24 -

controlling stockholders, who control a majority stock interest, cause the corporation to repurchase their own stock without permitting minority shareholders to participate. The few courts that have adopted the reasoning of Donahue have likewise limited their holdings. See Crosby v. Beam, 548 N.E. 2d 217, 221 (Ohio 1989); Tillis v. Utd. Parts, Inc., 395 So. 2d 618, 619 (Fla. Dist. Ct. App. 1981).[11]

In this case, Plaintiffs do not allege that the defendant directors are controlling shareholders and there is no evidence of that being the case. Therefore, even if Donahue were good law, and even if the Connecticut courts would adopt it in spite of its rejection by Delaware courts, it would not apply to this case. Therefore, the alleged fact that Plaintiffs were not offered an equal opportunity for liquidity does not give rise to a cause of action and Count Two should be dismissed.

### b. The Business Judgment Rule Protects the Board's Decision.

A corporation's decision to repurchase its own stock selectively – like most other corporate decisions – should be evaluated in light of the business judgment rule. The Delaware Supreme Court has adopted this position. See DeKalb Genetics Corp. v. Roberts, 679 A.2d 460, 466 (Del. 1996); Polk v. Good, 507 A.2d 531, 535 (Del. 1986) (noting that "a corporation may acquire its own stock . . . and that the business judgment rule would almost certainly protect such

---

[11] The rule adopted by Donahue has been widely criticized. One prominent authority on corporate law stated that the Donahue court "missed the boat":
> The court that decided Donahue was apparently so concerned about establishing the similarities between closely held corporations and partnerships that it never considered the possibility that its rule of equal opportunity might be inconsistent with the observed behavior of participants in both partnerships and closely held corporations. Both types of firms must provide some mechanism for dealing with retirements or terminations in situations where the firm will continue to exist. Most firms could not survive if the purchase of the interest of a retiring member required that everyone else be given the opportunity to see out at the same price.

Frank H. Easterbrook & Daniel R. Fischel, The Economic Structure of Corporate Law 250-52 (1991).

action"). See also Delahoussaye, 785 S.W. 2d at 612 ("We believe the better approach is application of the business judgment rule.").

Furthermore, just one year after it issued the opinion in Donahue, the Massachusetts Supreme Court itself retreated from the "equal opportunity" rule, stating:

> [W]e are concerned that untempered application of the strict good faith standard enunciated in Donahue . . . will result in the imposition of limitations on legitimate action by the controlling group in a close corporation which will unduly hamper its effectiveness in managing the corporation in the best interests of all concerned.

Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d 657, 663 (Mass. 1976). Accordingly, the court limited its holding in Donahue by, essentially, applying the business judgment rule to the decisions of the controlling group. See id. ("It must be asked whether the controlling group can demonstrate a legitimate business purpose for its action.").

> The Connecticut Supreme Court has described the business judgment rule as follows: The business judgment doctrine is a rule of law that insulates business decisions from most forms of review. Courts recognize that managers have both better information and better incentives than they. . . . The business judgment rule expresses a sensible policy of judicial noninterference with business decisions made in circumstances free from serious conflicts of interest between management, which makes the decisions, and the corporation's shareholders. . . . Shareholders challenging the wisdom of a business decision taken by management must overcome the business judgment rule. . . . For efficiency reasons, corporate decision makers should be permitted to act decisively and with relative freedom from a judge's or jury's subsequent second questioning.

Rosenfield v. Metals Selling Corp., 643 A.2d 1253, 1262 (Conn. 1994) (internal quotation marks and citations omitted).

The Delaware Supreme Court has explained the rule more fully as follows:

> Our starting point is the fundamental principle . . . that the business and affairs of a corporation are managed by or under the direction of its board of directors. In exercising these powers, directors are charged with an unyielding

> fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders.
>
> The business judgment rule is an extension of these basic principles. The rule operates to preclude a court from imposing itself unreasonably on the business and affairs of a corporation. . . . The rule operates as both a procedural guide for litigants and a substantive rule of law. As a rule of evidence, it creates a presumption that in making a business decision, the directors of a corporation acted on an informed basis, i.e., with due care, in good faith and in the honest belief that the action taken was in the best interest of the company. The presumption initially attaches to a director-approved transaction within a board's conferred or apparent authority in the absence of any evidence of fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment.
>
> The rule posits a powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be attributed to any rational business purpose. Thus, a shareholder plaintiff challenging a board decision has the burden at the outset to rebut the rule's presumption. To rebut the rule, a shareholder plaintiff assumes the burden of providing evidence that directors, in reaching their challenged decision, breached any one of the triads of their fiduciary duty – good faith, loyalty or due care. If a shareholder plaintiff fails to meet this evidentiary burden, the business judgment rule attaches to protect corporate officers and directors and the decisions they make, and our courts will not second-guess these business judgments. If the rule is rebutted, the burden shifts to the defendant directors, the proponents of the challenged transaction, to prove to the trier of fact the entire fairness of the transaction to the shareholder plaintiff.

Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 360 -61 (Del. 1993) (internal quotation marks

and citations omitted).

