# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
_____
                              :
H. JONATHAN FRANK and FRANK   :   Docket No. 3:03CV01014(JBA)
FAMILY 1996 TRUST,            :
                              :
           Plaintiffs,        :
                              :
v.                            :
                              :
ARTHUR LOVETERE, CECIL        :
URSPRUNG, LOUIS J. BACCEI,    :
WORTH LOOMIS, THEODORE        :
PATLOVICH, STEPHEN J. RAFFAY, :
WILLIAM P. ROWLAND, PETER EIO :
(individually and in their   :
capacity as members of the   :
Board of Directors of        :
Reflexite Corporation) and   :
REFLEXITE CORPORATION,        :
                              :
           Defendants.        :
_____:   November 26, 2003
```

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

The plaintiffs, H. Jonathan Frank and the Frank Family 1996
Trust (the "Trust"), have filed an amended complaint in six
counts.  Count One, which is brought as a derivative action on
behalf of Reflexite Corporation ("Reflexite" or the
"Corporation"), alleges that the defendants breached their
fiduciary duties to the plaintiffs and to Reflexite.  Count Two,
styled as a "direct action," alleges that the defendants breached
their fiduciary duties to the plaintiffs.  Count Three alleges
that defendant William P. Rowland breached a contract with the
plaintiffs.  Count Four asserts promissory estoppel against
defendant Rowland.  Count Five alleges that the defendants

tortiously interfered with the plaintiffs' contractual expectations.  Count Six demands an accounting of Reflexite's assets.  The complaint seeks damages and injunctive relief.

For the reasons set forth below, defendants Arthur LoVetere, Louis Baccei, Worth Loomis, Theodore Patlovich, Stephen Raffay and Peter Eio (collectively, the "Outside Directors") move to dismiss Counts One, Two, Five and Six of the amended complaint pursuant to Fed. R. Civ. P. 12 (b)(1) and 12(b)(6) on the grounds that the court lacks subject matter jurisdiction because the plaintiffs do not have standing and the amended complaint fails to state a claim upon which relief may be granted.[1]

## I.    STANDARD FOR DISMISSAL PURSUANT TO RULES 12(b)(1) and 12(b)(6)

The standard for dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6) is well established.[2]  The Court must, of course, "accept as true all factual allegations in the complaint[.]"  Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (internal quotation marks and citations omitted).  The complaint must give the defendant "fair notice of the claim

─────────────────

[1] The Outside Directors have not moved for dismissal of Count Three and Count Four because they are not named as defendants in those counts.  However, the Outside Directors believe that Count Three and Count Four also fail to state a claim upon which relief can be granted.

[2] "[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical."  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003).

asserted so as to enable him to answer and prepare for trial."
<u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988). "While the
pleading standard is a liberal one, bald assertions and
conclusions of law will not suffice." <u>Leeds v. Meltz</u>, 85 F.3d
51, 53 (2d Cir. 1996). "Conclusory allegations or legal
conclusions masquerading as factual conclusions will not suffice
to prevent a motion to dismiss." <u>Smith v. Local 819 I.B.T.
Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002) (internal
quotation marks and citations omitted).

Moreover, where a complaint is "devoid of <u>any</u> specific facts
or circumstances supporting [an] assertion," the complaint should
be dismissed for failure to state a claim because "[a] complaint
which consists of conclusory allegations unsupported by factual
assertions fails even the liberal standard of Rule 12(b)(6)." <u>De
Jesus v. Sears, Roebuck & Co., Inc.</u>, 87 F.3d 65, 70 (2d Cir.
1996) (internal quotation marks and citation omitted) (emphasis
in original).

II. <u>**COUNT ONE: DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTY**</u>

Count One of the amended complaint alleges that the
defendants breached their fiduciary duties to Reflexite
Corporation, causing irreparable harm and financial injury to the
Corporation. The Outside Directors move to dismiss Count One
pursuant to Rule 12(b)(1) on the ground that the plaintiffs lack
standing to bring a derivative claim. The Outside Directors also

move to dismiss Count One pursuant to Rule 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. As to this Count, the Outside Directors adopt, as if set forth fully herein, the arguments made regarding Count One in the Motion to Dismiss and accompanying Memorandum of Law filed by defendant Reflexite Corporation.

## III. COUNT TWO: DIRECT CLAIM FOR BREACH OF FIDUCIARY DUTY

Count Two of the amended complaint alleges that the defendants violated their fiduciary duties to the plaintiffs, causing the plaintiffs, directly and personally,[3] irreparable harm and financial injury. See Am. Compl. ¶¶ 86-94. Count Two should be dismissed in its entirety as against the Outside Directors.

