

FILED
Nov 26   3 ∞ PH '03
U.S. DIST.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

H. JONATHAN FRANK, MORGAN FRANK
AND FRANK FAMILY 1996 TRUST (on behalf
of themselves and REFLEXITE CORPORATION)

CASE NUMBER:  3:03CV1014 (JBA)

Plaintiffs

v.

ARTHUR LOVETERE, CECIL URSPRUNG,
LOUIS J. BACCEI, WORTH LOOMIS,
THEODORE PATLOVICH, STEPHEN J.
RAFFAY, WILLIAM P. ROWLAND, PETER EIO
(individually and in their capacity as members of
the Board of Directors of Reflexite Corporation)
and REFLEXITE CORPORATION

Defendants          November 26, 2003

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROWLAND'S MOTION TO DISMISS AMENDED COMPLAINT

### I.     INTRODUCTION

Defendant, William P. Rowland ("Rowland") submits this Memorandum of Law in Support of his Motion to Dismiss the First, Second, Third, Fourth and Sixth Counts of the Amended Complaint brought by Plaintiffs H. Jonathan Frank ("Frank") and the Frank Family 1996 Trust (the "Trust"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rowland, one of the founders of Reflexite and current director, sold his shares to Reflexite in 1998 following board approval and full shareholder disclosure. Five years later, he

is being sued in both his director and individual capacities by Frank, a former employee and former shareholder, and the Trust controlled by Frank. The theories for relief range from a derivative shareholder action (which was fully investigated and rejected by a Special Litigation Committee in accordance with Connecticut statutes) alleging self-dealing by the directors, to breaches of agreements executed almost 20 years ago.

Three of the six counts set forth in the Amended Complaint are directed against all defendants. In the counts directed solely against Rowland, Plaintiffs allege that in 1979 Frank purchased 10% of Defendant Reflexite Corporation's ("Reflexite") stock, in reliance on an agreement (the "1979 Agreement") in which Rowland and others allegedly assured Frank that they would use reasonable efforts to allow Frank to sell his shares of Reflexite at the same price they sold their shares. (Am. Compl.[1] at ¶¶30-31.) Plaintiffs also allege that Frank signed a Shareholders' Agreement and Certificate of Incorporation, by which certain shareholders agreed to restrict the sale of their stock. Id. at ¶33.[2] Plaintiffs then allege that in 1998, Reflexite bought a large block of shares owned by Rowland and his family trust for $8.1 million, but made no such offer to the Plaintiffs. Id. at ¶¶ 42 and 45.[3]

Reading the Amended Complaint in the most favorable way possible to the Plaintiffs, it

---

[1] Plaintiffs' Amended Complaint dated November 7, 2003 is herein referred to as "Am. Compl."
[2] Frank transferred his shares to a Family Trust in 1997 and no longer owns shares individually. (Am. Compl. at ¶44.)
[3] There are several allegations referring to a Mr. Rowland in ¶¶ 35 and 36 of the Amended Complaint. Those allegations pertain to Hugh Rowland, now deceased, not William Rowland.

2

appears that these allegations form the basis of Plaintiffs' claims against Rowland in Count

Three for breach of the 1979 Agreement and unspecified provisions of a Shareholders'

Agreement, and in Count Four for promissory estoppel.

Rowland hereby moves to dismiss the First, Second, Third, Fourth and Sixth Counts[4] of

the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). More specifically,

Rowland joins in its Co-Defendants' Motions to Dismiss the First Count pursuant to Rule

12(b)(1) for lack of standing, and the Second and Sixth Counts under Rule 12(b)(6) for failure

to state a claim. In addition, Rowland moves to dismiss the Third and Fourth Counts against

the Trust under Rule 12(b)(1) for lack of standing, and against both Plaintiffs under Rule

12(b)(6) for failure to state a claim.

## II.    ARGUMENT

### A.    The Standard for Dismissal Pursuant to Rules 12(b)(1) and 12(b)(6).

The standard for dismissal of a complaint for lack of subject matter jurisdiction under

Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6) is well established.[5] The Court

must, of course, "accept as true all factual allegations in the Complaint[.]" Cooper v. Parsky,

140 F.3d 433, 440 (2d Cir. 1998) (internal quotation marks and citations omitted). The

---

[4]    The Fifth Count is directed to the other defendants and alleges that they tortiously interfered with Plaintiffs' contractual expectations. Rowland does not address this count since it is not directed to him. However, Rowland concurs with his Co-Defendants' argument that Count Five should be dismissed since it is based on the agreements that are subject to dismissal in Counts Three and Four, as discussed more fully, *infra.*

[5]    "[T]he standards for dismissal under 12(b)(6) and 12(b)(1) are substantively identical." Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003).

