# EXHIBIT C1

## LIST OF UNPUBLISHED OPINIONS

- <u>Birarelli v. Wright</u>, No. CV-02-0389534-S (Conn. Super. June 7, 2002).

- <u>Eagle Hill Southport School v. Roberts</u>, No. CV-99-0362604-S (Conn. Super. August 23, 2000).

- <u>Johnson v. City of Bridgeport, et al.</u>, No. CV-95-322129-S (Conn. Super. June 3, 1999).

- <u>Lark v. Post Newsweek Stations Connecticut, Inc., et al.</u>, No. CV-94-0705326-S (Conn. Super. August 9, 1995).

- <u>Lombardi v. Marketing Corporation of America and Louis Alessio</u>, No. CV-91-0293281-S (Conn. Super. May 23, 1994).

- <u>Moukarzel v. Oxygen Electronics, LLC</u>, No. CV-99-0359965-S (Conn. Super. August 12, 1999).

Not Reported in A.2d
(Cite as: 2002 WL 1492179 (Conn.Super.))

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Connecticut.

Madeline BIRARELLI,
v.
Gerald WRIGHT et al.

No. CV020389534S.

June 7, 2002.

MELVILLE, J.

*1 This case arises from a series of financial
transactions among former friends. Before the court
is a petition requesting a prejudgment remedy.
Madeline Birarelli, the plaintiff, has filed this
application for a prejudgment remedy against three
defendants, Gerald Wright, Linda Wright and David
Nyden.

The facts of the case are intertwined with the life
and death of two fruit and produce companies with
which Mrs. Wright was associated. The testimony
reveals that Mrs. Wright had once been a partner at
a fruit and produce company named L. Bernstein &
Sons (Bernstein). At some point in 1991, the
Bernstein partners had a falling out and litigation
ensued. Mrs. Wright still desired to own and operate
a produce company though she testified that she was
negotiating a settlement that could possibly have
required her to agree to a non-compete clause within
the settlement.

In order to obtain capital for a new produce
company, she approached the plaintiff who had, at
that point, just recently gained funds from her
deceased husband's life insurance policy. Although
there is conflicting testimony on who approached the
plaintiff about a loan, the court finds that Mrs.
Wright approached the plaintiff for the loan. [FN1]
Mrs. Wright needed $55,000 in order to start her
own fruit and produce business and told the plaintiff
why she needed the money. The court finds that the
plaintiff agreed to loan the funds to Mrs. Wright in
exchange for two promissory notes. Each note,
prepared by Mrs. Wright and dated January 30,
1992, is for the amount of $55,000 and provides for

8% or 1.5% over prime, whichever is higher, per
annum interest. Both notes provided that the money
would be due two years from the date thereof. One
note was signed by Mrs. Wright. The second note
was signed by Andrew Skarupa. [FN2] Skarupa,
besides signing the note, was to contribute to the
operation of the new produce business.

FN1. "It is within the province of the trial court, as
the fact finder, to weigh the evidence presented and
determine the credibility and effect to be given the
evidence ... Where testimony is conflicting the
trier may choose to believe one version over the
other ... as the probative force of the evidence is
for the trier to determine ... Credibility must be
assessed ... not by reading the cold printed record,
but by observing firsthand the witness' conduct,
demeanor and attitude ..." (Citations omitted;
internal quotation marks omitted.)    *Briggs v.
McWeeny,* 260 Conn. 296, 327 (2002). These
standards apply to prejudgment remedy hearings.
See *Micci v. Thomas,* 55 Conn.App. 14, 16, 738 A
.2d 219 (1999). The court concludes that Mrs.
Wright approached the plaintiff because, on the
stand, both the plaintiff and Mrs. Wright
remembered that Mrs. Wright was present when
the loans were requested. Although the passage of
time has dulled the memories of the parties as to
whether any other person was present, the court, in
its discretion, finds the motivations of the plaintiff
more believable and, hence, credits plaintiff's
testimony that Mrs. Wright asked for the money.

FN2. The plaintiff does not claim that she is owed
more than $55,000 on this transaction. The
plaintiff, however, could not articulate why Mrs.
Wright and Skarupa each signed a note. The
court's best guess is that such    a maneuver would
hold Mrs. Wright and Skarupa jointly and severally
liable in the case of default.

The plaintiff surrendered a check in the amount of
$55,000. She made the check payable to Skarupa.
Her testimony indicates that she did this because
Mrs. Wright told her that she could not own
anything in her own name because of her impending
bankruptcy. [FN3] The day he received the check,
Skarupa filed a trade name certificate in the town of
Bridgeport indicating that he would be doing
business as County Produce.

FN3. Gerald and Linda Wright did indeed file for
bankruptcy on or around March 24, 1992, almost
two months after plaintiff's check was issued.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 2002 WL 1492179, *1 (Conn.Super.))

Three events then happened over the next four months. First, the settlement of the Bernstein litigation was never concluded because the other participant filed for his own bankruptcy. Second, the United States Department of Agriculture, under the authority granted it by the Perishable Agricultural Commodities Act (PACA), sanctioned Mrs. Wright for defaulting on payments to suppliers and, consequently, forbade her from affiliating with any produce business. Third, over the course of the next few months, Mrs. Wright, the plaintiff and Nyden engaged in a series of "discussions" about what to do with County Produce. From these discussion sprang the idea to incorporate County Produce.

*2 During this time, the plaintiff gave more cash to Mrs. Wright totaling $25,000. In March and April 1992, the plaintiff drafted five checks, each made out to Linda Wright: (1) for $7000 dated March 1, 1992; (2) for $5000 dated April 2, 1992; (3) for $5000 dated April 9, 1992; (4) for $3000 dated April 9, 1992; (5) for $5000 dated April 23, 1992. All the checks were cashed and not deposited. Coinciding with these checks, the plaintiff took out a $25,000 home equity loan so that she would not deplete her bank account.

On June 1, 1992, Nyden and the plaintiff signed County Produce's certificate of incorporation as incorporators. The certificate was filed on June 18, 1992. The organization and first biennial report, also filed with the certificate, indicates that Nyden was the president and treasurer of County Produce and that the plaintiff was the vice president and secretary of County Produce. The report also indicates that Nyden and the plaintiff were directors of County. While testifying, the plaintiff did not recall signing these documents, although she remembered signing documents that were placed before her, and did not recall being either a director or officer of County Produce.

Based on the paucity of evidence showing that plaintiff understood the legal significance of her signing these papers and by her total lack of business experience, the court concludes that plaintiff did not fully comprehend the legal consequences of signing these papers.

In November of 1992, Mrs. Wright requested more money from the plaintiff in the amount of $15,000. The court finds that the plaintiff made a check out to County Produce because Mrs. Wright again claimed that she could not have anything in her own name.

At some point before November 2, 1993, Skarupa decided that he no longer wanted to be affiliated with County Produce and that he did not wish to be responsible for the $55,000 promissory note. Mrs. Wright told the plaintiff that Skarupa wanted to get back the note he had signed. The plaintiff was not comfortable letting Skarupa out of his obligation. To settle the matter, Nyden volunteered to sign a different promissory note if the plaintiff would give the promissory note back to Skarupa or destroy it. The plaintiff agreed and Mrs. Wright prepared a new promissory note. This note, dated November 2, 1993, was due on demand and provided for 10% per annum interest. Someone wrote "void" over the face of the Skarupa note, evidencing that he had been released from his obligation.

The plaintiff did not give any money to Mrs. Wright again until around February 1994. At this time, Mrs. Wright asked for significantly more money. Nervous about the amounts of cash she had already given, the plaintiff hesitated. The court finds, however, that Mrs. Wright suggested that the plaintiff should take out a mortgage on her home and that County Produce would make the mortgage payments. [FN4] The plaintiff testified that both Mr. and Mrs. Wright assured her that they would prepare a promissory note that she could enforce should Mrs. Wright default on the loan.

> FN4. The financing vehicle was exclusively Mrs. Wright's idea in order to allay plaintiff's concerns about repayment.

*3 Mrs. Wright accompanied the plaintiff to the meetings with the mortgagee bank and to the closing where the plaintiff was able to obtain a loan in the amount of $125,000. The check advanced was for $99,389.04. The proceeds of this loan were to go towards paying off the home equity loan that the plaintiff took out in 1992 as well as a $75,000 business loan procured by County on which plaintiff gave her own personal guaranty.

