*EXHIBIT C2*

H
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Hartford-New Britain at Hartford.

Don LARK
v.
POST NEWSWEEK STATIONS CONNECTICUT, INC., et al.

No. CV94 070 53 26.

Aug. 9, 1995.

*Memorandum of Decision on Defendants' Motion to Strike*

WAGNER, Judge.

*1 On August 19, 1994, the plaintiff, Don Lark, brought this action seeking immediate temporary and permanent injunctive relief to prevent the defendants Armond Terzi and Post-Newsweek Stations, Connecticut, Inc. from violating the terms of an employment contract between Lark and Post-Newsweek Stations(PNS). More specifically, Lark sought an injunction preventing PNS from removing him from his position as an anchorman on the 6:00 and 11:00 p.m. news programs and from announcing in any form or medium that the plaintiff has been removed or replaced as an anchorman on the news programs.

The court, Berger, J., held hearings on Lark's request for a temporary injunction in late October, 1994.

On October 13, 1994, both defendants filed a motion to strike counts two, three, five, six, seven, eight, nine, and ten of the verified complaint.

-I-
Count Two - Breach of Contract

In count two, Lark alleges that he had an employment contract, which was comprised of a two page letter agreement and an eight page PNS talent clause contract. Additionally, he alleges that he took less compensation than he otherwise would have sought on the belief that he would participate personally as anchor on the 6:00 and 11:00 p.m. news programs. He claims that the reasonable expectation of the parties was that he would be the anchorperson on the 6:00 and 11:00 p.m. newscasts for the period of August 2, 1992 through August 1, 1995 and that PNS's removing him from these broadcasts constitutes a breach of the covenant of good-faith and fair dealing on PNS's part.

PNS argues that count two should be stricken because Lark has failed to allege a sufficient claim for breach of the implied covenant of good-faith and fair dealing because this requires a claim of bad faith, which Lark has failed to allege.

In response, Lark argues that every contract contains an implied covenant of good faith and fair dealing. He did not have to plead a violation of public policy, because he was a contractual employee of PNS, not an at-will employee.

Connecticut courts make a distinction between a breach of implied covenant of good-faith and fair dealing for an at-will employee and a contractual employee. An at-will employee can only recover on a claim of breach of implied covenant of good-faith and fair dealing if the employee can show that the employer violated public policy in its firing of the employee. *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, (1984); *Carbone v. Atlantic Richfield Company,* 204 Conn. 460, 528 A.2d 1137 (1987). The reason for this distinction is that where "an employment contract is clearly terminable at will, ... a party cannot ordinarily be deemed to lack good faith in exercising this right. " *Carbone,* supra, 204 Conn. 470.

On the other hand, where an employee has a contract with an employer for a definite period of time, Connecticut courts recognize that a cause of action for breach of implied covenant of good faith and fair dealing may be brought by the employee against the employer. In *Magnan v. Anaconda Industries, Inc.,* supra, 193 Conn. 566-567.

*2 The Supreme Court in *Magnan* observed that while there was "no reason to exempt employment

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

contracts from the implication of a covenant of good faith and fair dealing in the contractual relationship, we do not believe that this principle should be applied to transform a contract of employment terminable at the will of either party into one terminable only at the will of the employee or for just cause." The purpose of allowing claims of good faith and fair dealing in employment contracts is to "fulfill the reasonable expectations of the parties." *Carbone v. Atlantic Richfield Co.*, supra, 204 Conn. 470. The policy set forth in *Magnan* has been followed by many Superior Court decisions. See *Gaudio v. Griffin Health Services*, 8 CSCR 235 (Dec. 19, 1991, Sequino, J.) (Court denied a motion to strike a breach of covenant of good faith and fair dealing claim for a contractual employee); *Baton v. Smith Real Estate*, Superior Court, Judicial District of New London at New London, Docket # 51 50 81 (Jan. 24, 1992, Purtill, J.) (Defendants summary judgment on covenant of good faith and fair dealing claim denied because material question of fact exists as to whether parties entered employment contract); *Settembri v. Am. Radio Relay League*, 7 CSCR 483 (Mar. 27, 1992, Schaller, J.) (Court denied a motion to strike a breach of covenant of good faith and fair dealing claim for a contractual employee).

Lark has alleged the existence of a contract with PNS and an expectation that he would remain as lead anchor until the end of that contract and that PNS acted in bad faith by hiring Terzi to take Lark's place. These allegations are sufficient to support a claim for breach of implied covenant of good faith and fair dealing. Motion to strike the second count is denied.

-II-
Count Three - Promissory Estoppel

In count three, Lark alleges that PNS made oral promises to him that he would anchor the 6:00 and 11:00 newscasts between August 2, 1992 through August 1, 1995, and reinforced those promises by indicating to him that his employment contract was secure. Lark further alleges that PNS knew or should have known that Lark would rely on those statements and that in reliance on those statements, he agreed to accept less compensation than he otherwise could have gotten elsewhere.

