UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| H. JONATHAN FRANK and  FRANK FAMILY 1996 TRUST (on behalf of themselves and REFLEXITE CORPORATION), | : : : | Civil Action No. 3:03-CV- 1014 (JBA) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ARTHUR LOVETERE, CECIL URSPRUNG, LOUIS J. BACCEI, WORTH LOOMIS, THEODORE PATLOVICH, STEPHEN J. RAFFAY, WILLIAM P. ROWLAND, PETER EIO (individually and in their capacity as members of the Board of Directors of Reflexite Corporation) and REFLEXITE CORPORATION, | : : : : : : | DECEMBER 16, 2003 |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

Introduction ...................................................................................................................... 1

Factual Background And Procedural History .......................................................................... 2

ARGUMENT ...................................................................................................................... 7

I.      The Standard on a Motion to Dismiss ............................................................................ 7

II.     Plaintiffs Have Standing To Pursue A Derivative Action On Behalf Of Reflexite ............ 8
        A.      Plaintiffs Fairly and Adequately Represent the Interests of the Corporation ........ 8
                1.      Plaintiffs Are Real Parties In Interest................................................... 10
                2.      The Plaintiffs are Familiar with and Committed to the Litigation............ 10
                3.      The Derivative Action is Consistent with the Franks' Direct
                        Claims.................................................................................................. 12
                4.      The Franks Bring the Derivative Action to Vindicate the Rights of
                        Other Shareholders............................................................................... 15
                5.      The Individual Defendants Have Acted to Obscure the Magnitude
                        of Their Self-Interested Conduct from Shareholders ............................... 16
                6.      Plaintiffs' Attorneys Have Exercised Control Over this Litigation
                        to Assure that Shareholder's Rights Are Fairly and Adequately
                        Represented.......................................................................................... 17
        B.      Jon Frank Has Standing To Bring Action Against Defendants .......................... 17
                1.      Jon Frank Falls Within the Definition of "Shareholder." ........................ 18
                2.      The Statute of Limitations Has Not Expired Because Defendants'
                        Breaches of Their Fiduciary Duties Have Been Continuing .................... 19

III.    The Plaintiffs Have Asserted a Valid Direct Claim for Breach of Fiduciary Duty .......... 21
        A.      The Allegations in the Amended Complaint..................................................... 22
        B.      The Fiduciary Duties of Defendants Under Connecticut Law ............................ 22
        C.      The Business Judgment Rule is Wholly Inapplicable ....................................... 26

IV.     Plaintiffs Have Stated a Valid Claim for Breach of Contract by Defendant
        Rowland....................................................................................................................... 27
        A.      Defendant Rowland's Argument That He Did Not Breach the Agreements
                is Untenable......................................................................................................... 29
        B.      The Plaintiffs Have Standing to Enforce the Agreements .................................. 30

V.      Plaintiffs Have Stated a Valid Claim for Tortious Interference with Contractual
        Relations ..................................................................................................................... 31
        A.      The Franks' Claim for Tortious Interference is Not Time-Barred ...................... 32

Conclusion........................................................................................................................ 35

# TABLE OF AUTHORITIES

## CASES

*Aronson v. Crane*, 535 N.Y.S.2d 412 (N.Y. App. Div. 1988) ................................................... 24

*Arrigoni v. Adorno*, 129 Conn. 673, 31 A.2d 32 (1943)......................................................... 23

*Barnard v. Barnard*, 214 Conn. 99, 570 A.2d 690 (1990)....................................................... 31

*Barrett v. Southern Connecticut Gas Co.*, 172 Conn. 362, 374 A.2d 1051 (1977)............ 9, 10, 15

*Blanchette v. Barrett*, 229 Conn. 256, 640 A.2d 74 (1994) ....................................................... 33

*Broome v. Biondi*, 17 F. Supp. 2d 211 (S.D.N.Y. 1997) ............................................................. 25

*Collum v. Chapin*, 40 Conn. App. 449, 671 A.2d 1329 (1996)................................................... 33

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................................................7, 8

*Connecticut Co. v. Division 425*, 147 Conn. 608, 164 A.2d 413 (1960) ..................................... 31

*Cooke v. Fresh Express Foods Corp.*, 7 P.3d 717 (Or. 2000)...................................................... 24

*In re Croton River Club*, 52 F.3d 41 (2d Cir. 1995)..................................................................... 26

*Decorso v. Watchtower Bible & Tract Society of New York*, 46 Conn. Supp. 386, 752
A.2d 102 (2000)........................................................................................................................ 19

*Demoulas v. Demoulas Super Markets, Inc.*, 677 N.E.2d 159 (Mass. 1996)............................... 18

*Fink v. Golenbock*, 238 Conn. 183, 680 A.2d 1243 (1996) passim................................. 14, 15, 16

*In re General Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp. 1119 (D. Del. 1988) ........ 26

*Giordano v. Bittner,* No. CV 0577552, 1998 WL 389239 (Conn. Super. Ct. July 2, 1998) ........ 14

*Giuletti v. Giuletti*, 65 Conn. App. 813, 784 A.2d 905 *(2001)*.................................................... 19

*Handler v. Remington Arms Co.*, 144 Conn. 316, 130 A.2d 793 (1957)..................................... 19

*Heilbrunn v. Hanover Equities Corp.*, 259 F. Supp. 936 (S.D.N.Y. 1966) ................................. 15

*Holler v. Buckley Broad. Corp.*, 47 Conn. App. 764, 706 A.2d 1379 (1998).............................. 31

*In re J.P. Stevens & Co. Shareholders Litig.*, 542 A.2d 770 (Del. Ch. 1980) ............................ 27

*Jones v. H.F. Ahmonson & Co.*, 1 Cal. 3d 93, 460 P.2d 464 (1969) ............................................ 24

*Katz Corp. v. T.H. Canty & Co., Inc.*, 168 Conn. 201, 362 A.2d 975 (1974) .............................. 23

*Lambert v. Stovell*, 205 Conn. 1, 529 A.2d 710 (1987) ........................................................ 19, 33

*Lapuk v. Simons,* No. PJR CV930704542S, 1995 WL 5633 (Conn. Super. Ct. Jan. 3, 1995) ....................................................................................................................................... 21

*Letizia v. Karam,* No. CV020281711S, 2003 WL. 352913 (Conn. Super. Ct. Jan. 16, 2003) ....................................................................................................................................... 29

*Levine v. Levine*, No. CV96537984S, 1996 Conn. Super. Ct. LEXIS 3347, (Dec. 16, 1996) ................................................................................................................................... 12, 14

*Levine v. Levine,* No. CV96 537984S, 1998 WL 258192 (Conn. Super. Ct. May 11, 1998) ....................................................................................................................................... 33

*MMI Investments LLC v. Eastern Co.*, 45 Conn. Supp. 101, 701 A.2d 50 (1996) ...................... 18

*MacAdams v. MacAdams*, No. 260452, 1990 Conn. Super. LEXIS 787 (July 25, 1990) .. 9, 12, 14

*Metropolitan Life Ins. Co. v. Aramark Corp*, No. 16142, 16170 & 16171, 1998 Del. Ch. LEXIS 70 (Feb. 5, 1998) ...................................................................................................... 24

*Moore v. Serafin*, 163 Conn. 1, 301 A.2d 238 (1972) ................................................................ 31

*Nixon v. Blackwell*, 626 A.2d 1366 (Del. 1993) ........................................................................ 25

*In re Nortel Networks Corp. Sec. Litig.*, 238 F. Supp. 2d 613 (S.D.N.Y. 2003) ........................... 8

*Osborne v. Locke Steel Chain Co.*, 153 Conn. 527, 218 A.2d 526 (1966) .................................. 23

*Pacelli Bros. Transp. v. Pacelli*, 189 Conn. 401, 456 A.2d 325 (1983) ................................ 20, 23

*Palmer v. Hartford Nat'l Bank & Trust Co.*, 160 Conn. 415, 279 A.2d 726 (1971) ................... 18

*Pearce v. Superior Court*, 149 Cal. App. 3d 1058, 197 Cal. Rptr. 238 (1984) ........................... 18

*Potter v. Pohlad*, 560 N.W.2d 389 (Minn. Ct. App. 1997) ......................................................... 27

*Rumbin v. Baez*, 52 Conn. App. 487, 727 A.2d 744 (1999) ........................................................ 32

*Shuster v. Buckley*, 5 Conn. App. 473, 500 A.2d 240 (1985) ..................................................... 33

*Smolinsky v. 46 Rampasture Owners, Inc.*, 646 N.Y.S.2d 110 (N.Y. App. Div. 1996) ............... 24

*Southern New England Tel. Co. v. Morello,* No. CV 960254313S, 1997 WL. 297719 (Conn. Super. Ct. May 27, 1997) ............................................................................. 19

*Stone v. R.E.A.L. Healthcare*, CV 98-0414972, 1999 Conn. Super. LEXIS 2016 (July 27, 1999) ...................................................................................................... 12, 23

*Taurus Advisory Group, Inc. v. Sector Mgmts., Inc.,* CV 960150830, 1997 Conn. Super. LEXIS 1181 (May 6, 1997)........................................................................... 21

