UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

H. JONATHAN FRANK, and FRANK FAMILY
1996 TRUST (on behalf of themselves and
REFLEXITE CORPORATION)                         CIVIL ACTION NO.:  3:03cv1014 (JBA)

                    Plaintiffs

        V.

ARTHUR LOVETERE, CECIL URSPRUNG,
LOUIS J. BACCEI, WORTH LOOMIS,
THEODORE PATLOVICH, STEPHEN J.
RAFFAY, WILLIAM P. ROWLAND, PETER EIO
(individually and in their capacity as members of
the Board of Directors of Reflexite Corporation)
and REFLEXITE CORPORATION

                    Defendants         MAY 28, 2004


**MEMORANDUM OF LAW IN SUPPORT OF
REFLEXITE'S MOTION TO DISMISS**


**I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On February 10, 2003, the Frank Family 1996 Trust and H. Jonathan Frank (collectively,

the "Franks" or "Plaintiffs")[1] issued a demand pursuant to Conn. Gen. Stat. § 33-722

("Demand"), alleging that the Reflexite Corporation ("Reflexite" or the "Corporation") had

engaged in self-dealing transactions in redeeming shares of its directors and other insiders while

unlawfully denying the Franks similar opportunities to obtain liquidity for their shares.  (Franks'

---

[1]        In its previously filed motion to dismiss pending before the Court, Reflexite has challenged the standing of
H. Jonathan Frank to maintain any cause of action against the Corporation as he is not a shareholder.  However, for
the overall purposes of the motions to dismiss, Reflexite employs the collective use of the "Franks" or "Plaintiffs"
for simplicity.

Demand Letter dated February 10, 2003 attached hereto as Exhibit A.)  In response to the Demand, the Corporation formed a special litigation committee ("SLC") that retained well-respected, independent, outside counsel to advise it concerning its responsibilities and to assist it in carrying out its duties with respect to the Demand.  Following a detailed and expensive investigation in accordance with Connecticut statutes, the SLC recommended, and the Board of Directors of the Corporation ("Board) subsequently resolved, that the Demand should be rejected and that litigation was not in the best interest of the Corporation.  (See Report Of The Special Litigation Committee Of The Board Of Directors Of Reflexite Corporation dated April 28, 2004 attached hereto as Exhibit B, hereinafter "SLC Report")(documents listed in the document log of the SLC Report have not been attached).)  Dissatisfied with the decision, Plaintiffs brought the instant derivative action and related claims against eight individual board members and the Corporation, purportedly on behalf of the Corporation.

The Corporation then requested permission to file a motion to dismiss.  Following a pre-filing conference with the Court, on or about November 7, 2003, the Frank's filed an amended complaint (hereinafter "Amended Complaint" or "Am. Compl.").  The Amended Complaint recites a history of H. Jonathan Frank's involvement with Reflexite and his alleged personal claims of unfair treatment.  The Amended Complaint contains the following six counts: Count One, which is brought as a derivative action on behalf of Reflexite, alleging that the defendants breached their fiduciary duties to Plaintiffs and to Reflexite; Count Two, styled as a "direct action" but alleging, like Count One, that the defendants breached their fiduciary duties to Plaintiffs; Count Three, alleging that defendant William P. Rowland breached a contract with Plaintiffs; Count Four, claiming promissory estoppel against defendant Rowland; Count Five

- 2 -

alleging that the defendants tortiously interfered with Plaintiffs' contractual expectations; and

Count Six, demanding, as purported shareholders, an accounting of Reflexite's assets.  The

Amended Complaint seeks compensatory and punitive damages for and from Reflexite, as well

as injunctive relief.

## II.     SUMMARY OF GROUNDS FOR DISMISSAL

Pursuant to the scheduling order of the court, on or about November 26, 2003, Reflexite

filed a motion to dismiss the allegations against it on the grounds that, among others, Plaintiffs

lacked standing to maintain their claims.  Further pursuant to the scheduling order, Reflexite now

moves to dismiss the allegations against it on the basis that dismissal is required under Conn.

