UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| H. JONATHAN FRANK and FRANK FAMILY 1996 TRUST (on behalf of themselves and REFLEXITE CORPORATION), : : : : : Plaintiffs, : : v. : : ARTHUR LOVETERE, CECIL URSPRUNG, LOUIS J. BACCEI, WORTH LOOMIS, THEODORE PATLOVICH, STEPHEN J. RAFFAY, WILLIAM P. ROWLAND, PETER EIO (individually and in their capacity as members of the Board of Directors of Reflexite Corporation) and REFLEXITE CORPORATION, : : : : : : : : Defendants. | Civil Action No. 3:03-CV- 1014 (JBA)   MARCH 11, 2004 |

**DECLARATION OF DAVID MCDONALD**

I, DAVID MCDONALD hereby depose and state as follows:

1.   I am reside at _Freelton ON Canada. I am over the age of 18 and I offer this Declaration based on my personal knowledge.

2.   I am presently self-employed. Between 1989 and 1997, however, I worked for Reflexite Corporation. When I joined the company in 1989, I ran Reflexite's Canadian operations. In 1991, I was promoted to President of the entire operating division for Reflexite's American and Canadian operations, which was Reflexite's largest and only profitable operating division.

3.   I have known of Jon Frank since I joined Reflexite. Jon was an important early contributor to the company's success and continued to be an ally to the company throughout my tenure there.

4. After becoming President of Reflexite's American and Canadian operations, I had several discussions with Cecil Ursprung, the Chief Executive Officer, about shareholder liquidity issues. I raised this issue because it appeared that the company was going to face a cash crunch if the large shareholders sought to sell their shares. I was aware, for example, that William Rowland (a founder and large shareholder of Reflexite stock) was seeking to sell large amounts of his shares, and the estate of Hugh Rowland (another founder and large shareholder of Reflexite) was also seeking liquidity.

5. I asked Cecil Ursprung what Reflexite would do if other large shareholders such as then-director Gerry Robinson or Jon Frank sought liquidity. Cecil told me, and I remember the words he used, that "as long as I am CEO of this company, he [Jon Frank] will never get his equity out of here." When I asked why, Cecil responded that Jon Frank is not a friend of this company.

6. I then asked what would happen to their shareholdings if Gerry Robinson or Jon were to pass away. Cecil responded that he would take care of Gerry Robinson's estate, but that he would deal very differently with Jon Frank's estate.

7. It appeared to me then, and at all times thereafter, that Cecil Ursprung had a great deal of animosity towards Jon Frank. It appeared to me that Cecil viewed Jon Frank, who had been very successful in helping to grow Reflexite, as a threat to his authority.

8. Cecil, and others working for or with him, subsequently caused Reflexite to take actions against Jon Frank. For example, in 1996, Cecil caused Reflexite to engage in a share buyback program, under which Reflexite would buy a specified amount of shares from shareholders. Cecil set up the formula for the buyback, however, specifically and intentionally so as to minimize Jon Frank's ability (and the ability of another large shareholder, Gerry

Robinson) to sell his shares and to discourage him from participating in the program. At a breakfast meeting where I asked about the rationale for Reflexite's apportionment formula for its buyback program, which Reflexite used many years thereafter, Cecil referred to it as the "Jon Frank" program.

9. Since I left Reflexite, I have learned of several other instances on which Cecil Ursprung made clear that he would prevent Jon Frank (or the Frank Family Trust) from ever being able to sell his shares. As recently as four months ago, I was told by a Reflexite employee that Cecil stated that he would do whatever he could to delay or prevent Jon Frank from getting any money out of Reflexite.

10. After I left Reflexite, I met with Jon Frank and discussed with him the fact that William Rowland had sold a large quantity of his shares of Reflexite stock. Jon seemed surprised, and he indicated that he had an agreement with Bill Rowland that Jon Frank would get an opportunity to sell his shares if Bill Rowland did. John Sheppard was present at this meeting. Jon appeared never to have been informed of this significant transaction, which involved a several million dollar purchase by Reflexite, which represented the balance of Bill Rowland's shareholdings.

11. I understand from Jon Frank that Reflexite has told him that it cannot purchase the shares of particular shareholders but will only use buyback programs such as the one described above. Reflexite is not being forthright with Jon Frank in this regard. I am aware of a number of other people connected with Reflexite being permitted to sell their shares in privately-negotiated sales that were not available to other shareholders. I sold a quantity of my shares to Reflexite in 1997 in such a sale, and I am aware that others, including Cecil Ursprung (CEO and director), Gerry Robinson (a former director), John Sheppard (division President) and Keith Phillips

(division President) also sold shares to Reflexite in privately-negotiated sales. Some of these transactions occurred as recently as last summer.

12.  I understand that Jon Frank identified me as a person with knowledge of facts pertinent to the demand letter Jon sent to the Reflexite Board of Directors in February 2003. Although I was waiting to be called or written about this issue, no one ever contacted me to interview me about what I know. Had they called me, I would have related the foregoing facts, as well as various others pertinent to the practices of Reflexite's Board of Directors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 10th, 2004.

_____
David McDonald