UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

H. JONATHAN FRANK, and FRANK FAMILY 1996
TRUST (on behalf of themselves and REFLEXITE
CORPORATION)

                Plaintiffs,

V.

ARTHUR LOVETERE, CECIL URSPRUNG, LOUIS J.
BACCEI, WORTH LOOMIS, THEODORE
PATLOVICH, STEPHEN J. RAFFAY, WILLIAM P.
ROWLAND, PETER EIO (individually and in their
capacity as members of the Board of Directors of Reflexite
Corporation) and REFLEXITE CORPORATION

                Defendants.

CIVIL ACTION NO.:
3:03cv1014 (JBA)

JULY 2, 2004

### REPLY BRIEF IN FURTHER SUPPORT OF
### REFLEXITE'S MOTION TO DISMISS

Pursuant to L. R. Civ. P. 7(d), the defendant, Reflexite Corporation ("Reflexite" or the "Corporation"), hereby files this reply brief in further support of its Motion to Dismiss the derivative counts of the plaintiffs', H. Jonathan Frank, and Frank Family 1996 Trust ("Plaintiffs"), amended complaint dated November 7, 2003 ("Amended Complaint").

Plaintiffs have attempted to challenge the independence of the Special Litigation Committee ("SLC") and its investigation by inflating the facts and making bold conclusions which are unsupported by the true facts or the applicable law. The reality is that there was a good faith determination, after a reasonable inquiry, that Plaintiffs' demanded lawsuit was not in the best interests of the Corporation and, therefore, dismissal is required.[1]

---

[1] As set forth in Reflexite's Motion to Dismiss, the standard for dismissal is not clearly defined by the courts. (Motion to Dismiss at 3, n.2) However, the relevant case law freely permits dismissal where the pleadings

HART1-1189842-1

I.      **THERE IS NO CREDIBLE EVIDENCE OF A LACK OF INDEPENDENCE.**

Plaintiffs have tried to argue every negative inference to demonstrate the SLC lacked independence. (Opp. at 2-8, 23-27.) However, an examination of the facts and the applicable law reveals that there was full independence by the Board of Directors ("Board") and the SLC.[2]

The Delaware Supreme Court has recently stated, "[i]n order to show lack of independence, the complaint of a stockholder-plaintiff must create a reasonable doubt that a director is not so beholden to an interested director [. . .] that his or her discretion would be sterilized." Beam v. Martha Stewart Living Omnimedia, 845 A.2d 1040, 1050 (Del. 2004) (internal quotations and citations omitted). In Beam, the plaintiff pleaded a detailed history of personal and business relationships between board members and Martha Stewart. Id. at 1045-46. However, the Court did not find this sufficient to challenge their independence reasoning that the

---

and evidence warrant such a result. See, e.g., Beam v. Martha Stewart Living Omnimedia, 845 A.2d 1040, 1050 (Del. 2004).

[2] As set forth in Reflexite's Motion to Dismiss, by making a Demand pursuant to Conn. Gen. Stat. § 33-722, as alleged in the Amended Complaint (See Am. Compl. at ¶ 62), Plaintiffs have conceded independence and the only issues to be determined are good faith and reasonableness of the investigation. (Motion to Dismiss at 4, citing Spiegel v. Buntrock, 571 A.2d 767, 777 (Del. 1990)). Plaintiffs have tried to counter this established premise of law by stating that, first, Conn. Gen. Stat. § 33-722 requires a demand and thus, they had no alternative. (Opp. at 23, n.16.) Plaintiffs have completely ignored the well-established body of case law that excuse a demand where it would be futile. See, e.g., Aronson v. Lewis, 473 A.2d 805 (Del. 1984). Plaintiffs could have properly alleged futility and offered proof of the same if independence was so lacking. They did not do so, but instead made a demand thereby conceding independence.

