LEXSEE 2002 CONN SUPER LEXIS 660

**Pitney Bowes Credit Corporation v. Escotel Software, Inc.**

CV010183438

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF STAMFORD-NORWALK, AT STAMFORD

*2002 Conn. Super. LEXIS 660*

**March 7, 2002, Decided**
**March 7, 2002, Filed**

**NOTICE:** [*1]  THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**LexisNexis(R) Headnotes**

**JUDGES:** William B. Lewis, Judge.

**OPINIONBY:** William B. Lewis

**OPINION:** MEMORANDUM OF DECISION

This proceeding is an application by the plaintiff, Pitney Bowes Credit Corporation, for a prejudgment remedy pursuant to *General Statutes § 52-278c* seeking to attach sufficient property to secure the sum of $ 150,000. This case arises from an equipment finance lease (finance lease) between the plaintiff as lessor and the defendant, Escotel Software, Inc., as lessee. The plaintiff is a subsidiary of Pitney Bowes, Inc., the manufacturer or vendor of the equipment in issue. In reality, the mailing machine was purchased by the plaintiff from Pitney Bowes, Inc. and then leased to the defendant, which would become the owner thereof if all the conditions of the lease had been fulfilled.

In its affidavit dated March 23, 2001, in support of an attachment and its unsigned complaint, the plaintiff, whose office is in Shelton, alleges that on February 5, 1997, pursuant to a finance agreement, it financed the sale and subsequent [*2] lease of a large mailing machine, twenty-two feet by sixteen feet, plus accessory equipment, which had been manufactured by Pitney Bowes, Inc. at its Danbury plant. The equipment was installed at the defendant's place of business in Norwalk on or about November 16, 1997. The purpose of the machine was to stuff bills from telephone companies into envelopes. The plaintiff further alleges that the defendant was obliged to make approximately four years of monthly lease payments to the plaintiff, but had failed to do so after January 20, 1998, and that the plaintiff was owed approximately $ 80,000, plus late charges of 4% for overdue payment, interest of 12% per year, and attorneys fees, as provided in the written lease agreement. The defendant made the required 30% advance lease payment, but did not make any additional monthly payments.

The agreement also provided that if any monthly payments were not made, the entire balance of the lease could be accelerated at the option of the plaintiff. The plaintiff exercised this right as of September 10, 1999.

On June 18, 2001 and August 8, 2001 the parties were present in court for a prejudgment attachment hearing, pursuant to *General Statutes § 52-278d* [*3] . The standard for the granting of a prejudgment remedy by way of an attachment is well established. "If the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy

applied for shall be granted as requested or as modified by the court." *General Statutes § 52-278d(a)(4)*.

It is axiomatic that "a hearing on an application is not a full-scale trial on the merits of the plaintiff's claims . . . but rather concerns only whether and to what extent the plaintiff is entitled to have property of a defendant held in custody of the law pending final adjudication of the merits of the action." (Citations omitted; internal quotation marks omitted.) *Bosco v. Arrowhead by the Lake, Inc., 53 Conn.App. 873, 874, 732 A.2d 205 (1999)*. "The trial court, vested with broad discretion, [*4] need determine only the likely success of the plaintiff's claim by weighing probabilities . . . Civil probable cause constitutes a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a person of ordinary caution, prudence and judgment, under the circumstances, in advancing the action." (Citations omitted; internal quotation marks omitted.) *Tyler v. Schnabel, 34 Conn.App. 216, 219-20, 641 A.2d 388 (1994)*; see *General Statutes § 52-278d(a)*.

The plaintiff has demonstrated that it will likely prevail on its claim because it proved that the defendant, as lessee, signed a finance lease agreement that called for certain monthly payments, and that the defendant had failed to make such payments. The testimony of Cindy Cantarera, the recovery manager, who had been employed by the plaintiff for fifteen years, was very credible in this regard.

