# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

H. JONATHAN FRANK, AND THE FRANK  
FAMILY 1996 TRUST (on behalf of themselves  
and REFLEXITE CORPORATION)

CASE NUMBER: 3:03CV1014 (JBA)

        Plaintiffs

V.

ARTHUR LOVETERE, CECIL URSPRUNG,  
LOUIS J. BACCEI, WORTH LOOMIS,  
THEODORE PATLOVICH, STEPHEN J.  
RAFFAY, WILLIAM P. ROWLAND, PETER EIO  
(individually and in their capacity as members of  
the Board of Directors of Reflexite Corporation)  
and REFLEXITE CORPORATION

        Defendants    MARCH 1, 2005

## DEFENDANT WILLIAM P. ROWLAND'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR PREJUDGMENT REMEDY

I. **INTRODUCTION**

Defendant, William P. Rowland ("Mr. Rowland"), hereby submits this Memorandum in Opposition to the Application for Prejudgment Remedy (the "Application") filed by the Plaintiffs in this action. The Application, which comes well over a year after this case was started, purports to be necessary because of a proposed (now completed) tender offer made by Defendant Reflexite Corporation ("Reflexite") to its shareholders. Plaintiffs claim that this tender offer would "enrich the Defendants and impose serious financial risk on Reflexite as well as the Franks." See Plaintiff's Memorandum in Support of Motion for Prejudgment Remedy, at 1. In truth, whatever Plaintiffs' motivation might be for this late filing of an Application for

Prejudgment Remedy, it is not the tender offer. If it were, Plaintiffs would have the impossible task of explaining how – as self-appointed fiduciaries for the shareholder body – they were among the single largest participants in the tender offer (thereby causing the greatest alleged financial harm to the company). The hypocrisy is palpable. Nor can Plaintiffs plausibly argue that the Defendants are being enriched since only Defendants Ursprung and Raffay participated in the tender offer and Defendant Raffay's participation was negligible. Indeed, there is absolutely no basis for asserting that any of the Defendants have dissipated any assets or otherwise attempted to render themselves "judgement proof."

Plaintiffs' motivation aside, the Application should be denied because the underlying allegations directed to Mr. Rowland have no basis in fact. Mr. Rowland did not breach any contract or break any promise, nor did he violate any fiduciary duty. Twenty-five years ago H. Jonathan Frank invested in a small, start-up company of which he was an officer. Now, after a falling out with current management and the termination of his employment, he sits on the sidelines – alone – challenging the decisions of Reflexite Corporation's Board of Directors. His challenges, however, are baseless as illustrated by his active participation in the tender offer of which he now complains; as illustrated by the growth and financial health of the company he claimed would be ruined by its purchase of Mr. Rowland's stock; as illustrated by the fact that no other shareholder supports his claims; and as illustrated by the fact that Paintiffs' current share value in Reflexite (even after their receipt of $2,768,645 for selling 30% of their stock in the tender offer) is worth in excess of $7 million – representing an investment return that

outdistances any conventional investment model. Simply put, Plaintiffs do not want what is good for the company; they only want what is good for themselves and they are using this action in an effort to effectuate that desire.

## II. FACTS AND PROCEDURAL HISTORY

The Complaint in this matter was filed on June 9, 2003, and was later amended ("Amended Complaint") on November 7, 2003. The Defendants then filed motions to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Those motions remain pending. The parties thereafter engaged in limited discovery directed to the unique legal issue presented in this derivative action. Following that discovery, Reflexite Corp. filed an additional motion to dismiss arguing that a dismissal was required under Conn. Gen. Stat. §33-724. That motion is also pending.

Plaintiffs filed their Application for Prejudgment Remedy on December 16, 2004. The Honorable Joan Margolis scheduled the matter for a hearing on March 28, 2005 and requested Defendants' briefing by March 1, 2005.

## III. DISCUSSION

Defendant Rowland filed a Motion to Dismiss dated November 26, 2003, supported by his Memorandum of Law of even date and his Reply Memorandum, dated December 31, 2003. Defendant Rowland herewith incorporates by reference the arguments made in that Motion to Dismiss, as though they were fully set forth in this opposition.

Defendant Rowland also adopts the arguments made in the Opposition of Outside Director Defendants to Plaintiffs' Application for Prejudgment Remedy filed by Defendants Lovetere, Baccei, Loomis, Patlovich, Raffay and Eio ("Directors Opposition") and the Memorandum in Opposition to the Motion for Prejudgment Remedy filed by the Defendant Reflexite Corporation.

