**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2005 MAR -1  A 10: 27

**U.S. DISTRICT COURT**
NEW HAVEN, CT

```
-----------------------------------x
                                    :
H. JONATHAN FRANK and FRANK         :    No. 3:03CV1014(JBA)
FAMILY 1996 TRUST,                  :
                                    :
        Plaintiffs,                 :
                                    :
v.                                  :
                                    :
ARTHUR LOVETERE, CECIL URSPRUNG.    :
LOUIS J. BACCEI, WORTH LOOMIS,      :
THEODORE PATLOVICH, STEPHEN J.      :
RAFFAY, WILLIAM P. ROWLAND, PETER   :
EIO (individually and in their      :
capacity as members of the Board    :
of Directors of Reflexite           :
Corporation) and REFLEXITE          :
CORPORATION,                        :
                                    :
        Defendants.                 :
                                    :    February 28, 2005
-----------------------------------x
```

### OPPOSITION OF OUTSIDE DIRECTOR DEFENDANTS TO PLAINTIFFS' APPLICATION FOR PREJUDGMENT REMEDY

The plaintiffs, H. Jonathan Frank and the Frank Family 1996
Trust (the "Trust"), have filed an application for a prejudgment
remedy ("PJR") against each of the individual defendants to this
action.  For the reasons set forth below, defendants Arthur
LoVetere, Louis Baccei, Worth Loomis, Theodore Patlovich, Stephen
Raffay and Peter Eio (collectively, the "Outside Directors")
oppose the plaintiffs' application and respectfully request that
it be denied.

As set forth herein, the defendants have moved to dismiss
this action in its entirety, on a number of grounds, including

lack of subject matter jurisdiction.  The defendants' motions to dismiss should be decided prior to any consideration of the PJR. The motions to dismiss will dispose of the Franks' claims, rendering the PJR application moot.  Even if the Court were to consider the PJR without first addressing the jurisdictional objections raised by the defendants, it is clear that the Franks' claims lack merit, and that their arguments in support of the PJR are both inaccurate and legally deficient.  Furthermore, the amount of the PJR sought by the Franks is excessive and unsupported by any probable cause showing that a judgment in that amount could be recovered in this case.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    **A.    The Demand and The Special Litigation Committee**

On February 10, 2003, the Franks issued a demand pursuant to Conn. Gen. Stat. § 33-722 ("Demand") alleging that the Reflexite Corporation ("Reflexite" or the "Corporation") had engaged in self-dealing transactions in redeeming shares of its directors and other insiders while unlawfully denying the Franks similar opportunities to obtain liquidity for their shares.  See Franks' Demand Letter dated February 10, 2003, attached at Tab A.  In response to the Demand, the Corporation formed a special litigation committee ("SLC") that retained well-respected, independent, outside counsel to advise it concerning its responsibilities and to assist it in carrying out its duties with

respect to the Demand.  Following a detailed and expensive investigation in accordance with Connecticut statutes, the SLC recommended, and the Board of Directors of the Corporation (the "Board") subsequently resolved, that the Demand should be rejected and that litigation was not in the best interest of the Corporation.  See Report Of The Special Litigation Committee Of The Board Of Directors Of Reflexite Corporation dated April 28, 2004, attached at Tab B ("SLC Report").[1]  Apparently dissatisfied with the decision of the Board, the plaintiffs brought this derivative action and related claims against eight individual board members and the Corporation, purportedly on behalf of the Corporation.

   B.   **The Amended Complaint and Motions To Dismiss.**

   The defendants requested permission to file a motion to dismiss.  Following a pre-filing conference with the Court, on or about November 7, 2003, the Franks filed an amended complaint (hereinafter "Amended Complaint" or "Am. Compl.").  The Amended Complaint recites a history of H. Jonathan Frank's lengthy personal involvement with Reflexite and Mr. Frank's claims that he was singled out for unfair treatment.  The Amended Complaint sets forth six counts: Count One, which is brought as a

---

   [1] Please note that the voluminous documents listed in the document log of the SLC Report have not been attached to this filing.  Counsel will provide any or all of these documents upon request by the Court.

