UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

H. JONATHAN FRANK, and FRANK FAMILY
1996 TRUST,

              CIVIL NO.: 3:03cv1014 (JBA) (JGM)
      Plaintiffs

V.

ARTHUR LOVETERE, CECIL URSPRUNG,
LOUIS J. BACCEI, WORTH LOOMIS,
THEODORE PATLOVICH, STEPHEN J.
RAFFAY, WILLIAM P. ROWLAND AND
PETER EIO,

      Defendants.   OCTOBER 11, 2005

## MEMORANDUM OF LAW IN SUPPORT OF
## REFLEXITE CORPORATION'S
## MOTION FOR EXPENSES

  The plaintiffs, H. Jonathan Frank and Frank Family 1996 Trust (hereinafter the "Plaintiffs" or the "Franks"), brought a suit styled as a derivative action in order to force the total liquidation of their closely held stock in Reflexite, even though the Franks had no right to such liquidation. The Franks commenced and maintained the suit without reasonable cause, and as a result, the previously named defendant, Reflexite Corporation ("Reflexite" or the "Corporation"), incurred $232,717.78 in expenses and legal fees.

  The impropriety of the Franks' attempt to force liquidation of their stock was perhaps best illustrated by the Franks application for a prejudgment remedy, which application they filed despite Reflexite's counsels' explanation to the Franks' counsel that the application had no basis. Only after the Franks forced Reflexite to incur significant expenses drafting and filing an

opposition to the prejudgment remedy application and preparing for a hearing, did the Franks withdraw the application just days prior to the scheduled hearing.

Similarly, rather than withdrawing their action (or never filing in the first instance), the Franks forced Reflexite to respond to needless, expensive discovery and draft and file a motion to dismiss. Amazingly, at the hearing on Reflexite's motion to dismiss, the Franks admitted that there was no basis for their derivative and direct claims against Reflexite. The Court's dismissal of the Franks' claims, based on the Franks' concession confirmed the fact that the Franks' derivative suit was baseless.

As set forth in more detail below, the statutes governing derivative actions were designed to protect against exactly the type of abuse and baseless litigation that the Franks employed here. As a deterrent against and penalty for abusive litigation, the statutes permit defendants to recover expenses and fees from plaintiffs who commence and maintain derivative suits without reasonable cause. In accordance with the statutes, the Franks should be ordered to pay Reflexite's reasonable expenses, including attorney's fees, in connection with its defense of the Franks' baseless derivative action.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Demand and The Special Litigation Committee

Evidencing their motive to obtain total stock liquidation, on February 10, 2003, the Franks issued a demand pursuant to Conn. Gen. Stat. § 33-722 ("Demand"), alleging that the Corporation had engaged in self-dealing transactions in redeeming shares of its directors and other insiders while unlawfully denying the Franks similar opportunities to obtain liquidity for their shares. (Franks' Demand Letter dated February 10, 2003 attached hereto as Exhibit A). In

their Demand, the Franks stated, "[w]e also understand that the Corporation has repurchased the shares of Board members and other insiders at terms favorable to those insiders while refusing to accord comparable treatment to the Franks or other non-insider shareholders. [. . .]. Reflexite has denied similar opportunities to the Franks, and has wrongfully acted to limit the liquidity and value of the Franks' investment in Reflexite." Id. at 2. In response to the Demand, the Corporation followed the statutory scheme and formed a special litigation committee ("SLC"). The SLC retained well-respected, independent, outside counsel (Cummings & Lockwood) to advise it concerning its responsibilities and to assist the Corporation in carrying out its duties with respect to the Demand. Following a detailed investigation that cost Reflexite $63,361.75, in accordance with the Connecticut derivative statutes, the SLC recommended, and the Board of Directors of the Corporation ("Board) subsequently resolved, that the Demand should be rejected and that litigation was not in the best interest of the Corporation. (See Report Of The Special Litigation Committee Of The Board Of Directors Of Reflexite Corporation dated April 28, 2004 attached hereto as Exhibit B, hereinafter "SLC Report")(documents listed in the document log of the SLC Report have not been attached).)