The business judgment rule has been codified in the Connecticut statutes as follows:

> A director shall discharge his duties as a director . . . (1) In good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner he reasonably believes to be in the best interests of the corporation. . . . A director is not liable for any action taken as a director . . . if he performed the duties of his office in compliance with this section.

Conn. Gen. Stat. § 33-756 (2003).

- 27 -

In Connecticut, "[a] corporation may acquire its own shares[.]" Conn. Gen. Stat. § 33-684 (2003). A corporation is not restricted "from selectively acquiring some of the stock of a given class." Toner, 498 A.2d at 645-46. Such a selective repurchase "is protected by the business judgment rule, unless it involves fraud or unfairness, or its primary or sole purpose is to entrench the directors in office." Grobow v. Perot, 526 A.2d 914, 927 (Del. Ch. 1987). In other words, "unless the transaction is unfair, it would be protected by the business judgment rule. And that would be so even if the directors' judgment turned out to be wrong." Id.

In order to survive a motion to dismiss, a complaint alleging breach of fiduciary duty must overcome the presumption of fairness accorded to directors by the business judgment rule by alleging "particularized facts sufficient to create a reasonable doubt that the [defendants'] rejection of plaintiffs' demands was wrongful[.]" In re Gen. Motors Class E Stock Buyout Secs. Litig., 790 F. Supp. 77, 81 (D. Del. 1992). Conclusory allegations will not suffice. See id. "[W]here a claim for breach of fiduciary duty fails to contain allegations of fact that, if true, would rebut the presumption of the business judgment rule, that claim should ordinarily be dismissed under Rule 12(b)(6)." In re BHC Comms. Shareholder Litig., 789 A.2d 1, 4 (Del. Ch. 2001).

In light of these established legal principles, the factual allegations in Count Two are insufficient to support a claim for breach of fiduciary duty. The Amended Complaint does not allege facts that, if proven at trial, would support a finding that the defendants, in limiting the repurchase of stock from the Plaintiffs and other shareholders, did not act in good faith, with reasonable care, and in a manner they reasonably believed to be in the best interest of the

corporation.[12] See Conn. Gen. Stat. § 33-756.

Furthermore, the Amended Complaint states that Plaintiffs actually participated fully in certain buyback opportunities offered by the Corporation. (Am. Compl. ¶ 44.) As to the 2002 buyback, the Amended Complaint alleges that Plaintiffs "were denied the opportunity to participate" in the buyback program. (Am. Compl. ¶ 55.) However, the Amended Complaint also alleges that H. Jonathan Frank had already stated, in October 2001, that he felt that the buybacks being offered were "so small as to be not worth pursuing." (Am. Compl. ¶ 54.) The Amended Complaint does not allege that Plaintiffs, in light of their stated belief that the buyback was not worth pursuing, would have participated in the 2002 buyback if given the opportunity to do so.

For the reasons set forth above, to the extent that Count Two is premised on a claim that the defendants breached their fiduciary duties by refusing to authorize large buybacks of Reflexite stock from Plaintiffs, Count Two should be dismissed. As the Massachusetts Supreme Court put it: "While the plaintiff's predicament in not being able to dispose of [its stock] . . . is unfortunate, the situation was not caused by the defendants but is merely one of the risks of ownership of stock in a close corporation." Goode v. Ryan, 489 N.E. 2d 1001, 1005 (Mass. 1986).

---

[12] The allegation in the Amended Complaint that "corporate insiders" held shares in multiple names so as to maximize their participation in the buyback is insufficient to rebut the presumption of the business judgment rule. (See Am. Compl. ¶ 48.) The amended complaint does not allege that any of the Outside Directors were among these "corporate insiders," nor does it allege that the Outside Directors had any knowledge of this supposed scheme.

### 3. Injunctive Relief Is Not Appropriate.

Count Two should be dismissed to the extent that it demands injunctive relief. The demand for injunctive relief should be dismissed as against the defendants because Plaintiffs have an adequate remedy at law.

The Amended Complaint states the following in its demand for relief on Count Two:

90. The Franks have been irreparably harmed and continue to be irreparably harmed by the Defendants' mistreatment and oppression of the Franks.

91. As a direct and proximate result of such wrongful conduct, the Franks have suffered injury to an extent that any remedy at law for damages they may have would be inadequate.

92. The Franks are thus entitled to injunctive relief requiring that Defendants refrain from engaging in such conduct and/or injuring or restricting the rights of the Franks as shareholders or the value of the Franks' shareholdings of Reflexite stock in such a manner in the future.

(Am. Compl. ¶¶ 90, 91, 92.)

"A showing of irreparable harm is required for the imposition of any injunctive relief, preliminary or permanent. To establish irreparable harm, the injury alleged must be one requiring a remedy of more than mere money damages." Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003) (internal quotation marks and citations omitted). See also Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., 934 F.2d 30, 34 (2d Cir. 1991) ("Monetary loss alone will generally not amount to irreparable harm."). "[I]rreparable harm must be shown to be actual and imminent, not remote or speculative." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002).

Here, the Amended Complaint simply alleges that the defendants have harmed the Franks in the past, and asserts that injunctive relief must be warranted to prevent them from doing so in