### A. H. Jonathan Frank Lacks Standing

Count Two should be dismissed as to plaintiff H. Jonathan Frank because the amended complaint does not allege that he is a shareholder in Reflexite, and, accordingly, the defendants do not owe him any fiduciary duty.[4]

---

[3] Defendants Reflexite Corporation and William Rowland argue in their Motions to Dismiss that Count Two is not truly a direct, personal claim, but is instead merely a reiteration of the derivative claim set forth in Count One. The Outside Directors adopt this argument as if set forth fully herein.

[4] "To have standing to maintain a shareholder derivative suit, a plaintiff must be a shareholder at the time of the filing of the suit and must remain a shareholder throughout the litigation." Kramer v. W. Pac. Indus., Inc., 546 A.2d 348, 354 (Del. 1988) (emphasis added). Accordingly, H. Jonathan Frank

-4-

Connecticut looks to decisions of the Delaware courts when considering questions of corporate law. See, e.g., Ostrowski v. Avery, 243 Conn. 355, 365, 703 A.2d 117, 122 (1997); Katz Corp. v. T. H. Canty & Co., Inc., 168 Conn. 201, 209-10, 362 A.2d 975, 979-80 (1974). It is well established under Delaware law that

> only persons who were stockholders at the time of an alleged wrongdoing have standing to sue corporate directors for breach of fiduciary duty. Indeed, under established Delaware law, a breach of fiduciary duty claim must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach.

Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (Del. Ch. 2002) (emphasis added).

"An officer and director occupies a fiduciary relationship to the corporation and its stockholders." Katz Corp., 168 Conn. at 207, 362 A.2d at 978-9 (emphasis added). A director does not owe a fiduciary duty to a former stockholder or to any other individual who does not actually own stock in the corporation. Although the amended complaint alleges in general terms that "the Franks" are shareholders in Reflexite, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995). The amended complaint alleges that H. Jonathan Frank "is a substantial shareholder of the company through a family trust." Am. Compl.

---

also lacks standing to bring the claims set forth in Count One.

¶ 1 (emphasis added).  The amended complaint further states that in 1997 "Mr. [H. Jonathan] Frank <u>transferred his shareholdings</u> to the Frank Family 1996 Trust."  Am. Compl. ¶ 44 (emphasis added). The amended complaint does not allege that H. Jonathan Frank is now, or was at any time after 1997, <u>personally</u> a shareholder in Reflexite.

The amended complaint apparently seeks to treat H. Jonathan Frank and the Trust as interchangeable for purposes of standing, alleging that "the Defendants . . . owed fiduciary duties to the Franks, who are, and at all relevant times have been, shareholders of Reflexite."  Am. Compl. ¶ 86.  Such "collective" treatment is impermissible.  "It is axiomatic that a party does not have standing to raise the rights of another."  <u>Frillici v. Town of Westport</u>, 264 Conn. 266, 281, 823 A.2d 1172, 1182 (2003). Instead, in order to have standing, each plaintiff must suffer a cognizable injury "in a personal and individual way."  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 n.1 (1992).  Even related persons or entities do not have standing to sue on behalf of one another.  <u>See</u> <u>Cardi Materials Corp. v. Conn. Landscaping Bruzzi Corp.</u>, 77 Conn. App. 578, 581-82, 823 A.2d 1271, 1274 (2003).  Thus, each plaintiff has standing to pursue a remedy only for those harms personally suffered by that plaintiff.

As a matter of law, H. Jonathan Frank is entitled to pursue any fiduciary duty claims against the Outside Directors <u>only</u> in his capacity as Trustee, on behalf of the Trust, and not on his

own behalf.  Accordingly, Count Two should be dismissed as
brought by H. Jonathan Frank.  <u>See</u>, <u>e.g.</u>, <u>Int'l Railways of Cent.</u>
<u>America v. Utd. Fruit Co.</u>, 373 F.2d 408 (2d Cir. 1967) (affirming
dismissal of claims to the extent they arose prior to the
limitations period); <u>Ghartey v. St. John's Queens Hosp.</u>, 869 F.2d
160, 162 (2d Cir. 1989) ("Where the dates in a complaint show
that an action is barred by a statute of limitations, a defendant
may raise the affirmative defense in a pre-answer motion to
dismiss.").[5]

B.  <u>**Injunctive Relief Is Not Appropriate**</u>

Count Two should be dismissed to the extent that it demands
injunctive relief.  The demand for injunctive relief should be
dismissed as against defendants Loomis, Patlovich and Raffay
because they are no longer serving on Reflexite's board of
directors.  Furthermore, the demand for injunctive relief should

---

[5] To the extent that the amended complaint purports to state
a claim for damages suffered by H. Jonathan Frank when he <u>was</u> a
shareholder, any such claims are barred by the applicable statute
of limitations.  Under Connecticut law, "[n]o action founded upon
a tort shall be brought but within three years from the date of
the act or omission complained of."  Conn. Gen. Stat. § 52-577
(2003).  "All common law tort claims, including claims for
. . . breach of fiduciary duty, are subject to a three-year
statute of limitations, which runs from the date of the act or
omission complained of."  <u>In re Colonial Ltd. Partnership Litig.</u>,
854 F. Supp. 64, 90 (D. Conn. 1994).  <u>See also</u> <u>Levine v. Advest,</u>
<u>Inc.</u>, 244 Conn. 732, 742 n.9, 714 A.2d 649, 655 n.9 (1998)
(noting that the "three year time limitation [of § 52-577]
governs" the plaintiff's breach of fiduciary duty claim).  H.