3

complaint must give the Defendant "fair notice of the claim asserted so as to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citations omitted). Moreover, where a complaint is "devoid of any specific facts or circumstances supporting [an] assertion," the complaint should be dismissed for failure to state a claim because "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996) (internal quotation marks and citation omitted) (emphasis in original).

In considering a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), the Court is allowed to consider extrinsic evidence outside of the four corners of the complaint. Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 121 n.1 (2d Cir. 1998); Marczeski v. Law, 122 F. Supp. 2d 315, 320 (D. Conn. 2000). Furthermore, with respect to a Rule 12(b)(6) motion, the Court may consider facts alleged on the face of the complaint, documents attached as exhibits, and documents incorporated by reference. Yoder v. Orthomolecular Nutrition Institute, Inc., 751 F.2d 555, 562 (2d Cir. 1985)

4

(citing Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989). This is especially true "when the plaintiff's claims rely on [written] instruments and the opposing party has notice of them." Id. at 184-185 (citing Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (permitting consideration of warrant, offering memorandum, and stock purchase agreement because they were documents that plaintiffs "had either in its possession or had knowledge of and upon which they relied in bringing suit"); Sazerac Co. v. Falk, 861 F.Supp. 253, 257 (S.D.N.Y. 1994)(considering instruments supplied by defendants in their Rule 12(b)(6) motion but not attached to complaint); Kramer v. Time Warner Inc., 937 F.2d 767, 773-774 (2d Cir. 1991) (court considered publicly filed securities documents of which plaintiff had notice)). Moreover, documents that are "integral" to the complaint, but are only partially quoted therein, may also be considered. Id. at 185 (citations omitted). It is against this backdrop that Rowland's motion to dismiss must be considered.

**B.** **Rowland Joins In Co-Defendants'**
    **Motion to Dismiss the First, Second and Sixth Counts.**

**1.** **Count One – Derivative Claim**

Plaintiffs' First Count alleges that all of the individual Defendants breached their fiduciary duties to Reflexite causing irreparable harm and financial injury to the corporation. It is styled as a derivative action. Defendant Rowland moves to dismiss this claim pursuant to Rule 12(b)(1) on the grounds that the Plaintiffs lack standing to bring a derivative claim.

5

First, Plaintiff Frank is not a shareholder of Reflexite. Accordingly, he has no standing to bring a cause of action for breach of fiduciary duty (either in a derivative or direct capacity), as Defendants do not owe him any fiduciary duty.[6] As pointed out in more detail in Reflexite's Memorandum of Law in Support of Motion to Dismiss, which argument Rowland herewith adopts by reference, only persons who are shareholders at the time of an alleged wrongdoing have standing to sue corporate directors for breach of fiduciary duty. See Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163, 1169 (Del. Ch. 2002). Accordingly, Frank lacks standing to bring the First Count.

Second, both Frank and the Trust lack standing to maintain the derivative claims set forth in the First Count because they do not fairly and adequately represent the interests of the corporation, (see Conn. Gen. Stat. §33-721), or its shareholders, (see also Conn. Gen. Stat. §52-572(j)), the necessary prerequisites to a derivative action. Summarily stated, whatever may be the merits of Count One, neither Frank nor the Trust are the proper party to vindicate the company interests or those of its shareholders. Therefore, as set forth in further detail in Reflexite's Memorandum of Law in Support of Motion to Dismiss, which argument Rowland

---

[6]    To the extent that the Amended Complaint purports to state a claim for damages suffered by Frank when he was a shareholder, any such claims are barred by the applicable statute of limitations. Under Connecticut law, "no action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. §52-577 (2003). "All common law tort claims, including claims for breach of fiduciary duty, are subject to a three year statute of limitations, which runs from the date of the act or omission complained of." In Re: Colonial Limited Partnership Litigation, 854 F. Supp. 64, 90 (D. Conn. 1994). Plaintiff Frank is not alleged to have been a shareholder in Reflexite anytime after 1997, well beyond the three year limitations period.

herewith adopts by reference, Plaintiffs lack standing and the First Count should be dismissed.