After the rescission period, the check arrived at the office of the bank's lawyers. The plaintiff, however, could not immediately obtain the check because it was a snowy day and she did not wish to drive. Mr. Wright offered to retrieve the check, which he did.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 2002 WL 1492179, *3 (Conn.Super.))

He then drove to the plaintiff's residence where he had her endorse the check. He did not furnish her with any promissory notes as were agreed. The plaintiff testified that she had repeatedly asked Mr. and Mrs. Wright for notes to back these debts but was later rebuffed.

Various payments were made on the four transactions, which the court shall discuss in turn. The last recorded payment, however, occurred on June 2, 2001.

On January 17, 2002, the plaintiff filed the present application for a prejudgment remedy. Attached to the application is an affidavit averred by the plaintiff and a proposed complaint. [FN5] The complaint is fairly characterized as a proceeding on a series of debts. [FN6]

> FN5. The proposed complaint provides in full:
> 1. Between January 30, 1992 and February 3, 1994, [the plaintiff] lent approximately $195,000.00 to or for the benefit of the defendants, Linda A. Wright, Gerald B. Wright and David I. Nyden.
> 2. In consideration thereof, the defendants agreed to repay [the plaintiff] with interest.
> 3. Payments were made upon the indebtedness through and including May 2001 but the defendants have failed and neglected to make any payments since.
> 4. Despite demand, the defendants refuse and neglect to pay.

> FN6. On the record day of the hearing, the plaintiff attempted to amend her proposed complaint. The court, in its discretion disallowed this procedure based upon due process considerations because the plaintiff attempted to add new causes of action for the first time.

I

The court begins by reviewing the standards for a prejudgment remedy. A "prejudgment remedy" means any remedy that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of his property prior to final judgment. *Fermont Division v. Smith,* 178 Conn. 393, 398, 423 A.2d 80 (1979), quoting General Statutes § 52-278a(d). The purpose of a prejudgment remedy is

to preserve the assets while a matter is being litigated. *Rosenberg v. Rosenberg,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356640 (January 5, 1999, Frankel, J.).

General Statutes § 52-278d authorizes a trial court to issue a prejudgment attachment upon a determination of probable cause to sustain the validity of the plaintiff's claim. *Calfee v. Usman,* 224 Conn. 29, 36, 616 A.2d 250 (1992). The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. *New England Land Co., Ltd. v. DeMarkey,* 213 Conn. 612, 620, 569 A.2d 1098 (1990).

The hearing in probable cause for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. This weighing process applies to both legal and factual issues. *Bank of Boston Connecticut v. Schlesinger,* 220 Conn. 152, 156, 595 A.2d 872 (1991). In ruling on an application for a prejudgment remedy, the court is limited to the evidence produced at the hearing. *South Mill V. Assn. v. Still Hill Development Corp.,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 563009 (April 27, 1998, Lavine, J.), citing *McCahill v. Town & Country Associates, Ltd.,* 185 Conn. 37, 39, 440 A.2d 801 (1981).

II

*4 Although the proposed complaint's details are sparse, the plaintiff argues that she seeks an attachment for the $55,000 promissory notes solely against Mrs. Wright and Nyden. The defendants have raised several defenses in regard to these notes which the court shall consider.

A

The court finds that the plaintiff has met her probable cause standard and shown that she is the holder of the note signed by Mrs. Wright. "[T]he holder of the instrument" may enforce the instrument. General Statutes § 42a-3- 301. "A person is not liable on an instrument unless ... the person signed the instrument ..." General Statutes § 42a-3-401.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 2002 WL 1492179, *4 (Conn.Super.))

Mrs. Wright attacks the validity of the debt upon three grounds and she also asserts one special defense. She contends that the debt is not due and owing because: (1) when the parties made their agreement, Mrs. Wright informed the plaintiff that she might not be able to pay the note, and thus as a condition precedent to her personal obligation to pay the note, she would have to be able to affiliate with County Produce; (2) that the money forwarded was a capital contribution and not a debt; and (3) that when the plaintiff later replaced the Skarupa note with the Nyden note, she also had agreed to release Mrs. Wright from any personal obligation.

These three theories are contradictory, however, in Connecticut a defendant may bring inconsistent theories upon which to defend.    *Hoard v. Sears Roebuck & Co.,*  122 Conn. 185, 192, 188 A. 269 (1936). All of the first three theories also call upon the court to weigh the testimony and decide the credibility of the various witnesses.

At the hearing, the plaintiff testified that Mrs. Wright came to her requesting a loan. The plaintiff acknowledged that she was aware that the $55,000 loan was going to be used as capital to start County Produce. She generally testified that no conditions were placed upon the lending of the money except that the check was to be made out to Skarupa because Mrs. Wright was not able to have any money in her own name.

Mrs. Wright's testimony differed. Mrs. Wright testified that, while she had prepared the note, she had told the plaintiff that she may not be liable for the underlying debt because she might possibly have to sign a non-compete clause due to the settlement of the Bernstein litigation. Although this settlement never materialized, she was precluded from affiliating with a produce company due to her violation of PACA. On the stand, Mrs. Wright also testified that the $55,000 that had started as a loan was later made into a contribution at the organizational meeting. She testified to this even though she admitted on the stand that the participants of the meeting did not discuss canceling the notes that the plaintiff held.

The court finds the plaintiff's testimony to be more credible and makes the finding that her testimony was accurate. Several reasons lead the court to its conclusion. First, Mrs. Wright admitted that she

never discussed canceling the note when the debt supposedly was converted into an investment. Second, in a document titled "Interest Calculation," Mrs. Wright wrote out what the interest calculation would be for $55,000 per annum from January 30, 1992 to December 31, 1996. [FN7] Most significant to the court about this document is that it is evidence that Mrs. Wright knew that she owed interest on a debt and her payments to the plaintiff were not returns on an investment. Third, the plaintiff demonstrated in her case that Mrs. Wright continued to pay on her debt even after County Produce ceased operations. Mrs. Wright herself testified that after County Produce lost its license and ceased to do business, she formed another produce company, American Fruit & Banana (American) for the sole purpose of trying to re-pay some of County Produce's creditors and "investors." American did make some payments to the plaintiff. For these reasons, the court finds that the plaintiff has shown by a probable cause standard that the debt belonged to Mrs. Wright and not to County Produce. Moreover, the payment record shows that the debt was not canceled. Accordingly, the plaintiff has demonstrated a factual predicate that she is likely to prevail upon this claim against Mrs. Wright.

> FN7. There is some discrepancy between the interest calculation document and the actual promissory note. The note itself requires at least 8% interest. The interest calculation, however, shows interest at 5%. No reasonable explanation was given for this discrepancy by any party. The court notes, however, that the document was prepared by Mrs. Wright and the change in the interest rate benefits her. This discrepancy does not undercut the plaintiff's claim.

*5 Mrs. Wright contends, however, that the plaintiff has not met her burden because her claim is barred by the statute of limitations. General Statues § 42a-3-118 provides in relevant part that "an action to enforce the obligation of a party to pay a note payable at a certain time must be commenced within six years after the due date or dates stated in the note ..." The note was due on January 30, 1994, meaning that the plaintiff would have had to commence suit by January 30, 2000.

Although the plaintiff filed her action after January 30, 2000, certain events may toll the statute of limitations. Partial payment of a debt which is barred by the statute of limitations removes a case

Not Reported in A.2d
(Cite as: 2002 WL 1492179, *5 (Conn.Super.))

from the statute provided that, under the circumstances, it constitutes an acknowledgment of the indebtedness sued upon as a then existing debt. *Zapolsky v. Sacks,* 191 Conn. 194, 198, 464 A.2d 30 (1983). The Statute of Limitations creates a defense to an action. It does not, however, erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. *Id.* Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. *Id.*

At the hearing the plaintiff introduced a record of payments. The record was introduced with no objection by the defendants and no testimony by Mrs. Wright contradicts this record. The evidence shows that Mrs. Wright made payments on the $55,000 debt until September 11, 1997. [FN8] The court finds that the plaintiff has met her burden to demonstrate that Mrs. Wright made payments until 1997. Moreover, the court finds that Mrs. Wright's payments constitute an unequivocal acknowledgment of the debt. No evidence revealed that the amount of the debt was disputed before litigation began. It is of no moment that Mrs. Wright now contests the debt. Mrs. Wright's self-serving characterization that the $55,000 represented an investment is undercut by the fact that she continued to make interest payments, never disputing that they were due, even though County Produce had gone out of business.