PNS argues that the third count should be stricken because a valid employment contract exists and that a claim for promissory estoppel does not lie where an employment contract exists because Lark can sue on the contract.

Lark claims that he has alleged the elements necessary for a promissory estoppel claim, and that he has not asserted any claim by way of promissory estoppel that contradicts his written contract.

In *D'Ulisse-Cupo v. Board of Directors of N.D.H.S.*, 202 Conn. 206, 213, (1987) our Supreme Court discussed the doctrine of promissory estoppel as follows:

Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. This court has recognized, however, the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor. Section 90 of the Restatement Second states that under the doctrine of promissory estoppel a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all.

*3 A promissory estoppel claim consists of two elements. First, the party against whom estoppel is claimed must act to induce another party to believe that certain facts exist and to act on that belief. *Kimberly-Clark Corporation v. Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987). Second, that party must change its position in reliance on those facts. Id.

PNS argues that because Lark has sued on the contract, he can not now claim promissory estoppel. "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." *Levine v. Massey*, 232 Conn. 272, 279, (1995). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Leonard Concrete Pipe Co. v. C.W. Blakeslee & Sons, Inc.,*

178 Conn. 594, 598, 424 A.2d 277 (1979).

An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, it is an action outside the contract. When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract. *Lombardi v. Marketing Corp. of America,* Superior Court, Judicial District of Fairfield at Bridgeport, Docket No. 29 32 81 (May 23, 1994, Moran, J.) quoting *NCC Sunday Inserts, Inc. v. World Color Press, Inc.,* 759 F.Supp. 1004 (S.D.N.Y. 1991).

Lark is attempting to use the discussions that occurred during the negotiations of his contract as a basis for his promissory estoppel claim. A party does not have a cause of action for promissory estoppel where an existing contract exists is alleged and appears to be enforceable. We conclude that because Lark has a valid action on the contract, no cause of action lies against PNS for promissory estoppel and Count Three is insufficient at law. Motion to strike the third count is granted.

-III-
Count Five - Negligent Infliction of Emotional Distress

The fifth count sounds in negligent infliction of emotional distress, Lark claiming that PNS's actions directly caused Lark to suffer mental distress, anguish, and anxiety.

PNS argues that Lark has not properly alleged a claim for negligent infliction of emotional distress, because he has not alleged either extreme conduct or serious injury.

Lark contends that PNS's conduct was extreme and outrageous in that PNS knew how important the job was to him, and knew that taking him off the air would cause him emotional distress, and that in any event the determination of extreme and outrageous conduct is a jury question.

In order to sustain a claim for negligent or unintentional infliction of emotional distress, the plaintiff must persuade the court by "pleading and establishing that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress, and that distress, if it were caused, might result in illness or bodily harm." *Buckman v. Peoples Express, Inc.,* 205 Conn. 166, 173, 530 A.2d 596 (1987); see also *Morris v. Hartford Courant,* 200 Conn. 676, 683, 513 A.2d 66 (1986).

*4 "There is nothing ... to preclude an action for unintentional infliction of emotional distress based upon unreasonable conduct of the defendant [[[employer] in the termination process.... Nonetheless, where a plaintiff was terminated for legitimate business reasons, it has been held that a defendant cannot be liable for the normal distress and hurt feelings that result whenever anyone is discharged from employment." *Emanuele v. Boccaccio & Susanin,* Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 37 96 67 (Dec. 12, 1994, Wagner, J.) quoting *Morris v. Hartford Courant Co.,* 200 Conn. 681-683.

Lark has not alleged sufficient facts to show that PNS knew that its conduct would result in harm to him, or that PNS created an unreasonable risk of causing harm to him. Motion to strike the fifth count is granted.

-IV-
Count Six - Intentional Infliction of Emotional Distress

In count six, Lark alleges that PNS's hiring Terzi was done with intent to inflict emotional distress upon him, or PNS should have known that emotional distress to Lark would be the likely result of its conduct and that as a result of this intentional conduct, Lark has suffered severe mental distress, anguish, and anxiety.

PNS argues that the sixth count should be stricken because Lark has failed to allege sufficient intentional conduct by PNS to support a claim for the intentional infliction of emotional distress.

A plaintiff must establish four elements in order to state a sufficient claim for intentional infliction of emotional distress.
> It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.... Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.... Thus, [i]t is the intent to cause injury that is the gravamen of the tort ....

*Drew v. K-Mart Corp.*, 37 Conn. App. 239, 251, (1995), quoting *DeLaurentis v. New Haven*, 220 Conn. 225, 266-67, (1991).

In *Bosco v. MacDonald*, 13 Conn. Law Rptr. 312 (Jan. 31, 1995, West, J.) the court observed:

Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress. There is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a serious kind.... Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy this element is a question, in the first instance, for this court. Only where reasonable minds can differ does it become an issue for the jury.