*Tibball v. Galog, No. CV94 0311149S*, 1994 Conn. Super. LEXIS 2134 (Aug. 25, 1994)........... 9

*Turecek v. A-Lined Handling Sys., Inc.*, No. 270840, 1990 WL 272174 (Conn. Super. Ct. Apr. 18, 1990)............................................................................................. 21

*Wilkes v. Springside Nursing Home, Inc.*, 353 N.E.2d 657 (Mass. 1976) ................................... 24

*In re Xerox Sec. Litig.*, 165 F. Supp. 2d 208 (D. Conn. 2001) ..................................................... 7

## STATUTES

Conn. Gen. Stat. § 33-705............................................................................................................ 24

Conn. Gen. Stat. § 33-720(2) ....................................................................................................... 18

Conn. Gen. Stat. § 33-722............................................................................................................. 6

Conn. Gen. Stat. § 33-756........................................................................................................... 23

Conn. Gen. Stat. § 33-946......................................................................................................... 6, 22

Conn. Gen. Stat. § 52-572j........................................................................................................... 8

Conn. Gen. Stat. § 52-577 ........................................................................................................ 19, 32

## OTHER AUTHORITY

D. Block, N. Barton and S. Radin, The Business Judgment Rule (5th ed. 1998) ........................ 27

## INTRODUCTION

Plaintiffs H. Jonathan Frank ("Jon Frank") and the Frank Family 1996 Trust (the "Trust") (collectively "the Franks") respectfully submit this consolidated Opposition to the Motions to Dismiss of (1) Reflexite Corporation ("Reflexite" or the "Corporation"); (2) Defendant William Rowland ("Rowland"); (3) Defendants Louis Baccei, Worth Loomis, Theodore Patlovich, Stephen J. Raffay and Peter Eio; and (4) Defendant Cecil Ursprung.[1]

The motions to dismiss represent an overly technical effort to shield from scrutiny a pattern of wrongful conduct by Reflexite's directors. The Amended Complaint makes clear that the Individual Defendants' conduct—of which only the tip of the iceberg is now known—should be exposed to the light of day. Defendants' effort to deflect attention from their breaches of their fiduciary duties should be rejected.

The Franks have stated a valid derivative claim and are well-situated to vindicate the Corporation's rights. Over several years, the Individual Defendants have engaged in a course of wrongful, self-dealing transactions that have injured the Corporation without proper notice or disclosure concerning those transactions. The Franks are longstanding and active shareholders who own some 11% of the outstanding shares of Reflexite. They have expended considerable time and energy attempting to right the wrongs perpetrated against Reflexite, and are proper plaintiffs here. Defendants' suggestion that the Franks lack standing to raise the derivative claim ignores Connecticut precedent, fails to distinguish the separate injuries to Reflexite and the Franks that rose from Defendants' wrongdoing, and raises unsupported factual assertions that cannot be considered on this motion to dismiss.

---

[1]    The Defendants, except Reflexite, will collectively be referred to as the "Individual Defendants."

1

Defendants' contention that the Franks have no direct claim for breach of fiduciary duty is also without merit. Defendants mischaracterize the Franks as claiming an "equal right to liquidity." In fact, the Amended Complaint alleges that the Defendants have singled out the Franks for mistreatment after they inquired about the Defendants' self-dealings, by, among other things, excluding them from share buyback programs available to all other shareholders and denying them corporate information available to other shareholders. The Defendants' discrimination against the Franks and refusal to afford them the same rights as other shareholders is a clear violation of the Defendants' duty to act with good faith towards the Franks.

Defendants' remaining contentions have no merit. Jon Frank has standing to assert fiduciary duty claims because he is within the statutory definition of "shareholder." The Franks have stated a claim for breach of contract, and the Defendants' misreading of the relevant contracts cannot be supported by the plain language of the agreements. Nor does the Defendants' statute of limitations argument hold water, when the Amended Complaint makes clear that the Defendants' continuing wrongdoing occurred within the limitations period. As set forth in more detail below, none of Defendants' arguments warrant dismissal of any of the claims in the Amended Complaint, and the motions to dismiss should be denied in their entirety.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves two distinct harms caused by a pattern of misconduct by the directors of Reflexite: first, Reflexite was injured because the Defendants engaged in unfair and improper self-interested transactions that caused injury to Reflexite in general. In particular, the Defendants arranged to sell huge quantities of their own shares of Reflexite under favorable terms not available to other shareholders and without proper notice or disclosure to the shareholders.

2

Second, the Franks were injured because the Defendants singled them out and sought to deny them certain rights enjoyed by other shareholders, including, inter alia, the right to be informed of and participate in share buyback programs made available to every other shareholder.

Thus, the Amended Complaint identifies two related, but ultimately distinct, wrongs: one to the Corporation, and one to the Franks.

### The Franks

As the Amended Complaint alleges, the Franks have been long-term shareholders in Reflexite. Jon Frank, presently the trustee of the Trust, was involved with Reflexite virtually from its origins, and knows the Corporation and its business both as a shareholder and through his dealings with the Corporation as a former employee and executive. Am. Compl. ¶¶ 25-28.

Mr. Frank first purchased shares in Reflexite in 1979, just a few years after the company's founding. Id. at ¶ 30. He was induced to do so by the founders of the corporation, including Defendant William Rowland. Id. at ¶¶ 29-30. Before purchasing the shares, however, Mr. Frank requested and received assurances from the founders, including Defendant Rowland, that the founders could not reduce their holdings of Reflexite without providing Mr. Frank with a comparable opportunity to reduce his holdings. Thus, Defendant Rowland and others executed a January 5, 1979 Agreement promising to use "all efforts that are reasonable" to provide Mr. Frank with opportunities to realize the economic benefits of his investment in Reflexite if Mr. Rowland did the same. Id. at ¶¶ 29-30.

In reliance on the January 5, 1979 Agreement (and a later Shareholders' Agreement), Mr. Frank purchased a quantity of shares representing some 10% of the Corporation. Id. at ¶ 31. Mr. Frank later expanded his shareholdings, and the Franks now own some 11% of the Corporation,

making them among the largest shareholders of Reflexite.  Id.  In 1997, Mr. Frank placed his

shares in the Trust for his family.  Mr. Frank remained the Trustee of the Trust and remained

active in monitoring the performance of Reflexite.  Am. Compl. ¶¶ 44, 52, 54.[2]

Mr. Frank and the Trust have been active and vocal shareholders and have been in

frequent communication with the Board of Directors, officers and other shareholders concerning

the management of Reflexite.  Id. at ¶¶ 33, 52, 54.

**The Defendants' Self-Dealing**

Eventually, the Franks came to learn that the Defendants were violating their fiduciary

duties to the Corporation by engaging in unfair, self-interested transactions that were not in

Reflexite's best interest.  For example, in January 1998, Reflexite spent some $8.1 million

dollars to purchase shares from William Rowland and his family trust.  Am. Compl. ¶ 42.  The

Defendants arranged for Reflexite to incur some $5 million in debt in order to pay Defendant

Rowland for his shares.  Id.  The Franks did not learn of this improper transaction, however, until

much later because the Defendants concealed their involvement in this transaction by burying the

disclosure in a footnote in financial statements which were never provided to the Franks.

This transaction, which was enormously favorable to Defendant Rowland, was merely

the tip of the iceberg.  Defendant Worth Loomis, for example, sold a large quantity of shares at

discounted prices several years later.  Id. at ¶ 39.  Defendant Cecil Ursprung sold shares without

obtaining proper consents, which the Defendants then arranged to procure after-the-fact.  Id. at ¶

38.  Each of these transactions and–perhaps others that the Defendants more effectively

concealed from the Franks and other shareholders–were arranged, procured and approved by the

---

[2]    Mr. Frank's placement of shares in a family trust is by no means unique.  For example, Defendant Rowland
placed his shares in such a trust as well, and it was purchases from that family trust by Reflexite that kicked off
a pattern of self-dealing by the directors of the Corporation.  Am. Compl. ¶ 42.

Defendants.  Id. at ¶ 24.

The consequence of this continuing pattern of wrongful conduct was that the Defendants enriched themselves at the expense of Reflexite and its other shareholders.  Moreover, in causing Reflexite to incur debt to finance these self-interested transactions, the Defendants not only depleted the corporation's coffers, but exposed it to unreasonable and unwarranted financial risk. These "sweetheart deals" that the Defendant arrogated to themselves did not reflect a policy intended to benefit the Corporation.  Id. at ¶ 44.  The Defendants were causing Reflexite to spend inordinate sums to repurchase their shares, but not the shares of ordinary shareholders.

### The Defendants Target the Franks for Mistreatment

As the Franks began questioning the Defendants' self-dealing, the Defendants began to target the Franks for singular discrimination.  Id. at ¶ 47.  This discrimination forms the basis of the Franks' direct claim for breaches of fiduciary duties.