Gen. Stat. § 33-724.[2]

## III.    ARGUMENT

### A.     Conn. Gen. Stat § 33-724 Mandates Dismissal.

A basic tenet of corporate governance is that decisions of a corporation rest with the

board of directors, not with a shareholder.  Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101

(1991); Spiegel v. Buntrock, 571 A.2d 767, 772-773 (Del. 1990).  The principle of deference to

corporate decision making known as the business judgment rule has been described by the

Connecticut Supreme Court as follows:

> The business judgment doctrine is a rule of law that insulates business decisions
> from most forms of review.  Courts recognize that managers have both better
> information and better incentives than they.  . . .  The business judgment rule
> expresses a sensible policy of judicial noninterference with business decisions

---

[2]     Courts have noted that a motion to terminate a derivative suit is not definitively classified as a motion to
dismiss pursuant to Rule 12(b) or a motion for summary judgment under Rule 56.  See, e.g., Strugo v. Bassini, 112
F.Supp.2d 355, 361 (S.D.N.Y. 2000) (citations omitted).  This is an academic issue in this proceeding, however,
because (1) there is clear statute that provides for dismissal, (2) the court allowed discovery on the SLC and (3) the
court indicated that the motion will be decided after a hearing is held.

made in circumstances free from serious conflicts of interest between management, which makes the decisions, and the corporation's shareholders. . . . Shareholders challenging the wisdom of a business decision taken by management must overcome the business judgment rule. . . . For efficiency reasons, corporate decision makers should be permitted to act decisively and with relative freedom from a judge's or jury's subsequent second questioning.

Rosenfield v. Metals Selling Corp., 229 Conn. 771, 786-787 (1994) (internal quotation marks and citations omitted).

The Delaware Supreme Court has explained the rule more fully as follows:

Our starting point is the fundamental principle . . . that the business and affairs of a corporation are managed by or under the direction of its board of directors. In exercising these powers, directors are charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders.

The business judgment rule is an extension of these basic principles. The rule operates to preclude a court from imposing itself unreasonably on the business and affairs of a corporation. . . . The rule operates as both a procedural guide for litigants and a substantive rule of law. As a rule of evidence, it creates a presumption that in making a business decision, the directors of a corporation acted on an informed basis, i.e., with due care, in good faith and in the honest belief that the action taken was in the best interest of the company. The presumption initially attaches to a director-approved transaction within a board's conferred or apparent authority in the absence of any evidence of fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment.

The rule posits a powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be attributed to any rational business purpose. Thus, a shareholder plaintiff challenging a board decision has the burden at the outset to rebut the rule's presumption. To rebut the rule, a shareholder plaintiff assumes the burden of providing evidence that directors, in reaching their challenged decision, breached any one of the triads of their fiduciary duty – good faith, loyalty or due care. If a shareholder plaintiff fails to meet this evidentiary burden, the business judgment rule attaches to protect corporate officers and directors and the decisions they make, and our courts will not second-guess these business judgments. If the rule is rebutted, the burden shifts to the defendant directors, the proponents of the challenged transaction, to prove to the trier of fact the entire fairness of the transaction to the shareholder

- 4 -

plaintiff.

Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 360-61 (Del. 1993) (internal quotation marks

and citations omitted).

The business judgment rule has been codified in the Connecticut statutes as follows:

> A director shall discharge his duties as a director . . . (1) In good faith; (2) with
> the care an ordinarily prudent person in a like position would exercise under
> similar circumstances; and (3) in a manner he reasonably believes to be in the best
> interests of the corporation. . . .  A director is not liable for any action taken as a
> director . . . if he performed the duties of his office in compliance with this
> section.

Conn. Gen. Stat. § 33-756.

Consistent with the business judgment rule, the derivative claims statutes are premised

upon allowing the corporation to act through its board of directors.  See Kaplan v. Peat,

Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988).  It is for this reason that a shareholder

plaintiff must make demand upon the corporation before instituting suit, Conn. Gen. Stat. § 33-

722; that an action is automatically stayed when a suit is commenced in order to allow the

corporate governing body to investigate the allegations of a previously unasserted demand,

Conn. Gen. Stat. § 33-723; and, most importantly, that once an investigation has been undertaken

by a board of directors or a subcommittee thereof, and it recommends that the action not proceed,

the court is bound to dismiss that action.  Conn. Gen. Stat. § 33-724(a).