Second, Plaintiffs claim, without any support, that the formation of the SLC concedes the absence of independence. (Opp. at 23, n.16.) The SLC was not given the authority to make the ultimate decision, but rather merely made a recommendation to the Board. (See SLC Report attached as Exhibit B to Motion to Dismiss). Plaintiffs have ignored this point and have centered solely on the SLC. The establishment of an SLC is not an admission of a lack of independence, but rather a confirmation of a corporation's commitment to a reasonable and good faith investigation.

Third, Plaintiffs cite Scattered Corp. v. Chicago Stock Exchange, Inc., 701 A.2d 70 (Del. 1997), to attempt to counter the clear holding of Spiegel, 571 A.2d at 777. (Opp. at 23, n.16.) However, Scattered Corp. merely reaffirms that when a demand is refused, the courts then focus only on whether there was good faith and reasonableness in the investigation. Id. at 75. The Scattered Corp. court referenced independence "ex post" as being encompassed by the good faith and reasonableness prong. Id.

It is clear that by making the demand, Plaintiffs have conceded the independence of the Board, and the only determination for the Court at this point should be the reasonableness and good faith of the investigation. Regardless, the facts and the law clearly show that there was full independence of the Board and the SLC.

plaintiff's claims boiled down to a "structural bias argument, which presupposes that the professional and social relationships that naturally develop among members of a board impede independent decision making." Id. at 1050-51. The court reasoned that "[t]o create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of a nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." Id. at 1052 (emphasis added).[3]

Remarkably, Plaintiffs quote Harhen v. Brown, 431 Mass. 838, 843 (2000), to support the general proposition that a director must be "free from significant contrary personal interests apart from the domination and control of those who are alleged to have participated in wrongdoing." However, Plaintiffs fail to note that the Harhen court also stated "[i]f the plaintiff has failed to allege facts that meet this standard with regard to a particular board member for purposes of ruling on a motion to dismiss, that member is deemed disinterested." Id. at 844. The Harhen court reasoned that the allegation that committee members "lacked disinterest" was not substantiated by the complaint which made it clear that one member did not join the board until after the alleged wrongdoing and there were no allegations that the other member was a party to

---

[3] In Beam, the Supreme Court of Delaware specifically addressed the Delaware Court of Chancery's decision in In re Oracle Corp. Derivative Litig., 824 A.2d 917 (2003), noting that in the In re Oracle case, the SLC was given full authority to dismiss the action and further, that the connections/relationships of the SLC members were factually distinct. Beam, 845 at 1054-55. A comparison of the In re Oracle case to this matter demonstrates an even greater factual distinction. The two members of the SLC in In re Oracle were Stanford professors who joined the board after the first complaints arose and were able to review the allegations prior to their service. Id. at 923-25. One of the defendants accused of insider trading taught one of the SLC members and was serving on a committee at Stanford with that SLC member. Id. at 920. Other directors who were accused of insider trading were large benefactors of Stanford, one of which was considering donating $270 million in assets at the same time the SLC members were added to the Oracle Board. Id. at 920-21. It is clear that there are not any of the same type of circumstances in this case that could possibly give rise to a reasonable doubt about independence.

the alleged wrongdoing. Id. at 846. The Harhen court held that the majority of the board and the members of the committee were disinterested, even in the face of allegations that the Company (Hancock) purchased $18 million worth of bonds in another company (Polaroid) of which one of the committee members served as the chief executive officer. Id.

In this case, Plaintiffs merely make two, conclusory allegations challenging independence: "[o]n information and belief, the SLC was not independent, disinterested or diligent in its investigation" (Am. Compl. at ¶ 70) and "during the SLC interview with Mr. Frank, Defendant Baccei was present on the telephone call. Mr. Baccei is alleged to have been involved in the Board's actions described above and therefore is not independent." (Am. Compl. at ¶ 68.) These two allegations are not enough to avoid dismissal. See Beam, 845 A.2d at 1052; Harhen, 431 Mass. at 846.