The primary defense offered by the defendant is that the mailing equipment did not work properly and therefore it had no obligation to make lease payments to the plaintiff. However, the finance lease agreement between the plaintiff and the defendant [*5] provided, among other things, that the defendant was obliged to continue to make monthly payments to the plaintiff "regardless of any dispute with the vendor of the equipment or loss or damage to the equipment or any other reason, you are required to pay us." The lease further provided that the plaintiff made "no warranties, express or implied, regarding any matter, including equipment condition or its merchantability or fitness for a particular purpose." Both of these two provisions were in capital letters and in bold print. Furthermore, the agreement states that if the plaintiff had "any claims regarding the Equipment or any other matter arising from your relationship with the vendor, Pitney Bowes, Inc. ("Vendor") you must make them against Vendor. We assign to you the warranty rights we have against Vendor, as stated herein."

The plaintiff cites *Emlee Equipment Leasing Corporation v. Waterbury Transmission, Inc., 31 Conn.App. 455, 626 A.2d 307 (1993)*, as authority for a plaintiff lessor to recover the lease payments even though a lessee has a bona fide dispute with a vendor, in this case, Pitney Bowes, Inc. This case, which has not been overruled by our Supreme [*6] Court or by the Connecticut Legislature since it was published nine years ago, n1 stands as authority for several propositions: (1) "A finance lease differs considerably from an ordinary lease, which typically involves only a lessor and a lessee, because it involves an additional party, the equipment supplier or manufacturer. Because the finance lessor is strictly a financing entity, the lessee ordinarily must look to that additional party for warranty liability." *Id., at 465.* (2) "Usually, the [lessor] expects to be paid, even though the [product] might prove to be defective or totally unsuitable for the [lessee's] particular business. Thus, a finance lease is a very different animal from an ordinary lease." Quoting 1 A.J. White & R. Summers, Uniform Commercial Code (3d Ed. 1988) p. 20; *Id., at 466.* (3) Again quoting White & Summers, *id.*, p. 25, "If the lessor should order an aircraft which is unsuitable or defective, this is not the lessor's problem. The lessor's responsibility is merely to provide the money, not to instruct the lessee like a wayward child concerning a suitable purchase . . . Absent contrary agreement, even if [for example] [*7] our Boeing 747 explodes into small pieces in flight and is completely uninsured, lessee's obligation to pay continues." *Id., at 468.* (4) The various provisions of a finance lease that the defendant complains of, acceleration of outstanding payments, legal fees, costs and interest, disclaimer of and assignment of warranties, are not unconscionable "where, as here, the facts and circumstances do not indicate any inequality of bargaining power or element of unfair surprise." *Id., at 473.*

n1 In fact, this case was referred to just last year in *Newcourt Communications Finance Corp. v. Best*, Superior Court, judicial district of New London, Docket No. 554607 (February 6, 2001) Hurley, JTR.). Judge Hurley discussed the so-called "come hell or high water" doctrine which provides, according to 1 A.J. White & R. Summers, Uniform Commercial Code (3d Ed. 1988) p. 20, that "the parties can draft a lease agreement that carefully excludes warranty and promissory liability of the finance lessor to the lessee, and that sets out what is known in the trade as a 'hell or high water clause,' namely, a clause that requires the lessee to continue to make rent payments to the finance lessor even though the [equipment] is unsuitable, defective, or destroyed." *Emlee Equipment, supra*, was also referred to in a 1999 federal court decision for the proposition that such hell or high clauses "appear

to be uniformly enforced." *Leasetec Corp. v. Orient Systems*, 85 F. Supp. 2d 1310,1316 (S.D.Fla. 1999).

[*8]

The court heard extensive testimony from Luis Escotel, the vice president of the defendant corporation, and there is no question that he is an astute and experienced businessman. Mr. Escotel acknowledged that he signed the finance agreement on behalf of the defendant, and the court has no doubt that he knew what he was doing.