Defendant Rowland will not repeat the arguments set forth in the Outside Directors' Opposition. That memorandum already sets forth or otherwise incorporates the following arguments: 1) H. Jonathan Frank ("H. J. Frank") lacks standing to pursue Count One of the Amended Complaint because he is not a shareholder of the company; 2) H.J. Frank and the Frank Family 1996 Trust (the "Frank Trust") lacks standing to pursue Counts One and Two of the Amended Complaint because they do not fairly and adequately represent the interests of the corporation (see Conn. Gen. Stat. §33-727) or its shareholders (see Conn. Gen. Stat. §52-572(j)); 3) There is no legal basis for the "direct" shareholder claim set forth in Count Two of the Amended Complaint; 4) The allegations which form the basis of the Amended Complaint were permissible actions protected by the business judgment rule; 5) There is no factual or legal basis for the accounting claim set forth in Count Six; 6) The action should be dismissed under Conn. Gen. Stat. §33-724; and 7) Plaintiffs have failed to demonstrate a factual basis for either the merits or the amount of the prejudgment remedy. Instead, this memorandum focuses on those arguments unique to Mr. Rowland.

Defendant Rowland is named specifically in Counts Three and Four of the Amended Complaint, Count Three claiming a breach of a 1979 agreement and subsequent Shareholders' Agreement and Count Four claiming promissory estoppel arising out of the same facts. (The referenced agreements are attached hereto as Exhibits A and B.)

As to Count Three, Defendant Rowland's argument is simply a function of the express language of the agreements at issue, the authenticity of which are not in question. More specifically, Plaintiffs claim that Defendant Rowland somehow breached his 1979 contractual obligation to Frank in connection with the sale of the shares owned by him and his family trust to the company in 1998 ("Rowland Sale"). There are three fundamental problems with this claim. First, to the extent there is any merit to H. J. Frank's argument vis-à-vis the 1979 agreement (and there is none), H. J. Frank sold his stock to his family trust in 1997 prior to the Rowland Sale. Therefore, H. J. Frank had no shares in his name at the time of the 1998 sale. It necessarily follows that under the language of the 1979 agreement, there was no effort that Rowland could have reasonably extended to H. J. Frank to assure him (since he was not a shareholder) that he could sell his shares at the same price as was being offered to Rowland. Rowland's performance was thus impossible. It is just as clear that insofar as H. J. Frank owned no shares in the company at the time of the Rowland sale, H. J. Frank suffered no injury as a result.

Second, the 1979 agreement was signed by four individuals. It contains no language that it would run to the benefit of any successors; nor is there any suggestion that that was the

intention of the parties nearly 20 years before the Rowland Sale. Since the Frank Trust is not a signatory to the 1979 agreement, it lacks any privity to sue thereunder.

Third, even if the 1979 agreement were in effect as of 1998 and one of the Plaintiffs had standing to now enforce it, there is still no merit to Frank's claim. The 1979 agreement specifically provides that "before actually selling stock ... <u>that would result in a transfer of voting control to a third party</u> ... we will use all efforts that are reasonable to assure you the opportunity of selling your shares ... ." Rowland's trust owned just over 10% of stock in 1998 at the time of the sale; roughly the same amount as owned by H. J. Frank and substantially less than Reflexite's ESOP which owned by far the largest percentage of the company. Plaintiffs have not alleged and cannot prove there was any change in voting control by virtue of the Rowland Sale. The Rowland Sale was to the corporation, not to a third party. <u>The stocks were therefore taken out of voting consideration and, as such; there could be no change in voting control</u>. See Conn. Gen. Stat. §33-705(a). Rather, all remaining stockholder percentage ownership interests were increased by the percentage retired by the Rowland Sale and therefore each shareholder remained in the same position *viz a viz* other shareholders that he, she or it maintained before the sale. See Conn. Gen. Stat. §33-705(a).

The Shareholder Agreement, which Plaintiffs also claim Rowland breached, was signed by all four gentlemen who signed the 1979 agreement, It specifically places limits on the sale of shares "<u>except in the case of a transfer of such shares to the Corporation itself....</u>"[1]. See

---

[1] The Shareholder's Agreement also excepts the sale of shares to a family trust, as both H. J. Frank and Mr. Rowland perfected.

6

Shareholder's Agreement at Paragraph 1 (emphasis added). Thus, the Shareholder's Agreement, according to its express terms, does not and cannot prohibit the Rowland Sale. The same agreement, again signed by H. J. Frank, also provides that there are "no representations, warranties, promises, covenants or understandings other than those herein expressly set forth." Given that, even if the 1979 agreement could be read as Plaintiffs suggest it should be, and even if Plaintiffs had standing to enforce these claims, the 1979 agreement would not survive the Shareholder Agreement. The Shareholder Agreement was, in all respects, a novation.