-3-

derivative action on behalf of Reflexite, alleging that the
individual defendants breached their fiduciary duties to the
plaintiffs and to Reflexite; Count Two, styled as a "direct
action" but alleging, like Count One, that the defendants
breached their fiduciary duties to the plaintiffs; Count Three,
alleging that defendant William P. Rowland breached a contract
with H. Jonathan Frank; Count Four, claiming promissory estoppel
against defendant Rowland in connection with that same contract;
Count Five, alleging that the Outside Directors and defendant
Ursprung tortiously interfered with H. Jonathan Frank's
contractual expectations; and Count Six, demanding an accounting
of Reflexite's assets.  The Amended Complaint seeks compensatory
and punitive damages and injunctive relief.

On or about November 26, 2003, the defendants moved to
dismiss the Amended Complaint on several grounds, including that
the plaintiffs lack standing to maintain their claims.  On or
about May 28, 2004, the Corporation moved separately to dismiss
Count One of the Amended Complaint, the derivative claim, under
Conn. Gen. Stat. § 33-724.  The motions to dismiss are pending
and are summarized herein.

   C.   **The Tender Offer and the PJR Application.**

Plaintiffs now seek a prejudgment remedy ("PJR") against the
individual defendants, including each of the Outside Directors.
The asserted basis for this application is a tender offer through

-4-

which Reflexite repurchased shares of stock from its shareholders on December 17, 2004 (the "Tender Offer"). The plaintiffs assert that the Tender Offer imposes "serious financial risk on Reflexite as well as the Franks." Plaintiffs' Memorandum in Support of Prejudgment Remedy at 1 ("PJR Memo"). The Franks represent that the Tender Offer will have a serious negative effect on the Corporation, threatening the financial stability of the Corporation. See id. at 8.

Despite the plaintiffs' claims that the Tender Offer will be disastrous for Reflexite, the plaintiff Trust was among the largest participants in, and beneficiaries of, the Tender Offer.[2] In fact, the Trust tendered all of its shares, redeeming 77,990 shares for a payment of $2,768,645. See Affidavit of Phil Ferrari, Chief Financial Officer of Reflexite Corporation, at ¶ 10, attached at Tab C ("Ferrari Aff."). As a result of this transaction, the Trust reduced its ownership stake in Reflexite from 11.63% to 8.65%, a decrease of 2.98 percentage points. See id. The shares repurchased from the Trust alone accounted for more than a quarter of the value of the Tender Offer. If the Franks' claims about the Tender Offer were valid, then they would be among the largest contributors to the demise of the

---

[2] As explained in the motions to dismiss, only the Trust is a shareholder in Reflexite; H. Jonathan Frank does not own any shares in Reflexite in his own name. Accordingly, only the Trust participated in the Tender Offer.

Corporation.[3]  As set forth in Section III.C., the Franks either
do not understand the Tender Offer or have chosen to misstate the
facts -- even while taking full advantage of the opportunities it
presented.

## II.  **LEGAL STANDARD**

Under Connecticut law, a plaintiff seeking a prejudgment
remedy must demonstrate that

> there is probable cause that a judgment in the amount of
> the prejudgment remedy sought, or in an amount greater
> than the amount of the prejudgment remedy sought, taking
> into account any known defenses, counterclaims or
> setoffs, will be rendered in the matter in favor of the
> plaintiff.

Conn. Gen. Stat. § 52-278d(a) (2005).

The Court's task at a PJR hearing is to "determine . . . the
likely success of the plaintiff's claim by weighing
probabilities."  Haxhi v. Moss, 25 Conn. App. 16, 19 (1991).
While a prejudgment remedy hearing is not intended to be a "full
scale trial on the merits[,]" New England Land Co., Ltd. v.
DeMarkey, 213 Conn. 612, 620 (1990), a trial court must, in
assessing whether probable cause is present, "consider the

---

[3] In addition to their latest participation, the Franks have
had a history of participating in Reflexite tender offers and
opportunities for liquidity.  The SLC Report details previous
redemptions by the Franks through 2002.  See SLC Report at 11-12.
From November 2003 through the time of the December 2004 Tender
Offer, the Franks redeemed approximately $1.3 million worth of
shares, including participation in a $2.6 million tender offer in
which they redeemed 26,920 shares for $729,532.  See Ferrari Aff.
at ¶ 12.