Dissatisfied with the decision, because it would not lead to the Franks' desired stock liquidation, the Franks brought this lawsuit framing it as derivative action with related claims against eight individual board members and the Corporation. The purpose of the lawsuit, namely to gain full liquidity for the Franks, is evident from the Franks' counsels' correspondence that accompanied the initial Complaint. (See June 5, 2003 letter from attorney Jeffrey A. Simes attached hereto as Exhibit C.) In the letter the Franks' counsel stated "it has become clear that Reflexite is not interested in discussing means of providing liquidity to the [Franks] on a basis

comparable to that given in the past to Board members and other insiders." Id. With respect to Reflexite's indication that there may be opportunities for liquidity in the future, the Franks' counsel stated that "[t]hese response are clearly inadequate, especially given that Reflexite has required no similar patience on the part of Board members seeking outcomes similar to what the Franks seek."

### B.     The Amended Complaint.

Following a pre-filing conference with the Court in which Reflexite reiterated that the Franks' claims were baseless and in which the defendants made clear that they anticipated filing motions to dismiss, on or about November 7, 2003, the Franks filed an amended complaint (hereinafter "Amended Complaint"). The Amended Complaint recited a history of H. Jonathan Frank's involvement with Reflexite and his alleged personal claims of unfair treatment. The Amended Complaint contained the following six counts: Count One, which was brought as a derivative action on behalf of Reflexite, alleging that the Defendants breached their fiduciary duties to Plaintiffs and to Reflexite; Count Two, styled as a "direct action" but alleging, just like Count One, that the Defendants, including Reflexite, breached their fiduciary duties to Plaintiffs; Count Three, alleging that defendant William P. Rowland breached a contract with Plaintiffs; Count Four, claiming promissory estoppel against defendant Rowland; Count Five alleging that the Defendants, including Reflexite, tortiously interfered with Plaintiffs' contractual expectations; and Count Six, demanding, as purported shareholders, an accounting of Reflexite's

assets. The Amended Complaint sought compensatory and punitive damages for and from Reflexite, as well as injunctive relief.[1]

### C.  The Motions To Dismiss

Pursuant to the scheduling order of the Court, on or about November 26, 2003, the Corporation moved to dismiss the allegations against it on the grounds that: (1) H. Jonathan Frank lacked standing because he was not a shareholder; (2) the Franks lacked standing to maintain their derivative count under Conn. Gen. Stat. § 52-572j because, due to their self interest, they were not proper derivative plaintiffs; (3) the Franks lacked standing to maintain their direct count because it was identical to count one, the derivative claim; (4) the alleged improper transaction and actions of the Corporation were permissible; (5) the Franks had not properly alleged that there was tortious interference with contractual relations; and (6) the Franks did not have any basis to demand an accounting.

Further pursuant to the scheduling order, on or about May 28, 2004, the Corporation moved to dismiss the allegations against it on the basis that dismissal is required under Conn. Gen. Stat. § 33-724, which provides that "[a] derivative proceeding shall be dismissed by the court on motion by the corporation if one of the groups specified in subsection (b) or (f) of this section has determined in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interests of the corporation." Conn. Gen. Stat § 33-724(b) states in pertinent part "the determination in subsection (a) of this section shall be made by: (1) a majority vote of independent directors present at a meeting of the board of directors if the independent directors

---

[1] The Amended Complaint contained the same substantive claims and prayer for relief as the original Complaint and therefore, there is no distinction made in later sections that refer to the commencement of the suit.

constitute a quorum; or (2) a majority vote of a committee consisting of two or more independent directors appointed by a majority vote of independent directors present at a meeting of the board of directors, whether or not such independent directors constituted a quorum."

### D.     The Hearing And Decision On The Motions To Dismiss.

On March 24, 2005, the Court held a hearing on the Motions to Dismiss. At the outset of the hearing, despite the fact that the Amended Complaint named the Corporation as a Defendant in Count II and despite briefing by both parties that assumed Reflexite was a target defendant, counsel for the Franks stated that Reflexite was not in fact a defendant to either count one or count two.

> The Court: So, the corporation isn't a defendant in this case.
>
> Mr. Strassberg: With respect to count two, your Honor, that is right. And I understand there has been some confusion, I believe, about that probably due to our inartful drafting on that.
>
> The Court: But is it a defendant in count one as well? It says against the individual defendants in the complaint.
>
> Mr. Strassberg: Well, no, in count one, your Honor, it would be standing in the shoes derivatively of Reflexite to be suing on their behalf for the recovery that they would be owed derivatively.
>
> The Court: So, that's my question. **Is the corporation a defendant in either count one or count two?**
>
> Mr. Strassberg: **I think the answer to that is no, your Honor, they are not.**

(Transcript at pp. 11 – 12 attached hereto as Exhibit D (hereinafter "Trans.")) (emphasis added).