Jonathan Frank is not alleged to have been a shareholder in
Reflexite at any time after 1997, well beyond the three-year
limitations period.

be dismissed as against all of the Outside Directors because the plaintiffs have an adequate remedy at law.

The amended complaint states the following in its demand for relief on Count Two:

> 90.  The Franks have been irreparably harmed and continue to be irreparably harmed by the Defendants' mistreatment and oppression of the Franks.
>
> 91.  As a direct and proximate result of such wrongful conduct, the Franks have suffered injury to an extent that any remedy at law for damages they may have would be inadequate.
>
> 92.  The Franks are thus entitled to injunctive relief requiring that Defendants refrain from engaging in such conduct and/or injuring or restricting the rights of the Franks as shareholders or the value of the Franks' shareholdings of Reflexite stock in such a manner in the future.

Am. Compl. ¶¶ 90, 91, 92.

"A showing of irreparable harm is required for the imposition of any injunctive relief, preliminary or permanent. To establish irreparable harm, the injury alleged must be one requiring a remedy of more than mere money damages." Ford v. Reynolds, 316 F.3d 351, 355 (2d Cir. 2003) (internal quotation marks and citations omitted). See also Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn., 934 F.2d 30, 34 (2d Cir. 1991) ("Monetary loss alone will generally not amount to irreparable harm."). Moreover, "irreparable harm must be shown to be actual and imminent, not remote or speculative." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002).

-8-

Here, the amended complaint simply alleges that the defendants have harmed the Franks in the past, and asserts that injunctive relief must be warranted to prevent them from doing so in the future.  This is insufficient.  The amended complaint fails to allege the "actual and imminent" irreparable harm required for issuance of a permanent injunction.

The claim for injunctive relief must fail for an additional reason: the speculative harm that is alleged in the amended complaint is not irreparable, but mere "monetary loss" in the form of potentially lower values of the Trust's stock in Reflexite or the Trust's inability to liquidate that stock. Where a plaintiff would have "an adequate remedy at law for money damages should [the defendant commit another wrong] in the future . . . injunctive relief is inappropriate." Charter Communications Entertainment I, LLC v. Shaw, 163 F. Supp.2d 121, 126 (D. Conn. 2001).  Accordingly, the allegations in Count Two are insufficient to state a claim for injunctive relief against the Outside Directors, and the claim for injunctive relief in Count Two should be dismissed.

### C.  Count Two Fails To State A Claim

Finally, Count Two should be dismissed in its entirety because its factual allegations fail as a matter of law to state a claim upon which relief may be granted.

Count Two alleges that the defendants breached their

fiduciary duties to the Franks by the following acts of "oppression": (1) unfairly refusing to provide the Franks with equal opportunities to obtain liquidity; and (2) denying the Franks access to information.[6]

The defendants do not dispute that the directors of a company have a fiduciary relationship with its shareholders. However, the defendants contend that the amended complaint fails to allege any actionable breach of that relationship. The allegations fail as a matter of law for two reasons: <u>first</u>, the allegations fail to state a claim for breach of fiduciary duty by these defendants, and <u>second</u>, the Outside Directors' actions are protected by the business judgment rule.

### 1.    Equal Opportunity for Liquidity

The thrust of the amended complaint is that the plaintiffs were treated unfairly because "the Individual Defendants were permitted to sell shares of Reflexite stock and realize the economic benefits of share ownership while denying comparable opportunities to the Franks." Am. Compl. ¶ 89(a). The plaintiffs contend that the board's alleged failure to provide them with equal opportunities for "liquidity" constitutes a breach of the defendants' fiduciary duties. This claim should be

---

[6] Although the amended complaint lists seven "acts of misconduct by the Board of Directors," Am. Compl. ¶ 89, all of the allegations fall into one of these two categories, <u>i.e.</u>, refusal to provide the Franks with equal opportunities for liquidity and denying information to the Franks.

dismissed because, as a matter of law, even if the factual allegations of the amended complaint are true, the defendants did not breach any fiduciary duty to the plaintiffs.

    a.    The Law Does Not Recognize an "Equal Opportunity" for Stock Repurchase

"An officer and director occupies a fiduciary relationship to the corporation and its stockholders." Katz Corp., 168 Conn. at 207, 362 A.2d at 978-79.  In Connecticut, a director has a duty to "discharge his duties as a director . . . in good faith . . . with the care an ordinarily prudent person in a like position would exercise under similar circumstances . . . and in a manner he reasonably believes to be in the best interests of the corporation."  Conn. Gen. Stat. § 33-756 (2003).  This "triad of primary fiduciary duties: due care, loyalty, and good faith" is also imposed upon directors in other states, including Delaware.  Emerald Partners v. Berlin, 787 A.2d 85, 90 (Del. 2001).  The amended complaint does not specify which of these fiduciary duties the defendants are alleged to have breached.  In fact, they breached none.