### 2.    Count Two – Direct Claim

The Second Count alleges that Defendants violated their fiduciary duties to the Plaintiffs causing the Plaintiffs direct and personal irreparable harm and financial injury. (Am. Compl. at ¶¶86 through 94.)  This claim should also be dismissed for the following reasons: (1) Although labeled a direct claim, the allegations stem solely from the Plaintiff Trust's status as a shareholder.  Indeed, a comparison of the claims set forth in Paragraph 74 of the Amended Complaint (the so-called derivative claim) with Paragraph 89 (the so-called direct claim) reveals that they are all but identical.  Under Connecticut law, a shareholder may bring direct claims only when such claims are independent and distinct from the claims held by other shareholders.  Otherwise, a claim may be made only by a proper derivative plaintiff who must observe and be restricted by the protections afforded the corporation under the derivative statutes.  Here, Plaintiffs do not even attempt to disguise the fact that they have simply attempted to recast the derivative claims in Count One as direct claims in Count Two.  This they cannot do.  (2) Even if Count Two survived the initial hurdle of being a direct claim, Plaintiff Frank cannot maintain this claim since he is not a shareholder and was not a shareholder during the time of the allegations and thus lacks standing to assert these claims.  As noted earlier, a non-shareholder cannot bring a shareholder claim.  (3) The injunctive relief purportedly sought is not appropriate since there is no immediate harm identified or alleged and

7

the allegations involve nothing more than mere monetary loss for which an adequate remedy at law is available. (4) Finally, if Plaintiffs can overcome the foregoing obstacles, the allegations fail to state a claim for breach of fiduciary duty. At best, Plaintiffs' claims boil down to the assertion that the directors breached their fiduciary duties in the actions they took as directors. Simply put, directors' actions are protected by the business judgment rule.[7]  There are no allegations in the Amended Complaint which even remotely come close to establishing any breach of the directors' business judgment, nor could such allegations honestly be made. There is no legally recognizable cause of action for failure to treat shareholders equally or to provide the same rights to liquidity under the circumstances complained of by Plaintiffs. Similarly, Connecticut statutes govern what information a shareholder is entitled to upon demand. Defendants cannot breach their fiduciary duty when Plaintiffs do not have a legal right to the information they claim to have sought. Accordingly, as set forth in further detail in Reflexite's Memorandum of Law in Support of Motion to Dismiss and the "Outside Directors" Arthur

---

[7]  A corporation's decision to repurchase its own stock selectively, like most other corporate decisions, should be evaluated in light of the business judgment rule. See DeKalb Genetics Corp. v. Roberts, 679 A.2d 460, 466 (Del. 1996). The business judgment rule has been codified under Connecticut's statutes as follows:

> A director shall discharge his duties as a director... (1) in good faith; (2) with the care an ordinarily prudent person in the same position would exercise under similar circumstances; and (3) in a manner he reasonably believes to be in the best interests of the corporation.... A director is not liable for any action taken as a director... if he performs the duties of his office in compliance with this section.

Conn. Gen. Stat. §33-756 (2003). While admittedly the business judgment rule does not apply in a self-interested transaction, the only such transaction alleged in the complaint with respect to Defendant Rowland would be Reflexite's decision in January, 1998 to buy back a large block of Defendant Rowland's stock, which was approved by the non-interested directors.

Lovetere, Louis Baccei, Worth Loomis, Theodore Patlovich, Stephen J. Raffey and Peter Eio's Memorandum of Law in Support of Motion to Dismiss, which arguments Rowland herewith adopts by reference, the Second Count should be dismissed.

### 3.    Count Six - Accounting

The Sixth Count seeks an accounting from Defendants.  It is premised on the first two claims, and should therefore be dismissed, for the reasons previously argued.[8]

### C.    Plaintiffs' Breach of Contract Claim (Count Three) Should Be Dismissed.

Plaintiffs' Third Count incorporates the prior allegations of the Amended Complaint and alleges a breach of the 1979 Agreement and the Shareholders' Agreement.