> FN8. The record is for the combined $55,000 debt and the $15,000 monies advanced. The payments are not segregated towards either debt. This detail, however, is immaterial as to the tolling of the statute of limitations for such a document showing both debts evidences an acknowledgment of both debts.

Accordingly, the court finds that the plaintiff has shown by the recognized probable cause that she could prevail against Mrs. Wright for the $55,000 note. Mrs. Wright's defense of statute of limitations is unavailing as her payments tolled the statute of limitations until 1997 and the claim was filed in 2002.

B

The court finds that the plaintiff is the holder of the

Nyden note as well. At the hearing, Nyden admitted the validity of the debt and that, by signing the instrument, he made himself liable for the debt.

Post-hearing, however, Nyden has raised one legal issue. Nyden argues that the note lacks consideration and, therefore, it is unenforceable.

Before determining what consideration is due, the court must first determine what type of agreement the plaintiff has proven was between her and Nyden. The court finds that the evidence shows that it was a novation of Skarupa's obligation.

*6 Novation may be broadly defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. *Bushnell Plaza Development Corp. v. Fazzano,* 38 Conn.Sup. 683, 688, 460 A.2d 1311 (App.Sess.1983). A recognized test for whether a later agreement between the same parties to an earlier contract constitutes a substitute contract looks to the terms of the second contract. If the second contract contains terms inconsistent with the former so that the two cannot stand together, it exhibits characteristics indicating a substitute contract. *Id.* "[A]n essential element of any novation is the extinguishing of the original contract by substitution of a new one." *Flagg Energy Development Corp. v. General Motors Corp.,* 244 Conn. 126, 145, 709 A.2d 1075 (1998). The plaintiff has shown by probable cause that she had an obligation from Skarupa. Skarupa, however, wished to no longer be held to that obligation. As a result, the plaintiff agreed to release Skarupa from his obligation in exchange for an obligation from Nyden. The terms of the obligation between Nyden and Skarupa differed. First, Nyden's note was due on demand whereas the first note was due at a time certain. Second, the Nyden note provided for a higher interest rate than the Skarupa note. These facts evidence a new obligation from Nyden.

As this note evidences a novation, the court must determine whether the plaintiff has shown, by probable cause, that there was consideration for the Nyden debt. "A simple novation involving a substitution of obligors results when an obligee promises the obligor that he will discharge the obligor's duty in consideration for a third person's promise to pay the obligee ... A substitution of obligors may also result when an obligee promises a third person that he will discharge the obligor's duty

Not Reported in A.2d
(Cite as: 2002 WL 1492179, *6 (Conn.Super.))

*in consideration* for the third person's promise to render either the performance that was due from the obligor or some other performance." (Emphasis added.) 2 Restatement (Second), Contracts § 280, comment (d) (1981). [FN9]

> FN9. While the Connecticut appellate courts have yet to formally adopt § 280 of the Restatement (Second) of Contracts, the Connecticut Supreme Court has cited the tentative draft of § 280 as authority for its decision. *Soneco Service, Inc. v. Bella Construction Co.,* 175 Conn. 299, 301, 397 A.2d 1364 (1978) (per curiam).

As the plaintiff demonstrated, the consideration in the novation is that the plaintiff agreed to release Skarupa from his obligation in exchange for Nyden being obligated to pay the $55,000 debt at 10% interest per annum. [FN10] Accordingly, because Nyden has no defense to the debt which he acknowledged in his testimony, the plaintiff has demonstrated the probability that he could be found liable at trial.

> FN10. Nyden argues that the consideration cannot be the discharge of the Skarupa note because the $55,000 debt was used by County Produce and not by Skarupa. Nyden asserts that because Skarupa was not a shareholder of County Produce and that he turned over the funds that were advanced to him once County became a corporation, he could not be held liable on the debt. The court finds this evidence to be irrelevant as to who is liable for the $55,000 debt. The plaintiff has proven by probable cause that Skarupa initially agreed to be held liable for the $55,000 debt if the plaintiff advanced the funds. It is of no moment that Skarupa was not a stockholder in County Produce.

### III

The plaintiff attempts to hold Linda and Gerald Wright liable for the $25,000 loan advanced by a series of checks. The Wrights argue that the plaintiff has failed to demonstrate that they borrowed the money with the intention of paying it back. Failing that argument, the defendants raise the statute of limitations defense.

### A

As for Mrs. Wright, the court finds that the plaintiff has demonstrated by probable cause that she gave a loan to Mrs. Wright.

At the hearing, the plaintiff testified that Mrs. Wright approached her for the $25,000 loan. She testified that Mrs. Wright proclaimed an urgency, but that she had forgotten why the funds were so urgently needed. As a result of Wright's proclamation, plaintiff made out a series of checks over time payable to Mrs. Wright. Mrs. Wright promptly cashed each of the checks.

*7 Mrs. Wright denied this testimony on the basis that this money was an investment from the plaintiff into County Produce. The court, however, does not credit Mrs. Wright's testimony on this point. First, Mrs. Wright's family had extraordinary expenses during the period of time that plaintiff lent her the proceeds. Mrs. Wright and her husband were required to pay their attorney in order to file a petition for bankruptcy. They additionally decided to purchase a condominium during this time and began to refurbish the condominium. All of this was done while Mrs. Wright earned no income. This testimony raises the inference that Mrs. Wright needed money during this period of time. Second, the checks were made out to Mrs. Wright personally. If her testimony that this was an investment were to be given credit, then one must wonder why the checks were not made out to County Produce or why the plaintiff did not receive any shares evidencing her investment. Given the weight that the court accords the plaintiff's testimony, it concludes that the plaintiff has shown that she lent the money to Mrs. Wright personally.

Mrs. Wright raises the defense of statute of limitations. For an action on a debt contract, General Statutes § 52-576 is the applicable statute of limitations. *Cupina v. Bernklau,* 17 Conn.App. 159, 162-63, 551 A.2d 37 (1988). Section 52-576(a) provides in relevant part that "[n]o action for an account, or on any simple or implied contract ... shall be brought but within six years after the right of action accrues ..." The last loan was made when the plaintiff issued the last check on April 23, 1992. The court must first determine when the cause of action accrued.

While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. The true test is to establish the time

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

when the plaintiff first could have successfully maintained an action. *Wynn v. Metropolitan Property & Casualty Ins.,* 30 Conn.App. 803, 807-08, 623 A.2d 66 (1993), aff'd., 228 Conn. 436, 635 A.2d 814 (1994). The testimony did not reveal any terms attached to the lending of the $25,000. The plaintiff did testify that the loan was supposed to be a short-term loan that would be paid once Mrs. Wright obtained a loan from a bank. The plaintiff estimated that this would be a "few months" at the most.

In an action for breach of contract, the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. *Tolbert v. Connecticut General Life Ins. Co.,* 257 Conn. 118, 124, 778 A.2d 1 (2001). Giving the plaintiff's testimony weight, six months could be the most time equaling a "few months." That would place the injury on October 23, 1992. The cause of action, therefore, would expire on October 23, 1998.

The tolling principles discussed in Part II A operate for this debt. The plaintiff, in her post-hearing brief, argues that payments were made until 2001. The court, however, has found no proof that Mrs. Wright has made any payments on the debt. The plaintiff put forth evidence of payments on several other debts, but has not shown the court that Mrs. Wright has acknowledged this debt through payment.

*8 Accordingly, the plaintiff has not demonstrated that she is likely to prevail on her claim of the $25,000 loan because it is barred by the statute of limitations. Therefore, a prejudgment remedy cannot issue on the $25,000 debt.

B

The court must next determine whether the plaintiff has proven that *Mr.* Wright can be held liable for the debt. The court finds that she has not.

The plaintiff offered no evidence that Mr. Wright is liable on the debt. The only evidence suggests that Mr. Wright benefited from the debts. Near the time the plaintiff issued the checks to Mrs. Wright, Mr. Wright needed to pay his attorney in order to file his bankruptcy. Also, he deposited money on a new condominium and refurbished the condominium.

Mr. Wright denied any direct benefit.

Whether the court credits Mr. Wright's testimony is immaterial. Mrs. Wright could have gratuitously given the funds to Mr. Wright after the plaintiff advanced the funds to Mrs. Wright.

In her post-trial brief, the plaintiff has argued that the court should hold Mr. Wright liable on the basis of unjust enrichment. The court, however, does not read the allegations of the proposed complaint to allege a cause of action sounding in unjust enrichment. The proposed complaint clearly alleges a debt action by using the terms "consideration," "indebtedness" and "demand." None of these allegations indicate an unjust enrichment action.