*5 quoting *Mellaly v. Eastman Kodak Co.*, 42 Conn. Sup. 17 (July 11, 1991, Berdon, J.).

Since Lark has not alleged facts that rise to that level of outrageous conduct required the motion to strike the count six is granted.

-V-
Count Seven - CUTPA

In the seventh count, Lark claims a violation of CUTPA in contravention of General Statutes § 42-110a et. seq in that PNS's conduct in pursuing television personalities from another market, its employ of them in violation of its own contractual obligations, and in violation of the individual television personalities contract, "is immoral, unethical, oppressive, unscrupulous, and against the public policy of this state".

PNS contends that the employer-employee relationship is not a trade under CUTPA and its motion to strike as to count seven should be granted.

In this case Lark has alleged the existence of an employment contract with PNS, and that PNS violated that contract by hiring Terzi. CUTPA does not generally apply to disputes arising out of the employer-employee relationship. *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 670, (1992); *Stafford v. First Financial Management Corp.*, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 06 62 46 (Mar. 25, 1993, Wagner, J.); *Krupa v. United Technologies*, 2 CSCR 740 (July 1, 1987, Maloney, J.); *Sall v. Jones Apparel Group, Inc.*, 9 Conn. L. Rptr. 90 (June 7, 1993, Lewis, J.), *Oluvide v. Travelers Insurance Co.*, 7 CSCR 645, 646 (May 7, 1992, Aurigemma, J.). No sufficient reason has been set forth by the plaintiff to depart from the general rule. Motion to strike the seventh count should be granted.

-VI-
Count Eight - Interference with Contract

In the count eight directed to Terzi, Lark alleges that Terzi knew that Lark had a contract with PNS, and that his act in seeking out, and signing, a contract with PNS would have Lark removed as the 6:00 and 11:00 anchorman. Lark alleges that Terzi's intentional conduct interfered with Lark's contract and Lark has suffered damages as a result.

Terzi claims that Lark has not alleged and cannot establish that Terzi owed a duty to Lark or that Terzi intended to harm Lark or the existence of any improper motives or means by Terzi.

The gravamen of this count sound in tortious interference with business relations:

In *Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 535, (1988), our Supreme Court observed:

Nevertheless, not every act that disturbs a contract or business expectancy is actionable. For a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously. An action for intentional interference with business relations requires the plaintiff to plead and prove at least some improper motive or improper means. A claim is made out only when interference

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.

*6 While it is alleged that Terzi knew of Lark's contract and that PNS's hiring of Terzi would remove Lark as lead anchorman, he has not alleged that Terzi acted fraudulently or maliciously. Additionally, Lark does not allege that Terzi knew Lark would be fired from PNS, only that he would be removed from the 6:00 and 11:00 broadcasts. This is not sufficient to maintain a claim that Terzi tortiously interfered with Lark's contract. Motion to strike count eight is granted.

-VII-
Count Nine - Intentional Infliction of Emotional Distress

In count nine is directed at Terzi, Lark alleges that Terzi's action in seeking out and signing a contract was made intentionally to inflict emotional distress upon Lark and has caused Lark to suffer severe emotional distress, anguish, and anxiety.

The allegations in this count against Terzi are nearly identical to the allegations in the count six against PNS and the circumstances surrounding this count are the same as those in the sixth count against PNS. Because the plaintiff has not alleged facts indicating conduct sufficiently outrageous, the motion to strike count nine is granted.

-VIII-
Count Ten - Negligent Infliction of Emotional Distress

In count ten, Lark alleges that Terzi should have realized that his actions involved an unreasonable risk of causing emotional distress, and that the distress might result in damages to Lark.

Terzi maintains that the tenth count should be stricken because Lark has not or cannot establish that Terzi owed a duty to Lark or that Terzi intended to harm Lark and that Lark has not alleged serious enough conduct by Terzi or serious enough injuries suffered by Lark to maintain an action for emotional distress.

This count is nearly identical to the claims made against PNS in the count five. For the same reasons stated in connection with count five the motion to strike count ten is granted.

In summary the motion to strike count two is denied; the motions to strike counts three, five, six, seven, eight, nine and ten are granted.

1995 WL 491290 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Not Reported in A.2d
(Cite as: 1994 WL 247956 (Conn.Super.))

Page 1

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut, Judicial District of Fairfield, at Bridgeport.

Liane LOMBARDI
v.
MARKETING CORPORATION OF AMERICA
and Louis Alessio.

No. CV91 0293281.

May 23, 1994.

*MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (# 116)*

MORAN, Judge.

*1 The plaintiff, Liane Lombardi, filed a four count complaint on December 18, 1991, against Marketing Corporation of American ("MCA") and Louis Alessio ("Alessio"). The plaintiff is seeking to recover money damages as a result of her alleged wrongful termination by MCA on June 10, 1991. The plaintiff claims that she was not terminated for poor job performance, but instead because she witnessed Alessio in intimate physical contact with a co-worker.