Jon Frank communicated with the Defendants on several occasions, inquiring about the enormous liquidation of the Defendants' stock positions.  Id. at ¶¶ 50, 52.  Thereafter, the Franks were denied the rights extended to other shareholders of Reflexite.  For example, the Defendants excluded the Franks from share buyback programs made available to all shareholders.  Id. at ¶ 55.  Indeed, the Franks were informed that the program was "postponed" but were never told, as other shareholders were, that the program was reinstated.  Id.  This singling out of the Franks was motivated by malice and a desire to injure the Franks.  For example, Defendant Cecil Ursprung stated that the Franks "will never get liquid as long as I am President of Reflexite" and the Franks were excluded without justification, basis or explanation, from liquidity opportunities made available to all other shareholders.  Id. at ¶ 57.

The Franks were also denied basic information pertinent to their shareholdings and

Reflexite's business. As noted above, the Franks were not supplied with financial statements and information about buyback programs. Id. at ¶ 55. The Franks' repeated requests for access to corporate information (some specifically addressed to Defendants LoVetere and Ursprung, for example) were rejected. Id. at ¶¶ 58-59.

### The Demand Letter

On February 10, 2003, the Franks, as shareholders of Reflexite, issued a formal Demand Letter pursuant to Conn. Gen. Statutes § 33-722 (the "Demand Letter") requesting that Reflexite's Board of Directors bring action on behalf of Reflexite to pursue redress for injuries suffered by the Corporation as a result of the self-interested transactions between the Corporation and the Individual Defendants. Am. Compl. ¶ 62. In addition, the Demand Letter made a request pursuant to § 33-946 to allow the Franks to inspect and copy the corporate records. Id.

Among other things, the Demand Letter addressed the transactions in which the Defendants arranged for self-interested sales of enormous quantities of Reflexite stock. Am. Compl. ¶ 61. The Demand Letter included a formal request that the Board and Reflexite immediately investigate and cure these breaches.

### The Special Litigation Committee

Because the transactions at issue had not been approved by non-interested directors, Reflexite's Board purported to form a "Special Litigation Committee" ("SLC") to investigate the wrongful acts identified in the Demand Letter. Id. at ¶ 63. The SLC's "investigation" was merely an effort to deflect scrutiny of the wrongful, self-dealing transactions of the Defendants. As the Amended Complaint alleges, the SLC spent a mere twenty minutes interviewing Jon Frank. Id. at ¶ 65. The SLC also failed to interview other individuals with pertinent information

who were identified by the Franks for the SLC.  <u>See</u> <u>id.</u> at ¶ 66.[3]  Not surprisingly, the SLC recommended against taking action against any Directors in response to the Demand Letter.

***The Lawsuit***

On July 7, 2003, Plaintiffs instituted this action by filing a Complaint (the "Complaint") in this Court.  The Complaint was amended on November 7, 2003.

As noted above, the Amended Complaint has two distinct components.  <u>See, e.g.</u>, Am. Compl. ¶ 2.  The first is a derivative action on behalf of Reflexite that seeks to have the corporation recover against the directors who engaged in and approved various self-dealing and improper transactions.  <u>Id.</u> at ¶¶ 72-84.  The second is a direct action against the various directors for breaches of fiduciary duties, for breach of contract against Mr. Rowland, and against all Defendants (except for Mr. Rowland) for tortious interference with contractual relations.  <u>Id.</u> at ¶¶ 85-113.

Virtually no discovery has been taken in this case.  No depositions have been taken and a very limited quantity of documents have been produced to the Franks.

## <u>ARGUMENT</u>

## I.    THE STANDARD ON A MOTION TO DISMISS.

Defendants' motion to dismiss does not pass muster under the well-established standard governing such motions.  For purposes of Defendants' motion, the Court must deem the allegations in the Amended Complaint as true and must make all reasonable inferences from those facts in favor of the Plaintiffs.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>In re Xerox Sec. Litig.</u>, 165 F. Supp. 2d 208, 213 (D. Conn. 2001).  The motion to dismiss must be

---

[3]    The SLC Report, which was produced to the Plaintiffs only two weeks ago, reveals that an original member of the SLC was Worth Loomis who is alleged to have engaged in large, self-interested sales of Reflexite stock to the Corporation.

denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46 (emphasis added). "The issue is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims.'" In re Nortel Networks Corp. Sec. Litig., 238 F. Supp. 2d 613, 621 (S.D.N.Y. 2003) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2[d] Cir. 1995)).

## II.    PLAINTIFFS HAVE STANDING TO PURSUE A DERIVATIVE ACTION ON BEHALF OF REFLEXITE.

Defendants' main argument in support of their motion to dismiss the derivative action is that the Franks "are in a personal dispute with Reflexite's board of directors" and thus are unable to adequately represent the interests of Reflexite's shareholders. (Reflexite's Memorandum of Law in Support of Motion to Dismiss ("Reflexite Br.") at 6-7.) In addition, Defendants assert that Jon Frank no longer owns shares of Reflexite and, therefore, lacks standing to bring a derivate action in a personal capacity on behalf of Reflexite shareholders. See Reflexite Br. at 7. Defendants' arguments are belied by the facts plead in Plaintiffs' Amended Complaint and ignore judicial and statutory guidance on these issues.

### A.    Plaintiffs Fairly and Adequately Represent the Interests of the Corporation.

Under Connecticut law, a plaintiff bringing a derivative action must "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Conn. Gen. Stat. § 52-572j (2003). In assessing whether a plaintiff is a fair and adequate representative of shareholders in a derivative action, the linchpin is whether the plaintiff has "interests and issues coextensive with those of the class of shareholders he seeks to represent and [is] able to assure the trial court that as a representative,

he will 'put up a real fight.'"  Barrett v. Southern Conn. Gas Co., 172 Conn. 362, 373, 374 A.2d 1051, 1057 (1977) (emphasis added, quotation omitted).  As the Connecticut courts have explained, this question of standing

> is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights.  Rather, it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy. . . .

Tibball v. Galog, No. CV94 0311149S, 1994 Conn. Super. LEXIS 2134, at *4-5 (Conn. Super. Ct. Bridgeport Aug. 25, 1994) (quoting Maloney v. Pac, 183 Conn. 313, 320, 439 A.2d 349, (1981)).

The Connecticut courts consider several factors in determining whether a plaintiff will "put up a real fight" in the context of a shareholder derivative suit.  These include:

> (1) whether the named plaintiff is the real party in interest; (2) the plaintiff's familiarity with the litigation and willingness to learn about the suit; (3) the degree of control exercised by attorneys over the litigation; (4) the degree of support given to the plaintiff by the other shareholders; (5) the plaintiff's personal commitment to the action; (6) the remedies sought by the plaintiff; (7) the relative magnitude of the plaintiff's personal interests as compared to the plaintiff's interest in the derivative action itself; and (8) the plaintiff's vindictiveness toward the other shareholders.

Fink v. Golenbock, 238 Conn. 183, 205, 680 A.2d 1243 (1996).[4]

Significantly for present purposes, the Fink Court specifically recognized that a plaintiff is not precluded from bringing a derivative action on behalf of the corporation merely because the plaintiff has individual claims against the corporation.  See id.; see also MacAdams v. MacAdams, No. 26 04 52, 1990 Conn. Super. LEXIS 787, at *6 (Conn. Super. Ct. Bridgeport July 20, 1990) (denying motion to strike and rejecting argument that Connecticut law "prohibits

---

[4]    These "Fink factors" are nonexclusive and the courts may consider some, but not all of these factors, as well as additional factors, in determining a plaintiff's standing to sue on behalf of shareholders.  See id.

the joining of individual claims with derivative claims by a single shareholder").

As discussed below, with these standards in mind, the facts set forth in Plaintiffs' Amended Complaint demonstrate that the Franks are well suited to serve as representatives of Reflexite shareholders in this derivative action and thus have standing.

### 1.    Plaintiffs Are Real Parties In Interest.

The facts pled in the Amended Complaint demonstrate beyond reasonable dispute that the Franks are real parties in interest to the derivative action, are likely to "put up a real fight," and, thus, satisfy the first <u>Fink</u> factor.

Jon Frank has been involved with the Corporation or its predecessor, Rowland, Inc., since 1972 (Am. Compl. ¶ 25), and was instrumental in the success of the Corporation during its formative years.  (<u>Id.</u> at ¶¶ 26-28.  Presently, the Franks own 256,411 shares of Reflexite stock, representing approximately 11% of the outstanding shares of the Corporation.  <u>Id.</u> at ¶ 31.  The Franks are among the largest shareholders of Reflexite.  <u>Id.</u>

It is difficult to imagine a shareholder with more of a direct and real interest in the matter, and with more of an incentive to "put up a real fight."  <u>Barrett</u>, 172 Conn. at 373 (citation omitted).  There can be no reasonable argument that the Franks lack a real and tangible interest in righting the wrongs perpetrated against Reflexite by the Individual Defendants.

### 2.    The Plaintiffs are Familiar with and Committed to the Litigation.

Plaintiffs have intimate knowledge of Reflexite and the facts that give rise to this litigation and have demonstrated a commitment to vindicating the Corporation's rights.