More specifically, and as directly applicable here, Conn. Gen. Stat § 33-724(a) states that

"[a] derivative proceeding shall be dismissed by the court on motion by the corporation if one of

the groups specified in subsection (b) or (f) of this section has determined in good faith after

conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the

Case 3:03-cv-01014-JBA    Document 69    Filed 05/28/2004    Page 6 of 14

derivative proceeding is not in the best interests of the corporation." (emphasis added). Conn.

Gen. Stat § 33-724(b) states in pertinent part "the determination in subsection (a) of this section

shall be made by: (1) a majority vote of independent directors present at a meeting of the board

of directors if the independent directors constitute a quorum; or (2) a majority vote of a

committee consisting of two or more independent directors appointed by a majority vote of

independent directors present at a meeting of the board of directors, whether or not such

independent directors constituted a quorum." Unless there is proof that a special litigation

committee's members were conflicted, or failed to conduct the investigation in good faith, the

court will respect a special litigation committee's decision not to pursue a derivative claim and

the committee' decision is not subject to judicial review. See Speigel, 571 A.2d at 77-778 (citing

Zapata Corp. v. Maldanado, 430 A.2d 779, 784-787 (Del. 1981)).[3]

The SLC in this case was comprised of entirely independent Board members who made a

good faith determination after a reasonable inquiry with the assistance of reputable counsel that

Plaintiffs' demanded lawsuit was not in the best interests of the Corporation. The Board adopted

the SLC's recommendation of dismissal and thus, pursuant to the statute, the court "shall"

dismiss Plaintiffs' claims.

       **1.    The SLC's Good Faith And Reasonable Determination Must Be Respected And Followed.**

Conn. Gen. Stat. § 33-724(e) specifically states that the plaintiff in a derivative

---

[3]    Plaintiffs have previously referenced Joy v. North, 692 F.2d 880 (2d Cir. 1982), in their opposition to Reflexite's Motion to Stay Discovery and for the proposition that the court can review the ultimate decision of a special litigation committee. However, this holding of Joy was specifically overruled by Conn. Gen. Stat. § 33-724 and is not the applicable standard in this case. See Finley v. Superior Court for the County of Orange, 80 Cal. App. 4th 1552, 1159 (Cal. Ct. App. 2000) (stating Joy v. North overruled by Conn. Gen. Stat. § 33-724). Thus, the business judgment rule fully affords deference to a special litigation committee.

proceeding has the burden of proving that there has not been a good faith determination after a

reasonable inquiry.[4]  The good faith standard has been described as proof that the investigation

has been so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted

as to constitute a pretext or sham, giving rise to questions of fraud.  See Aurebach v. Bennett, 47

N.Y. 2d 619, 634-635 (1979).

Plaintiffs made the Demand upon Reflexite on February 10, 2003.  Consistent with its

obligations, the Corporation then empanelled a committee of independent directors, and retained

Cummings & Lockwood as counsel to the SLC.  That body submitted questions and document

requests to the Corporation, requested all relevant information from the Franks' counsel,

reviewed numerous documents that are listed in a document log to the SLC report, interviewed

six witnesses (including H. Jonathan Frank), reviewed the applicable laws relating to the claims

made in the Demand, held four (4) meetings[5] and produced a 17-page report analyzing each of

the claims that Plaintiffs made in the Demand.  (See SLC Report at 13.)  The estimated fees to be

paid to Cummings & Lockwood for its role as counsel to the SLC were 75,000 - $90,000.[6]

(Deposition of Peter Eio at 40 (hereinafter "Eio Depo.") (cited portions attached hereto as

Exhibit C).)  The investigation was thorough, comprehensive and undertaken in good faith.  The

SLC concluded in its report that there is no merit to Plaintiffs' claims and further concluded that

the commencement of the requested suit would not be in the best interests of the Corporation.

(See SLC Report at 17.)