In their Opposition, Plaintiffs try to circumvent the inadequacy of their pleading by making wild assertions and unfairly attacking Reflexite's president, Cecil Ursprung, and its outside counsel Robinson & Cole, LLP. (Opp. at 24-27.) Plaintiffs try to establish the taint of an overriding loyalty by the SLC members to Mr. Ursprung that would cause them to ignore their integrity and risk their reputations. Specifically, Plaintiffs claim that the SLC members are beholden to Mr. Ursprung because he introduced them to Reflexite and "hand-selected" them for service on the SLC. (Opp. at 24.) The reality is that Messrs. Baccei and Eio are well-respected members of the community who have held prestigious positions in other companies and on other boards. (See Motion To Dismiss at 9.) They were recognized for their integrity and appointed to serve on the SLC by a resolution of the Board, with Messrs. Ursprung and Rowland abstaining. (See Minutes of the February 26, 2003 Meeting of the Board Of Directors of Reflexite

Corporation (Irrelevant portions redacted) attached hereto as Exhibit 1.)

Plaintiffs also try to allude to improprieties based on tenuous associations between the SLC members and other board members. (Opp. at 24, n.20.) It is clear that there is absolutely nothing to suggest that their judgment was in any way impaired by any relationship. Beam, 845 A.2d at 1050 (allegations of mere personal relationship or a mere outside business relationship insufficient to raise a reasonable doubt about a director's independence).

Plaintiffs also state that Messrs. Ursprung and Attorney Jack Kennedy were involved in the selection of the counsel to the SLC and make the cognitive leap that there was, therefore, a lack of independence. (Opp. at 25.) First, there is no credible evidence that Cummings & Lockwood were biased, negatively influenced or did anything but perform their role to the highest level of professionalism. Second, the evidence clearly established that the SLC retained Cummings & Lockwood as counsel to the SLC after conducting and examination of their independence. (Deposition of Peter Eio ("Eio Depo.") at 29 attached as Exhibit 2 to Opp.; SLC Report at 2 attached as Exhibit B to Motion to Dismiss; Minutes of Reflexite Corporation SLC Meeting of March 17, 2003 attached as Exhibit A to the SLC Report.)

Plaintiffs continue their improper speculation and inflation of non-issues, by focusing on a minor concern over legal fees and a brief cessation of work by the counsel to the SLC. (Opp. at 6-7, 25.) The point Plaintiffs fail to bring to the Court's attention is that everyone, and most importantly counsel to the SLC, testified that there was absolutely no compromise in the quality of the investigation or the report. (Deposition of James I. Lotstein ("Lotstein Depo.") at 59, 69 attached as Exhibit 5 to Opp.) Again, these are hollow attempts by Plaintiffs to create

- 5 -

controversy where there was none.[4]

Plaintiffs' speculation and innuendo continues with their claim that Mr. Ursprung sabotaged the SLC by declining to move the Board meeting or refusing to allow counsel to the SLC to attend. (Opp. at 7-8, 26.) Mr. Eio, an SLC member, requested a change in the date of the board meeting solely because of his personal travel schedule, and not because of anything to do with the SLC's work. (Lotstein Depo at 67-69; Eio Depo. at 132-133.) His request could not be accommodated because of others' schedules. (Eio Depo. at 132-133, Deposition of Cecil Ursprung ("Ursprung Depo.") at 42-43 attached as Exhibit 7 to Opp.) Ultimately, Mr. Eio fully participated in the meeting by telephone. (Eio Depo. at 140.)

Finally, Plaintiffs unfairly attack Robinson & Cole and specifically, Jack Kennedy. (Opp. at 4, 26.) Mr. Kennedy acted as counsel to the Corporation and advised it to form an SLC to respond to Plaintiffs' Demand. (Ursprung Depo. at 7-8.) It is preposterous for Plaintiffs to claim that there were any improprieties "because Robinson & Cole was responsible for providing documents to the SLC for the SLC's review." (Opp. at 26.) The SLC correctly requested documents from Reflexite in the course of its thorough investigation. Mr. Kennedy's assistance in responding to the SLC's request is absolutely permitted.[5] In short, Robinson & Cole ethically fulfilled its duties as counsel to the Corporation. Any involvement it had with the SLC was purely an administrative function on behalf of the Corporation and did not negatively impact the integrity and independence of the SLC members, who had engaged a highly reputable law firm

---

[4] Plaintiffs have stated that Cummings & Lockwood agreed to be "efficient" after a discussion about their fees. (Opp. at 7.) This is false. A proper review of the testimony of Mr. Lotstein demonstrates that Cummings & Lockwood believed it had already performed efficiently and it did not change the way that it performed subsequently. (Lotstein Depo. at 58-59.)