The defendant contends that it has a valid defense against the plaintiff because, beginning at the latest in October 1998, the mailing machine did not work the way it should have and the vendor was unsuccessful in making the machine work properly. The defendant does not acknowledge that the plaintiff and Pitney Bowes, Inc. are separate companies, with separate directors and officers and different shareholders. Pitney Bowes, Inc. is the parent and the plaintiff is a subsidiary. Furthermore, the defendant does not acknowledge that it can pursue any breach of warranty claims it has against Pitney Bowes, Inc., which manufactured and sold the allegedly defective product to the defendant. The defendant also does not acknowledge that it voluntarily signed an agreement which explicitly insulated the plaintiff, as finance lessor, from claims of the lessee relating [*9] to equipment defects.

The defendant asserted several other defenses to the plaintiff's application for a prejudgment remedy, none of which are persuasive. The first is that the application by the plaintiff for such a remedy did not include certain words relating to defenses, counterclaims and set-offs offered by a defendant. Although these words were omitted in the plaintiff's application, the court has considered every defense offered by the defendant in arriving at its conclusion that the plaintiff is entitled to a prejudgment remedy in the amount indicated.

A second defense was that the plaintiff was unable to produce the original lease but only a copy, and therefore that the so-called "best evidence" rule had been violated. This argument is not persuasive because the recovery manager for the plaintiff testified that the original lease could not be located despite her efforts to do so. n2 In any event, as was stated in *Brookfield v. Candlewood Shores Estates, Inc.*, 201 Conn. 1, 12, 513 A.2d 1218 (1986), "the best evidence rule at common law is a preferential, rather than an exclusionary rule." Moreover, the Connecticut Code of Evidence (effective January 1, 2000) [*10] § 10-2, provides that a copy of a writing is admissible with two exceptions not applicable in this case.

> n2 Question: "And where is that original?" Answer "I can't--I cannot locate it at this point in time." Question: "Okay. Can you tell me what efforts you made to locate the document?" Answer: "Our documents are stored in a storage facility in Norwalk, Connecticut on Main Avenue, and those documents are identified by boxes with--and a number assigned, and it's not the lease number--and they're stored in per bay. Those documents go back 15 years. Um, when we pulled the box to identify it we looked through the entire two boxes that we pulled and it wasn't there. So it's telling me it's misfiled." Question: "But you've contacted someone who has custody of those original documents and you found out they were not available; is that correct?" Answer "That's correct." Question: "Okay. And I think your previous testimony was that they, that these documents were scanned into your system; is that right?" Answer "They're scanned on a laser printer . . ."

[*11]

The other defenses of failure of consideration, fraudulent misrepresentations, timely rejection of the equipment and unconscionability do not apply to this case because it involves a finance lease. These same arguments were rejected in *Emlee Equipment Leasing Corporation v. Waterbury Transmission, Inc.*, supra, 31 Conn.App. at 455, because "a finance lease is a very different animal from an ordinary lease."

Based on the foregoing, the plaintiff has shown probable cause that it will prevail. Of course, after discovery and a full hearing on the merits, a different result might well ensue, but, at this stage of the proceedings, the plaintiff has adequately demonstrated probable cause that it will prevail, notwithstanding the defenses offered by the defendant. Thus, a prejudgment remedy of attachment or garnishment in the amount of $ 80,000 may issue in favor of the plaintiff. n3 This amount includes a credit for the defendant for the current value of the mailing machine, approximately $ 20,000, which was ultimately picked up from the defendant in the summer of 2001, approximately four years after the machine was first installed at the defendant's place of business. [*12]

> n3 This amount is based on the court's estimate of the approximate amount of damages, but does not include attorneys fees, court costs, or

interest to which the plaintiff is entitled under the terms of the lease. These items may be calculated at the time of trial if they are applicable.

So Ordered.

Dated at Stamford, Connecticut, this 7th day of March 2002.

William B. Lewis, Judge