Plaintiffs have also argued in their opposition to Mr. Rowland's Motion to Dismiss, although not alleged in their Amended Complaint, that Mr. Rowland somehow failed to provide Plaintiffs with notice of the Rowland Sale. Again, this assertion has no basis in fact. The Shareholder Agreement specifically excepts transfers of shares to Reflexite from any of the obligations arising thereunder. See Shareholder's Agreement at Paragraph 1. Paragraph 2 of that Agreement, which Plaintiffs seem to rely upon for their "Notice" argument, is entitled "Offers of Shares for Sale to the Corporation." That paragraph discusses when a shareholder may have obligations to give notice to the other shareholders if the corporation does not act on its right of first refusal to purchase stock from a shareholder. It does not apply to situations that are specifically covered under Paragraph 1 providing for sales of shares to the corporation.

Plaintiffs' promissory estoppel claim suffers from the same flaws as their contractual claims, because the purported promises are the same as the alleged contractual undertakings. Moreover, it is obvious that this claim is a desperate attempt to assert some quasi-contractual

7

remedy when, by Plaintiffs' own admission, there are two express contracts at issue. Plaintiffs cannot maintain these inconsistent positions. See cases cited in Rowland Memorandum in Support of Motion to Dismiss, dated November 26, 2003, at 19.

Furthermore, even if the promissory estoppel claim could be made notwithstanding the existence of express contracts setting forth the rights and obligations of the parties, the Frank Trust cannot assert the claim because there was no promise made to it, nor any proof that it changed its position in reliance on any such promise. Nor can the Trust prove that it suffered any resulting injury. According to the Amended Complaint, the only promise that was made was directed to H. J. Frank, not the Frank Trust. See Amended Complaint at ¶31. None of these allegations implicate the Trust. This is also true of the Shareholders' Agreement since it was H. J. Frank, not the Frank Trust, that signed that agreement. Simply stated, the Trust did not act to change its position in any way on reliance of any promise made to it; therefore, it cannot possibly claim any resulting injury.

Likewise, H. J. Frank cannot claim any injury because in order to state such a claim, he must prove that he was injured based on his reliance on Rowland's promise. He cannot do this. He sold his stock before Mr. Rowland sold his stock. Therefore, H. J. Frank suffered no injury even if a promise was broken. Further, there is no allegation that Rowland made any promise that would restrict him from selling his shares back to the corporation itself. In fact, both agreements permitted this transfer.

### IV. CONCLUSION:

The courts should not be manipulated by shareholders in an attempt to force a judicial remedy where the business judgment exercised by the Board of Directors does not compel that result. Plaintiffs want to be cashed out of their investment in Reflexite but that is not an outcome that this court should, or, with due respect, can dictate. There is no basis for the prejudgment remedy, just like there is no basis for the case. The Application should be denied.

```
                              THE DEFENDANT
                              WILLIAM ROWLAND

                    By:       _____
                              James T. Shearin, Esq. (ct 01326)
                              Pullman & Comley, LLC
                              850 Main Street, P.O. Box 7006
                              Bridgeport, CT  06601-7006
                              Telephone: (203) 330-2000
                              Facsimile:  (203) 576-8888
                              E-Mail: jtshearin@pullcom.com
```

## CERTIFICATION

     I hereby certify that a copy of the above was mailed on the date hereon to all counsel and pro se parties of record.

    James T. Cowdery, Esq.
    Sarah Merriam, Esq.
    Cowdery, Ecker & Murphy, LLC
    750 Main Street
    Hartford, CT 06103
    Telephone:   860-278-5555
    Facsimile:    860-249-0012

    Terence Gallagher, Esq.
    Day, Berry & Howard, LLP
    One Canterbury Green
    Stamford, CT 06488
    Telephone:   203-977-7594
    Facsimile:    203-977-7301

    Richard M. Strassberg, Esq.
    Jeffrey Alan Simes, Esq.
    Goodwin Procter, LLP
    599 Lexington Avenue
    New York, NY 10022
    Telephone:   212-813-8800
    Facsimile:    212-355-3333

    Edward F. Spinella, Esq.
    Reid & Riege, P.C.
    One Financial Plaza
    Hartford, CT 06103
    Telephone:   860-240-1045
    Facsimile:    860-240-1002

Craig Raabe, Esq.
Jason M. Kuselias, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
Telephone: 860-275-8352
Facsimile: 860-275-8299

_____
James T. Shearin, Esq.

BPRT/68721.1/JTS/549296v1