evidence of both parties because <u>a valid defense may defeat probable cause</u>." <u>Roberts v. Caton</u>, 224 Conn. 483, 487 n.4 (1993) (emphasis added); <u>see also Augeri v. C.F. Wooding Co.</u>, 173 Conn. 426, 429 (1977); <u>L. Suzio Concrete Co., Inc. v. Salafia</u>, 3 Conn. App. 404, 407 (1985). At a PJR hearing, a plaintiff is bound to furnish proof of his damage with reasonable probability, and not leave the trial court to speculation and conjecture. <u>Lyons Hollis Assoc., Inc. v. New Tech. Partners, Inc.</u>, 278 F. Supp. 2d 236, 245 (D. Conn. 2002). The defendants have a valid defense to each of the claims in the Amended Complaint, and thus, there is no probable cause for the issuance of a PJR.

## III. **ARGUMENT**

### A. **The Motions To Dismiss Challenge Subject Matter Jurisdiction, and Should Be Decided Prior to any Consideration of the PJR.**

The Supreme Court has clearly stated the "well-established" rule that "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 154 (1990). The defendants in this action have filed motions to dismiss asserting, among other things, that the plaintiffs lack standing to bring the claims in the Amended Complaint. The Court must consider the question of standing before it can proceed to even the limited review of the merits required to rule on the PJR application. <u>See</u>, <u>e.g.</u>, <u>Amer.</u>

Tissue, Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp., 351 F.
Supp. 2d 79, 90 (S.D.N.Y. 2004) ("Because the absence of
constitutional standing would divest the Court of subject matter
jurisdiction, it must be addressed before analysis of the
merits.").

In the absence of standing, the Court lacks subject matter
jurisdiction to determine the merits of the case, and thus, a
dismissal of the action under Rule 12(b)(1) is appropriate. See,
e.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1090 (2d
Cir. 1995) (affirming dismissal of complaint "for lack of subject
matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) on the
ground that [the plaintiff] lacked standing"); Bd. of Educ. of
Mt. Sinai Union Free Sch. Dist. v. N.Y. State Teachers Ret. Sys.,
60 F.3d 106, 109 (2d Cir. 1995) (same).

"Whenever it appears by suggestion of the parties or
otherwise that the court lacks jurisdiction of the subject
matter, the court shall dismiss the action." Fed. R. Civ. P.
12(h)(3) (emphasis added). "A federal court's lack of subject
matter jurisdiction is not waivable by the parties, and [the
Court] must address jurisdictional questions before reaching the
merits." Leveraged Leasing Admin. Corp. v. PacifiCorp Capital,
Inc., 87 F.3d 44, 47 (2d Cir. 1996) (emphasis added). This is
because "the court must assume jurisdiction to decide whether the
allegations state a cause of action on which the court can grant

-8-

relief[.]" <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946). "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is <u>inflexible and without exception</u>." <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998) (internal quotation marks omitted) (emphasis added).[4] Thus, it is clear that a determination of the plaintiffs' standing, and thus the subject matter jurisdiction of the Court, should be made before the PJR is considered.

**B.    The Motions To Dismiss**

The motions to dismiss establish that the Franks cannot maintain their claims and in turn, cannot meet their burden of probable cause. The motions to dismiss, and the memoranda and reply briefs in support thereof, are fully incorporated herein by reference. The arguments set forth in the motions are summarized below for the benefit of the Court.

---

[4] This rule applies under Connecticut law as well. <u>See</u>, <u>e.g.</u>, <u>Statewide Grievance Committee v. Rozbicki</u>, 211 Conn. 232, 245 (1989) ("Whenever the absence of jurisdiction is brought to the notice of the court or tribunal, cognizance of it must be taken and the matter passed upon before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction."); <u>Kohn Display & Woodworking Co. v. Paragon Paint & Varnish Corp.</u>, 166 Conn. 446, 448-49 (1974) ("Ordinarily, questions of jurisdiction must be considered by the court to which they are presented before any further proceedings may take place.").