This representation eliminated the Corporation as a derivative defendant. Counsel for the Franks further indicated that no recovery was being sought against the Corporation.

> Mr. Strassberg: [ . . . ] There is no recovery sought against the corporation. The corporation can only benefit in the derivative claim if it is successful as prosecuted by the Franks. So there is no aspect of being a defendant that it encompasses, goes along with the derivative claim, your Honor.

(Trans. at p. 54, lines 19-24). The Franks' concession in this regard was completely inconsistent with the allegations in the Amended Complaint, which claimed recovery from the Corporation. Specifically, the Franks prayed for judgment "awarding compensatory and punitive damages against Defendants in amounts to be determined at the trial of this action". (Am. Compl. at p. 25).

On March 31, 2005, the Court issued a ruling, incorporating the Franks' concessions and dismissing all counts against Reflexite. After the ruling, all that remained were limited allegations against the Individual Defendants. With respect to the derivative count, the Court specifically held that the Franks lacked support for their generalized allegations that the SLC's investigation was conducted unreasonably and in bad faith and thus, dismissed the case under Conn. Gen. Stat. § 33-724.

> Because plaintiff has not met his burden of offering a factual predicate for his "on information and belief" allegations, see Am. Compl. ¶¶ 39-48, 55-57, the Court finds **no basis** for concluding that the SLC acted unreasonably or in bad faith, and Count One must be dismissed pursuant to Conn. Gen. Stat. § 33-724."

(Memorandum of Decision dated March 31, 2005 at pp. 20-21 (hereinafter "Decision") attached hereto as Exhibit E) (emphasis added).

### E.   The Application For Prejudgment Remedy.

In early 2005, the Corporation announced plans for a tender offer (the "Tender Offer") that would provide stock redemption to shareholders, including the Franks. Despite the fact that

the Tender Offer would provide the Franks with substantial stock liquidation, the Franks voiced an objection and threatened further legal action in the form of a prejudgment remedy if the Tender Offer went forward. The Franks claimed that the Tender Offer would be detrimental to the Corporation, favor smaller shareholders and leave the Franks holding a larger percentage of shares in a devalued company. In response to the concerns that the Franks voiced through correspondence and through their counsels' conversation's with Reflexite's counsel, Reflexite took the time to educate and explain to the Franks that the Franks were misunderstanding the Tender Offer and, in fact, the Franks would actually be among the largest beneficiaries of the Tender Offer and they would receive significant liquidity through the Tender Offer. The Franks ignored the information from Reflexite about the Tender Offer and filed a baseless application for prejudgment remedy seeking an attachment of $8,500,000 (the "PJR").[2]

In opposing the Tender Offer through the PJR, the Franks alleged that the Tender Offer would impose "serious financial risk on Reflexite as well as the Franks." (Plaintiffs' Memorandum in Support of Prejudgment Remedy at 1 (hereinafter "PJR Memo"). The Franks made wild and unsupported allegations including a claim that the Tender Offer would have a serious negative effect on the Corporation, so much so, that the financial stability of the Corporation would be in jeopardy. Id. at 8. The Franks also claimed that the Tender Offer would increase their percentage stake in Reflexite and benefit the board members, even though Reflexite had explained previously that they were mistaken in those beliefs. These baseless

---

[2] One of the attractive factors for the Tender Offer was that it would provide a significant stock liquidation and hopefully appease the Franks and perhaps lead to withdrawal of this expensive litigation. Reflexite is prepared to offer testimony regarding the efforts taken to educate the Franks about the Tender Offer.

allegations revealed that the Franks did not read or did not take the time to understand the Tender Offer before initiating the PJR proceedings.

In the Opposition to the PJR, Reflexite and the other defendants highlighted the numerous misrepresentations/misstatements that the Franks made in their PJR Memo concerning the Tender Offer, each of which was previously shared with the Franks prior to their filing the PJR.[3] The reality was that the transaction was a sound business decision and, despite the Franks' contention of the evil effects of the Tender Offer, the Franks ultimately participated in the Tender Offer and were among the largest participants/beneficiaries of the Tender Offer, tendering all of their shares and thereby redeeming nearly 3 percentage points of their 11.63 % ownership in Reflexite, which resulted in a payment to the Franks of $2,768,645. (See Affidavit of Phil Ferrari, Chief Financial Officer of Reflexite Corporation at ¶ 10 attached as Exhibit C to the PJR Opp.). The Franks' participation in the Tender Offer again is telling of their improper motive. The Franks' participation was directly at odds with their claimed role as derivative plaintiffs fighting for the good of the Corporation. If the Franks' assertions about the Tender Offer had any validity, their participation would have been among the largest contributors to the demise of the Corporation. The Franks' participation is proof that they did not believe in, and had no basis for, their claims in their PJR application.