A shareholder has no right to be treated identically to other shareholders.  See Amer. Law Inst., Principles of Corp. Governance § 5.04 (1992) (where disinterested directors authorize repurchase of shares from another director, they have "no obligation . . . to make the same opportunity available to other shareholders").  In fact, "[i]t is well established . . . that

stockholders need not always be treated equally for all purposes." <u>Nixon v. Blackwell</u>, 626 A.2d 1366, 1376 (Del. 1993) (<u>en</u> <u>banc</u>).

Connecticut has not adopted an "equal opportunity" rule. In fact, it does not appear that <u>any</u> jurisdiction has adopted a strict rule of equal opportunity; to the contrary, "the equal opportunity rule has been rather soundly rejected." <u>Clagett v. Hutchison</u>, 583 F.2d 1259, 1264 (4th Cir. 1978). As noted earlier, most other states, like Connecticut, "commonly look to Delaware law . . . for aid in fashioning rules of corporate law." <u>Mullen v. Academy Life Ins. Co.</u>, 705 F.2d 971, 974 n.3 (8th Cir. 1983). Delaware has squarely rejected the approach advanced by the plaintiffs. The Delaware Supreme Court held that a lower court "erred as a matter of law in concluding that the liquidity afforded to [certain shareholders] required substantially equal treatment for [other shareholders]." <u>Nixon</u>, 626 A.2d at 1377. <u>See</u> <u>also</u> <u>id.</u> at 1376 (holding that it was error for lower court to "adopt[] the novel legal principle that [the plaintiff] stockholders had a right to 'liquidity' equal to that which the court found to be available to the defendants"). Likewise, the Maryland Supreme Court has held that "[t]he mere fact that a Maryland corporation seeks to purchase some of its own stock does not automatically create a duty to extend the offer to all other holders of shares of the same class." <u>Toner v. Baltimore Envelope Co.</u>, 498 A.2d 642, 646 (Md. 1985). Courts in Missouri,

-12-

New Jersey and Montana have also refused to create an "equal opportunity" rule. See Delahoussaye v. Newhard, 785 S.W.2d 609, 611 (Mo. Ct. App. 1990) (holding that a corporation "and its directors have no legal duty to ratably redeem shares"); Grato v. Grato, 639 A.2d 390, 398 (N.J. Super. Ct. App. Div. 1994) (holding that "the notion of fair treatment of a minority shareholder" does not "require the majority to provide 'an equal opportunity' to participate in [a] new venture"); Daniels v. Thomas, Dean & Hoskins, Inc., 804 P.2d 359, 366 (Mont. 1990) ("[T]he controlling group should not be stymied by a minority stockholder's grievances if the controlling group can demonstrate a legitimate business purpose and the minority shareholder cannot demonstrate a less harmful alternative.").

The few cases in which courts have found a breach of fiduciary duty in connection with a selective repurchase of stock are sharply limited in their scope, and clearly distinguishable from this case. The case most often cited in support of an "equal opportunity" rule is Donahue v. Rodd Electrotype Co. of New England, Inc., 328 N.E.2d 505 (Mass. 1975). In Donahue, the court held that "if the stockholder whose shares were purchased was a member of the controlling group, the controlling stockholders must cause the corporation to offer each stockholder an equal opportunity to sell a ratable number of his shares to the corporation at an identical price." Id. at 518 (emphasis added).

The rule set forth in Donahue, by its own terms, is limited to cases in which majority, controlling stockholders cause the corporation to repurchase their own stock without permitting minority shareholders to participate. The few courts that have adopted the reasoning of Donahue have likewise limited their holdings. See Crosby v. Beam, 548 N.E. 2d 217, 221 (Ohio 1989); Tillis v. Utd. Parts, Inc., 395 So. 2d 618, 619 (Fla. Dist. Ct. App. 1981). The Amended Complaint does not allege that the Outside Directors are controlling shareholders.[7] Therefore, even if Donahue were good law, and even if the Connecticut courts would adopt it in spite of its rejection by Delaware courts, it would not apply to this case.

The rule adopted by Donahue has been widely criticized. One prominent authority on corporate law stated that the Donahue court "missed the boat":

> The court that decided Donahue was apparently so concerned about establishing the similarities between closely held corporations and partnerships that it never considered the possibility that its rule of equal opportunity might be inconsistent with the observed behavior of participants in both partnerships and closely held corporations. Both types of firms must provide some mechanism for dealing with retirements or terminations in situations where the firm will continue to exist. Most firms could not survive if the purchase of the interest of a retiring member required that everyone else be given the opportunity to sell out at the same price.