By way of background, Rowland was one of the two original founders of Reflexite. (Am. Compl. at ¶21.)  In 1979, the other founder, Hugh Rowland, approached Frank to discuss Frank purchasing stock in Reflexite.[9]  (Id. at ¶29.)  Frank agreed if the principals of Reflexite placed certain restrictions on their ability to transfer shares.  (Id. at ¶¶29, 30.)  All of the principals of Reflexite agreed and executed the 1979 Agreement.  The 1979 Agreement provided, in relevant part:

> Before actually selling stock now owned by us that would result in
> a transfer of voting control to a third party, we will use all efforts

---

[8]    Again, Rowland hereby adopts the arguments made regarding this claim in the Memorandum of Law filed by Co-Defendant Reflexite Corporation, and Co-Defendants Arthur Lovetere, Cecil Ursprung, Louis J. Baccei, Worth Loomis, Theodore Patlovich, Stephen J. Raffay, and Peter Eio (referred to collectively as the "Outside Directors").
[9]    Shortly thereafter, Frank became the Vice President of Marketing and Sales at Reflexite.  (Am. Compl. at ¶32.)

that are reasonable to assure you the opportunity of selling your shares at the same price per share being offered to us.

(See 1979 Agreement attached as Exhibit A.)[10]

In the spring of 1985, Frank's employment with Reflexite terminated. (Am. Compl. at ¶33.) A year later in 1986, the shareholders of Reflexite, including Frank, executed a Shareholders' Agreement. In relevant part, the Shareholders Agreement[11] provided:

> None of the Stockholders shall sell, assign, transfer, pledge, encumber or otherwise dispose of all or any shares of stock of the Corporation, **except in the case of a transfer of such shares to the Corporation itself,** without first obtaining the prior written consent of each of the other Stockholders then owning... outstanding shares of stock of the Corporation....

(See Stockholders' Agreement attached as Exhibit B at ¶1.) (emphasis added). Over ten years later, Frank transferred all shareholdings in Reflexite to the Frank Family 1996 Trust, relinquishing all of his individual stock ownership in Reflexite.

The only transfer of stock by Rowland identified in the Amended Complaint is set forth in Paragraph 42, when Rowland and his family trust, after board approval, sold their shares to

---

[10]  As stated previously, this Court is allowed to consider the agreements, attached as exhibits, in its determination of both the Rule 12(b)(1) and 12(b)(6) arguments.  See Europe and Overseas Commodity Traders, and Yoder, supra.

[11]  While the Amended Complaint makes reference to the "Shareholders Agreement" (Am. Compl. at ¶¶96-100), Plaintiffs never allege specifically to what agreement this refers.  Presumably, these allegations refer to Reflexite's operative Stockholders' Agreement, Amended and Restated as of January 1, 1986.  A copy of this "Shareholders Agreement" is attached hereto as Exhibit B.  To the extent Plaintiffs intend to reference any other agreement, their allegations are clearly insufficient to constitute even notice pleading, thus subjecting their claims to dismissal.  See Conley v. Gibson, 355 U.S. 41, 47 (1957) (discussed infra).

10

Reflexite in January of 1998. Plaintiffs allege that this buyback constitutes a breach of the two agreements. For obvious reasons, this claim must be dismissed. First, Frank has not been a shareholder since he had transferred his shares to the Trust in 1997, prior to the 1998 buyback. Accordingly, Frank cannot claim relief under either contract. Second, the Trust is not a party to the 1979 Agreement and, therefore, it lacks standing to allege a breach of the 1979 Agreement. Third, regardless of who is the right party or which contract is in issue, the buyback to Rowland was expressly condoned by the plain language of both agreements. Thus, there is no breach. For these reasons, there is no legal basis for the relief sought by Plaintiffs.

> **1. The Plaintiff Trust Is Not a Party to the 1979 Agreement and, Therefore, Lacks Standing to Assert a Breach of Contract Claim.**

In order to bring a claim for breach of contract, it is basic hornbook law that the party must have standing to do so. "Where a plaintiff lacks standing to sue, the court is without subject matter jurisdiction....Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless one has...some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." <u>Cardi Materials Corp. v. ConLandscaping Bruzzi Corp.</u>, 77 Conn. App. 578, 582 (2003). The Connecticut Supreme Court recently confirmed that a plaintiff who is not a party to a contract lacks standing to enforce it. <u>See id.</u>

The 1979 Agreement is specifically addressed to "Mr. H. Jonathan Frank" <u>only</u>, and states as follows:

> In connection with your proposed purchase of Reflexite Corporation's stock, we agree to keep you informed about any possible future sale of our stock in the company.
>
> Before actually selling stock now owned by us that would result in a transfer of voting control to a third party, we will use all efforts that are reasonable to assure you the opportunity of selling your shares at the same price per share being offered to us.

(Exhibit A) (emphasis added.)