It is black letter law that one may not recover on a cause of action not alleged. Our Appellate Court has reaffirmed this principle as recently as last year stating:

Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them ... The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise ... The principle that a plaintiff may rely only upon what he has alleged is basic ... It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint ... A plaintiff may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery.

(Citations omitted; internal quotation marks omitted.) *Bartomeli v. Bartomeli,* 65 Conn.App. 408, 412, 783 A.2d 1050 (2001).

Furthermore, the court may not premise a prejudgment remedy on a claim which was not part of the operative complaint at the time of the hearing. See *Dornfield v. Granquist,* Superior Court, judicial district of New Britain at New Britain, Docket No. CV 00 0502628 (March 13, 2001, Shapiro, J.).

It has been held that where a party has not pleaded unjust enrichment that a court should not grant relief based upon the unpleaded theory. See *Gould v. Hall,*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

64 Conn.App. 45, 53-54, 779 A.2d 208 (2001) (finding that it was proper for a court to accept an attorney trial referee's report finding no liability on a counterclaim when that counterclaim merely pleaded a contract action and not unjust enrichment). Accordingly, the court cannot give effect to the plaintiff's unjust enrichment argument.

IV

*9 The plaintiff seeks to hold both Mr. and Mrs. Wright liable for the debt secured by the mortgage. The court credits the testimony of the plaintiff where she said that Mrs. Wright agreed to repay the $125,000. The evidence reveals that, contrary to the defendants' assertions that the amount represented a loan to County Produce, Mrs. Wright continued to pay on the mortgage well after County Produce ceased operations. A record prepared by the plaintiff reveals that mortgage payments were made at the direction of Mrs. Wright from April 1, 2000 to June 12, 2001. This evidence indicates that Mrs. Wright understood that the debt was her personal obligation.

As for Mr. Wright, the court finds that he did not owe an obligation to repay the debt. The plaintiff argues that she had a direct contract with Mr. Wright. She has not, however, produced any evidence of such a contract. At most, she had assurances from Mr. Wright that he would prepare promissory notes to her in order to allow her to have some security. Such evidence might constitute an inference that he induced the plaintiff to take out the mortgage. The evidence, however, does not contain an inference that the two parties reached a meeting of the minds. Accordingly, Mr. Wright cannot be shown to be liable on the $125,000 debt.

Mrs. Wright also seems to argue that she is only responsible for $99,389.04 because that is the amount of check that the plaintiff received and gave over to Mrs. Wright. The court finds, however, that the agreement was for Mrs. Wright to pay the full $125,000 mortgage. Moreover, the plaintiff eventually repaid the full amount to the mortgagee bank on her own. Accordingly, the court shall use that amount, less payments, when figuring the amount of the attachment.

V

The plaintiff also seeks an attachment based upon

the $15,000. She seeks this attachment as to Mrs. Wright only.

Mrs. Wright argues that the plaintiff has not shown that she is liable for the $15,000 debt. Mrs. Wright contends that it was their understanding that this was a debt to County Produce and not a personal obligation.

While the plaintiff did make out the $15,000 check to County Produce, the plaintiff testified that Mrs. Wright instructed her to do so. Moreover, Mrs. Wright treated the $15,000 loan the same as the original $55,000 loan. She prepared loan repayment schedules for the $15,000. She also made interest payments after County Produce ceased operations. Accordingly, the court finds that the plaintiff has proven by probable cause that Mrs. Wright owes on the $15,000 loan.

Mrs. Wright has raised the defense of statute of limitations under § 52- 576. As discussed in Part III A, the cause of action accrues at a breach. The breach on the $15,000 did not occur until non-payment of the debt. Mrs. Wright made her last payment on September 11, 1997. Accordingly, the plaintiff is not barred by the statute of limitations until September 11, 2003. For this reason, the defense of statute of limitations is inapplicable.

VI

*10 The plaintiff has requested that the court grant the application for a prejudgment remedy against the defendants in the amount of the principal debt plus agreed-upon interest and statutory interest pursuant to General Statutes 37-3a. [FN11] The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the trial court. *Killion v. Davis,* 69 Conn.App. 366, 375, 791 A.2d 552 (2002). Before awarding interest, the trial court must ascertain whether the defendant has wrongfully detained money damages due the plaintiff. Interest on such damages ordinarily begins to run from the time it is due and payable to the plaintiff. *Id.* The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule. *Id.*

FN11. General Statutes § 37-3a provides in

Not Reported in A.2d
(Cite as: 2002 WL 1492179, *10 (Conn.Super.))

Page 9

relevant part: "[I]nterest at the rate of ten per cent a year; and no more, may be recovered and allowed in civil actions ... including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."

The court finds that the demands of justice require allowing the plaintiff to have a prejudgment remedy in the amount of the principal and by the amount of interest. Based upon the findings detailed in this memorandum of decision, the court grants the prejudgment remedy as to Mrs. Wright and Nyden.

The court has found that the plaintiff has sustained her burden as to Mrs. Wright on three debts: the $55,000 note, the $15,000 loan and the $125,000 mortgage loan. As for the $55,000 note, the evidence has shown that the parties agreed to 8% interest per annum on the debt. On 8% interest, the debt produces $4,400 of interest a year. The note, being unpaid for ten years, has accumulated interest in the amount of $44,000. Adding to the unpaid principal of $55,000, the total due would be $99,000 before crediting any payment.

The evidence also showed that Mrs. Wright owed on the unpaid balance of $15,000. The court finds that it is appropriate to charge 5% interest against that debt. The only evidence adduced at the hearing regarding interest on the $15,000 debt was that Mrs. Wright calculated interest in the amount of 5% from the time the debt was forwarded to her. Accordingly, the court finds that the interest on the debt was at 5%, which is $750 a year. The $15,000 was unpaid for ten years. Accordingly, without payment, the defendant owed the plaintiff $22,500 ($15,000 plus $7,500).

The evidence adduced at the hearing was that Mrs. Wright has paid on both these debts. The court is uncertain as to how to allocate the payments to which debt. In its discretion, therefore, the court shall subtract the payments from the combined total owed on both debts. The court finds that Mrs. Wright paid a total of $7797.25 on the debts ($55,000 and $15,000). The two debts (principal and interest) total $121,500. Subtracting the payments made, the court finds that the plaintiff is entitled to a prejudgment attachment in the amount of $113,702.75 ($121,500 less $7,797.24).

As for the $125,000 note, the court declines to award interest based upon this amount. The plaintiff has demonstrated that Mrs. Wright paid some interest on the debt, but has failed to show how much interest Mrs. Wright has paid. Moreover, the debt was a variable interest mortgage, making a determination of the interest impossible to determine. Accordingly, the court finds that the plaintiff may have a prejudgment remedy in the amount of $125,000 for the mortgage debt.

*11 As for the Nyden note, it provides for 10% interest per annum on its face. The court has found that the plaintiff has demonstrated by probable cause that Nyden is liable for the debt in the amount of $55,000. That note has been unpaid for nine years. The amount of interest, at the stated 10% per annum rate, would be $5,500 per year. After nine years, the interest totals $49,500. Added to the $55,000 principal, the total amount of the attachment would be $104,500. The plaintiff, however, has only asked the court for a prejudgment remedy in the amount of $100,000 against Nyden. Accordingly, the court shall order a prejudgment remedy in the amount of $100,000. [FN12]

> FN12. This amount does not reflect the payments on the debt made by Mrs. Wright. As stated previously, it is impossible to determine the allocation of the payments she made to the $55,000 debt. The court notes, however, that if it subtracted the full payments of $7797.25 from Nyden's debt, Nyden is still liable for 103,702.75. Accordingly, because this amount exceeds the amount the plaintiffs have asked for, the court shall still order a prejudgment remedy in the amount requested.

CONCLUSION

For the reasons herein stated, the court grants the application for a prejudgment remedy against Mrs. Wright in the amount of $138,702.75 which it rounded out to $139,000. It also grants the application for a prejudgment remedy as to Nyden in the amount of $100,000. As for Mr. Wright, the court finds that the plaintiff has not met her burden as to him.

2002 WL 1492179 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

EAGLE HILL SOUTHPORT SCHOOL,
v.
Hannah ROBERTS.

No. CV 990362604S.

Aug. 23, 2000.

MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 107)

MELVILLE

*1 The following facts are undisputed. During the 1997-1998 academic year, the defendant, Hannah Roberts, was employed by the plaintiff, the Eagle Hill Southport School, Inc. (Eagle Hill) as a special education teacher. On May 28, 1998, Leonard Tavormina, the plaintiff's headmaster, sent a letter accompanied by an employment contract to the defendant. The letter stated that the defendant should not sign the employment contract if she was unable to fulfill the expectations of the agreement or was considering employment elsewhere. The employment contract offered the defendant a teaching position for the 1998-1999 academic year. On June 4, 1998, the defendant executed the employment contract and returned it to Tavormina. (See Defendant's Exhibit A.) Thereafter, on August 25, 1998, the defendant sent a letter to Tavormina to inform him that she had accepted a teaching position in the Fairfield public school system for the 1998-1999 academic year.

The relevant portion of the employment contract provides: "Your employment is considered to be employment at will and the Headmaster reserves the right to terminate such employment with or without cause at any time." (See Defendant's Exhibit A.)

On April 29, 1999, the plaintiff filed a two-count

complaint against the defendant asserting claims for misrepresentation and promissory estoppel. On July 6, 1999, the defendant filed a counterclaim asserting breach of contract and misrepresentation.

On February 24, 2000, the defendant filed the present motion for summary judgment as to both counts of the plaintiff's complaint and her counterclaims.

Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Witt v. St. Vincent's Medical Center,* 252 Conn. 363, 368, 746 A.2d 753 (2000). The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. *Id.*

The defendant moves for summary judgment as to both counts of the plaintiff's complaint. The defendant moves for summary judgment as to count one on the ground that there is no genuine issue of material fact that her employment was at will and, therefore, terminable at any time. She moves for summary judgment as to the second count on the ground that there was no misrepresentation because her actions were consistent with the underlying principles of the at will employment contract. The defendant argues that the plaintiff's claims must fail because her resignation was consistent with the expectations of the parties' employment contract. Indeed, the defendant argues that when she interviewed and accepted the position with the Fairfield public school system her status as an at will employee had already been agreed upon. Moreover, the defendant argues that there was no contractual obligation made after she executed the employment contract that prevented her from seeking employment elsewhere.

*2 In opposition to the motion, the plaintiff argues that simply because the employment contract contained an at will provision does not bar its misrepresentation and promissory estoppel claims. Specifically, the plaintiff argues that the at will provision did not entitle the defendant to

misrepresent material facts to induce it to enter into the contract and refrain from considering other candidates. The plaintiff argues that by returning the executed contract, the defendant falsely represented that she was not considering other employment and that she had a present intention of fulfilling the contractual obligations. The plaintiff further argues that the defendant's failure to inform it that she was pursuing other employment was a violation of her contractual duty to disclose.

As a preliminary matter, an employment contract for a definite or determinable term, as distinguished from a contract for an indefinite or indeterminable term, may be terminated by either party only for good or just cause. See *Slifkin v. Condec Corp.,* 13 Conn.App. 538, 549, 538 A.2d 231 (1988). At will contracts, on the other hand, are terminable at the will of either party without regard to cause. See *Torosyan v. Boehringer Ingrelheim Pharmaceuticals, Inc.,* 234 Conn. 1, 14, 662 A.2d 89 (1995).

In the present case, the plaintiff and the defendant entered into an employment contract for the 1998-1999 academic year, a definite or determinable term. However, the employment contract provided that the defendant's employment was terminable at will. Consequently, because the defendant's employment was at will, the employment relationship could be terminated by either party at any time with or without cause. See *id.*

A. Promissory Estoppel

Under a promissory estoppel theory, a party may maintain a claim for damages based upon a promise which induces the party's action or forbearance, if such action or forbearance is undertaken in reasonable reliance upon the promise. *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 205, 520 A.2d 208 (1987); see also *D'Ulisse Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 213, 520 A.2d 217 (1987). This court has recently held that a plaintiff may not plead promissory estoppel where the parties have a valid contract. An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, promissory estoppel is an action outside the contract. *Moukarzel v. Oxygen Electronics,* Superior Court, judicial district of

Fairfield at Bridgeport, Docket No. 359965 (August 12, 1999) (Melville, J.). Cases before the Supreme Court where plaintiffs have simultaneously pled breach of contract and promissory estoppel have involved some dispute about the existence of the contract.

Here, because there is a valid written employment contract between the plaintiff and the defendant, the plaintiff cannot maintain a promissory estoppel action. See *Moukarzel v. Oxygen Electronics, supra,* Superior Court, Docket No. 359965. Therefore, the defendant's motion for summary judgment as to the plaintiff's promissory estoppel claim must be granted.

B. Misrepresentation

*3 Falsity is an essential element of a negligent misrepresentation claim. *Daley v. Aetna Life & Casualty Co.,* 249 Conn. 766, 792, 734 A.2d 112 (1999). The plaintiff need not prove that the representation made by the defendant was promissory, but only that it contained false information. See *id.,* 793. There must be a justifiable reliance on the misrepresentation for a plaintiff to recover damages. *Citino v. Redevelopment Agency,* 51 Conn.App. 262, 275, 721 A.2d 1197 (1998). The basic element of a claim for misrepresentation, however, is whether there was a misstatement. *Id.* Without a misrepresentation there can be no justifiable reliance. *Id.*

Here, based upon the pleadings, affidavits and the other evidence submitted, the court finds that the employment contract is an integrated writing, containing all the terms of the defendant's employment. See *Giorgio v. Nukem, Inc.,* 31 Conn.App. 169, 175, 624 A.2d 896 (1993). [FN1] Indeed, although parol evidence is admissible to prove misrepresentation, the plaintiff has not submitted any extrinsic evidence either to vary or contradict the terms of the employment contract. See *Kim v. Magnotta,* 49 Conn.App. 203, 214-15, 714 A.2d 38 (1998), rev'd on other grounds, 249 Conn. 94, 733 A.2d 809 (1999). Because the employment contract did not contain any representations prohibiting the defendant from pursuing other employment, there was no misrepresentation. Moreover, there was no justifiable reliance on the alleged misrepresentation because the plaintiff admitted at oral argument that

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

if it had known that the defendant was considering other employment it would not have withdrawn its offer for the 1998-1999 academic year. See *Citino v. Redevelopment Agency, supra,* 51 Conn.App. 275. Therefore, the defendant's motion for summary judgment as to count two of the plaintiff's complaint is hereby *GRANTED.*

> FN1. "An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement ... In order to determine whether a written agreement is integrated, a court must look to the intention of the parties ... Evidence concerning the intention of the parties may be found in the conduct and language of the parties and the surrounding circumstances ... Ordinarily, the intent of the parties to a contract is a question of fact to be determined by the trier of fact." (Citations omitted; internal quotation marks omitted.) *Giorgio v.. Nukem, Inc.,* 31 Conn.App. 169, 175, 624 A.2d 896 (1993). "When the trial court has no occasion to evaluate the credibility of witnesses or to assess the intent of the parties," however, "the legal inferences to be drawn from the documents raise questions of law rather than of fact." *Jacob v. Seaboard, Inc.,* 28 Conn.App. 270, 274, 610 A.2d 189, cert. denied, 223 Conn. 923, 614 A.2d 822 (1992).

## C. The Counterclaims

The defendant also moves for summary judgment on her counterclaims on the ground that there are no genuine issues of fact that by instituting this action the plaintiff has breached the employment contract and misrepresented the at will nature of the defendant's employment. Indeed, the defendant argues that she justifiably relied upon the plaintiff's false representation of the basic terms of her employment, notably that her employment was terminable at will.

In opposition to the motion, the plaintiff argues that the defendant is not entitled to summary judgment on her breach of contract counterclaim because the contract terminated when she repudiated her contractual duties. Moreover, the plaintiff argues

that the defendant's breach of contract counterclaim must fail because she is neither seeking to compel performance under the contract nor to recover contractual damages for the alleged breach. As to the defendant's misrepresentation claim, the plaintiff argues that the at will provision within the employment contract was not a representation, but rather a covenant that cannot give rise to a misrepresentation claim.