In the first count of the complaint, the plaintiff alleges that MCA breached its employment contract with the plaintiff. In the second count, the plaintiff alleges a claim of promissory estoppel against MCA. In the third count, the plaintiff alleges a claim of negligent misrepresentation against MCA. In the fourth and final count, the plaintiff alleges that Alessio tortiously interfered with her employment contract with MCA.

On October 1, 1993, the defendants filed a motion for summary judgment on the complaint on the ground that "all counts of the complaint fail as a matter of law." The defendants submitted a memorandum of law and seven exhibits in support of their motion for summary judgment. On November 23, 1993, the plaintiff filed an opposition to the defendants' motion for summary judgment and six exhibits.

A motion for summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Connell v. Colwell*, 214 Conn. 242, 246, 571 A.2d 116 (1990); Practice Book § 384. "The burden of establishing the absence of a genuine issue of fact and the entitlement of recovery as a matter of law lies with the moving party." *Zapata v. Burns*, 207 Conn. 496, 502, 542 A.2d 700 (1988).

*A) COUNT ONE: BREACH OF CONTRACT*
MCA argues in their memorandum of law that as a matter of law, the court should grant summary judgment on count one of the complaint. MCA maintains that the plaintiff entered into an at-will employment agreement which expressly provided that the plaintiff could be terminated for any reason. See Exhibit A, Defendants' Motion For Summary Judgment. MCA submits an affidavit from Paul Robinson, president of MCA, who states that MCA discharged the plaintiff for poor work performance. See Exhibit D. Defendants' Motion For Summary Judgment. MCA also argues that because there is a disclaimer in the employee handbook, there is no implied contract arising out of terms of the employee handbook. Accordingly, MCA urges the court to grant its motion for summary judgment.

In response, the plaintiff admits that she signed an at-will employment agreement with MCA. Nevertheless, the plaintiff refers to paragraph 8 of the at-will employment agreement which states that "[the employee] hereby agree[s] to abide by all rules and regulations and directives issued by the company and to perform all duties required of [the plaintiff] by the company." The plaintiff claims that the handbook provides that "an employee is judged on the basis of quantity and quality of work performed, attitude, dependability, attendance, and punctuality." The plaintiff contends that there is a question of fact as to whether the at-will employment agreement incorporates by reference the above provision of the handbook. Based on this provision, the plaintiff argues that MCA breached this implied contract of employment by terminating the plaintiff for reasons other than her

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

job performance. Accordingly, the plaintiff urges the court to deny the motion for summary judgment on count one.

*2 In Connecticut, employment for an indefinite term is terminable by an employer at will unless the "former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986); see *Sheets v. Teddy's Frosted Foods*, 179 Conn. 471, 427 A.2d 385 (1980).

> [T]he public policy exception to the general rule of the employment at will doctrine is narrowly constructed to serve a limited purpose, namely, to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not.

*Battista v. United Illuminating Co.*, 10 Conn.App. 486, 497, 523 A.2d 1356 (1987).

In the present case, the plaintiff signed an at-will employment agreement which provides that MCA could discharge her for any reason. Therefore, MCA could terminate the plaintiff pursuant to the at-will employment agreement absent any violation of an important public policy.

The plaintiff claims that there is a question of fact as to whether the parties intended certain handbook provisions to be part of the employment contract.

With respect to this issue, the Supreme Court has stated that:

> [i]n determining the terms of a contract, the intentions of the parties, manifested by their words and actions, are essential. *Finley v. Aetna Life & Casualty Co.*, 202 Conn. 190, 199, 520 A.2d 208 (1987).... While we have recognized that, under appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee; *Magnan v. Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984); in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact.

*Carbone v. Atlantic Richfield Co.*, 204 Conn. 460, 471, 528 A.2d 1137 (1987).

"By eschewing language that could reasonably be construed as a basis for a contractual promise, or by including appropriate disclaimers of the intention to contract, employers can protect themselves against employee contract claims based on statements made in personnel manuals." *Finley v. Aetna Life & Casualty Co.*, supra, 199, n. 5. Several superior court decisions have held that contract disclaimers contained within personnel manuals act so as not to create either express or implied contracts of employment. See *Hood v. Mercedes-Benz Credit Corp.*, 4 Conn.L.Rptr. 680-81 (June 17, 1991, Lewis, J.) (The disclaimer was set out in a section entitled "Notice."); *Grieco v. The Hartford Courant Co.*, 8 CSCR 219-20, (January 27, 1993, Aurigemma, J.) (The disclaimer was on the first page of the handbook.); *Lawrence v. Summit Corp. of America*, 8 CSCR 402-03, (March 22, 1993, Sullivan, J.) (The contractual disclaimer was printed in boldface type).