As the Amended Complaint alleges, the Franks are familiar with Reflexite, its business and, as much as any shareholder can be aware of the Individual Defendants' clandestine activities, the self-dealing transactions alleged in the Amended Complaint.  In addition to being

prominent shareholders and knowledgeable about Reflexite's business, the Franks have long been involved in scrutinizing the management of the corporation and voicing their concerns. Since 1979, the Franks have been active shareholders and in frequent communication with the Board of Directors, officers and other shareholders concerning the management of Reflexite.  Id. at ¶¶ 33, 52, 54.

For example, the Amended Complaint details some of the efforts undertaken by the Franks to address the self-interested transactions that underlie the Plaintiffs' derivative claims. On May 5, 1999, for instance, Mr. Frank wrote to Defendant Arthur LoVetere, a member of the Board of Directors, to address these concerns, but his inquiries were not addressed by the Board. Am. Compl. ¶¶ 52-53.  Later, on October 20, 2001, Mr. Frank again wrote to Reflexite to express his continuing concern of the self-interested sales of Reflexite stock to the Corporation without similar opportunities being afforded to other shareholders.  Am. Compl. at ¶ 54.  Finally, the Franks took the initiative to investigate the misconduct of the Board.  The Franks requested corporate documents from the company, including "records concerning the Corporation's repurchase of shares from its large shareholders, including Board members and insiders."  Am. Comp1. ¶ 58.  The Board of Directors denied these requests.   Am. Comp1. ¶ 59.

On February 10, 2003, the Franks, through their counsel, delivered the detailed and formal "Demand Letter" to Reflexite requesting that the Board investigate these transactions and to inspect corporate records.  Am. Comp1. ¶ 62.  In addition, Jonathan Frank participated in telephone conversations with Board members to discuss the allegations of wrongdoing set forth in the Demand Letter.  Am. Comp1. ¶¶ 65, 68.[5]

---

[5]   Reflexite cites a single paragraph that the Franks have pled "on information and belief" in a misguided effort to suggest that the Franks lack knowledge of their claims.  The Amended Complaint demonstrates to the contrary. To the extent that the Franks do not know more details of the Individual Defendants' misconduct it is because they failed to disclose such misconduct, constituting a further breach of their fiduciary duties.

These facts manifest the Franks' familiarity with history of this case, the Franks' willingness to invest time to understand those actions by the Individual Defendants that form the basis of the derivative claims, and the Franks' substantial commitment to pursuing redress on behalf of shareholders for injuries caused by the wrongful acts of the Individual Defendants. The Franks amply meet the commitment and familiarity requirements for derivative shareholder representation set forth in the second and fifth factors of the <u>Fink</u> analysis.

### 3.    The Derivative Action is Consistent with the Franks' Direct Claims.

The Defendants complain that the Franks assert individual claims along with the derivative claims. But the mere fact that the Franks have individual claims against the Directors or the Corporation in addition to those they assert on behalf of the Corporation, does not create a conflict of interest that requires dismissal of this action for lack of standing. <u>See Fink</u>, 238 Conn. at 204-05, 680 A.2d at 1256. Indeed, Connecticut law is clear that asserting a derivative claim and direct claim are not mutually exclusive. <u>See Levine v. Levine</u>, No. 537984, 1996 Conn. Super. LEXIS 3347, at *17 (Conn. Super. Ct. New London Dec. 16, 1996) (denying motions to dismiss derivative and individual claims because "the plaintiff alleges that the defendants engaged in acts which not only harmed the corporation, but harmed the plaintiff as well"); <u>MacAdams v. MacAdams</u>, No. 26 04 52, 1990 Conn. Super. LEXIS 787, at *6 (Conn. Super. Ct. Bridgeport July 20, 1990) (denying motion to strike and rejecting argument that Connecticut law "prohibits the joining of individual claims with derivative claims by a single shareholder."); <u>Stone v. R.E.A.L. Healthcare, Inc.</u>, No. CV 98-0414972, 1999 Conn. Super. LEXIS 2016, at *1-2 (Conn. Super. Ct. New Haven July 27, 1999). [6]

The Amended Complaint makes clear that the Franks' interests are coextensive and

---

[6]    Reflexite's assertion that an "inherent conflict" exists that "prevents a plaintiff from proceeding as a derivative plaintiff" has been rejected by the very cases on which Reflexite relies. Reflexite Br. at 10.

consistent with those of other shareholders.[7]  The derivative claim of the Amended Complaint avers that the Individual Defendants have breached their fiduciary duties to Reflexite by engaging in, permitting and authorizing improper self-interested transactions not available to other shareholders to the detriment of Reflexite.  Am. Compl. ¶ 74.  More specifically, the Amended Complaint states that the Individual Directors:

> have breached their fiduciary duties to Reflexite by, among other things, pursuing practices and policies of:
>
> a)   engaging in, permitting or authorizing a continued course of self-interested transactions in which the Individual Defendants sold significant quantities of shares at Reflexite's expense;
>
> b)   causing Reflexite to incur debt and other financial risk to benefit the Individual Directors and to finance their sale of shares;
>
> c)   failing to provide adequate disclosures to shareholders concerning the true extent of the Individual D[efendants] and to finance their sale of shares; [and ,]
>
> d)   failing to include or inform all shareholders in repurchases of Reflexite stock.

Am. Compl. ¶ 74.  The Franks request relief on behalf of the corporation that the Court "award compensatory and punitive damages against Defendants" and "require[] the Individual Defendants to reimburse Reflexite for all sums expended by Reflexite as a result of their wrongful acts."  Am. Compl. at ¶ 25.  In short, the facts alleged and the relief sought will benefit the entire Corporation.

The Franks' direct claims in no way contradict or are inconsistent with the derivative claim.  The direct claim of breaches of fiduciary duty assert that when the Franks began to inquire about the Defendants' self-interested transactions (asserted in the derivative claim), the

---

[7]   Under Connecticut law, "[t]he rule is not that the plaintiff must fairly and adequately represent the interests of all other shareholders; rather, under § 52-572j, the plaintiff must answer to those shareholders who are similarly situated."  Fink v. Golenbock, 238 Conn. 183, 207, 680 A.2d at 1243 (1996).

Defendants discriminated against the Franks and specifically denied them rights enjoyed by other shareholders.  See, e.g., Am. Compl. ¶ 47.  In other words, the direct claim arose because the Franks began to pursue the derivative claim.  The two claims are mutually consistent (indeed, they are factually related) and do not in any way suggest that the Franks are not appropriate plaintiffs here.[8]  There is absolutely no reason to suppose that the Franks cannot vigorously pursue both sets of claims without any conflict or difficulty.  Absent such a conflict, the courts will not disturb a plaintiff's right to assert both a derivative and direct claim in the same action. See Giordano v. Bittner, No. CV 0577552, 1998 WL 389239, at *6 n. 3 (Conn. Super. Ct. July 2, 1998); Levine, 1996 Conn. Super. LEXIS 3347, at *17; MacAdams, 1990 Conn. Super. LEXIS 787, at *6.[9]

The rule that Defendants' propose—that shareholders with individual grievances in addition to derivative claims should be disqualified—is unworkable and illogical.  A ruling that a party could only seek relief for a single type of injury would require inefficient seriatim lawsuits.  In the context of a small privately-held corporation such as Reflexite, such a rule might preclude derivative suits by disqualifying those shareholders with the greatest interest in vindicating the rights of the Corporation.

The Franks have demonstrated that they will fairly and adequately represent the interests of other shareholders under the sixth and seventh prongs of the Fink analysis, and Defendants'

---

[8]    Nor is there any real or apparent conflict of interest resulting from the Franks' contract claim against Mr. Rowland or their tortious interference claim against the other Defendants.  The contract claim at issue – that Mr. Rowland had a contractual obligation to make efforts to permit the Franks to sell their shares if Rowland sold his – is consistent with the fiduciary duty claim.  Indeed, Rowland's contractual obligations, and the obligations of the other directors not to interfere with those obligations, simply reaffirm their duty not to engage in self-dealing transactions to the exclusion of other shareholders.

[9]    The case of Levine v. Levine, No. 537864, 1996 Conn. Super. LEXIS 3347, at *17 (Conn. Super. Ct. New London Dec. 16, 1996) is instructive.  In Levine, the plaintiff alleged both conduct harmful to the corporation and also conduct which was "unfair and undisclosed to him personally."  Id. at *19-20.  The court thus found

14

attempt to derail the Franks' inquiry into their wrongdoing should be rejected.

>    **4.    The Franks Bring the Derivative Action to Vindicate the Rights of Other Shareholders.**

Defendants attempt to suggest that the Franks have hostility towards the shareholders or the Corporation.  <u>See</u> Reflexite Br. at  14.  But the Defendants' "proof" of this argument is nothing more than the allegation demonstrating that the <u>Defendants</u> harbored ill will towards the Franks.  For example, Cecil Ursprung expressed this malice by insisting that the Franks "will never get liquid as long as I am President."  <u>Id.</u> at ¶ 57.  As alleged in the Amended Complaint, the Defendants harbor malice towards the Franks, in part because they have sought information concerning the Defendants' self-dealing.  Am. Compl. ¶ 47.