---

[4]      Pursuant to Conn. Gen. Stat. § 33-724(e), Plaintiffs assume the burden of proof because the independence of the Board is conceded as established in section 2, infra.  However, regardless of where the burden lies, the facts set forth herein demonstrate that the determinations were made in good faith after a very thorough investigation.

[5]      The minutes of each of the four meetings are attached as Exhibit A to the SLC Report.

[6]      The Company is prepared to present evidence at the hearing that the fees paid to Cummings & Lockwood were within the estimated range.

In challenging the decision of the SLC, Plaintiffs merely make a conclusory statement that the "[o]n information and belief, the SLC was not independent, disinterested or diligent in its investigation." (Am. Compl. at ¶ 70.) Plaintiffs also complain about the length of H. Jonathan Frank's interview (Am. Compl. at ¶ 65) and they claim that it was somehow improper not to interview two individuals identified by H. Jonathan Frank as "potentially having knowledge about improper transactions." (Am. Compl. at ¶ 66.) Plaintiffs also baldly state that the SLC "improperly truncated its review and failed to focus on all the issues pertaining to the wrongdoing of the Board. For example, during the April 24, 2003 telephonic interview with Jon Frank, Mr. Frank stated that he believed that other sales of shares by insiders had been occurring but that Reflexite refused to provide him information about that." (Am. Compl. at ¶ 67.)

The length of an interview or the claim that two individuals were not interviewed[7] does not demonstrate the SLC acted in bad faith or that it did not conduct a reasonable inquiry. If that were the case, then every rejection of any investigative demand could give rise to a derivative action. That position would render the business judgment rule obsolete in derivative actions and would allow courts to scrutinize every action and inaction of a company. That is not how the business judgment rule is supposed to work. The relevant inquiry is not whether the SLC or the Board exhausted every investigative demand that a shareholder makes. The standard is good

---

[7]     Plaintiffs allege that the SLC failed to interview Dave MacDonald and Peter Smith. (Am. Compl. at ¶ 66.) Reflexite does not believe that it is necessary to address each unsupported allegation in light of the clear evidence of good faith and reasonableness. However, to demonstrate how baseless the allegations are, it will note that the SLC did attempt to contact Mr. MacDonald but was unsuccessful. (Deposition of James Lotstein at 66-67 (hereinafter "Lotstein Depo.") (cited portions attached hereto as Exhibit D).) In addition, the SLC questioned the relevance of interviewing Mr. MacDonald in light of the fact the sole stock transaction that he was involved in was a small buy back in connection with his termination agreement. (Eio Depo. at 60-61.) Further the SLC had doubts about his credibility as a witness. (Id. at 62.) With respect to Peter Smith, the SLC was familiar with the transaction as it was also part of a termination agreement. (Id. at 101-103.)

faith and reasonableness and in order for a demand rejection to be reversed, the plaintiff must put

forth evidence that the investigation has been so restricted in scope, so shallow in execution, or

so pro forma or halfhearted as to constitute a pretext or sham.  See Stein v. Bailey, 531 F.Supp.

684, 695 (S.D.N.Y. 1982).  As set forth above, there is no such evidence here.  Indeed, all of the

evidence is to the contrary.  The SLC hired competent counsel, interviewed relevant witnesses,

including the individual plaintiff, examined the appropriate documents and studied the applicable

law.  (See SLC Report.)  Therefore, the SLC's recommendation approved by the Board of

Directors must be respected and followed.

### 2.      There Is Full Independence.

Plaintiffs have alluded to an issue regarding the independence of the Board's decision to

reject the Demand.  Because of the nature of Plaintiff's Demand and the procedural course that

they have taken, the Court should not even consider this issue.  "By electing to make a demand, a

shareholder plaintiff tacitly concedes the independence of a majority of the board to respond.