[5] Plaintiffs' conspicuously omit the fact that Mr. Kennedy also assisted in complying with their requests served on Reflexite. (See Exhibit B to the SLC Report (referencing numerous correspondence and documents sent to Plaintiffs counsel.)

- 6 -

to assist in its investigation.

Plaintiffs have cast aspersions on every individual possible to create controversy where none exists. The SLC members, and the Board, were fully independent and dismissal is required.

## II. THE SLC'S INVESTIGATION WAS REASONABLE AND CONDUCTED IN GOOD FAITH.

There is nothing that creates a reasonable doubt that the conduct and investigation of the SLC was so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted as to constitute a pretext or sham, giving rise to questions of fraud. See Aurebach v. Bennett, 47 N.Y. 2d 619, 634-635 (1979).

Plaintiffs try to paint the picture that the SLC's investigation was rushed and incomplete. (Opp. at 28-30.) This claim is based purely on Plaintiffs' own speculation. The testimony, as well as the SLC Report, supports the fact that the SLC had enough time to complete its investigation. (Lotstein Depo. at 69.) The SLC investigated all aspects of the Demand letter and claims of Plaintiffs.[6] The SLC submitted an extensive document request and reviewed stock history reports and redemptions. The SLC conducted six interviews. As addressed in the Motion to Dismiss, certain individuals were not interviewed because the nature of their

---

[6] Plaintiffs claim that all aspects of the Demand letter were not considered. (Opp. at 29.) However, Plaintiffs have now attempted to expand their Demand to include general and unsupported claims of self dealing. Id. First, a review of the Demand (attached as Exhibit A to the Motion to Dismiss) and of Plaintiffs' Counsels' subsequent correspondence (April 16, 2003 Letter from Richard Strassberg and Jeffrey Simes with attachments attached hereto as Exhibit 2) reveals that Plaintiffs were entirely focused on the Rowland transaction and determined to obtain similar liquidity. There is no specific mention in the Demand of other transactions or the claims that Plaintiffs now raise and argue were ignored. Second, contrary to Plaintiffs' claim that the SLC did not consider other stock transactions, the Document Log attached as Exhibit B to the SLC report clearly indicates that the SLC reviewed relevant stock history reports, which included directors' transactions, and all relevant documents related to the Company's buy back programs. Despite the limitations of the Demand, the SLC did investigate stock transactions and specifically, purchases by the Company.

transactions were known to the SLC and there were certain biases involved.[7] "In any investigation, the choice of people to interview or documents to review is one on which reasonable minds may differ." Mount Moriah Cemetery v. Moritz, Civ.A.No.11431, 1991 WL 50149, at * 4 (Del. Ch. Apr. 4, 1991) (deciding not to "second guess" the decisions made by the SLC) (copy contained in Plaintiffs' Compendium of Unreported Authority filed with Opp.) The SLC's investigation should not be second guessed in the absence of a showing that it was a pretext rising to the level of fraud. Aurebach, 47 N.Y. 2d at 634-635.

Plaintiffs incorrectly challenge the SLC's review of the Rowland transaction by asserting that the SLC did not review underlying analyses or alternatives. (Opp. at 30-31.)[8] The SLC reviewed all documents pertinent to the allegations in the Demand which allowed it to recommend a rejection of the Demand. (See Document List attached as Exhibit B to the SLC Report). Further, despite Plaintiffs repeated declaration, the Rowland transaction was disclosed in the Annual Report and Balance Sheet. (Opp. at 17-18, 31.) The 1998 Annual Report states, "[w]e also made a significant purchase from an individual shareholder." (See Reflexite Annual Report 1998 at p. 3, attached as Tab 11 to Exhibit 1 of Opp.)