-9-

1.    **First Set of Motions To Dismiss: Lack of
Jurisdiction Under 12(b)(1) and Failure To State a
Claim Under 12(b)(6).**

a.    **H. Jonathan Frank Lacks Standing To Bring Any
Claims as a Shareholder.**

H. Jonathan Frank is named as a plaintiff; however, he has

no standing.  H. Jonathan Frank has not personally owned

Reflexite stock within the three-year limitations period, see

Conn. Gen. Stat. § 52-277; In re Colonial Ltd. P'ship Litig., 854

F. Supp. 64, 90 (D. Conn. 1994), therefore, all counts on his

personal behalf should be dismissed.  See, e.g., Int'l Rys. of

Cent. Am. v. Utd. Fruit Co., 373 F.2d 408 (2d Cir. 1967)

(affirming dismissal of claims to the extent they arose prior to

the limitations period); Ghartey v. St. John's Queens Hosp., 869

F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint

show that an action is barred by a statute of limitations, a

defendant may raise the affirmative defense in a pre-answer

motion to dismiss.").

b.    **The Franks Lack Standing To Bring Count One,
the Derivative Action.**

The Franks are in a personal dispute with Reflexite's Board

of Directors and therefore, under established case-law, they are

not proper derivative plaintiffs to act on behalf of other

Reflexite shareholders.

In order to have standing to maintain a derivative

proceeding under Conn. Gen. Stat. § 33-721, a shareholder must

fairly and adequately represent the interests of the corporation. See also Conn. Gen. Stat. § 52-572j.  If a plaintiff does not qualify as a fair and adequate representative of the remaining shareholders who are similarly situated, the plaintiff lacks standing and the case must be dismissed.  See Barrett v. S. Conn. Gas Co., 172 Conn. 362, 372-73 (1977); Fed. R. Civ. P. 23.1.  A plaintiff with mixed motives and conflicting agendas cannot act as a derivative plaintiff.  See Fink v. Golenbock, 238 Conn. 183, 205-06 (1996); Barrett, 172 Conn. 362.

In the instant action, the Franks seek to act as self-chosen fiduciaries on behalf of all shareholders and must therefore have "interests and issues co-extensive with those of the class of shareholders [they] seek [] to represent."  Barrett, 172 Conn. at 373.  As evidenced by the allegations of their own complaint, the Franks are interested in their own welfare and have a unique personal agenda that is not at all in line with any other shareholders.[5]  They simply are not proper derivative plaintiffs and lack standing to represent the other shareholders.  Count One should therefore be dismissed pursuant to Rule 12(b)(1).

---

[5] The motion to dismiss filed by Reflexite and dated November 26, 2003, reviews the Franks' claims in light of the eight factors established by Fink v. Golenbock, establishing that each of the factors weighs in favor of dismissal of the Franks' claims.

c.    **The Franks Lack Standing To Maintain Their "Direct" Count.**

Count Two should also be dismissed under Rule 12(b)(1) because, although the claim is styled as a direct action, it is in fact a derivative claim and Plaintiffs' standing to act on behalf of fellow shareholders and the Corporation fares no better under this Count than it did under Count One.

"The distinction between derivative and direct claims turns primarily on whether the breach of duty is to the corporation or to the shareholder(s) and whether it is the corporation or the shareholder(s) that should appropriately receive relief." In Re Ionosphere Clubs, Inc., 17 F.3d 600, 605 (2d Cir. 1994); see also Yanow v. Teal Indus., Inc., 178 Conn. 262, 282 (1979). Here, the facts underlying the Franks' "Derivative" and "Direct" causes of action are identical. There is no distinction made in the Second Count as to why the Franks have some standing independent of their fellow shareholders to assert, independently, the same derivative claims they make in Count One. Plaintiffs' Count Two is simply a disguised derivative claim subject to the same grounds for dismissal as Count One.

d.    **Count Two Fails To State a Claim.**

Count Two fails to state a claim and should be dismissed pursuant to Rule 12(b)(6). The plaintiffs' allegation that they were denied information fails because the Amended Complaint does not allege that the plaintiffs had any legal right to the

-12-

information they allegedly sought.  Likewise, the plaintiffs'
allegation that they were not offered an equal opportunity for
liquidity fails because a shareholder has no right to have his
stock repurchased in a manner identical to that of other
shareholders.  See Amer. Law Inst., Principles of Corp.
Governance § 5.04 (1992) (where disinterested directors authorize
repurchase of shares from another director, they have "no
obligation . . . to make the same opportunity available to other
shareholders").  In fact, "[i]t is well established . . . that
stockholders need not always be treated equally for all
purposes."  Nixon v. Blackwell, 626 A.2d 1366, 1376 (Del. 1993)
(en banc).