Reflexite submits that the Franks' opposition to the Tender Offer is again telling of their motive. The Franks' baseless objection reveals that they are driven by a quest for complete liquidation of their Reflexite stock holdings, and they will not settle for partial or incremental

---

[3] A table of the misrepresentation/misstatement appears in the Outside Defendants' Opposition to PJR dated February 28, 2004 at pp. 17-19 ("PJR Opp.), which was fully incorporated by the Corporation in its Opposition to PJR dated March 1, 2005.

liquidity. The problem with the Franks' quest, and their chosen device of litigation to guide their quest, is that Reflexite is a non-public company that did not grant unfettered redemption rights to the Franks when the Franks chose to obtain company stock. The Franks' use of litigation to try to create a right to total liquidity, and their opposition to anything short of complete liquidation, is baseless and abusive and precisely why Conn. Gen. Stat. § 33-726 permits a company to obtain its fees and expenses when a shareholder engages in such litigation.

Due to the Franks' dogged pursuit of their baseless PJR, the Corporation devoted extensive time, energy and expense to drafting an opposition memorandum and preparing for an evidentiary hearing, which was scheduled for the end of March, 2005. After the expense of briefing and preparation, but before the hearing, the Franks withdrew their application. The filing and pursuit of the PJR had absolutely no basis and needlessly cost Reflexite $11,324.00 in expense and fees.

## II.     ARGUMENT

The Franks brought and maintained the derivative lawsuit without reasonable cause and for an improper purpose. Reflexite, therefore, is entitled to all of its expenses and attorneys' fees incurred in connection with the defense of the baseless action.

### A.     Legal Standard

Conn. Gen. Stat. § 33-726. entitled "Payment of expenses" provides:

> On termination of the derivative proceeding the court may:
>
> (1) Order the corporation to pay the plaintiff's reasonable expenses, including attorney's fees, incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation;
>
> (2) Order the plaintiff to pay any defendant's reasonable expenses, including attorney's fees, incurred in defending the proceeding if it finds

> that the ***proceeding was commenced or maintained without reasonable cause or for an improper purpose***; or
>
> (3) Order a party to pay an opposing party's reasonable expenses, including attorney's fees, incurred because of the ***filing of a pleading, motion or other paper, if it finds that the pleading, motion or other paper was not well grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and was interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation***.

(Emphasis added.)

The reason for this fee-shifting burden is manifest. The powerful purpose of a derivative lawsuit is to allow a minority shareholder to change the course of a corporation when the board of directors is not acting in the shareholders' best interests. If, however, a minority shareholder abuses the derivative power and attempts to change the course of a corporation in a direction that is not in the other shareholders' best interests, the minority shareholders' selfish action hurts the other shareholders. The fee-shifting provision serves as a deterrent to minority shareholders who might otherwise attempt to impose their will against the will of the majority when the will of the majority is based upon sound business judgment. See MODEL BUS. CORP. ACT § 7.46, cmt. (1999) (noting that section (2) is designed to prevent proceedings which may be brought to harass the corporation; section (3) added to deal with abuses in conduct of derivative litigation).[4]

### B. The Franks Commenced and Maintained the Action Against Reflexite Without Reasonable Cause.

The Court need do no more than recall the hearing on the motions to dismiss to conclude that Reflexite is entitled to its fees and expenses for defending against a baseless derivative lawsuit. In response to the Court's simple question as to whether Reflexite was a "defendant in

---

[4] Conn. Gen. Stat. § 33-726 is Connecticut's adoption of MODEL BUS. CORP. ACT § 7.46.

either count one or two," the Frank's counsel stated, "I think the answer to that is no, your Honor, they are not." (Trans. at pp. 11-12). In sum, the Franks brought a derivative action, forced Reflexite to defend against discovery, defend against a PJR application and draft and file motions to dismiss. After all of that time and expense, and in response to the Court's one direct question, the Franks conceded that there was no basis for a derivative claim against Reflexite. The Franks' abandonment of all claims against Reflexite, and the Court's subsequent dismissal of the Franks' derivative claims based on that abandonment, justifies an award of expenses and fees under Conn. Gen. Stat. § 33-726(2).