Frank H. Easterbrook & Daniel R. Fischel, The Economic Structure

---

[7] In fact, the Outside Directors, taken together, own less than 5% of Reflexite's stock.

of Corporate Law 250-52 (1991).

> b.    The Business Judgment Rule Protects the
>        Board's Decision

A corporation's decision to repurchase its own stock selectively – like most other corporate decisions – should be evaluated in light of the business judgment rule.  The Delaware Supreme Court has adopted this position.  See DeKalb Genetics Corp. v. Roberts, 679 A.2d 460, 466 (Del. 1996); Polk v. Good, 507 A.2d 531, 535 (Del. 1986) (noting that "a corporation may acquire its own stock . . . and that the business judgment rule would almost certainly protect such action").  See also Delahoussaye, 785 S.W. 2d at 612 ("We believe the better approach is application of the business judgment rule.").

Furthermore, just one year after it issued the opinion in Donahue, the Massachusetts Supreme Court itself retreated from the "equal opportunity" rule, stating:

> [W]e are concerned that untempered application of the strict good faith standard enunciated in Donahue . . . will result in the imposition of limitations on legitimate action by the controlling group in a close corporation which will unduly hamper its effectiveness in managing the corporation in the best interests of all concerned.

Wilkes v. Springside Nursing Home, Inc., 353 N.E.2d 657, 663 (Mass. 1976).  Accordingly, the court limited its holding in Donahue by, essentially, applying the business judgment rule to the decisions of the controlling group.  See id. ("It must be asked whether the controlling group can demonstrate a legitimate

-15-

business purpose for its action.").

The Connecticut Supreme Court has described the business judgment rule as follows:

> The business judgment doctrine is a rule of law that insulates business decisions from most forms of review. Courts recognize that managers have both better information and better incentives than they. . . . The business judgment rule expresses a sensible policy of judicial noninterference with business decisions made in circumstances free from serious conflicts of interest between management, which makes the decisions, and the corporation's shareholders. . . . Shareholders challenging the wisdom of a business decision taken by management must overcome the business judgment rule. . . . For efficiency reasons, corporate decision makers should be permitted to act decisively and with relative freedom from a judge's or jury's subsequent second questioning.

Rosenfield v. Metals Selling Corp., 229 Conn. 771, 786-87, 643 A.2d 1253, 1262 (1994) (internal quotation marks, citations and footnotes omitted).

The Delaware Supreme Court has explained the rule more fully as follows:

> Our starting point is the fundamental principle . . . that the business and affairs of a corporation are managed by or under the direction of its board of directors. In exercising these powers, directors are charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders.
>
> The business judgment rule is an extension of these basic principles. The rule operates to preclude a court from imposing itself unreasonably on the business and affairs of a corporation. . . . The rule operates as both a procedural guide for litigants and a substantive rule of law. As a rule of evidence, it creates a presumption that in making a business decision, the directors of a corporation acted on an informed basis, i.e., with due care, in good faith and in the honest

belief that the action taken was in the best interest of
the company.  The presumption initially attaches to a
director-approved transaction within a board's conferred
or apparent authority in the absence of any evidence of
fraud, bad faith, or self-dealing in the usual sense of
personal profit or betterment.

The rule posits a powerful presumption in favor of
actions taken by the directors in that a decision made by
a loyal and informed board will not be overturned by the
courts unless it cannot be attributed to any rational
business purpose.    Thus, a shareholder plaintiff
challenging a board decision has the burden at the outset
to rebut the rule's presumption.  To rebut the rule, a
shareholder plaintiff assumes the burden of providing
evidence that directors, in reaching their challenged
decision, breached any one of the triads of their
fiduciary duty – good faith, loyalty or due care.  If a
shareholder plaintiff fails to meet this evidentiary
burden, the business judgment rule attaches to protect
corporate officers and directors and the decisions they
make, and our courts will not second-guess these business
judgments.  If the rule is rebutted, the burden shifts to
the defendant directors, the proponents of the challenged
transaction, to prove to the trier of fact the entire
fairness of the transaction to the shareholder plaintiff.

<u>Cede & Co. v. Technicolor, Inc.</u>, 634 A.2d 345, 360 -61 (Del.

1993) (internal quotation marks and citations omitted).

The business judgment rule has been codified in the

Connecticut statutes as follows:

A director shall discharge his duties as a director
. . . (1) In good faith; (2) with the care an ordinarily
prudent person in a like position would exercise under
similar circumstances; and (3) in a manner he reasonably
believes to be in the best interests of the corporation.
. . .  A director is not liable for any action taken as
a director . . . if he performed the duties of his office
in compliance with this section.

Conn. Gen. Stat. § 33-756 (2003).