By contrast, the Shareholders' Agreement was intended to run with the stock. The Shareholders' Agreement expressly "inure[s] to the benefit of each of the Stockholders, and his... legatees... successors and assigns." (Exhibit B at ¶10.) Accordingly, unlike with the Shareholders' Agreement,[12] the Trust has no standing to enforce the 1979 Agreement. It did not even exist in 1979.

The Amended Complaint seeks to circumvent the Trust's obvious standing problem by treating Frank and the Trust as interchangeable for purposes of standing. For example, Paragraph 96 disingenuously alleges that the 1979 Agreement required Rowland "to make 'all efforts that are reasonable' to permit the Franks [plural] to sell their shares..." This type of collective treatment is impermissible. "It is axiomatic that a party does not have standing to raise the rights of another." Frillici v. Town of Westport, 264 Conn. 266, 280 (2003). Instead,

---

[12]   As set forth in Section C(3) of this Memorandum, Plaintiffs fail to state a claim for breach of the Shareholders' Agreement.

12

in order to have standing, each plaintiff must suffer a cognizable injury "in a personal and individual way." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, note 1 (1992). Even related persons or entities do not have standing to sue on behalf of one another. <u>See</u> <u>Cardi Materials Corp. v. Con Landscaping Bruzzi Corp.</u>, 77 Conn. App. 578, 582 (2003). Thus, each plaintiff has standing only to pursue a remedy for those harms personally suffered by that plaintiff. The Trust cannot have standing to enforce a contract to which it was never a party. Accordingly, the Third Count should be dismissed as to the Trust's claims under the 1979 Agreement.

**2.    Since Plaintiff Frank Has Transferred His Shares, He Cannot Maintain His Action For Breach of Contract**

The Third Count should also be dismissed as to Plaintiff Frank in its entirety because he transferred his shares before the 1998 Rowland sale, thus rendering any performance by Rowland impossible under either agreement.

As this Court is aware, in order to properly plead a cause of action for breach of contract, a plaintiff must plead facts showing (1) the existence of a contract or agreement, (2) the defendants' breach of the contract or agreement, and (3) the damages resulting from the breach. <u>Chem-Tek, Inc. v. General Motors Corp.</u>, 816 F. Supp. 123, 130 (D. Conn. 1993) (citing <u>O'Hara v. State</u>, 218 Conn. 628 (1991)). Plaintiff Frank's allegations make clear that he cannot meet the second and third elements necessary to maintain a breach of contract claim.

13

The Amended Complaint alleges that Plaintiff Frank "is a substantial shareholder of the company through a family trust." (Am. Compl. at ¶1.) (emphasis added). The Amended Complaint further states that in 1997 "Mr. Frank transferred his shareholdings to the Frank Family 1996 Trust." (Am. Compl. at ¶44.) (emphasis added). The Amended Complaint does not allege that Plaintiff Frank is now or was at any time after 1997 personally a shareholder in Reflexite. Accordingly, he did not personally own shares at the time of the 1998 buyback of Rowland's shares. In the absence of shareholder ownership, there can be no breach of an agreement that provides him with an opportunity to sell his shares or that restricts when others might do so. See Barrett v. Barrett, 26 Conn. App. 355, 358 (1992) ("Our law recognizes that performance of a contract is excused when the thing to be done becomes impossible").[13] Once Frank transferred his shares to the Trust, Rowland's alleged obligations as to Frank under both the 1979 Agreement and the Shareholders' Agreement was excused. Id.

For the same reasons, Frank cannot prove damages necessary to sustain a cause of action for breach of contract. Any damages he would have sustained would have been as a result of his losing the opportunity to sell his shares. Since his shares at the time had already been transferred, Frank could not have sold them and no damages could arise from any loss of

---

[13]    The Barrett court used the following as an illustration: "If a person contracts to deliver a certain horse at a future time and the horse dies before the delivery date, the law will excuse performance because it is presumed that the parties contracted for delivery on the condition that the horse would be alive on the delivery date." Id. at 358.

14

opportunity to sell.[14]    Accordingly, the Third Count should be dismissed as to Frank in its entirety

### 3.    Defendant Rowland Did Not Breach the Agreements.

As noted, the Trust lacks standing under the 1979 Agreement, and Frank fails to state a claim under both agreements since he transferred his shares prior to the alleged breach in 1998. However, even if either of the Plaintiffs could survive these grounds for dismissal, any claim that the 1998 buyback is a breach of either agreement, is without merit as the plain language of the agreements allow for the sale by Rowland.