## 1. Breach of Contract

*4 The key elements of a breach of contract action are: (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party and (4) damages. *Kennedy v. Westledge,* Superior Court, judicial district of New Haven at Meriden, Docket No. 262278 (March 12, 1999) (Beach, J.). A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. *Tallmadge Bros. v. Iroquois Gas Transmission System,* 252 Conn. 479, 498, 746 A.2d 1277 (2000). The intent of the parties is to be ascertained by a fair and reasonable construction of the written words and the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. *Id.* Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. *Id.* A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. *Id.* Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. *Id.*

Here, although the language of the employment contract clearly and unambiguously represents the intent of the parties to enter into an employment at will agreement; see *Tallmadge, supra,* such language does not prevent the plaintiff from instituting an action against the defendant. However, because the plaintiff did not breach any terms of the employment contract, the defendant has failed to establish the key elements of a breach of contract action. See *Kennedy v. Westledge, supra,* Superior Court, Docket No. 262278. Accordingly, the defendant's motion for summary judgment as to the breach of contract counterclaim is hereby denied.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
**(Cite as: 2000 WL 1269715 (Conn.Super.))**

2. Misrepresentation

The basic element of a claim for misrepresentation is whether there was a false statement. See *Citino v. Redevelopment Agency, supra,* 51 Conn.App. 275. Moreover, there must be a justifiable reliance on the misrepresentation. *Id.* Without a misrepresentation there can be no actionable justifiable reliance. *Id.* Here, the employment contract, by its terms, was terminable at will. Consequently, there was no actual misrepresentation by the plaintiff who truthfully represented that the defendant's employment was at will. Therefore, the defendant is not entitled to judgment as a matter of law.

Accordingly, the defendant's motion for summary judgment as to the misrepresentation counterclaim must also be *DENIED.*

Based upon the foregoing, the defendant's motion for summary judgment is *GRANTED* as to both counts of the plaintiff's complaint and *DENIED* as to her misrepresentation and breach of contract counterclaims.

2000 WL 1269715 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 391344 (Conn.Super.))

**H**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

James JOHNSON,
v.
CITY OF BRIDGEPORT, et al.

**No. CV 95321129.**

June 3, 1999.

Memorandum of Decision on Defendant's Motion for Summary Judgment

NADEAU.

*1 In 1996, plaintiff filed a nine-count second amended complaint against the defendants, City of Bridgeport Board of Education; James A. Connelly, Superintendent of Schools; Maria M. Melendez, Assistant Superintendent of Schools; and A. Douglas Dupee, Director of Education for the City of Bridgeport Public Schools. This action arises out of the plaintiff's former employment with the defendants.

The plaintiff alleges the following facts: In August 1992, the plaintiff was hired as the principal of the Benjamin Franklin Education Center. During his second year as principal, he alleges, the defendants directed the plaintiff to alter or falsify students' files or records in order to deceive federal investigators who were to examine the documents contained therein. The plaintiff refused. After the plaintiff's refusal, the defendants tried to pressure the plaintiff to resign. During the investigation conducted by the Office of Special Education Programs, the plaintiff's truthful testimony evidenced the defendants' failure to comply with regulations regarding special education requirements. On February 14, 1994, the plaintiff was terminated for failing to comply with the defendants' allegedly illegal directive to falsify records.

In the first count, the plaintiff alleges that the defendants' wrongful and unlawful termination caused him to suffer loss of employment, salary, benefits and damage to his reputation. The plaintiff further alleges that the defendants violated his rights to free speech under the first and fourteenth amendments to the United States Constitution, in violation of 42 U.S.C. § 1983. In the second count, he alleges that the defendants conspired for the purpose of depriving him of the equal protection of the laws and privileges and immunities under the laws in violation of 42 U.S.C. § 1985. In the third count, the plaintiff alleges that the defendants deprived him of his right to equal protection of the laws as guaranteed by the fourteenth amendment, by hiring a less qualified Hispanic female following his termination. In the fourth count, the plaintiff alleges that he was subjected to discipline and termination by the defendants on account of his exercise of rights guaranteed by the first amendment, in violation of General Statutes § 31-51q. In the fifth count, it is alleged that the defendants breached an implied covenant of good faith and fair dealing by unlawfully demanding that the plaintiff falsify documents, by unlawfully pressuring the plaintiff to resign, and by threatening to ruin the plaintiff's professional reputation. In the sixth count, the plaintiff alleges a claim for promissory estoppel in that notwithstanding that he changed his position and fully performed as expected, the defendants terminated his employment. The seventh count alleges that the defendants tortiously interfered with his contractual relations. In the eighth count, the plaintiff alleges that the defendants intentionally inflicted emotional distress upon him. In the ninth count, the plaintiff alleges that the defendants' actions in damaging his reputation and professional standing constitute slander.

*2 The defendants have filed a motion for summary judgment as to all counts of the plaintiff's second amended complaint.

Count One: Wrongful Discharge
A. Exhaustion

The defendants argue that they are entitled to summary judgment on count one on the basis that the plaintiff failed to exhaust the administrative remedies under the collective bargaining agreement (CBA). [FN1] The plaintiff contends that he is not required by law to go through the grievance procedures outlined in the bargaining agreement.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

The plaintiff further contends that exhausting the administrative remedies would be futile.

> FN1. "The trial court [is treating] the defendants' summary judgment motion as a motion to dismiss. This [is] proper as to the claim of failure to exhaust administrative remedies, which implicates subject matter jurisdiction and should be raised by a motion to dismiss pursuant to Practice Book [§ ]143, now Practice, Book (1999 Rev.), [§ ]10-31.... [T]he record, does not indicate that the impropriety of using either a motion for summary judgment or a motion to dismiss in this manner [has ever been] raised in the trial court ... We shall therefore consider the case as it [is] presented by the parties overlooking the foregoing procedural shortcomings ..." *Paul v. City of New Haven.* 48 Conn.App. 385, 388 n. 2, 710 A.2d 798 (1998).

General Statutes § 31-51bb provides that: "No employee shall be denied the right to pursue, in a court of competent jurisdiction, a cause of action arising under ... a state statute solely because the employee is covered by a collective bargaining agreement." Moreover, "an employee who does not exhaust the grievance procedures established in a collective bargaining agreement may pursue a cause of action in the Superior Court if the cause of action is premised on an independent statutory claim." *Genovese v. Gallo Wine Merchants, Inc.,* 226 Conn. 475, 481, 628 A.2d 946 (1993). However, the exhaustion requirement is retained in cases "in which the plaintiff's claim arises from a right dependent on the provisions of the collective bargaining agreement." *Id.,* 482 n. 8, 628 A.2d 946.

Here, Article VI, paragraph D, of the CBA between the parties provides: "No administrator will be disciplined, reprimanded, suspended, dismissed, deprived of his professional advancement or given an adverse evaluation of his professional service without just cause." Since the plaintiff's wrongful discharge claim arises from a right dependent on the provisions of the CBA, the plaintiff must exhaust his administrative remedies unless an exception applies.

"One of the limited exceptions to the exhaustion rule arises when recourse to the administrative remedy would be demonstrably futile, or inadequate ... An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief." (Internal quotation marks omitted.) *Mendillo v. Board of Education,* 246 Conn. 456, 467, 711 A.2d 1177 (1998).

In *Mendillo v. Board of Education,* the plaintiff, a high school principal, alleged that the superintendent of her school district "engaged in a deliberate effort to harass and torment [her] ... making her continued employment with the ... school district, for all practical purposes, impossible." (Internal quotation marks omitted.) *Id.,* 465-66, 717 A.2d 1177. While the plaintiff alleged that she was constructively discharged, the superintendent argued that the plaintiff voluntarily resigned. *Id.* The court held that this is not the kind of factual dispute that fits within either the purpose or the language of General Statutes § 10-151(d), which provides termination procedures for tenured teachers. *Id.,* 469, 717 A.2d 1177. The court further held that since the board "would not have been empowered, under [§ ]10-151(d), to determine whether a constructive discharge took place because that question is not one of the statutorily defined subjects of a hearing under the statute," recourse to the administrative remedy of § 10-151(d) would have been futile. *Id.*

*3 Likewise, the dispute between the plaintiff and the defendants involves a question as to whether the plaintiff was constructively discharged. Article VI of the CBA dealing with grievance and arbitration procedures provides: "The purpose of this procedure is to secure at the lowest possible administrative level, equitable solutions to problems which may arise from time to time with respect to the provisions of this agreement." The procedure covers complaints that an administrator "has been treated unfairly or inequitably because of a violation, misinterpretation, or misapplication of the provisions of this agreement or of established policy or practice." Whether the plaintiff was constructively discharged appears not to be one of the subjects covered by the grievance and arbitration procedure pursuant to the CBA.