*3 The disclaimer in the employee handbook provides as follows:

> "The language used in this information booklet is not intended to create nor is to be construed to constitute an express or implied contract between MCA and any or all of its employees."

The disclaimer contains definitive contractual language that the provisions in the employee handbook are not contractual provisions. The disclaimer appears on the second page of the handbook in normal typeface. The plaintiff even submitted a handbook receipt where she acknowledges reading the handbook. See Exhibit D, Plaintiff's Opposition to Defendants' Motion For Summary Judgment. Therefore, based on the disclaimer, MCA protected itself from any claims of contract based on the employee handbook. See *Finley v. Aetna Life & Casualty Co.*, supra, 199 n. 4.

"Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers." *Randolph Construction Co. v. Kings East Corporation*, 165 Conn. 269, 275, 334 A.2d 464 (1973). "Where ... the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties." *Batter Building Materials Co. v.*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*Kirschner*, 142 Conn. 1, 7, 110 A.2d 464 (1954). "In the absence of an express provision, incorporated documents may neither expand nor restrict the obligations of the parties under the basic contract." *Randolph Construction Co. v. Kings East Corporation*, supra, 275.

In the present case, the at-will agreement does not expressly provide that the terms of the employee handbook are to be incorporated as part of the plaintiff's employment agreement. In fact, the at-will agreement contains an integration clause which provides that any modifications to the contract must be in writing and signed by the parties. See Exhibit A, Defendants' Motion For Summary Judgment. The employee handbook contains a disclaimer which shows that the parties did not intend for the terms of the employee handbook to create, or to be construed to constitute, an express or implied contract between the plaintiff and MCA. Therefore, the plaintiff's at-will agreement does not incorporate by reference the terms of the employee handbook.

The plaintiff was an at-will employee and the public policy exception is inapplicable. Based on the foregoing, summary judgment should be granted in favor of MCA as to count one of the complaint.

COUNT TWO: PROMISSORY ESTOPPEL

MCA argues that count two must fail as a matter of law on the basis that the plaintiff is precluded from asserting a claim of promissory estoppel when a written employment agreement exists. Also, MCA argues that the plaintiff has alleged no clear and definite promise on which she could reasonably rely in support of her claim of promissory estoppel.

*4 In response, the plaintiff maintains that she relied to her detriment on MCA's promise in the handbook to judge an employee's performance based on the quality of the work performance. The plaintiff also states that her supervisor told her while she was working "not to change anything about her performance because it was valuable to MCA." The plaintiff argues that there is a question of fact as to whether she reasonably relied on promises made by MCA. Also, she argues that there is an issue of material fact as to whether the at-will employment agreement is a fully integrated contract and whether the parol evidence rule bars admission of these oral representations made by MCA. Therefore, the plaintiff urges the court to deny summary judgment on count two.

Restatement (Second) § 90 defines promissory estoppel as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance.... [I]t is binding if injustice can be avoided only by enforcement of the promise."
> A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all.

*D'Ulisse-Cupo v. Board of Directors of Notre Dame High School*, 202 Conn. 206, 213, 520 A.2d 217 (1987); see *Manning v. Cigna Corp.*, 807 Supp. 889 (D.Conn.1991) (the court granted summary judgment on count of promissory estoppel where employer's oral promises of "continuous and secure employment: and a probationary period prior to discharge were insufficiently definite and promissory to form the basis of a promissory estoppel claim.); *Dacourt Group, Inc. v. Babcock Industries, Inc.*, 747 F.Supp. 157 (D.Conn.1990) (the court granted summary judgment on claim of promissory estoppel where representations were not "clear and unambiguous promises" sufficient to support a claim for promissory estoppel.); *Yost v. Ex-Cello Corp.*, 18 Conn.Law Trib. No. 2, p. 2 (Super.Ct., January 13, 1992, Carbranes, J.) (the court granted summary judgment on a count of promissory estoppel where "any reliance by the plaintiff on his supervisor's alleged oral statement that he would be covered by the employee handbook was unreasonable since the handbook stated explicitly that it was applicable to hourly workers only.")

MCA's alleged representations were neither sufficiently promissory nor sufficiently definite to support contractual liability based on a theory of promissory estoppel. The plaintiff alleges in count two that she relied on statements in the handbook that MCA would evaluate her on the basis of her job performance. In light of the written, at-will employment agreement and the disclaimer in the employee handbook, MCA's representations in the handbook are not clear and definite promises that the plaintiff could have reasonably relied on to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

govern the terms of her employment.

*5 Moreover, "[i]t is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." (Citations omitted.) *Zullo v. Smith*, 179 Conn. 596, 601, 427 A.2d 409 (1980). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Leonard Concrete Pipe Co. v. C.W. Blakeslee & Sons, Inc.*, 178 Conn. 594, 598, 424 A.2d 277 (1979).