Such vindictiveness directed <u>toward</u> the plaintiff does not and cannot affect a plaintiff's standing.  Indeed, in <u>Fink</u>, the court found that a "great deal of personal animosity" existed between plaintiff and defendant but nonetheless permitted the derivative action to proceed because "that animosity springs directly from the actions of the defendants against the corporation." 238 Conn. at 206, 680 A.2d at 1257; <u>see also</u> <u>Heilbrunn v. Hanover Equities Corp.</u>, 259 F. Supp. 936, 939 (S.D.N.Y. 1966) ("As to the role of plaintiffs as both 'friend' and 'enemy' to the corporation, this surface duality is in fact a routine matter in the courts.  For more purposes than pleading, 'antagonism' between the derivative plaintiff and those who really run (i.e., are) the corporation is a common phenomenon.").[10]

---

that the plaintiff had standing to maintain both a derivative and direct claim, and denied the motions to dismiss both claims.  <u>Id.</u> at 20-21.

[10]    Defendants' reliance on <u>Barrett v. Southern Conn. Gas Co.</u>, 172 Conn. 362, 374 A.2d 1051 (1977) is misplaced.  First, that case was decided on summary judgment, not on a motion to dismiss.  Second, the plaintiff in <u>Barrett</u> had brought repeated administrative proceedings against the corporation prior to asserting his derivative claim.  <u>Id.</u> at 367-68, 374 A.2d at 1054-55.  The court thus reasonably feared that the derivative action was merely "an attempt to open still another front" in his campaign against the corporation.  <u>Id.</u> at 377 (quotation omitted).  Moreover, Barrett sought exactly the same relief, on the exactly the same facts, in exactly the same amount in his derivative and direct claims, suggesting that the wrongs complained of were one and

The Amended Complaint contains not one allegation suggesting any ill will by the Franks towards any shareholders. To the contrary, the Franks have demonstrated a willingness to expend their own effort and money in protecting the Corporation against those who are harming it by engaging in improper, self-enriching conduct. Because nothing in the Amended Complaint hints at any animosity towards shareholders, the eighth factor of the <u>Fink</u> analysis cannot serve to bar the Franks' standing here.

### 5.    The Individual Defendants Have Acted to Obscure the Magnitude of Their Self-Interested Conduct from Shareholders.

The Defendants suggest, without any support from the Amended Complaint or otherwise, that other shareholders do not support the derivative action. Reflexite's Br. at 13. Even if this unsubstantiated factual assertion could somehow be considered on this motion to dismiss, it should be rejected. As the Amended Complaint alleges, the Defendants have failed to provide timely and complete information concerning their breaches of fiduciary duties and self-interested transactions. <u>See, e.g.,</u> Am. Compl. ¶ 74. The Defendants argument that the shareholders support their conduct is unfounded as the shareholders have not been provided adequate information about that conduct. The Amended Complaint is supported by one of the largest shareholders of Reflexite representing over 10% of outstanding shares of Reflexite and an even higher percentage of the shares when the Defendants' shares are not considered. Thus, the fourth factor in the <u>Fink</u> analysis has been satisfied.

---

the same, rather than reflecting separate individual and corporate injuries. 172 Conn. at 374-75, 374 A.2d at 17-18.

      6.    **Plaintiffs' Attorneys Have Exercised Control Over this Litigation to Assure that Shareholder's Rights Are Fairly and Adequately Represented.**

Finally, Defendants assert that "there is no indication that the attorneys in this action have sufficient control over the litigation to ensure that the interests of all shareholders and the Corporation are properly considered." Reflexite Br. at 16. Of course, there is nothing in the Amended Complaint or elsewhere to suggest that Plaintiffs' counsel has not appropriately controlled this litigation. To the contrary, the diligent efforts of Plaintiffs' counsel are evident in the pleadings and filings with the Court, including a detailed, 114-paragraph Amended Complaint.

* * * *

In short, under each element of the <u>Fink</u> analysis, Plaintiffs have demonstrated that they will provide fair and adequate representation to shareholders and Defendants' motion to dismiss asserting otherwise must fail. The face of the Amended Complaint demonstrates not only that the Franks will "put up a real fight," but that they may be the Reflexite shareholders best situated to do so and possibly the only shareholders with the resources to do so.

      **B.    Jon Frank Has Standing To Bring Action Against Defendants.**

Defendants wrongly contend that Jonathan Frank lacks standing to raise claims against the Corporation or the individual directors because he no longer holds shares in the Corporation in his own name and "has not personally owned Reflexite shares within the three-year limitations period." Reflexite Br. at 7. These arguments have no merit and cannot preclude Mr. Frank from serving as a plaintiff in this action.

17

### 1.    Jon Frank Falls Within the Definition of "Shareholder."

Defendants' first argument fails to address the statutory definition of "shareholder" under Conn. Gen. Stat. § 33-720(2) (2003).  In that statute, the Connecticut Legislature expands the definition of "shareholder" for purposes of derivative lawsuits beyond its common meaning to "include a beneficial owner whose shares are held in a voting trust <u>or held by a nominee on the beneficial owner's behalf.</u>"  Conn. Gen. Stat. § 33-720(2) (2003) (emphasis added).[11]  The underlined language encompasses Mr. Frank, who is the settlor and trustee of the Trust (Am. Compl. ¶ 6).  Thus, by expanding the definition of "shareholder," the Connecticut Legislature has indicated that the scope of standing in derivative claims should not be limited to those who hold title to shares, but should include those with trust-related interests in the shares.

Even if the Legislature had not spoken so clearly, Mr. Frank properly brings all claims asserted in the Amended Complaint on behalf of the Frank Family Trust:  "'The trustees of a fund have a duty to protect it. . . .  They hold legal title to that fund.'"  <u>MMI Investments L.L.C. v. Eastern Co.</u>, 45 Conn. Supp. 101, 121, 701 A.2d 50, 61 (Conn. Super. Ct. 1996) (quoting <u>Palmer v. Hartford Nat'l Bank & Trust Co.</u>, 160 Conn. 415, 425, 279 A.2d 726 (1971)).  Defendants concede that, "[a]s a matter of law, [Mr.,] Frank may . . . pursue fiduciary duty claims against the defendant in his capacity as Trustee. . . ."  Reflexite Br. at 7.[12]  Therefore, Defendants concede that the Amended Complaint survives their motion as the Trust can only act

---

[11]    The statute puts Connecticut in line with other jurisdictions that recognize the right of individuals to bring derivative suits when they have some beneficial or trust-related interest in the shares when the action is commenced.  <u>See, e.g.</u>, <u>Pearce v. Superior Court</u>, 149 Cal. App. 3d 1058, 197 Cal. Rptr. 238 (1983) (finding that a trust beneficiary has standing to sue derivately); <u>Demoulas v. Demoulas Super Mkts., Inc.</u>, 424 Mass. 501, 677 N.E.2d 159 (Mass. 1997) (concluding that the beneficiary of a family trust had standing to sue on behalf of the corporation).

through its Trustee, Jon Frank.  Defendants' motion should be denied.

### 2.    The Statute of Limitations Has Not Expired Because Defendants' Breaches of Their Fiduciary Duties Have Been Continuing.

The statute of limitations does not bar Plaintiffs from asserting breaches of fiduciary duty because the Defendants engaged in a continuing course of wrongful conduct, which they concealed from the Franks, for which is relief sought.

Where a claim is based on a breach of fiduciary duty, the applicable statute of limitation is provided by Connecticut General Statutes § 52-577.  See Decorso v. Watchtower Bible & Tract Society of N. Y., 46 Conn. Supp. 386, 400, 752 A.2d 102, 111 (2000) ("Actions sounding in breach of trust or breach of fiduciary duty are governed by § 52-577."); cf. Lambert v. Stovell, 205 Conn. 1, 4, 529 A.2d 710, 712  (1987) ("The three year provision of § 52-577 is applicable to all tort actions other than those excepted therefrom by § 52-584 or other sections.").  The statute provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."  Conn. Gen. Stat. § 52-577 (2003).  Defendants bear the burden of proving that the limitations period has expired.  See Southern New England Tel. Co. v. Morello, No. CV 960254313S, 1997 WL 297719, at *1 (Conn. Super. Ct. May 27, 1997).

Where a tort is of a continuing nature, however, the statute of limitations will run as long as the tort continues.  Thus, "[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed."  Handler v. Remington Arms Co., 144 Conn. 316, 321, 130 A.2d 793 (1957); Giuletti v. Giuletti, 65 Conn. App. 813, 833, 784 A.2d 905, 925 (2001).  The courts have explained the continuing course of

---

[12]    Plaintiffs do not seek a double recovery here.  Had only the Trust or Jon Frank been named as plaintiffs, Defendants would undoubtedly have argued that the wrong party was asserting the claim.  To avoid this argument, both Jon Frank and the Trust were both named Plaintiffs.

conduct doctrine as follows:

> [I]n order to support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of a breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such wrong . . . .
>
> * * * * *
>
> In sum, "a precondition for the operation of a continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff." Sherwood v. Danbury Hospital, 252 Conn. 193, 204, 746 A.2d 730 (2000). Second, "there must be evidence of a breach of duty that remained in existence after the commission of the original wrong related thereto. . . . That continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct. . . ." (Citations omitted; internal quotation marks omitted.) Id.[] at 204-205.