Therefore, when a board refuses a demand, the only issues to be examined are the good faith and

reasonableness of the investigation."  Spiegel, 571 A.2d at 777.  Thus, by making a Demand

pursuant to Conn. Gen. Stat. § 33-722, as alleged in the Amended Complaint (See Am. Compl. at

¶ 62), Plaintiffs have conceded independence and the only issues to be determined are good faith

and reasonableness of the investigation.  Spiegel, 571 A.2d at 777.[8]  Dismissal is therefore

---

8        Plaintiffs have challenged the independence of the SLC and not the Board.  Typically, the independence of
the SLC is examined when it is granted the authority to make the ultimate decision.  If the SLC is merely granted the
authority to conduct an investigation and to make a recommendation, then the issue of independence centers on the
Board.  See Stoner v. Walsh, 772 F.Supp. 790, 800-801 (S.D.N.Y. 1991) (discussing the distinction).  However, the
distinction does not matter in this case as there has been a concession of independence of the Board as a result of the
Demand (Spiegel, 571 A.2d at 777), and in the alternative, the specific facts demonstrate the independence of the
SLC members.

required as good faith and reasonableness have been established as set forth in section 1, supra.

Even if it were appropriate to inquire about independence, however, there is no evidence that there was a lack of independence. Independence has been described as whether someone is incapable, due to personal interest or domination and control, of objectively evaluating a demand. See Brehm v. Eisner, 746 A.2d 244, 257 (Del. 2000).

Plaintiffs merely make a conclusory statement that "[o]n information and belief, the SLC was not independent, disinterested or diligent in its investigation." (Am. Compl. at ¶ 70.) Plaintiffs also generally challenge SLC member Louis J. Baccei's independence by alleging that "during the SLC interview with Mr. Frank, Defendant Baccei was present on the telephone call. Mr. Baccei is alleged to have been involved in the Board's actions described above and therefore is not independent." (Am. Compl. at ¶ 68.)

These two conclusory allegations are insufficient to establish that the SLC was not independent. There are no specific allegations or evidence that Mr. Baccei was personally involved in any alleged wrongdoing. The mere fact that Plaintiffs try to implicate Mr. Baccei by naming him as a defendant is not enough to establish that he is not independent. See Conn. Gen. Stat § 33-724(c)(2). Conn. Gen. Stat § 33-724(c) states that none of the following shall by itself cause a director to be considered not independent: (1) The nomination or election of the director by persons who are defendants in the derivative proceeding or against whom action is demanded; (2) the naming of the director as a defendant in the derivative proceeding or as a person against whom action is demanded; or (3) the approval by the director of the act being challenged in the derivative proceeding or demand if the act resulted in no personal benefit to the director. The allegations are conclusory, unsupported and completely contrary to the SLC Report. The SLC

- 10 -

Report states:

> A.  THE COMMITTEE'S INDEPENDENCE
> Prior to commencing its inquiry, the Committee examined the independence of each of its member.  The Committee found that Louis J. Baccei was not a director of the Corporation at the time of the Rowland Transaction.  The Committee found that Peter Eio was a director of the Corporation at the time of the Rowland Transaction but was not present at the meeting at which the Rowland Transaction was approved by the Board of the Corporation.  The Committee also concluded that neither Mr. Baccei nor Mr. Eio had ever engaged in a sale of shares to the Corporation.  In addition, the Committee determined that neither Mr. Baccei nor Mr. Eio had a relationship with any director, officer or shareholder of the Corporation that would reasonably be expected to exert an influence on his judgment with respect to the allegations asserted in the Demand.

(SLC Report at 12.)  There was thorough review of Mr. Baccei's independence and nothing to suggest that he was at all "incapable, due to personal interest or domination and control, of objectively evaluating a demand."  See Brehm, 746 A.2d at 257.

Further, the allegations are unsupported and contradicted by the evidence obtained through discovery.  When Reflexite indicated that it was filing a motion to dismiss on statutory grounds, Plaintiffs sought very broad discovery.  The Court permitted Plaintiffs to conduct discovery on issues related to the SLC.  Plaintiffs have since been provided numerous documents from all defendants and have taken seven depositions, including all three initial SLC members,[9] two attorneys who served as counsel to the SLC, Mr. William Rowland and Mr. Cecil Urpsrung, the president of Reflexite.  The great deal of time and expense that has been spent on this discovery has only served to reconfirm that the SLC was fully independent.  Specifically, the