Plaintiffs also try to characterize the Rowland transaction negatively by claiming Reflexite was "forced to enter into subordination agreements with its existing bank." (Opp. at 14.) Plaintiffs apparently do not understand the purpose and effect of a subordination agreement. The Company was not "forced" into anything and did not suffer any negative consequences as a

---

[7] Plaintiffs have offered the affidavit of David McDonald which is rife with hearsay and allegations that have nothing to do with this Motion to Dismiss. The SLC's decision not to interview Mr. McDonald was based on his inherent bias as a result of his termination, his questionable character and the inability to locate him. (Motion to Dismiss at 8, n.7.)

[8] A review of good faith and reasonableness does not require or permit the Court to review the underlying transactions to determine if they are in the best interests of the Corporation. This is clearly protected by the business judgment rule. See Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988).

- 8 -

result of the agreement. Mr. Rowland was required to subordinate his note from Reflexite to Reflexite's then existing loan with Fleet Bank. (Deposition of William Platt Rowland at 53 attached as Exhibit 6 to Opp.)

Finally, Plaintiffs attempt to challenge the SLC's investigation by second guessing the merits of the Rowland Transaction. (Opp. at 13-17.) First, the appropriate review by the Court is not to question the decision of the Board in approving the Rowland transaction, but merely to determine if the SLC's investigation and the Board's rejection of the Demand was reasonable and in good faith.[9] Absent evidence rising to the level of fraud, the SLC's investigation must be deemed reasonable and conducted in good faith. See Aurebach, 47 N.Y. 2d at 634-635. Second, the main thrust of the Demand and the Supplemental Letter is the "Unfair Treatment of the Franks" in not being permitted to redeem their shares in the same fashion as Rowland. The SLC Report contains a detailed analysis of the applicable law and concludes that there is no duty to offer the Frank's equal liquidity. Third, even if it were proper for the Court to consider the merits of the underlying transaction, the SLC did inquire about the justification for the transaction.[10] It was evidently clear to the SLC that the Company benefited from the redemption and did not suffer any negative consequences as Plaintiffs speculate.

---

[9] Delaware law presumes that investors act to maximize the value of their own investments. Katell v. Morgan Stanley Group, Inc., Civ.A.No.12343, 1995 WL 376952, at *12 (Del. Ch. June 15, 1995) (SLC's motion to dismiss granted) (copy contained in Plaintiffs' Compendium of Unreported Authority filed with their Opp.). In this case, Plaintiffs have not provided any plausible reason why Reflexite Directors would approve a transaction that was not in the Company's best interests.

[10] For example, the summary of the interview with Phil Ferrari, Reflexite's chief financial officer, revealed that the price paid to Rowland was based on the valuation established by an outside firm Houlihan Lokey in connection with the Company's annual employee stock ownership plan ("ESOP"). (See SLC Report at 2-4 attached as Exhibit B to Motion to Dismiss.) The price paid to Rowland was expected to be below the valuation for the following year. Id. It was also revealed that the terms of the transaction were favorable to the company. Id. Finally, the transaction permitted the company to discontinue paying insurance premiums on a life insurance policy associated with Rowland. Id.

### III. CONCLUSION

The SLC members were entirely independent and conducted a thorough investigation of the Plaintiffs Demand. The Board's rejection of the Demand must be respected and this case should be dismissed.

By_____
Craig A. Raabe – ct 04116
Jason M. Kuselias – ct20293
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103-3597
email: jkuselias@rc.com
email: craabe@rc.com
tel. no. (860) 275-8200
fax no. (860) 275-8299

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent via facsimile and via first class mail, postage prepaid, on the 2nd day of July, 2004, to:

Michael Considine, Esq.
Patricia M. Canavan, Esq.
Terence J. Gallagher, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901

Edward F. Spinella, Esq.
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103

Richard M. Strassberg, Esq.
Jeffrey Alan Simes, Esq.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

James T. Cowdery, Esq.
Sarah A. L. Merriam, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703

James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

Jason M. Kuselias