Further, the alleged transactions are protected by the
business judgment rule.  In Connecticut, "[a] corporation may
acquire its own shares[.]"  Conn. Gen. Stat. § 33-684 (2003).  A
corporation is not restricted "from selectively acquiring some of
the stock of a given class."  Toner v. Baltimore Envelope Co.,
498 A.2d 642, 645-46 (Md. 1985).  Such a selective repurchase "is
protected by the business judgment rule, unless it involves fraud
or unfairness, or its primary or sole purpose is to entrench the
directors in office."  Grobow v. Perot, 526 A.2d 914, 927 (Del.
Ch. 1987).

The Amended Complaint does not allege facts that, if proven
at trial, would support a finding that the defendants, in

-13-

establishing rules and procedures regarding the repurchase of stock from the plaintiffs and other shareholders, did not act in good faith, with reasonable care, and in a manner they reasonably believed to be in the best interest of the corporation. <u>See</u> Conn. Gen. Stat. § 33-756. Thus, the business decisions of the Board should not be undone by one disgruntled shareholder.[6]

### e.   Count Five Alleging Tortious Interference With Contract Fails To State a Claim.

The plaintiffs' claims of tortious interference should also be dismissed. The Amended Complaint fails to allege the essential elements of a claim for tortious interference under Connecticut law, and it is clear from the allegations of the Amended Complaint that the plaintiffs' claims are barred by the applicable statute of limitations. <u>See</u> Conn. Gen. Stat. § 52-577; <u>Collum v. Chapin</u>, 671 A.2d 1329, 1332 (Conn. App. 1996). Furthermore, the Trust lacks standing to bring any claims based upon the 1979 Agreement, because it was not a party to that Agreement.

### f.   There Is No Justification for an Accounting.

The Franks do not have any basis to demand an accounting, a fact they have conceded by failing to respond to that portion of the defendants' motions to dismiss.

---

[6] The motions to dismiss also establish that Count Two should be dismissed to the extent that it demands injunctive relief, because the plaintiffs have an adequate remedy at law. <u>See</u>, <u>e.g.</u>, <u>Ford v. Reynolds</u>, 316 F.3d 351, 355 (2d Cir. 2003).

-14-

**2.    Reflexite's Motion To Dismiss the Derivative Claim
Pursuant to Conn. Gen. Stat § 33-724.**

On or about May 28, 2004, after limited discovery was
conducted by the parties, the Corporation filed a motion to
dismiss Count One (the derivative claim) pursuant to Conn. Gen.
Stat. § 33-724 because the Board's decision is protected by the
business judgment rule.

> A derivative proceeding <u>shall</u> be dismissed by the court
> on motion by the corporation if one of the groups
> specified in subsection (b) or (f) of this section has
> determined in good faith after conducting a reasonable
> inquiry upon which its conclusions are based that the
> maintenance of the derivative proceeding is not in the
> best interests of the corporation.

Conn. Gen. Stat. § 33-724(a) (2005) (emphasis added).  Conn. Gen.
Stat § 33-724(b) provides that

> the determination in subsection (a) of this section shall
> be made by: (1) a majority vote of independent directors
> present at a meeting of the board of directors if the
> independent directors constitute a quorum; or (2) a
> majority vote of a committee consisting of two or more
> independent directors appointed by a majority vote of
> independent directors present at a meeting of the board
> of directors, whether or not such independent directors
> constituted a quorum.

Conn. Gen. Stat. § 33-724(b) (2005).  The committee contemplated
by this section is generally referred to as a "Special Litigation
Committee," which is precisely what the Board established to
respond to the Demand.  Unless there is proof that a special
litigation committee's members were conflicted, or failed to
conduct the investigation in good faith, the court will respect a
special litigation committee's decision not to pursue a

-15-

derivative claim and the SLC's decision is not subject to judicial review.  <u>See</u> <u>Speigel v. Buntrock</u>, 571 A.2d 767, 777-78 (Del. 1990); <u>Zapata Corp. v. Maldanado</u>, 430 A.2d 779, 784-787 (Del. 1981).

The SLC in this case was comprised of independent Board members who made a good faith determination, after a reasonable inquiry with the assistance of well-respected counsel, that the demanded lawsuit was not in the best interests of the Corporation.  The Board adopted the SLC's recommendation and thus, pursuant to the applicable statute, the court "shall" dismiss the plaintiffs' claims.