Although it does not appear that there are any reported Connecticut cases that have analyzed Conn. Gen. Stat. § 33-726(2), an examination of cases in other jurisdictions demonstrates that Court's are apt to award expenses in similar instances. In Brady v. Calcote, No. M2003-01690-COA-R3-CV, 2005 WL 65535 (Tenn. Ct. App. Jan. 11, 2005) (copy attached hereto as Exhibit F) the Court of Appeals of Tennessee upheld an award of attorney's fees, pursuant to the Tennessee Code,[5] following the dismissal of a derivative action. Id. at * 9. The Brady court conducted a review of relevant case law in other jurisdictions that have similar statutes to the applicable portion of the Tennessee Code. The Brady court held that a plaintiff acts "without reasonable cause" if at the time the plaintiff brings suit: (1) plaintiff's claims in the lawsuit are not warranted by existing law or good faith argument for the extension, modification, or reversal of existing law; or (2) plaintiff's allegations in the suit are not well-grounded in fact after reasonable inquiry. Id. at * 8 (citing to the MODEL BUS. CORP. ACT § 7.46, cmt. (1999).)

---

[5] Tennessee Code § 48-17-401(d) is nearly identical to Conn. Gen. Stat. § 33-726.

The Court of Appeals of Tennessee then reasoned, in part on the findings of the Special Litigation Committee, that the trial court did not commit error when it found that the plaintiff brought the derivative action without reasonable cause and awarded the defendant expenses and attorney's fees. Id.; see also Bass v. Walker, 99 S.W. 3d 877, 885-888 (Tex. App. 2003)(after applying objective standard of "without reasonable cause" court held that there was not a reasonable pre-filing inquiry by the plaintiff; such an inquiry would have revealed that the claims were not well-grounded); Sletteland v. Roberts, 314 Mont. 76, 80-81, 64 P.3d 979, 981-982 (2003)(reversing lower court's decision in favor of minority shareholder and awarding defendant corporation fees; minority shareholder's claim was not reasonable as he was expected to know the ill-effects of the derivative suit); Blumenthal v. Teets, 155 Ariz. 123, 131, 745 P.2d 181, 189 (1987) (reliance on newspaper article that set forth the possibility of negligence on the part of officers, employees and perhaps directors did not constitute reasonable cause for the derivative action and thus, award of attorneys' fees upheld).[6]

The Franks' abandonment of their purported derivative claims, especially after they were permitted to conduct discovery regarding the SLC's investigation, is the most compelling proof that the claims against Reflexite in the lawsuit were not warranted by existing law or good faith argument for the extension, modification, or reversal of existing law. Indeed, the Court specifically found that there was *"no basis for concluding that the SLC acted unreasonably or in bad faith, and Count One must be dismissed pursuant to Conn. Gen. Stat. § 33-724."* (Decision at pp. 20-21) (emphasis added). The analysis should end here and Reflexite should recover its expenses and fees.

---

[6] Texas, Montana and Arizona are among the states that have adopted MODEL BUS. CORP. ACT § 7.46.

Moreover, the recommendation of the SLC, adopted by the Board, that the Demand should be rejected and that litigation was not in the best interest of the Corporation is further evidence that the Franks pursued and maintained the matter without a good faith legal or factual basis. In challenging the decision of the SLC, the Franks made conclusory statements, such as "[o]n information and belief, the SLC was not independent, disinterested or diligent in its investigation." (See Am. Compl. at ¶ 70.) The Court rejected all these arguments that baldly challenged the thoroughness of the SLC's investigations and the Court concluded that "plaintiff has not met his burden of offering a factual predicate for his 'on information and belief' allegations [...].'" (Decision at p. 20.) The Franks' tactic of alleging on "information and belief" a central element of its purported derivative claim is dubious by itself, but their abject failure to even substantiate an "information and belief" allegation in response to Reflexite's motion to dismiss is conclusive proof that they had "no basis" for their claims, as the Court found. Id. It is clear that the Franks' derivative suit was filed to harass the Corporation in furtherance of their quest for liquidation.

Because the Franks pursued their purported derivative claims without reasonable cause, Reflexite is entitled to recover its expenses and attorneys' fees. As set forth in the Affidavit of Phil Ferrari, Reflexite's Chief Financial Officer, attached hereto as Exhibit G, Reflexite incurred a total of $232,717.78 as a result of the Franks' improper derivative claims and to which it is now entitled to reimbursement.