In Connecticut, "[a] corporation may acquire its own

shares[.]"  Conn. Gen. Stat. § 33-684 (2003).  A corporation is

-17-

not restricted "from selectively acquiring some of the stock of a
given class." Toner, 498 A.2d at 645-46.  Such a selective
repurchase "is protected by the business judgment rule, unless it
involves fraud or unfairness, or its primary or sole purpose is
to entrench the directors in office." Grobow v. Perot, 526 A.2d
914, 927 (Del. Ch. 1987).  In other words, "unless the
transaction is unfair, it would be protected by the business
judgment rule.  And that would be so even if the directors'
judgment turned out to be wrong." Id.

     In order to survive a motion to dismiss, a complaint
alleging breach of fiduciary duty must overcome the presumption
of fairness accorded to directors by the business judgment rule
by alleging "particularized facts sufficient to create a
reasonable doubt that the [defendants'] rejection of plaintiffs'
demands was wrongful[.]" In re Gen. Motors Class E Stock Buyout
Secs. Litig., 790 F. Supp. 77, 81 (D. Del. 1992).  Conclusory
allegations will not suffice. See id. "[W]here a claim for
breach of fiduciary duty fails to contain allegations of fact
that, if true, would rebut the presumption of the business
judgment rule, that claim should ordinarily be dismissed under
Rule 12(b)(6)." In re BHC Communications Shareholder Litig., 789
A.2d 1, 4 (Del. Ch. 2001).  In light of these established legal
principles, the factual allegations in Count Two are insufficient
to support a claim for breach of fiduciary duty.  The amended
complaint does not allege facts that, if proven at trial, would

-18-

support a finding that the defendants, in limiting the repurchase of stock from the plaintiffs and other shareholders, did not act in good faith, with reasonable care, and in a manner they reasonably believed to be in the best interest of the Corporation.[8]  See Conn. Gen. Stat. § 33-756.

Furthermore, the amended complaint states that the plaintiffs actually participated fully in certain buyback opportunities offered by the Corporation.  As to the 2002 buyback, the amended complaint alleges that the plaintiffs "were denied the opportunity to participate" in the buyback program. Am. Compl. ¶ 55.  However, the amended complaint also alleges that H. Jonathan Frank had already stated, in October 2001, that he felt that the buybacks being offered were "so small as to be not worth pursuing."  Am. Compl. ¶ 54.  The amended complaint does not allege that the plaintiffs, in light of their stated belief that the buyback was not worth pursuing, would have participated in the 2002 buyback if given the opportunity to do so.

For the reasons set forth above, to the extent that Count Two is premised on a claim that the Outside Directors breached

---

[8] The allegation in the amended complaint that "corporate insiders" held shares in multiple names so as to maximize their participation in the buyback is insufficient to rebut the presumption of the business judgment rule.  See Am. Compl. ¶ 48. The amended complaint does not allege that any of the Outside Directors were among these "corporate insiders," nor does it allege that the Outside Directors had any knowledge of this supposed scheme.

their fiduciary duties by refusing to authorize large buybacks of Reflexite stock from the plaintiffs, Count Two should be dismissed.  As the Massachusetts Supreme Court put it: "While the plaintiff's predicament in not being able to dispose of [its stock] . . . is unfortunate, the situation was not caused by the defendants but is merely one of the risks of ownership of stock in a close corporation."  <u>Goode v. Ryan</u>, 489 N.E. 2d 1001, 1005 (Mass. 1986).

### 2.    Denial of Information

The amended complaint alleges that in 2002, Morgan Frank requested certain information regarding Reflexite and was denied access to the information.[9]  <u>See</u> Am. Compl. ¶ 58.  This allegation fails to state a claim for breach of fiduciary duty and should be dismissed because the amended complaint does not allege that the plaintiffs had a legal right to the information they claim to have sought.

A shareholder's demand for information is governed by statute.  <u>See</u> Conn. Gen. Stat. §§ 33-704, 33-945, 33-946, 33-947, 33-948.[10]  Section 33-945 details the types of records that a corporation is required to maintain.  Section 33-946 describes the rights of a shareholder to inspect such records, and

---

[9] Morgan Frank, who was dropped as a plaintiff in the amended complaint, is not alleged to have been a shareholder of the Corporation.  <u>See</u> Footnote 11.

[10] Each of these statutes has been in effect since 1997.

provides, in relevant part, as follows:

> (b) A shareholder of a corporation is entitled to inspect and copy, during regular business hours at a reasonable location specified by the corporation, [certain records] if the shareholder meets the requirements of subsection (c) of this section and gives the corporation written notice of his demand at least five business days before the date on which he wishes to inspect and copy . . . .

> (c) A shareholder may inspect and copy [such records] only if: (1) His demand is made in good faith and for a proper purpose; (2) he describes with reasonable particularity his purpose and the records he desires to inspect; and (3) the records are directly connected with his purpose.

Conn. Gen. Stat. § 33-946 (2003).