A shareholder's agreement is an understanding made between two or more shareholders that purports to govern the rights they may exercise as shareholders, such as voting rights (see e.g., Conn. Gen. Stat. § 33-717) or, as in this case, how such shares may be sold (see e.g., Conn. Gen. Stat. § 33-678).  As with any contract, and especially one which purports to limit the unfettered rights a shareholder may have, such an agreement must be enforced in accordance with its terms.  See L. Suzio Concrete Co., Inc. v. Birmingham Const. Services Co.,

---

[14]    With respect to Plaintiffs' allegations of breach of the Shareholders' Agreement (Am. Compl. at ¶100), Frank lacks standing to claim a breach of this agreement since he is no longer a shareholder.  Moreover, the Amended Complaint does not allege which provisions of the Shareholders' Agreement Rowland allegedly breached, nor any facts constituting an alleged breach, nor what loss the Plaintiffs allegedly suffered.  As such, the Amended Complaint fails to provide the defendant with "fair notice of . . . the grounds upon which [this claim] rests," Conley v. Gibson, 355 U.S. 41, 47 (1957), and must be dismissed.

15

<u>Inc.</u>, 79 Conn. App. 211, 216 (2003) (a contract must be construed to effectuate the intent of the parties).

The Shareholders' Agreement in this case provides, in relevant part:

> None of the Stockholders shall sell, assign, transfer, pledge, encumber or otherwise dispose of all or any shares of stock of the Corporation, **except in the case of a transfer of such shares to the Corporation itself,** without first obtaining the prior written consent of each of the other Stockholders then owning ... outstanding shares of stock of the Corporation.....

(Exhibit B at ¶1.)

Thus, the agreement, according to its express terms, does not and cannot prohibit the 1998 sale by Rowland. According to the Amended Complaint, the 1998 sale by Rowland <u>was to Reflexite</u>. (Am. Compl. at ¶42.). Thus, Reflexite's buyback of Rowland's shares was authorized by the plain language of the Shareholders' Agreement.

The Shareholders' Agreement also expressly provides that:

> This agreement contains the entire understanding and agreement among the parties with respect to the subject matter hereof. There are no representations, warranties, promises, covenants or understandings other than those herein expressly set forth.

(<u>Id.</u> at ¶11.)  This provision makes clear that the Shareholders' Agreement, <u>not</u> the 1979 Agreement, is the only operative agreement governing restrictions on the transfer of shares. Stated another way, whatever effect the 1979 Agreement has, it is superseded by the

16

Shareholders' Agreement which was signed by the signatories to the 1979 Agreement (including Frank and Rowland, (Exhibit B at p. 9-10)), which expressly covered the subject of the sale of stock, Exhibit B at ¶2, and which expressly stated that no other promises, covenants or understandings were in effect, Exhibit B at ¶11. To the extent this is inconsistent with the 1979 Agreement, it would constitute a novation. See Birarelli v. Wright, No. CV-02-0389534-S (Conn. Super. 2002) (if second contract contains terms inconsistent with former one, it indicates a substitute contract, extinguishing the first one).

However, even if the 1979 Agreement was in effect as of 1998 and one of the plaintiffs had standing to enforce it, the claim would still be properly dismissed under Fed. R. Civ. P. 12(b)(6). The 1979 Agreement provides that "[B]efore actually selling stock...**that would result in a transfer of voting control to a third party**...we will use all efforts that are reasonable to assure you the opportunity of selling your shares..." (emphasis added). Rowland's sale in 1998 to the corporation was not a sale to a third-party; it was a sale to the corporation. Moreover, upon being repurchased by the corporation itself, these shares were no longer outstanding and, therefore, could no longer be voted. (See Conn. Gen. Stat. § 33-705(a) ("each outstanding share . . . is entitled to . . . vote")). Therefore, even if the corporation was a "third-party," Plaintiffs have not and cannot allege a transfer of voting control.

In sum, Plaintiffs' Third Count must fail both for lack of standing and legal insufficiency.

17

**D.    Plaintiffs' Promissory Estoppel Count Should be Dismissed.**

Plaintiffs' Fourth Count seeks recovery under a theory of promissory estoppel, apparently as an alternative to the breach of contract claim.