Therefore, the court denies the defendants' motion for summary judgment in so far as it relies upon failure to exhaust administrative remedies.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

B. Voluntary Resignation

The defendants also argue, as would be expected in a difference as to alleged *constructive* discharge, that they are entitled to summary judgment on count one on the basis that the plaintiff voluntarily resigned from his position. The plaintiff contends that he did not voluntarily resign. Here, the defendants have submitted the letter of resignation signed by the plaintiff. On the other hand, the plaintiff has presented evidence, including an affidavit, raising a genuine issue as to whether the plaintiff voluntarily or involuntarily resigned. For instance, the plaintiff attests that he signed the resignation letter under duress. Therefore, summary judgment cannot be had as to this aspect, there being an obvious question of material fact.

C. Civil Rights Violation under 42 U.S.C. § 1983

The defendants also argue that they are entitled to summary judgment on count one because the plaintiff's alleged speech was not spoken in his role as a citizen on a matter of public concern. The plaintiff contends that he spoke out as a private citizen on matters not merely relating to condition of his employment, but on matters of public concern.

Here, it should be noted that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to 1983." (Internal quotation marks omitted.) *Fetterman v. University of Connecticut,* 192 Conn. 539, 549, 473 A.2d 1176 (1984). [FN2]

> FN2. 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress."

"The determination whether a public employer has properly discharged an employee for engaging in speech requires a balance between the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State as an employer, in promoting the efficiency of the public services it performs through its employees." (Internal quotation marks omitted.) *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1058 (2nd Cir.), cert. denied, 510 U.S. 865, 112 S.Ct. 185, 126 L.Ed.2d 144 (1993). "For an employee to establish a prima facie case, he must prove that (1) his speech can be fairly characterized as constituting speech on a matter of public concern; and (2)[the] speech was at least a substantial or motivating factor in the discharge. The first element is a question of law, the second a question of fact." (Citations omitted; internal quotation marks omitted.) *Frank v. Relin,* 1 F.3d 1317, 1328-29 (2nd Cir.), cert. denied, 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). "If both of these elements are proven by [the employee], [the government employer] may still avoid liability if he establishes that either; (3) he would have made the same decision in the absence of the protected conduct; or (4) [the employee's] conduct interfered with the [employer's] effective and efficient fulfillment of its responsibilities to the public ..." (Internal quotation marks omitted.) *Schnabel v. Tyler,* 230 Conn. 735, 750, 646 A.2d 152 (1994), citing *Frank v. Relin, supra,* 1 F.3d at 1329.

*4 Here, the plaintiff's speech dealt with the Education Center's noncompliance with certain special education laws and he argues that the future funding of the Center would depend on the outcome of the inspectors' evaluation. The Board of Education's compliance with federal laws and funding for public schools are obviously matters of public concern. Whether the plaintiff's speech with regard to compliance was a substantial or motivating factor in his discharge is a question of fact. Therefore, the court denies the defendants' motion for summary judgment as to count one regarding this rationale because there is a material issue as to whether the plaintiff's dismissal was motivated by his speech.

Count Two: Conspiracy

The defendants next urge summary judgment because the defendants are all agents of the same entity and thus cannot conspire to violate civil rights under 42 U.S.C. § 1985. The plaintiff contends that

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the individual defendants, because of personal interests, conspired to force the plaintiff out of the school.

According to the intracorporate conspiracy doctrine, "[e]mployees of a corporation acting in the scope of their employment cannot conspire with one another or with the corporation that employs them; each acts for the corporation and the corporation cannot conspire with itself." *Day v. General Electric Credit Corp.,* 15 Conn.App. 677, 684, 546 A.2d 315, cert. denied, 209 Conn. 819, 551 A.2d 755 (1988). "A corporation cannot conspire with itself anymore than an individual can, and hence it appears to be the general rule that a corporation cannot conspire with its officers, agents or employees when they are acting solely for the corporation." *See v. Bridgeport R.C. Diocesan Corp.,* Superior Court, judicial district of Bridgeport, Docket No. 300948 (July 31, 1997) ( *Thim, J.* ) (20 Conn.L.Rptr. 271, 277). Moreover, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." (Internal quotation marks omitted.) *Willow Springs Property Group v. Cherney,* Superior Court, judicial district of Danbury, Docket No. 327777 (October 8, 1997) (*Leheney, J* ). One exception to this rule "requires the plaintiff to allege that an agent of the corporation has an independent personal stake in achieving the corporation's illegal objective." *Id.*

The intracorporate conspiracy doctrine is equally applicable to governmental entities such as school districts. *Larson v. Miller,* 76 F.3d 1446, 1456 n. 6 (8th Cir.1996). For example, in *Herrmann v. Moore,* 576 F.2d 453, 459 (2nd Cir.), cert. denied, 439 U.S. 1003, 995 S.Ct. 613, 58 L.Ed.2d 679 (1978), the plaintiff, a tenured professor, was dismissed. The court agreed that one reason for the plaintiff's discharge was that he had testified in court. However, the court did not determine that the defendants conspired to discharge the plaintiff, and found that every one of the defendants was either a trustee or faculty member of the school and was acting in that capacity in connection with the discharge. The court further held that "the complained-of injury was the discharge of the plaintiff by the corporation, and inasmuch as each of the persons shown to have any purpose to further the discharge was a trustee or employee of the corporation and acting for it ...," the defendants

were entitled to summary judgment. *Id.*

**\*5** Here, the alleged conspiracy is essentially a single act by the Board of Education acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment. Moreover, similar to the *Herrmann* case, the complained of injury here is the discharge of the plaintiff by the Board of Education. Connelly, Melendez and Dupee were agents of the Board of Education and because the plaintiff has not sufficiently alleged that these personal defendants had a personal stake in forcing the plaintiff to resign, the defendants' motion for summary judgment as to count two is granted as to them.

### Count Three: Equal Protection

The defendants contend that they are entitled to summary judgment because the plaintiff has failed to show that similarly situated persons have been treated differently.

"Equal protection provisions of the federal and state constitutions are of the same meaning and create similar imitations." *State v. Anonymous,* 29 Conn.Supp. 333, 335, 287 A.2d 111 (1972). "The concept of equal protection [under both the state and federal constitutions] has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged. (Internal quotation marks omitted.) *Hunt v. Prior,* 236 Conn. 421, 443, 673 A.2d 514 (1996). "Equal protection of the law prohibits the unequal treatment of those who are *similarly situated.*" *Golab v. New Britain,* 205 Conn. 17, 25, 579 A.2d 1297 (1987). (Emphasis in original.)

Here, the plaintiff's equal protection claim is explicitly based on gender discrimination and implicitly based on racial discrimination. He alleges that he was qualified for the position of principal and that he was replaced by a less qualified, Hispanic female. The parties have cited sparse case law. One somewhat talismanic failure of pleading urged by defendants is that nowhere does plaintiff allege he was replaced by one, *similarly situated,* who received unequal treatment. Beyond *Golab, supra,* this notion also finds expression in *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54 (2d Cir.1985). However, it would seem to exalt form over

Not Reported in A.2d                                                                    Page 5
**(Cite as: 1999 WL 391344 (Conn.Super.))**

substance to insist on such magic words in this pre-trial phase in a context where plaintiff's complaint insists the replacement was "*less* qualified*." Surely, the law's ostensible concern with the correct language ought not be deemed to require one weaken his attack for formulaic reasons. Plaintiff's plea seems to be that his replacement wasn't *even* similarly situated, a step beyond unequal treatment of the similarly situated. The linguistic problem does not appear to raise a sufficient impediment to enhance a motion to strike and for summary judgment, as sought here, it is rather more wholly inadequate. Summary judgment must be denied as to count three.

### Count Four: Unlawful Retaliation

*6 The defendants adopt for this count the argument utilized by them against the § 1983 claim of count one, correctly noting that our appellate court deems C.G.S. Sec. 31-51q [FN3] claims as analogous to 1983 claims. *Cotto v. United Technologies Corp.,* 48 Conn.App. 618, 629, 711 A.2d 1180 (1998), cert. granted on other grounds, 245 Conn. 915, 717 A.2d 233 (1998). This incorporation by reference, however, hitches defendants' wagon to a falling star, as summary judgment has been denied on the § 1983 claim and so is denied here.

> FN3. General Statutes § 31-51q provides: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorneys fees, as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs

and reasonable attorneys fees to the employer."