> An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, it is an action outside the contract. When an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract. (Citations omitted.) An untenable situation would result if notwithstanding the existence of a written, enforceable contract, a party could sue for promissory estoppel based on contradictory promises that it allegedly relied on.

*NCC Sunday Inserts, Inc. v. World Color Press, Inc.*, 759 F.Supp. 1004 (S.D.N.Y.1991); see *McLean v. Derby Savings Bank*, 8 CSCR 728 (June 11, 1993, Jones, J.) (in a wrongful discharge action, the court granted summary judgment on counts of breach of contract and promissory estoppel where the plaintiff was an at-will employee and the employee manual contained a disclaimer.)

The parties entered into a written at-will employment agreement. Both parties agree that the at-will employment agreement is valid. The plaintiff cannot assert a claim for promissory estoppel when a valid, written at-will employment agreement exists. Based on the foregoing, the court grants summary judgment in favor of MCA on count two of the complaint.

### COUNT THREE: NEGLIGENT MISREPRESENTATION

In order to sustain a cause of action for negligent misrepresentation, MCA argues that the plaintiff must prove that her reliance on the alleged statement by MCA that she would be evaluated on the basis of her job performance was justifiable and that the statement itself was false. Restatement (Second) of Torts, § 552. MCA argues that absent any evidence of false and misleading statements regarding the plaintiff's employment, they are entitled to summary judgment on the count of negligent misrepresentation, citing *Mason v. Burkett*, 756 F.Supp. 679, 682 (D.Conn.1991).

In opposition, the plaintiff claims that MCA's representations that she would be evaluated on the basis of her work were false and misleading. The plaintiff argues that there is a genuine issue of material fact as to whether the plaintiff's reliance on MCA's representations was reasonable. The plaintiff further submits that there is a question of fact as to whether her dismissal based on poor work performance was merely a pretext for her discharge. As a result, the plaintiff urges the court to deny the motion for summary judgment.

The Restatement (Second) of Torts § 552 provides:
> *6 One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*D'Ulisse-Cupo v. Directors of Notre Dame High School*, supra, 217; see *Mason v. Burkett*, supra, 682 (absent any evidence of misrepresentation, the court found that the defendant was entitled to summary judgment as a matter of law on the plaintiff's claim of negligent misrepresentation.); see *Dacourt Group, Inc. v. Babcock Industries, Inc.*, supra, 161 (the court granted summary judgment on the claim of negligent misrepresentation where the plaintiff failed to submit any evidence that the defendant knew or had reason to believe that the representations were false.); *Manning v. Cigna Corp.*, supra, 897 (the court granted summary judgment on a count of negligent misrepresentation where employee handbook had disclaimer and the plaintiff could not refer to any written policies guaranteeing termination only for failure to meet the job requirements.). But see *Relva v. Allied Grocers Co-op, Inc.*, 7 CSCR 1133 (September 3, 1992, Aurigemma, J.) (the court held that issue of negligent misrepresentation was a question of fact where the plaintiff never received the handbook containing the disclaimer.)

In the present case, the plaintiff has not offered any evidence that MCA supplied false information or

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

negligently misrepresented the terms of the plaintiff's employment. The plaintiff had a clear understanding of the terms of her employment when she entered into the at-will employment agreement. The plaintiff has acknowledged reading the handbook which includes the disclaimer. See Exhibit D, Plaintiff's Opposition to Defendants' Motion For Summary Judgment. Further, the plaintiff cannot refer to any other written policies guaranteeing that she would be evaluated solely on the basis of her job performance. Accordingly, the court grants summary judgment in favor of the defendants on count three of the complaint.

### COUNT FOUR: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

Alessio moves for summary judgment on count four of the complaint. In court four, the plaintiff alleges that Alessio instigated MCA's breach of its contract after the plaintiff witnessed his illicit conduct. Alessio claims that there are no facts to support the plaintiff's claim of tortious interference. Alessio had nothing to do with the plaintiff's discharge as it was based on a collective decision by the partners of the firm. See Exhibit D, Defendants' Motion For Summary Judgment.

In response, the plaintiff argues that there is question of fact as to whether Alessio tortiously interfered with her employment relationship with MCA. Specifically, the plaintiff states in her affidavit that after she observed Alessio with another co-worker, Alessio allegedly called a meeting with several supervisors to discuss the plaintiff's job performance. See Exhibit E, Plaintiff's opposition To The Defendants' Motion For Summary Judgment. The plaintiff claims that shortly thereafter, MC terminated her employment. The plaintiff insists that the court cannot resolve this issue on summary judgment because there are issues of fact as to whether Alessio interfered with MCA's decision to terminate the plaintiff.