Id. at 834-35, 784 A.2d 905 (quotation omitted).

In this case, there can be little dispute that the Individual Defendants, the directors of Reflexite, had ongoing fiduciary duties to Reflexite. See, e.g., Pacelli Bros. Transp., Inc. v. Pacelli, 189 Conn. 401, 407, 456 A.2d 325, 329 (1983) (recognizing that officers and directors owe to shareholders a fiduciary duty of the "highest trust").

The Amended Complaint makes clear that the conduct that underlies the derivative claim continued over a course of years, well up to recent times. The Amended Complaint notes self-interested transactions starting in 1998 (Am. Compl. ¶ 42), continuing in 1999 and 2000 (Am Compl. ¶¶ 38-39, 46), and continuing thereafter (Am. Compl. ¶ 55).

In fact, the continuing course of conduct set forth in the Amended Complaint continues to the present day. For example, the Amended Complaint specifically states that the Defendants have enacted policies, currently in place, that constitute a breach of their duties, including an undisclosed "present policy" of the Defendants granting themselves "put" options on all of their shares in Reflexite. Am. Compl. ¶ 40. The pattern of self-dealing continues with existing

20

policies purporting to give the Individual Defendants additional opportunities for self-interested sales of Reflexite shares.

Of course, these allegations are merely the <u>known</u> breaches of fiduciary duties. As the Amended Complaint alleges, the Defendants concealed their misconduct and failed to disclose the full extent of their self-dealing, which <u>itself</u> is a continuing breach of their fiduciary duties. <u>See, e.g.,</u> Am. Compl. ¶¶ 40, 42; <u>see</u> <u>Lapuk v. Simons</u>, No. PJR CV930704542S, 1995 WL 5633, at *14 (Conn. Super. Ct. Hartford Jan. 3, 1995) ("The fiduciary obligation imposes a continuing duty to disclose a prior lack of candor."), <u>aff'd</u>, 41 Conn. App. 750, 677 A.2d 24 (1996); <u>Turecek v. A-Lined Handling Sys., Inc.</u>, No. 27 08 40, 1990 WL 272174, at *7 (Conn. Super. Ct. New Haven Apr. 18, 1990) ("Failure to disclose information important to the interests of the corporation is a breach of the duties of . . . a fiduciary."). Defendants' argument that the claims are time-barred is baseless.

## III. THE PLAINTIFFS HAVE ASSERTED A VALID DIRECT CLAIM FOR BREACH OF FIDUCIARY DUTY.

In addition to the self-dealing and other misconduct related in the derivative claim, the Amended Complaint describes what happened when the Franks began to inquire about the Defendants' wrongful actions: the Individual Defendants breached their direct fiduciary duties to the Franks by discriminating against them, treating them unfairly and denying them the rights made available to other shareholders. This is more than sufficient under Connecticut law to "state a claim". <u>See</u> <u>Taurus Advisory Group, Inc. v. Sector Mgmts., Inc.</u>, No. CV 960150830, 1997 Conn. Super. LEXIS 1181 at *4 (Conn. Super. Ct. Stamford May 6, 1997) ("[T]o set out an individual action, the plaintiff must allege either an injury which is separate and distinct from that suffered by other shareholders, or a wrong involving a contractual right of a shareholder . . .

which exists independently of any right of the corporation.") (quoting <u>Kramer v. Western Pac. Indus., Inc.</u>, 546 A.2d 348, 351 (Del. 1988)).

### A.    The Allegations in the Amended Complaint.

Plaintiffs allege that Defendants engaged in misconduct that caused injury to the Franks, distinct and separate from the injury the Defendants caused to the corporation generally. Specifically, the Defendants singled out the Franks and sought to deny them rights that were exercised by other shareholders. For example, in 2002, when other shareholders were permitted to participate in a share buyback program, the Defendants informed the Franks that the program was "postponed" while, in fact, the program was proceeding. Am. Compl. ¶ 55. This followed an earlier pattern of similar misconduct. <u>Id.</u> at ¶ 46. Thus, while the Defendants caused Reflexite to repurchase shares from other shareholders, the Franks were singled out and excluded from these programs. <u>Id.</u> at ¶¶ 55, 56. The Amended Complaint makes clear that the Defendants acted unfairly in discriminating against the Franks and denying them their rights as shareholders. <u>Id.</u> at ¶ 89.

The Amended Complaint also makes clear that the Franks were denied information about Reflexite that was made available to other shareholders. In addition to denying the Franks information about the buyback programs the Franks were also denied basic corporate information and access to the book and records of the corporation as is their right under Connecticut law (<u>see</u> Conn. Gen. Stat. § 33-946). Am. Compl. ¶ 58, 59, 89. The Defendants' mistreatment of the Franks stemmed from malice towards the Franks, and not from any arguably legitimate purpose. <u>See e.g.</u>, Am. Compl. ¶ 57.

### B.    The Fiduciary Duties of Defendants Under Connecticut Law.

The allegations of the Amended Complaint more than suffice to state a claim for breach

of fiduciary duty under Connecticut law.  Under longstanding Connecticut law, a director of a corporation owes fiduciaries duties to the shareholders of the corporation.  See Arrigoni v. Adorno, 129 Conn. 673, 681, 31 A.2d. 32, 35 (1943).  A director "occupies a position of the highest trust and therefore he is bound to use the utmost good faith and fair dealing in all his relationships with the corporation."  Katz Corp. v. T.H. Canty & Co., 168 Conn. 201, 207, 362 A. 2d 975, 979 (1975) (emphasis added).  "'Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.'"  Pacelli Bros., 189 Conn. at 407 (quoting Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928)).

The requirement that a corporate director act in good faith is codified at Conn. Gen. Stat. § 33-756, which provides in relevant part that:  "A director shall discharge his duties as a director, including his duties as a member of a committee: (1) In good faith; (2) with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) in a manner he reasonably believes to be in the best interests of the corporation."  Conn. Gen. Stat. § 33-756 (2003).  "[T]he dealings of a director with the corporation are subjected to rigorous scrutiny and must be shown to be in good faith and contain inherent fairness to the corporation."  Osborne v. Locke Steel Chain Co., 153 Conn. 527, 534, 218 A.2d 526, 534 (1966).

The Amended Complaint alleges that the Defendants did not act in "good faith" because they acted unfairly and with malice towards the Franks.  Under Connecticut law, treating a shareholder oppressively and denying that shareholder the "benefits [it] was entitled to receive as a shareholder" states a claim for breach of fiduciary duty.  Stone v. R.E.A.L. Healthcare, No. CV 98-0414972, 1999 Conn. Super. LEXIS 2016, at *1-2 (Conn. Super. Ct. New Haven July 27,

1999).[13]   The Connecticut courts are thus in line with case law elsewhere that provides that discriminatory treatment of one shareholder or a group of shareholders is a breach of the fiduciary duties of the directors.

For example, in Metropolitan Life Ins. Co. v. Aramark Corp., Civ.A.No. 16142, 16170 & 16171, 1998 Del. Ch. LEXIS 70 (Feb. 5, 1998), the Delaware Chancery Court enjoined a proposed transaction that would have cashed out the positions of only one class of shareholders. The court reasoned that the directors' fiduciary duties required them to treat shareholders fairly, and that the preferential treatment of one class of shareholders was a breach of those duties.  See also Cooke v. Fresh Express Foods Corp., 7 P.3d 717, 721-722 (Or. 2000) (affirming finding of breach of fiduciary duties from conduct that denied a shareholder "the benefits of participating in the corporation") (quotation omitted); Jones v. H.F. Ahmanson & Co., 1 Cal. 3d 93, 108-09, 460 P.2d 464, 471-72 (1969) (excluding minority shareholders from a share exchange constituted a breach of fiduciary duties).[14]

New York courts also have held that a board of directors must "treat its shareholders fairly and evenly, and must discharge that duty with good faith and scrupulous honesty.  Any departure from uniform treatment of shareholders must be in furtherance of a justifiable and bona fide business purpose." Smolinsky v. 46 Rampasture Owners, Inc., 230 A.D. 2d 620, 622, 646 N.Y.S.2d 110, 112 (N.Y. App. Div. 1996) (citations omitted); see also Aronson v. Crane, 145 A.D. 2d 455, 456, 535 N.Y.S.2d 417, 418 (N.Y. App. Div. 1988) ("A prima facie case of unequal stockholder treatment is made out where there is a departure from precisely uniform

---

[13]    The Connecticut General Statutes indicate that shareholders may not arbitrarily be singled out for worse treatment than others.  See, e.g., Conn. Gen. Stat. § 33-705 (2003) (providing that each share is entitled to one vote).

[14]    Defendants make reference to Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 353 N.E.2d 657 (1976), which supports Plaintiffs' position.  That case required that the party owing a fiduciary duty advance a

treatment of the stockholders and a resulting violation of [the directors'] fiduciary obligation to treat stockholders fairly and evenly."); <u>Broome v. Biondi</u>, 17 F. Supp. 2d 211 (S.D.N.Y. 1997).