---

[9]    It is noted that there were three original members of the SLC, Worth Loomis, Peter Eio and Louis J. Baccei.  Worth Loomis voluntarily resigned from the SLC because he had voted on and approved of the Rowland transaction.  (See, SLC Report at 2; see also Deposition of Worth Loomis at 24-27 (cited portions attached hereto as Exhibit E).)  However, according to Conn. Gen. Stat § 33-724(c)(3), his participation in the transaction did not have an *a fortiori* effect on his independence and resignation was not actually required.  Regardless, this precautionary measure did not affect, nor does it reflect negatively upon the independence of the SLC.  If anything, it demonstrates the importance placed upon independence by the SLC members.

deposition testimony confirmed that the SLC members had no prior connections to the

Corporation before joining the board (See, Deposition of Louis J. Baccei at 40-43 (hereinafter

"Baccei Depo.") (cited portions attached hereto as Exhibit F); see also Eio Depo. (Exhibit C) at

8.), had no personal involvement with H. Jonathan Frank (See Baccei Depo. at 15,16; see also

Eio Depo. at 14), had no relationship to any Board member, corporate officer or employee,

including Rowland, that would in anyway undermine their independence (See Baccei Depo. at

10,13,14; see also Eio Depo. at 12,21) and had no involvement with the Rowland transaction

(See Baccei Depo. at 43,44; see also Eio Depo. at 20,21.  There is absolutely nothing to suggest

that any SLC member was not independent.  See Harhen v. Brown, 730 N.E.2d 859 (Mass. 2000)

(noting that the statement that committee members "lacked disinterest" not substantiated as one

did not join the board until after the alleged wrongdoing and there was no allegations that the

other member was a party to the alleged wrongdoing).

Furthermore the SLC members are well-respected members of the community and have

had admirable careers that made them particularly well-suited to consider the corporate

governance issues raised by the Franks.  Prior to his retirement, Mr. Baccei was the president of

worldwide research and development at Loctite Corporation, a Connecticut based company.  He

has been involved in a number of nonprofit organizations including the Hartford Arts Council.

He is a member of Reflexite's Audit and Finance Committee and the Chair of the Compensation

Committee.  (Baccei Depo. at 7-13.)  Mr. Eio retired as the president of Lego Company of the

Americas.  Mr. Eio has served on a number of board of directors for other corporations and

organizations, including the board of regents for the University of Hartford, the Child Health

Development Institute of Connecticut and the Connecticut Children's Fund.  (Eio Depo. at 7-10.)

In addition, although Plaintiffs have not challenged their independence, it is notable that the counsel to the SLC, Cummings & Lockwood, was entirely independent.  The deposition testimony of attorneys James Lotstein and Peter Hull confirmed that Cummings & Lockwood had not previously represented Reflexite and otherwise had no significant connections with any of its Board members.  (See Lotstein Depo. at 7-8; Deposition of Peter Hull at 7 (cited portions attached hereto as Exhibit G).)

## IV.     CONCLUSION

In summary, the Court should dismiss this derivative action because Reflexite complied with Conn. Gen. Stat. § 33-724 which was designed to protect companies like Reflexite from second-guessing in their corporate affairs under exactly these circumstances.  Plaintiffs have not and cannot demonstrate that Reflexite's Board acted in anything other than good faith and a reasonable manner.  Accordingly, the Board's good faith rejection of Plaintiff's derivative Demand should be sustained and this case should be dismissed

DEFENDANT
REFLEXITE CORPORATION


By_____
    Craig A. Raabe – ct 04116
    Jason M. Kuselias – ct20293
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT  06103-3597
    email:  jkuselias@rc.com
    email:  craabe@rc.com
    tel. no. (860) 275-8200
    fax no. (860) 275-8299

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent via facsimile and via first class

mail, postage prepaid, on the 28th day of May, 2004, to:

Michael Considine, Esq.
Patricia M. Canavan, Esq.
Terence J. Gallagher, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901

Edward F. Spinella, Esq.
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT  06103

Richard M. Stassberg, Esq.
Jeffrey Alan Simes, Esq.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY  10022

James T. Cowdery, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703

James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

_____
Jason M. Kuselias