### C.    The Franks Have Incorrectly Characterized the Tender Offer.

The Franks' decision to seek a PJR was purportedly in reaction to the Tender Offer, which they claim is prejudicial to them and harmful to the Corporation.  However, the Franks are just plain wrong about the operation and effect of the Tender Offer, and yet again their attempts to show prejudice and harm where none exist must fail.  As set forth in the table below, the Franks either misunderstand the various transactions the Company is involved in, or they simply refuse to acknowledge the truth: that the Company is viable and successful and is making sound business judgments.

-16-

| The Franks' Claim | The Truth |
|---|---|
| 1.   The Franks will own a larger percentage of the Corporation after the tender offer.  (PJR Memo. at 5.) | 1.   The Franks participated in the tender offer and their ownership was reduced from 215,343 shares to 137,353 or from 11.63% of the Corporation to 8.65%.  (See Ferrari Aff. at ¶ 10.) |
| 2.   The "fill the pot" formula will favor smaller shareholders such as certain of the defendants over larger ones such as the Franks. (PJR Memo. at 9) | 2.   The "fill the pot" formula has been used in past redemptions in which the Franks have participated.  The method is employed to include smaller shareholders who would otherwise have no significant opportunity to redeem.  The "fill the pot" method is only used for the first $400,000 of the Tender Offer and provides shareholders with an equal opportunity for redemption. After the initial $400,000 of the "fill the pot" formula, redemptions are based on a fixed percentage of shares held.  Thus, the larger shareholders, including the Franks, enjoyed the highest levels of redemption. The reality is that the Franks were among the top beneficiaries of the Tender Offer.  (See Ferrari Aff. at ¶ 9.) |
| 3.   "The Directors and Officers are the largest group of selling shareholders [. . . ] and they will receive the lion's share of the benefits."  (PJR Memo. at 4.) | 3.   The Franks redeemed the second largest number of shares (77,990) and decreased their holdings by the greatest percentage points (2.93) among large shareholders for a total liquidation in the amount of $2,768,645.  By contrast, the Outside Directors Lovetere, Baccei, Loomis, Patlovich and Eio did not participate in the tender offer.  Each of them now holds a |

-17-

| The Franks' Claim | The Truth |
|---|---|
| | larger percentage of the outstanding stock of Reflexite than he did prior to the Tender Offer. Raffay, a former Director, decreased his percentage of ownership by less than 0.5 percentage points. Cecil Ursprung decreased his percentage of holdings by 1.78 percentage points. (See Ferrari Aff. at ¶ 11.) |
| 4. The tender offer will reduce the number of shareholders. (PJR Memo. at 5.) | 4. The number of shareholders remained essentially the same. (See Ferrari Aff. at ¶ 8.) |
| 5. The tender offer will substantially change the financial condition of Reflexite. (PJR Memo. at 5.) | 5. The Tender Offer, while significant, could have been much larger and is expected to have direct long term benefits for <u>all</u> Shareholders. (See Ferrari Aff. at ¶ 7.) |
| 6. The Franks expect the tender offer will require "consents" and subordination agreements. (PJR Memo. at 4.) | 6. The Corporation has obtained financing for the Tender Offer without warrants.* The subordination agreements are between the lenders and do not affect the shareholders' positions, including the Franks. (See Ferrari Aff. at ¶ 6.) |
| 7. The new borrowings will vastly exceed Reflexite's net income, available working capital and cash flow. The Defendants are mortgaging the future of Reflexite in order to obtain cash principally for themselves. (PJR. Memo at 8.) | 7. The Corporation was offered, even encouraged, by reputable lenders to double the size of the tender offer, and could have done a redemption of $20,000,000. (See Ferrari Aff. at ¶ 5.) |

| The Franks' Claim | The Truth |
|---|---|
| 8.   The Defendants have previously issued themselves stock options with associated "puts" which the Franks only learned of through limited discovery.   (PJR Memo. at 4.) | 8.   The stock options with "puts" were approved by a vote of all shareholders.   The Franks participated in the vote.   (See Aff. of Phil Ferrari at ¶ 13.) |
| 9.   The Board relented from a "2004 Stock Option Plan" immediately after the Franks asserted their objections. (PJR Memo. at 3.) | 9.   The Board believed that it had enough shareholder votes of approval for the 2004 Stock Option Plan, but decided to defer the motion until the next annual meeting because it had enough shares at the time.   (See Ferrari Aff. at ¶ 14.) |
|  | * The Franks refer to "consents;" however, the defendants believe the Franks mean to refer to warrants, which may be granted to investors, but were not given in this instance. |