    C.    **The PJR Was Baseless and Unwarranted.**

To the extent that Reflexite is not reimbursed for its total fees and expenses pursuant to Conn. Gen. Stat. § 33-726(2), it is at least entitled pursuant to Conn. Gen. Stat. § 33-726(3) to

reimbursement of its expenses and fees in connection with the Franks' PJR application. The PJR application was filed and pursued without a sufficient factual basis to support the remedy.

As set forth above, the Franks' PJR application was sparked by the Tender Offer, which the Franks claimed was prejudicial to them and harmful to Reflexite. Reflexite informed the Franks of all the reasons why the PJR application was meritless both prior to and after it was filed. The Franks' baseless claims and the truth were detailed in the Outside Defendants' Opposition to PJR at pp. 17-19, which was fully incorporated by the Corporation in its Opposition to PJR dated March 1, 2005. Some of the Franks' most egregious misstatements are as follows:

| The Franks' Claim | The Truth |
| --- | --- |
| 1. The Franks will own a larger percentage of the Corporation after the tender offer. (PJR Memo. at 5.) | 1. The Franks participated in the tender offer and their ownership was reduced from 215,343 shares to 137,353 or from approximately 11.63% of the Corporation to 8.65%. |
| 2. "The Directors and Officers are the largest group of selling shareholders [. . .] and they will receive the lion's share of the benefits." (PJR Memo. at 4.) | 2. The Franks redeemed the second largest number of shares (77,990) and decreased their holdings by the largest percentage (2.93%) for a total liquidation in the amount of $2,768,645. By contrast, the Defendant Officers/Directors Lovetere, Baccei, Loomis, Patlovich and Eio did not participate in the tender offer. Raffay, a former Director, decreased his percentage of ownership by less than ½ of one percent. Cecil Ursprung decreased his percentage of holdings by 1.78 percentage points. |
| 3. The Franks expect the tender offer will require consents and subordination agreements. (PJR Memo. at 4.) | 3. The Corporation obtained financing for the Tender Offer without warrants.[7] The subordination agreements were between the lenders and did not affect the shareholders' positions, including the Franks. |

---

[7] The Franks referred to "consents" however, the Corporation believes that they meant "warrants," which may be granted to investors but were not given in the case of the Tender Offer.

Despite these irrefutable truths and the fact that the largest group of Reflexite shareholders, comprised of the Employee Stock Option Plan (ESOP), approved the Tender Offer, (which is itself evidence that the Tender Offer was in the Corporation's best interests), the Franks filed the PJR application. The Franks obviously did not believe their own claims because they were among the largest participants to the alleged improper transaction, tendering all of their shares and redeeming 2.93 percentage points of their ownership in exchange for $2,768,645. The Franks cannot have it both ways - they cannot claim one minute that the Tender Offer is injurious to the Corporation and file a PJR and in the next minute withdraw the PJR and take advantage of the Tender Offer. The Franks' withdrawal of the PJR confirmed that the Franks filed it without any factual or legal justification. It was filed instead to harass Reflexite and to cause Reflexite to needlessly devote time and expense in crafting an opposition in the Franks' abusive effort to force a total liquidation of their shares.

The Corporation is therefore, at least entitled to recover its expenses and fees in defending the PJR. Conn. Gen. Stat. § 33-726(3). As set forth in Exhibit G, the Corporation has incurred a total of $11,324 as a result of the Franks' improper PJR.

### III. CONCLUSION

The Franks commenced and pursued a purported derivative action without reasonable cause. The Court dismissed the baseless action under the applicable statutes governing derivative actions after the Franks explicitly abandoned their claims. Reflexite is now entitled to recover its expenses and fees from the Franks pursuant to the derivative statutes.

FORMER DEFENDANT
REFLEXITE CORPORATION

By _____
Craig A. Raabe – ct04116
Jason M. Kuselias – ct20293
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Email: craabe@rc.com
Email: jkuselias@rc.com
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on the 11th day of October, 2005, to:

Michael Considine, Esq.
Patricia M. Canavan, Esq.
Terence J. Gallagher, Esq.
Day, Berry & Howard LLP
One Canterbury Green
Stamford, CT 06901

Richard M. Stassberg, Esq.
Jeffrey Alan Simes, Esq.
Goodwin Procter LLP
599 Lexington Avenue
New York, NY 10022

James T. Shearin, Esq.
Pullman & Comley, LLC
850 Main Street
P.O. Box 7006
Bridgeport, CT 06601-7006

Edward F. Spinella, Esq.
Todd S. Federico, Esq.
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103

James T. Cowdery, Esq.
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703

Jason M. Kuselias