The amended complaint does not allege that the information sought by the plaintiffs was the sort of information that a corporation is required to maintain under § 33-945. The amended complaint does not allege that the plaintiffs satisfied the good faith, particularity, and direct connection requirements of § 33-946(c). The amended complaint does not allege how the plaintiffs were harmed in any quantifiable way by the defendants' alleged refusal to provide information. Accordingly, to the extent that Count Two is premised upon the plaintiffs' claim that the defendants failed to provide information, Count Two should be dismissed.[11]

---

[11] This claim should also be dismissed because the amended complaint cites only one instance in which the plaintiffs were denied information they requested, and in that instance, the amended complaint alleges that the demand for information was made by Morgan Frank "on behalf of the Frank Family 1996 Trust." Am. Compl. ¶ 58. Morgan Frank is not alleged to be a trustee of the Trust, or otherwise a person who had authority to act on

In summary, neither factual basis advanced by the plaintiffs for their claim for breach of fiduciary duty is sufficient to state a claim upon which relief can be granted.  "The business judgment rule insulates corporate directors from liability for business decisions within the power of the corporation for which the directors have exercised due care."  Rosenfield, 229 Conn. at 785, 643 A.2d at 1261.  The actions of the Outside Directors were protected by the business judgment rule, and the amended complaint does not allege facts which, even if proven, would be sufficient to overcome that protection.  Accordingly, Count Two should be dismissed in its entirety.

## IV.    **COUNT FIVE: TORTIOUS INTERFERENCE WITH CONTRACT**

Count Five of the amended complaint alleges that the defendants "intentionally acted [s]o as to deprive the Franks of their contractual benefits and to induce the breach of the January 5, 1979 Agreement, the Shareholders Agreement and other contractual relationships between the Franks and William Rowland and others."  Am. Compl. ¶ 110.  Under Connecticut law,

> [a] claim for tortious interference with contractual
> relations requires the plaintiff to establish (1) the
> existence of a contractual or beneficial relationship,
> (2) the defendants' knowledge of that relationship, (3)
> the defendants' intent to interfere with the
> relationship, (4) the interference was tortious, and (5)
> a loss suffered by the plaintiff that was caused by the

---

behalf of the Trust.  Morgan Frank accordingly lacked standing to
demand information from the Corporation, and the defendants could
not have breached any duty by refusing to provide Morgan Frank
with corporate information.

-22-

> defendants' tortious conduct. Unlike other torts in
> which liability gives rise to actual damages even in the
> absence of proof of actual loss, it is an essential
> element of the tort of unlawful interference . . . that
> the plaintiff suffers actual loss.

Appleton v. Bd. of Educ., 254 Conn. 205, 212-13, 757 A.2d 1059,
1063 (2000) (internal quotation marks and citations omitted).
"The Connecticut Supreme Court has noted that 'not every act that
disturbs a contract . . . is actionable.'" Brown v. Northeast
Nuclear Energy Co., 118 F. Supp. 2d 217, 221 (D. Conn. 2000)
(quoting Robert S. Weiss & Assocs., Inc. v. Wiederlight, 208
Conn. 525, 546 A.2d 216 (1988)).

   A.   "Other Contractual Relationships"

   The amended complaint alleges that the defendants interfered
with "other contractual relationships between the Franks and
William Rowland and others." Am. Compl. ¶ 110. However, the
amended complaint alleges only that the defendants were aware of
the 1979 Agreement and the Stockholders' Agreement; it does not
allege that the defendants were aware of any "other contractual
relationships." Accordingly, the amended complaint fails to
state a claim as to the defendants' alleged interference with
"other contractual relationships." See Rumbin v. Baez, 52 Conn.
App. 487, 492, 727 A.2d 744, 747 (1999) (affirming dismissal of
complaint for tortious interference where complaint failed to
allege, inter alia, that defendants knew of the contractual
relationship alleged).

-23-

**B.    The 1979 Agreement**

To the extent that the claims in Count Five are based upon the 1979 Agreement, this Count should be dismissed as brought by the Trust.  Only H. Jonathan Frank is a party to the 1979 Agreement; the Trust was not even created until 17 years after the Agreement was signed.  Accordingly, the Court should dismiss this Count as to the Trust.

Furthermore, the plaintiffs' claims of tortious interference with the 1979 Agreement are time-barred.  A claim for tortious interference is governed by the three-year statute of limitations set forth in Conn. Gen. Stat. § 52-577.  See Collum v. Chapin, 40 Conn. App. 449, 451-52, 671 A.2d 1329, 1331-32 (1996).  The original complaint was filed on June 9, 2003; accordingly, any claims pertaining to events occurring prior to June 9, 2000, are time-barred.[12]

The only promises contained in the 1979 Agreement relate to the sale or planned sale of stock by William Rowland, Hugh

_____

[12] Connecticut law governs the question of when an action is commenced for purposes of the statute of limitations, and "the Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statutes of limitations." Converse v. General Motors Corp., 893 F.2d 513, 515 (2d Cir. 1990).  The original complaint in this case was served on the various defendants at different times from June through September 2003.  For the sake of simplicity, this motion will refer to the date that the original complaint was filed, that is, June 9, 2003, as the relevant date for statute of limitations purposes.  However, the Outside Directors reserve the right to argue that the action was commenced, for statute of limitations purposes, at different dates for different defendants, but in any event after June 9, 2003.