The essential elements of a claim for promissory estoppel are 1) a clear and definite promise; 2) a change in position and reliance on the promise; and 3) resulting injury.  Chem-Tek v. General Motors Corp., 816 F. Supp. 123, 130 (1993) (citing Kimberly Clark Corp. v. Dubno, 204 Conn. 137, 148 (1987)); D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 213-215 (1987).  The promise must be sufficiently clear and definite, such that the promise could reasonably be expected to induce reliance.  Chem-Tek, 816 F. Supp. at 130.  For the same reasons the Third Count fails, the Fourth Count should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In addition, this claim should be dismissed since Plaintiffs allege the existence of the two contracts attached hereto as exhibits, and thus no claim for promissory estoppel may exist.

**1.    The Promissory Estoppel Claim Must be
       Dismissed Since a Valid Contract is Alleged.**

Plaintiffs' Third Count is premised on two express contracts, which Plaintiffs themselves assert are binding obligations.  Under such circumstances, no claim for promissory estoppel can lie.  Although generally "a party may plead, in good faith, inconsistent facts and theories. "(Fed. R. Civ. P. 8; Marrin v. Spearow, 35 Conn.App. 398, 402 (1994)), a plaintiff

18

may not plead promissory estoppel where the parties have a valid contract.[15]    See e.g.
Moukarzel v. Oxygen Electronics, LLC, No. CV-99-0359965-S, 1999 WL 643370 at *4 (Conn.
Super. Aug. 12, 1999)[16]; Eagle Hill Southport School v. Roberts, No. CV 990362604-S, 2000
WL 1269715 at *2 (Conn. Super. Aug. 23, 2000).  When "a valid contract exists, the remedy of
promissory estoppel, which is a theory inconsistent with the existence of a contract, is
precluded."  Moukarzel, 1999 WL 643370 at *4; see also, Lark v. Post Newsweek Stations
Conn., Inc., No 705326, 1995 WL 491290 at *3 (Conn. Super. Aug. 9, 1995)("A party does not
have a cause of action for promissory estoppel where an existing contract...is alleged and
appears to be enforceable."); Johnson v. City of Bridgeport, No. CV-95-321129-S, 1999 WL
391344 at *7 (Conn. Super. June 3, 1999)(when valid contract exists, recovery cannot be
obtained under the doctrine of promissory estoppel); Lombardi v. Marketing Corp., No. CV-91-
0293281, 1994 WL 247956 at *5 (Conn. Super. May 23, 1994)(action for promissory estoppel
generally available only where there is no written contract, or the contract cannot be enforced
for one reason or another).

Here, Plaintiffs allege the existence of both the 1979 Agreement and the Shareholders'
Agreement.  Notably, Rowland does not challenge the existence of these agreements.  Rather,

---

[15]    There is a split of authority at the Connecticut Superior Court level as to whether a claim for promissory
estoppel and breach of contract can be pled in the same complaint.  Where, as here, however, Defendants are not
challenging the validity of the underlying agreements, the more persuasive authority, as set forth herein, mandates
that the promissory estoppel claim be dismissed.
[16]    Copies of all unpublished decisions are attached hereto in alphabetical order as Exhibit C.

19

he challenges Plaintiffs' standing to enforce them and, based on the express language of the agreements and Plaintiffs' allegations, Plaintiffs' claim of a breach thereof. Insofar as the existence of the contracts is not in issue, no action for promissory estoppel may lie. The Fourth Count should be dismissed accordingly.

### 2. The Plaintiff Trust Fails to Assert a Claim for Promissory Estoppel.

Even if a promissory estoppel claim could be made, it fairs no better than the contract claim set forth in Count Three. First, the Trust lacks standing to bring a claim for promissory estoppel for the same reasons that it lacks standing to bring a claim for breach of contract. There are no allegations that there was a clear and definite promise made to the Trust, that the Trust changed its position in its reliance on the promise, or that the Trust suffered any resulting injury. Indeed, there is no allegation that the Trust was even created at the time that either agreement was discussed or executed.

According to the Amended Complaint, the only "promise" that was made was directed to Frank, not the Trust. In Paragraph 31, Plaintiffs specifically alleged that "in reliance on this January 5, 1979 agreement and Mr. Rowland's assurances that Mr. Frank would be afforded the same opportunities as Mr. Rowland to sell shares of Reflexite stock, Mr. Frank then purchased 8,471 shares on July 27, 1979 and another 8,470 on January 29, 1980, which represented 10% of the Company." (emphasis added). Similarly, Plaintiffs allege that Frank, not the Trust, relied on these alleged promises. Paragraph 104 alleges that "Jon Frank relied on these promises by

20

Defendant Rowland in purchasing shares of Reflexite stock." Paragraph 105 alleges that "Mr. Frank's reliance was to his detriment." The allegations make clear that the promise was made to Mr. Frank, that Mr. Frank would be afforded the same opportunities as Rowland, and that Mr. Frank was the one who allegedly acted in reliance on this promise. None of these allegations implicate the Trust.