### Count Five: Covenant of Good Faith and Fair Dealing

The defendants seek summary judgment on this count because: (1) the plaintiff voluntarily resigned; (2) the court lacks subject matter jurisdiction [FN4] and (3) if the facts alleged by the plaintiff were proven, they would not rise to the level of a claim for the breach of the covenant of good faith and fair dealing. The plaintiff relies on his previously expressed responses to the defendants' first two arguments. As to the third argument, the plaintiff contends that there is a genuine issue of material fact as to whether his allegations rise to the level of a claim for breach of the covenant of good faith and fair dealing.

> FN4. See *supra* 1.

The court must first address the defendant's subject matter jurisdiction argument, which is based on failure to exhaust administrative remedies. The exhaustion doctrine was previously discussed with regard to count one wherein and it was stated that the requirement applies where "the plaintiff's claim arises from a right dependent on the provisions of the collective bargaining agreement." *Genovese v. Gallo Wine Merchants, Inc., supra,* 226 Conn. 482 n. 8. As in count one, the plaintiff must exhaust because his claim of good faith and fair dealing arises from a right dependent on the provisions of the CBA. For example, article VI. section 9, paragraph D, of the parties' CBA provides: "No administrator will be disciplined, reprimanded, suspended, dismissed, deprived of his professional advancement or given an adverse evaluation of his professional service without just cause." Since the plaintiff's claim for breach of the covenant of good faith and fair dealing would seem to be based on this "just cause" provision, it might well be said it arises from a right dependent on a provision of the parties' CBA. Thus, the plaintiff would be required to exhaust the administrative remedies unless an exception to the requirement applies.

As with count one plaintiff's claim here in count five involves a question as to whether the plaintiff

Not Reported in A.2d
(Cite as: 1999 WL 391344 (Conn.Super.))

was constructively discharged. Because the CBA does not provide for the determination of this threshold issue, recourse to the administrative remedies pursuant to the CBA would be futile because no authoritative resolution could emerge.

Since the plaintiff is not required to exhaust administrative remedies, it must be determined whether the defendants could be liable, as a matter of law, for the plaintiff's claim of breach of the covenant of good faith and fair dealing. The defendants first argue that the plaintiff voluntarily resigned and therefore cannot maintain a claim for breach of the covenant of good faith and fair dealing based on his allegedly wrongful termination. As discussed above, there is simply a genuine issue of material fact as to whether the plaintiff voluntarily resigned.

*7 The defendants also argue that the claim would fail because even if the plaintiff's allegations were true, they would not constitute a breach of the covenant of good faith and fair dealing. "Good faith is a subjective concept that implicates the sincerity of the motives animating the person involved." *Caserta v. Zoning Board of Appeal,* 219 Conn. 352, 361, 593 A.2d 118 (1991). "[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Internal quotation marks omitted.) *Suarez v. Dickmont Plastics Corp.,* 229 Conn. 99, 111, 639 A.2d 507 (1994). Moreover, "[w]hether good faith exists is a question of fact to be determined from all the circumstances." *Kendzierski v. Goodson,* 21 Conn.App. 424, 430, 574 A.2d 249 (1990). Therefore, the court denies the defendants' motion for summary judgment as to count five.

### Count Six: Promissory Estoppel

The court finds one point (amongst many put forth) dispositive. Broadly speaking: "An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, it is an action outside the contract." *Clock Tower Mill Development v. Cambridge Development Corp.,* Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 555348 (April 23, 1996) (*Lavine, J.* ).

Specifically speaking, it has been held that when valid contracts exist, recovery cannot be obtained under the doctrine of promissory estoppel. *Lombardi v. Marketing Corp. of America,* Superior Court. judicial district of Fairfield at Bridgeport, Docket No. 293281 (May 23, 1994) (*Moran, J.* ) (plaintiff cannot assert a claim for promissory estoppel when a valid, written at-will employment agreement exists).

Here, there is a valid written contract between the plaintiff and the defendants, and therefore a claim of promissory estoppel cannot lie. Accordingly, the court grants the defendants' motion for summary judgment as to count six.

### Count Seven: Tortious Interference

This count must be allowed to remain because, at bottom, and in open dispute, is whether the individuals acted in purely "on the job" fashion or with *personal* motivation and animus. As a result, defendants' generally correct contention, that an agent of an employer cannot be held for interfering with an employer-employee contract, is not dispositive. See, *Gallagher v. Hamilton Stamford Federal Credit Union,* Superior Court, J.D. Hartford/New Britain at Hartford, No. 045989 (October 18, 1994) (*Holzberg, J.* ) and *Murray v. Bridgeport Hospital,* 40 Conn.Supp. 56, 60-61, 480 A.2d 610 (1984). If the agents were acting beyond the scope of their duties, an interference count might lie. See *Gallagher, supra,* and *Murray, supra.* Summary judgment denied.

### Count Eight: Intentional Infliction of Emotional Distress

*8 The defendants next argue that they are entitled to summary judgment because: (1) the plaintiff was neither terminated nor discharged; and (2) the facts, as alleged by the plaintiff, even if proven, do not constitute "extreme and outrageous conduct," because the plaintiff was, at all times relevant, represented by counsel and a union official. The plaintiff contends that there is a genuine issue of material fact as to whether his resignation was voluntary or involuntary, and therefore summary judgment is improper. The plaintiff further contends that there is a genuine issue as to whether he was pressured into resigning and whether as a result of the pressure, he suffered emotional distress.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1999 WL 391344 (Conn.Super.))

As discussed earlier there is a genuine issue of fact as to whether the plaintiff voluntarily resigned. The defendants, therefore, cannot prevail on count eight on the argument that plaintiff was neither terminated nor discharged.

As to defendant's next argument (that even if plaintiff is correct, no extreme or outrageous conduct may be deemed present): "In order for the plaintiff to prevail in a claim for intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe ... Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause mental distress of a very serious kind.... Thus, [i]t is the intent to cause injury that is the gravamen of the tort ..." (Internal quotation marks omitted.) *Drew v. K-Mart Corp.*, 37 Conn.App. 239, 251, 655 A.2d 806 (1995). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury." *Mellaly v. Eastman Kodak Co.*, 42 Conn.Supp. 17, 18, 597 A.2d 846 (1991). In *Talit v. Peterson*, 44 Conn.Supp. 490, 498, 692, A.2d 1322 (1995), the plaintiff alleged that the defendants caused her to lose her job in retaliation for filing a grievance. The court held that this "alleged retaliatory conduct is that type of extreme and outrageous conduct which, together with the other elements of the tort, constitutes intentional infliction of emotional distress." (Internal quotation marks omitted.) *Id.* The court further held that "at a minimum, reasonable people could differ as to whether the defendants' conduct was extreme and outrageous." *Id.* Similar to *Talit,* here the plaintiff alleges that the defendants caused him to lose his job in retaliation for his honesty when questioned by federal investigators regarding the school's programs. Since reasonable people could differ as to whether the defendants' conduct was extreme and outrageous, this issue is for the jury. Therefore, the court denies the defendants' motion for summary judgment as to count eight.

## Count Nine: Slander

*9 Finally, the defendants argue that they are entitled to summary judgment because the facts do not rise to the level of a cause of action in slander, in that the plaintiff, a public official, has failed to allege actual malice. The defendants further argue that the statements alleged by the plaintiff to be slanderous represent the truth. The plaintiff contends that he alleged actual malice and that there is a genuine issue of material fact as to whether the defendants' statements were truthful.

"Under the first amendment to the United States constitution, a public official, in order to recover damages for a defamatory falsehood relating to his or her official conduct, must prove that the statement was made with actual malice ... Actual malice requires that the statement, when made, be made with actual knowledge that it was false or with reckless disregard of whether it was false." (Citations omitted). *Woodcock v. Journal Publishing Co.,* 230 Conn. 525, 535, 646 A.2d 192 (1994), cert. denied. 513 U.S. 1149, 115 S.Ct. 1098, 132 L.Ed.2d 1066 (1995). "As a general rule, whether or not actual malice exists in a given case is an issue of fact to be determined at trial." *Gallagher v. Jackson,* Superior Court, judicial district of New Haven at New Haven, Docket No. 351594 (April 1997) (Clark, J.).

Here, the plaintiff alleges that the defendants *knew* or should have known that all of the derogatory or defamatory statements they made concerning the plaintiff *were false* and untrue. (Count 9, 77.) Since the plaintiff has also submitted evidence raising a genuine issue of material fact as to whether the allegedly defamatory statements were true, the court denies summary judgment on this count.

Thus, summary judgment is denied as to all counts except two and six. As to count two summary judgment is granted to the *individual* defendants.

1999 WL 391344 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works