*7 "The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendant's knowledge of that relationship, the intent to interfere with it and the consequent actual loss suffered by the plaintiff." *Hart, Ninger & Campbell Associates, Inc. v. Rogers*, 16 Conn.App. 619, 629, 548 A.2d 758 (1988). "[A]n action for intentional interference with business relations ... requires the plaintiff to plead and prove at least some improper motive or improper means.... '[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.' " (Citations omitted.) *Robert S. Weiss & Associates, Inc. v. Weiderlight*, 208 Conn. 525, 536, 546 A.2d 216 (1988). "This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously." (Citations omitted. *Blake v. Levy*, 191 Conn. 257, 261, 464 A.2d 52 (1983). Under the doctrine of tortious interference, "... whether a defendant acted maliciously or not is a question of intent which is a question of fact." *Arzonetti v. Bank of Boston*, Superior Court, judicial district of Litchfield, Docket No. 005761 (June 24, 1993); see *Quimby v. Kimberly Clark Corp.*, 28 Conn.App. 660, 667, 613 A.2d 838 (1992).

There are genuine issues of material fact as to whether Alessio tortiously interfered with the plaintiff's employment. There are conflicting affidavits from the parties as to whether Alessio was involved with MCA's decision to terminate the plaintiff's employment. Accordingly, the court denies summary judgment on count four.

1994 WL 247956 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

C
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Emile MOUKARZEL
v.
OXYGEN ELECTRONICS, LLC

No. CV 990359965S.

Aug. 12, 1999.

MELVILLE.

Opinion Title: Memorandum of Decision Re: Motion to Strike (Docket Entry No. 101)

*1 On January 25, 1999, the plaintiff, Emile Moukarzel, filed a four-count complaint against the defendant, Oxygen Electronics, LLC. The plaintiff alleges the following facts. After publishing his resume on the internet, the plaintiff, a U.S. citizen residing in Beirut, Lebanon, was invited by the defendant to visit the United States to discuss an employment position as a sales associate. Subsequent to meeting with the defendant, the plaintiff was offered an employment contract for a one-year term. The plaintiff accepted the one-year contract and relocated his family from Lebanon to the United States. Approximately one and one-half months after beginning his employment with the defendant, the plaintiff was terminated.

Counts one through four sound in breach of contract, breach of the covenant of good faith and fair dealing, detrimental reliance and misrepresentation, respectively. The defendant filed a motion to strike counts one through three of the plaintiff's complaint. The plaintiff duly filed a memorandum in opposition thereto.

The defendant moves to strike count one on the ground that a cause of action for breach of contract does not lie where the employer has not undertaken any form of contractual commitment. The defendant argues that it never agreed to any definite term of employment and therefore the plaintiff was hired as an at-will employee. The plaintiff contends that the parties entered into a one-year employment contract. The plaintiff further contends that the defendant breached the one-year employment contract by terminating him without good cause.

In his complaint the plaintiff alleges that the parties entered into a contractual agreement for his service for a definite period and attached to his complaint as exhibits the documents that he claims, when read together, form the agreement. (Complaint, 9.) When a copy of a contract is attached to the complaint, the court can consider the contract as "part of" the complaint for purposes of the motion to strike. *Scacco v. United Technologies*, Superior Court, judicial district of Waterbury, Docket No. 124001 (June 5, 1997) (*Leheny, J.*). A contract is to be construed as a whole and all relevant provisions will be considered together. In giving meaning to the terms of a contract, it must be construed to effectuate the intent of the contracting parties. And, the intention of the parties to a contract is to be determined from the language used, interpreted in the light of the situation of the parties and the circumstances connected with the transaction. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. *HLO Land Ownership Associates Ltd. v. Hartford*, 248 Conn. 350, 356-57, 727 A.2d 1260 (1999).

*2 While it is fundamental that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence, it is equally fundamental that when the words used in the contract are uncertain or ambiguous, parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the determination of the intent of the parties which was expressed by the written words. *Kronholm v. Kronholm*, 16 Conn.App. 124, 131, 547 A.2d 61 (1988), aff'd, 23 Conn.App. 577, 582 A.2d 1178 (1990). The operative question becomes whether parol evidence is offered to contradict the writing or to aid in its interpretation. *Scinto v. Sosin*, 51

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Conn.App. 222, 242, 721 A.2d 552 (1998), cert. denied, 247 Conn. 963, 724 A.2d 1125 (1999). The determination of whether a contract term is ambiguous--and thus whether parol evidence may be considered--is a threshold question of law for the court. *Breen v. Merrill Lynch & Co., Inc.,* Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 112124 (August 6, 1996) (*Karazin, J.*).

Here, the June 26, 1998 employment contract between the plaintiff and the defendant is ambiguous as to its duration. Nowhere in the employment contract is it explicitly stated that the contract is effective for one year. On the other hand, various components of the contract imply that the length of the employment contract is for one year. First, the contract provides that the plaintiff's salary compensation will be delineated into twelve equal monthly installments. Second, the contract originally provided for a recoverable draw against future commissions of up to $1,250/month for the duration of the training period; [FN1] however, an addendum changed the period for a recoverable draw against future commissions to a period of *one year*. Moreover, the language in the addendum consistently refers to a one-year period. For example, the addendum includes phrases such as: "if at any point in the one year period ..." and "if Mr. Moukarzel's employment is terminated by Oxygen Electronics LLC management during the one-year period ..." (Plaintiff's Exhibit B.) Further, the addendum includes a provision for commission deductions if "Mr. Moukarzel continues his employment with Oxygen Electronics LLC past July 31, 1998." (Plaintiff's Exhibit B.)