Defendants erroneously contend that <u>Nixon v. Blackwell</u>, 626 A.2d 1366 (Del. 1993) found it permissible to discriminate against one group of shareholders.  Instead, <u>Nixon</u> held that a company's Employee Stock Option Plan passed muster under the "entire fairness" standard, even though non-employee shareholders were not eligible to participate.  <u>Id.</u> at 1377-79.  The court found it reasonable and fair to the corporation as a whole to provide such a benefit to employees, even though the practice departed from strict equality of all shareholders.

<u>Nixon</u> and related cases do <u>not</u> hold that corporate directors may single shareholders out for mistreatment, or bar them from selling their shares when other shareholders are provided such opportunities.  Such overtly discriminatory activity is fair neither to the shareholder nor to the corporation, and constitutes a breach of the directors' fiduciary duties.  <u>Nixon</u> and the related cases hold that the corporation, when pursuing legitimate business interests such as an ESOP program, may deviate from treating all shareholders as strictly equal.  But while directors may have a legitimate basis not to treat all shareholders equally in such circumstances, nothing in <u>Nixon</u> or any other precedent suggests that they may deviate from treating all shareholders fairly without justification.

The Amended Complaint alleges that no legitimate business interest was pursued by the Defendants' overt discrimination and unfairness to the Franks.  Indeed, it is hard to imagine how a stock repurchase program made available to all but one of the shareholders could possibly serve a legitimate function.  And even if such a function could be imagined, what purpose could be served by failing to give basic notice to the singled out shareholder of the corporation's

---

legitimate business purpose for its conduct.  <u>Id.</u> at 663.  Under <u>Wilkes</u>, the court then exercises its judgment as to whether the stated purpose could be accomplished through a "less harmful alternative."  <u>Id.</u>

decision to offer to buy back a portion of all other shareholders' shares?  The cases cited by Defendants are inapposite as they presume that decisions are made with a legitimate business purpose, considered in good faith by the directors, that are in the best interests of the corporation—which is refuted by the Amended Complaint.

This claim is not about an "equal opportunity for liquidity," as Defendants suggest. Reflexite Br. at 22.  The question posed here is whether a board of directors, motivated by ill will, can single out a shareholder and deny that shareholder the rights and information made available to all other shareholders.  No conception of the fiduciary duties of directors would permit such grossly unfair conduct.  The Amended Complaint makes clear that the directors have not acted with the utmost good faith.

### C.    The Business Judgment Rule is Wholly Inapplicable.

Defendants' attempt to invoke the business judgment rule (Reflexite Br. at 25) puts the cart before the horse.  It is settled law that the business judgment rule is merely a presumption that applies only in the presence of certain factual preconditions that the Complaint has alleged are absent here.  Specifically, "the business judgment rule does not protect actions taken in bad faith."  In re Croton River Club, 52 F.3d 41, 45 (2$^d$ Cir. 1995); see also In re General Motors Class E Stock Buyout Sec. Litig., 694 F. Supp. 1119, 1132 (D. Del. 1988) (allegations of bad faith may "prevent the application of the business judgment rule").

The Amended Complaint unambiguously alleges that the Defendants' breaches of fiduciary duties toward the Franks consisted of discriminatory conduct motivated by bad faith. As noted above, the Franks have alleged that the Defendants, in bad faith, excluded the Franks from share buyback programs made available to all shareholders.  Am. Compl. ¶ 55.  The Amended Complaint specifically alleges that the Defendants were motivated by malice and

expressed ill will towards the Franks. Id. at ¶ 57. Defendants' bad faith can also be inferred from their otherwise inexplicable discriminatory conduct. The business judgment rule does not apply where, as here the "decision is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." In re J.P. Stevens & Co. Shareholders Litig., 542 A.2d 770, 780-81 (Del. Ch. 1988).

Moreover, the Amended Complaint alleges that the Defendants denied the Franks information concerning the challenged actions. Am. Compl. at ¶¶ 55, 56, 89. Bad faith is "evidenced by a showing that directors 'knowingly or deliberately withheld information they knew to be material for the purpose of misleading shareholders.'" Potter v. Pohlad, 560 N.W.2d 389, 395 (Minn. Ct. App. 1997) (quoting Emerald Partners v. Berlin, No. 419, 1995 Del. Ch. LEXIS 128 (Sept. 22, 1995)).[15]

In sum, the Amended Complaint alleges facts that preclude the application of the business judgment rule. The Defendants are not entitled to a presumption that their decisions were in good faith in light of an Amended Complaint that alleges precisely the opposite.

## IV. PLAINTIFFS HAVE STATED A VALID CLAIM FOR BREACH OF CONTRACT BY DEFENDANT ROWLAND.

The Amended Complaint states a viable claim for breach of contract. The Amended Complaint alleges that William Rowland breached a January 5, 1979 Agreement and a Shareholders Agreement by failing to afford the Franks the same opportunities to sell their shares that were enjoyed by Mr. Rowland.

The January 5, 1979 Agreement that Mr. Rowland signed provides that:

---

[15]    Moreover, "[t]he business judgment rule does not protect conduct by directors who have an interest or who lack independence from directors who have an interest with respect to challenged conduct." 1 Dennis J. Block, Nancy Barton and Steven Radin, THE BUSINESS JUDGMENT RULE 42 (5th ed. 1998).

> In connection with your proposed purchase of Reflexite Corporation stock, we agree to keep you informed about any possible future sale of our stock in the company.
>
> Before actually selling stock now owned by us that would result in a transfer of voting control to a third party, we will use all efforts that are reasonable to assure you the opportunity of selling your shares at the same price per share being offered to us.

This Agreement induced Mr. Frank to invest in Reflexite and become a shareholder of the company in the first place.  Am. Compl. ¶ 31.

The Amended Complaint alleges that Mr. Rowland breached this contract by selling enormous quantities of his stock without timely informing the Franks and without making any efforts to provide the Franks with the opportunity to sell their shares at the same price.  See Am. Compl., ¶ 42 ("[I]n January 1998, Reflexite spent some $8.1 million dollars to purchase shares from William Rowland and his family trust."); Id. at ¶ 45 ("In 1998, the year in which Reflexite consummated its enormous $8.1 million 277,000 share buyback from Mr. Rowland, it made no offer to purchase any shares from the Franks."); Id. at ¶ 55 ("[I]n July of 2002, the Franks were informed that the buyback program was 'postponed' but were never informed of its reinstatement in October, and thus were denied the opportunity to participate in the program."); Id. at ¶ 98 ("Upon information and belief, William Rowland breached the January 5, 1979 Agreement and the Shareholders Agreement by failing to make all reasonable efforts to obtain comparable opportunities for Jon Frank and the Franks to sell their shares of Reflexite stock.").

In addition to breaching the January 5, 1979 Agreement, Mr. Rowland also breached the Shareholders' Agreement.  The Shareholders' Agreement provides that if a shareholder wishes to sell shares to Reflexite, the shareholder must provide notice "to the other Stockholders." Shareholders Agreement at ¶ 2.  If, within ten days of such notice, Reflexite has not accepted the

offer in full, each other shareholder owning 5% or more of Reflexite's shares will be entitled to purchase a proportionate share of the offered shares. Id.

The Amended Complaint states a claim for breach of the Shareholders' Agreement. Mr. Rowland offered for sale and sold an enormous quantity of shares. Am. Compl. ¶ 42. The Franks were not given prior notice of this sale. Id. at ¶¶ 42, 88. The Franks own more than 10% of the shares of Reflexite. Id. at ¶¶ 29, 31.

In short, the Franks have alleged all of the elements of a breach of contract under Connecticut law: "(1) the formation of an agreement: (2) performance by one party; (3) breach of the agreement by the other party and (4) damages." Letizia v. Karam, No. CV020281711S, 2003 WL 352913, at *3 (Conn. Super. Ct. New Haven Jan. 16, 2003) (citation omitted). Each of these elements has been alleged and thus the Franks are entitled to proceed with their claim of breach of contract.

### A. Defendant Rowland's Argument That He Did Not Breach the Agreements is Untenable.

Defendant Rowland errs in arguing that he did not breach the January 5, 1979 Agreement because the sale was not to a "third party" or did not transfer "voting control." Memorandum of Law in Support of Defendant Rowland's Motion to Dismiss Amended Complaint at 17. Reflexite is not a shareholder and is not a party to the January 5, 1979 Agreement (the "Agreement"). It is therefore a "third party" for purposes of the Agreement. Moreover, the Amended Complaint alleges that Mr. Rowland's shares were transferred to the Corporation. Mr. Rowland's assertion that these shares were no longer entitled to vote upon transfer to Reflexite is irrelevant.