The facts show that the plaintiffs have no basis for concern regarding the Tender Offer; indeed, the Tender Offer provided them with the very "liquidity" they claim to have been unfairly denied.   Simply put, they have it wrong.   The Franks should not be permitted to hold the Corporation hostage or tie up the assets of the individual defendants based on their erroneous contentions and their personal agenda.   They represent only their own perceived interests, and not those of the Corporation or its other shareholders.   Accordingly, the PJR should be denied.

**D.    The Franks Are Unable to Justify The Amount Of The PJR.**

A plaintiff seeking a prejudgment remedy must establish that "there is probable cause that a judgment <u>in the amount of the prejudgment remedy sought</u>, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff[.]" Conn. Gen. Stat. § 52-278d (emphasis added).

The Franks have offered no valid proof or justification for the $8.5 million PJR sought. The Franks merely assert that "[w]hile the precise amount of damages the Plaintiffs have suffered will require further discovery to ascertain, the Plaintiffs know that the Defendants have engaged in at least $8,500,000 in unlawful transactions to date, exclusive of the tender offer." (Declaration of H. Jonathan Frank filed in support of PJR at ¶ 6.) The Franks' specific complaint is with respect to the $8,100,000 Rowland transaction and its alleged ill effects on the Corporation. <u>Id</u>. However, it is unclear how the overall value of the Rowland transaction has any bearing on the alleged damages to the Corporation or to the Franks individually. The Franks have not even attempted to quantify these alleged damages and, in fact, no such damages exist.

The reality is that the Corporation has repaid the debt in connection with the Rowland transaction. The Corporation paid

$30 per share to redeem Rowland's shares.  <u>See</u> SLC Report at 10.
The current price per share as reflected in the Tender Offer is
$35.50.  <u>See</u> PJR Memo. at 3.  Thus, the value of the plaintiffs'
stock has actually <u>increased</u> since the Rowland transaction,
leaving them no damages whatsoever.  There is simply no basis for
the Franks' claim of damages.

Even if the Franks could establish some dollar amount of
damages on their individual claims, the only basis for any such
damages would be an alleged loss of liquidity.  The Franks have
recently become more "liquid" to the tune of over $2.7 million,
thanks to the Tender Offer, and they have received an additional
$1.3 million in redemptions since November 2003.  <u>See</u> Ferrari
Aff. at ¶¶ 10, 12.  In addition, the Trust, like all Reflexite
shareholders, has received substantial dividends from the
Corporation on a regular basis.

Furthermore, the damages available from the individual
defendants are limited by the terms of Reflexite's Articles of
Incorporation, which provide:

> A director of the Corporation shall not be liable to the
> Corporation or its shareholders for monetary damages for
> breach of duty as a director in an amount in excess of
> the compensation received by such director for serving
> the Corporation during the year of such breach[.]

Articles of Incorporation, ¶ 7, attached at Tab D.  This
provision is in accordance with Conn. Gen. Stat. § 33-636, which
permits the inclusion of such limitations on liability, subject

-21-

to certain exceptions.  None of the exceptions applies to the Outside Directors, and their liability is thus limited to the compensation they received from the Corporation in one year.

In sum, the amount of the remedy sought by the Franks is baseless and erroneous, and therefore, the PJR should be denied.

## IV.   CONCLUSION

For the reasons set forth above, the Outside Directors respectfully submit that the plaintiffs' request for a PJR should be denied, and that this action should be dismissed.

DEFENDANTS,

ARTHUR LOVETERE, LOUIS J. BACCEI,
WORTH LOOMIS, THEODORE PATLOVICH,
STEPHEN J. RAFFAY and PETER EIO

By: _____
James T. Cowdery (ct05103)
Sarah A. L. Merriam (ct25379)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT   06103
Tel: (860) 278-5555
Fax: (860) 249-0012
E-mail: jcowdery@cemlaw.com
E-mail: smerriam@cemlaw.com

-22-