-24-

Rowland, or Frederick W. Haffenreffer.  The amended complaint does not allege that any of these men sold or planned to sell stock after June 9, 2000.  The amended complaint does not allege any actions by the Outside Directors during the limitations period relating to sale or planned sale of stock by these men. Indeed, it appears that the only allegations in the amended complaint relating to the 1979 Agreement concern events that occurred in 1998.  <u>See</u> Am. Compl. ¶¶ 42, 45.  Specifically, the only sale of shares by any party to the 1979 Agreement alleged in the amended complaint is the transaction that forms the central focus of the amended complaint – the alleged $8.1 million buyback by Reflexite of shares owned by William Rowland and his family – which is alleged to have occurred in January 1998, approximately five-and-a-half years before the original complaint was filed and well outside the limitations period.  Any tort claim based upon this transaction is time-barred.

   C.   **The Shareholders' Agreement**

   The amended complaint does not allege which provisions of the Shareholders' Agreement the defendants interfered with, nor what loss the plaintiffs suffered as a result of interference with the Shareholders' Agreement.  As such, the amended complaint fails to provide the defendants with "fair notice of . . . the grounds upon which [this claim] rests," <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), and must be dismissed.

In addition, the tortious interference claim must be dismissed to the extent it relies upon the Stockholders' Agreement because the amended complaint does not allege any actual damages arising out of a breach or intended breach of that Agreement. The amended complaint's conclusory allegation that "the Franks have suffered damages," Am. Compl. ¶ 112, is completely unsupported by any factual allegations, and therefore "fails even the liberal standard of Rule 12(b)(6)." De Jesus, 87 F.3d at 70.

Finally, this claim, too, is time-barred because the amended complaint does not allege that the Outside Directors took any actions after June 9, 2000, that induced the Corporation to breach the Stockholders' Agreement. None of the factual allegations in the amended complaint relating to events within the limitations period makes any mention of the Outside Directors or any attempt by them to improperly influence the Corporation. See Am. Compl. ¶¶ 53-5545-49.

For the reasons set forth above, all claims in Count Five of the amended complaint, alleging Tortious Interference with Contractual Relations, should be dismissed as against the Outside Director defendants.

## V.    DEMAND FOR ACCOUNTING

Count Six of the amended complaint alleges that the

plaintiffs "are entitled to an accounting from the Defendants concerning all wrongfully diverted and misused corporate assets and resources utilized in furtherance of the actions described herein." Am. Compl. ¶ 115. The Outside Directors contend that this Count should be dismissed for lack of standing as to Morgan Frank and as to H. Jonathan Frank, in his individual capacity, because they are not shareholders.

The Outside Directors further contend that this Count should be dismissed because, as set forth above, the amended complaint fails to state a claim that the Outside Directors wrongfully diverted or misused corporate assets in breach of their fiduciary duties. Finally, this Count should be dismissed as against defendants Loomis, Patlovich and Raffay because they no longer serve on the Reflexite Board of Directors and, accordingly, are unable to provide information on behalf of the Corporation.

## IV.  **CONCLUSION**

For the reasons set forth above, the Outside Directors respectfully submit that Counts One, Two, Five and Six of the amended complaint should be dismissed.

DEFENDANTS,
ARTHUR LOVETERE, LOUIS J. BACCEI,
WORTH LOOMIS, THEODORE PATLOVICH,
STEPHEN J. RAFFAY and PETER EIO

-27-

By: /s/ James T. Cowdery
    James T. Cowdery
    Cowdery, Ecker & Murphy, L.L.C.
    750 Main Street
    Hartford, CT   06103
    Tele.: (860) 278-5555
    Fax.:  (860) 249-0012
    E-mail: jcowdery@cemlaw.com
    Federal Bar No.: ct05103

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing Memorandum in Support of Motion to Dismiss was sent on November 26, 2003, via U.S. Mail, first-class, postage pre-paid to all counsel of record as follows:

Richard M. Strassberg, Esq.
Jeffrey Alan Simes, Esq.
Goodwin Procter, LLP
599 Lexington Avenue
New York, NY 10022

Michael Considine, Esq.
Patricia M. Canavan, Esq.
Terence J. Gallagher, Esq.
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT 06901

Craig A. Raabe, Esq.
Jason M. Kuselias, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

Edward F. Spinella, Esq.
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103

James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT   06601-7006


_____
James T. Cowdery