Furthermore, the promise set forth in the Shareholders' Agreement with respect to the sale of shares, to the extent it is deemed to be a promise – and not a contract – was a promise made to Frank. The Trust did not exist in 1986 and certainly has not alleged it was promised anything. Furthermore, the Trust cannot claim successor rights for a promissory estoppel claim because the heart of the claim rests on a promise upon which the promisor could expect reliance by the promissee. See Chem-Tek, Inc. v. General Motors Corp., 816 F.Supp. 123, 130 (1993). Notably, this is the difference between the express contract claim stated in Count Three, where the agreement specifically states that the obligations inure to successors. (Exhibit B at ¶10.) There is no allegation in the Amended Complaint that states that any promise made by Rowland ran to Frank's successor, nor would the law recognize any such claim.

Simply stated, the Trust did not act to change its position in any way on reliance of any promises made to it; it cannot possibly claim any resulting injury. For these reasons, all three elements necessary to sustain a cause of action for promissory estoppel are clearly missing from the allegations of Plaintiff's Amended Complaint. Accordingly, the Fourth Count should

be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) as to the Trust.

### 3.     The Plaintiff Frank Fails to Assert a Claim For Promissory Estoppel.

The Fourth Count alleging promissory estoppel as to Plaintiff Frank should also be dismissed pursuant to Rule 12(b)(6) for the same reasons set forth above under the breach of contract claim.  First, there is no allegation that Frank was injured when he transferred his shares in 1997 to the Trust based upon some alleged promise that was not breached until one year later.  Frank must allege and prove that *he* was injured based on *his* reliance on Rowland's promise.  <u>Chem-Tek</u>, *supra.*  He has not and cannot do so.  Second, even if Frank was the proper plaintiff, the first element of the promissory estoppel test is missing -- Rowland never made any promises that would restrict him from selling his shares back to the corporation itself.  In fact, as set forth earlier herein, both agreements authorized such a transfer.  Indeed, the Shareholders' Agreement expressly permitted such a sale.  <u>See</u> Exhibit B at ¶1.  And, in this regard, Frank <u>expressly</u> <u>agreed</u> that there were no <u>promises with respect to the subject of selling shares other than the Shareholders' Agreement</u>.  (Exhibit B at ¶11.)  Accordingly, the Fourth Count should be dismissed in its entirety.

22

**III.    CONCLUSION.**

For the foregoing reasons, Defendant Rowland respectfully requests that this Court dismiss the First, Second, Third, Fourth and Sixth Counts of Plaintiff's Amended Complaint.

THE DEFENDANT,
WILLIAM ROWLAND

By: _____
James T. Shearin, Esq. (ct 01326)
Sheila A. Denton, Esq. (ct 11436)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT  06601-7006
Telephone:  (203) 330-2000
Facsimile:   (203) 576-8888

23

## CERTIFICATION

I hereby certify that a copy of the above was mailed on the date hereon to all counsel and pro se parties of record.

James T. Cowdery, Esq.
Sarah Merriam, Esq.
Cowdery, Ecker & Murphy, LLC
750 Main Street
Hartford, CT 06103
Telephone:   860-278-5555
Facsimile:   860-249-0012

Michael Considine, Esq.
Patricia M. Canavan, Esq.
Day, Berry & Howard, LLP
One Canterbury Green
Stamford, CT 06488
Telephone:   203-977-7300
Facsimile:   203-977-7301

Richard M. Strassberg, Esq.
Jeffrey Alan Simes, Esq.
Goodwin Procter, LLP
599 Lexington Avenue
New York, NY 10022
Telephone:   212-813-8800
Facsimile:   212-355-3333

Edward F. Spinella, Esq.
Reid & Riege, P.C.
One Financial Plaza
Hartford, CT 06103
Telephone:   860-240-1045
Facsimile:    860-240-1002

Craig Raabe, Esq.
Jason M. Kuselias, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
Telephone:   860-275-8352
Facsimile:    860-275-8299

_____
James T. Shearin, Esq.
Sheila A. Denton, Esq.

BPRT/68721.1/AJW/498737v1

25