> FN1. The training period lasts from August through October. (See Plaintiff's Exhibit A.)

Because the language used in the employment contract is ambiguous as to whether the plaintiff was an employee for a one-year term or an employee-at- will, parol evidence should be admitted to aid in the interpretation of the agreement. Accordingly, because the plaintiff alleges that he and the defendant agreed to the one year contract, the motion to strike count one must be denied.

Relying on its argument that the plaintiff was an at-will employee, the defendant argues that the covenant of good faith and fair dealing cannot be read into an at-will employment relationship unless the plaintiff alleges a violation of public policy. The plaintiff contends that it is unnecessary for him to allege a public policy violation because he has sufficiently pleaded the existence of an employment contract for a definite term.

*3 Where an employee has a contract with an employer for a definite period of time, Connecticut courts recognize that a cause of action for breach of implied covenant of good faith and fair dealing may be brought by the employee against the employer. *Lark v. Post Newsweek Stations Connecticut,* Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 705326 (August 9, 1995) (*Wagner, J.*) see, e.g., *Magnan v. Anaconda Industries, Inc.,* 193 Conn. 558, 572, 479 A.2d 781 (1987) (plaintiff has cause of action for wrongful discharge in violation of implied covenant of good faith and fair dealing). Because the plaintiff has alleged a one-year employment contract, he has properly pleaded a cause of action for breach of the implied covenant of good faith. Therefore, count two must also be denied.

The defendant next moves to strike count three on the ground that detrimental reliance is not recognized as a separate cause of action. In support of its argument, the defendant cites *Pavliscak v. Bridgeport Hospital,* 48 Conn.App. 580, 593 n. 5, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 17 (1998), which states that "[p]romissory estoppel ... is not a separate cause of action available to plaintiffs, but rather serves to allow enforcement of an otherwise validly formed contractual commitment that lacks traditional consideration." The defendant further argues that even if detrimental reliance were a valid separate cause of action, the plaintiff's cause of action would fail because he has not alleged a sufficiently clear and definite promise made by the defendant. The plaintiff contends that Connecticut recognizes a claim for detrimental reliance as a separate cause of action. The plaintiff further contends that he reasonably relied upon the defendant's promises to his detriment.

The Appellate Court's reasoning in *Pavliscak* comports with the reasoning of the Supreme Court in *D'Ulisse-Cupo v. Board of Directors of Notre*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

*Dame High School*, 202 Conn. 206, 520 A.2d 217 (1987), where the Supreme Court recognized, "the development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor ..." (Internal quotation marks omitted.) *Id.*, 213, 520 A.2d 217. This consideration substitute, known as promissory estoppel, has two elements: "the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done." (Internal quotation marks omitted.) *W. v. W.*, 248 Conn. 487, 496, 728 A.2d 1076 (1999).

*4 Although generally "a party may plead, in good faith, inconsistent facts and theories ..." *Marrin v. Spearow*, 35 Conn.App. 398, 402, 646 A.2d 254 (1994); a plaintiff may not plead promissory estoppel where the parties have a valid contract. See *Lark v. Post Newsweek Stations Connecticut, Inc., supra*, Superior Court, Docket No. 705326 (where a plaintiff has valid action on contract, no cause of action lies against a defendant for promissory estoppel). An action for promissory estoppel generally lies when there is no written contract, or the contract cannot be enforced for one reason or another. Thus, it is an action outside the contract. *Clock Tower Mill Development v. Cambridge Development Corp.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555348 (April 23, 1996) (*Lavine, J.*). Cases before the Supreme Court where plaintiffs have simultaneously pled breach of contract and promissory estoppel have involved some dispute about the existence of the contract. See, e.g., *Suffield Development Associates Ltd. Partnership v. Society for Savings*, 243 Conn. 832, 843-46, 708 A.2d 1361 (1998); *Finley v. Aetna Life Casualty Co.*, 202 Conn. 190, 198-99, 520 A.2d 208 (1987).

Here, the dispute between the parties concerns a term in the agreement, i.e., the length of employment, rather than the existence or validity of the contract. Based on the foregoing, because it is undisputed that a valid contract exists, the remedy of promissory estoppel, which is a theory inconsistent with the existence of a contract, is precluded. Accordingly, this court concludes that the defendant's motion to strike count three should be granted.

In summary then, defendant's motion to strike counts one and two is hereby DENIED; the motion to strike count three is hereby GRANTED.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works