Defendant Rowland's arguments as to the Shareholders' Agreement are similarly lacking. Mr. Rowland looks only to paragraph 1 of the Shareholders' Agreement, which does permit a

sale of shares to the Corporation, but fails to take into account paragraph 2, which requires notice to shareholders such as the Franks of Mr. Rowland's sale of shares and an opportunity to respond. Mr. Rowland breached the obligations set forth in paragraph 2 of the Shareholders' Agreement by failing to provide the requisite written notice or opportunity to participate provided for therein.[16]

### B.    The Plaintiffs Have Standing to Enforce the Agreements.

Defendant Rowland wrongly asserts that the Plaintiffs' contract claim may not be brought because the Frank Family 1996 Trust did not execute the Agreement, and because Jon Frank transferred his shares to the Trust. After Jon Frank transferred his shares to the Trust he continued to act as the Trustee, which held the shares for the benefit of the Frank family. Thus, while the shares nominally changed hands, they effectively remained within the control of Jon Frank. The party-in-interest of the shares – which was the subject matter of the January 5, 1979 Agreement and Shareholders' Agreement – is the Trust.

While Defendant Rowland's argument fails to accommodate the economic reality of the Franks' share ownership, it also fails as a matter of Connecticut contract law. Defendant Rowland's argument requires that the Agreement's use of the term "you" refer to Jon Frank and only Jon Frank. But this reading is inconsistent with the purpose of the contract, which was to provide the holder of the shares to be sold (initially Jon Frank, but later the Trust) with the right to sell those shares if Rowland and the other founders of Reflexite sell their shares. As the Connecticut Supreme Court has ruled:

---

[16]    Defendant Rowland's contention that the Shareholders' Agreement somehow supercedes the January 5, 1979 Agreement finds no support in either contract. Paragraph 11 of the Shareholders' Agreement, which Mr. Rowland cites, does not purport to supercede all prior agreements. It is a simple integration clause, confirming that the parties wrote in the Shareholders' Agreement all of the language that constitutes that particular contract. Nothing in the Shareholders' Agreement negates the separate January 5, 1979 Agreement, which was in any event executed by different parties than those that executed the Shareholders' Agreement.

> "[A] contract must be construed to effectuate the intent of the contracting parties .
> . . ." In ascertaining intent, "we consider not only the language used in the
> contract, but also the circumstances surrounding the contract, the motives of the
> parties and the purposes which they sought to accomplish."

Barnard v. Barnard, 214 Conn. 99, 109-10, 570 A.2d 690, 696 (1990)) (quoting Sturman v.

Stocha, 191 Conn. 1, 10, 463 A.2d 527 (1983) and Connecticut Co. v. Division 425, 147 Conn.

608, 616, 164 A.2d 413 (1960)) (internal citations omitted).  In other words, the Agreement was

a guarantee that if the founders got out, so could the Franks.  That Jon Frank placed his shares in

trust for his family does not alter what the parties clearly sought to accomplish in the Agreement.

Defendant Rowland's contention would have this Court ignore what the parties sought to

accomplish by the Agreement and focus on a single word of the contract out of its context.  See

Moore v. Serafin, 163 Conn. 1, 10, 301 A.2d 238, 243 (1972) ("The intention of the parties,

gathered from their words, is gathered not by reading a single clause of the [contract] but, as we

have done, by reading its entire context.").

　　　　In short, the Franks have demonstrated that Mr. Rowland breached the terms of the

January 5, 1979 Agreement and the Shareholders Agreement.  The motion to dismiss should be

denied.

## V.　PLAINTIFFS HAVE STATED A VALID CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS.

　　　　Plaintiffs have stated a claim for tortious interference with contractual relations.  Under

Connecticut law, "[t]he necessary elements of a cause of action in tortious interference with

business relations are the existence of a business relationship, an intentional and improper

interference with that relationship and a resulting loss of benefits of the relationship."  Holler v.

Buckley Broad. Corp., 47 Conn. App. 764, 768-69, 706 A.2d 1379, 1382 (1998).  "A plaintiff

states an actionable cause [for tortious interference with a contract] by alleging that the defendant

intentionally interfered with a business or contractual relationship of the plaintiff and that the plaintiff, as a result, has suffered an actual loss." Id. at 769 (quotation omitted); see also Rumbin v. Baez, 52 Conn. App. 487, 492, 727 A.2d 744, 747 (1999).

These elements are precisely what the Amended Complaint alleges. The Defendants were aware of the contractual relationship between the Franks and William Rowland as embodied in the January 5, 1979 Agreement and the Shareholders Agreement. Am. Compl. ¶ 109. The Defendants nonetheless willfully and maliciously acted so as to interfere with the Franks' contractual rights and to deprive the Franks the benefit of those rights. Id. at ¶¶ 110, 111. As a result, the Franks suffered damages. Id. at ¶ 112.

### A.    The Franks' Claim for Tortious Interference is Not Time-Barred.

The Franks' claim for tortious interference is not barred by the statute of limitations. Defendants labor under the misapprehension that the statute of limitations should run from the time Mr. Rowland sold his shares in 1998. But the breach of contract was not that he sold his shares, but rather that after doing so he failed to make efforts to permit the Franks to sell their shares and he failed to provide notice and opportunity to the Franks to respond. In other words, the breach and corresponding tort occurred when Mr. Rowland failed to make "all efforts that are reasonable" to provide the Franks with opportunities to sell their shares on comparable terms.

As the Amended Complaint alleges, Mr. Rowland failed to make efforts on behalf of the Franks at any time thereafter, including during the summer 2002 buyback period where Reflexite was purchasing other shareholders' stock. Am. Compl. ¶ 55. Although there were various instances in which Mr. Rowland and the other Defendants made efforts on behalf of other shareholders to permit them to sell shares, on each such occasion the effort required by the Agreement was not made.

Even if the statute of limitations were to run from the date on which Mr. Rowland purchased his shares, the claim would not be time-barred because the statute of limitations is tolled by Defendants' ongoing tortious conduct.  As with claims for breach of fiduciary duty, the limitation period for raising claims to pursue redress for tortious interference with contract is three years.  Conn. Gen. Stat. § 52-577 (2003) ("No action in tort shall be brought but within three years from the date of the act or omission complained of."); Collum v. Chapin, 40 Conn. App. 449, 671 A.2d 1329 (1996);  Lambert v. Stovell, 205 Conn. 1, 4, 529 A.2d 710, 712  (1987) ("The three year provision of § 52-577 is applicable to all tort actions other than those excepted therefrom by § 52-584 or other sections.").   The Connecticut Courts have found that the statute of limitations set forth in Section 52-577 may be tolled by the application of the continuous course of conduct doctrine.  See Blanchette v. Barrett, 229 Conn. 256, 640 A.2d 74 (1994); Shuster v. Buckley, 5 Conn. App. 473, 478, 500 A.2d 240, 243 (1985); Levine v. Levine, No. CV 960537984S, 1998 WL 258192 (Conn. Super. Ct. May 11, 1998) (refusing to grant summary judgment on statute of limitations grounds after finding that a genuine issue of material fact existed whether officers and directors had engaged in a continuous course of wrongful conduct by committing corporate waste from 1984 to 1996).

The Amended Complaint alleges that the Defendants engaged in a continuing pattern of thwarting the Franks' contractual rights.  When Mr. Rowland sold his shares in 1998, no efforts were made to permit the Franks to sell their shares, as the contracts required.  Am. Compl. ¶ 45. This course of conduct continued in 1999, when the Franks were denied the opportunity to participate in a buyback program available to other shareholders (Am. Compl. ¶ 46), and in July 2002 when the Franks were again denied this opportunity.  Id. at ¶ 55.  The Defendants also continued this course of conduct by failing to provide basic information to the Franks about

opportunities to sell shares, <u>Id.</u> at ¶ 56, and by changing the formula of the buyback programs so as to lessen the Franks' opportunities to sell shares, <u>Id.</u> at ¶ 47.

The Individual Defendants continue to this day to interfere with Mr. Frank's contractual rights under the Agreement. The Amended Complaint avers that "Defendants have caused Reflexite to pursue a present policy in which all options issued to directors or managers, [including Defendant Rowland], are accompanied by a put, permitting the recipient to require Reflexite to repurchase the shares. On information and belief, this practice was not disclosed to shareholders." Am. Compl. ¶ 40. Thus, even in the present, the Defendants continue to interfere with and deny the Franks' contractual rights.

These facts, as pled in the Amended Complaint, evidence a continuous pattern of tortious interference with the provisions of the January 5, 1979 Agreement and Shareholder Agreement by Defendants that has continued to the present. Therefore, under the continuing course of conduct doctrine, the statute of limitations has been tolled and may not serve to as a bar to Plaintiffs' action for tortious interference with contract.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' respectfully request that this Court deny Defendants' motions to dismiss in their entirety and grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

H. JONATHAN FRANK and
1996 FRANK FAMILY TRUST,

_____
Michael G. Considine (ct 16023)
Terence J. Gallagher (ct 22415)
DAY, BERRY & HOWARD LLP
One Canterbury Green
Stamford, CT  06901
(203) 977-7300  phone
(203) 977-7301  fax

-and-

Richard A. Strassberg (ct 24905)
Jeffrey A. Simes (ct 24906)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
(212) 813-8800

Their Attorneys

35

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via overnight courier, postage prepaid, this 16th day of December, 2003, to:

James T. Cowdery, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555


Edward F. Spinella, Esq.
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103
(860) 240-1045


James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
Phone:  (203) 330-2000


Craig A. Raabe, Esq.
Jason M. Kuselias, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8299


_____
Terence J. Gallagher