# EXHIBIT D

```
                UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT


* * * * * * * *

H. JONATHAN FRANK, ET AL        *
            Plaintiff,          * Case No. 03CV1014(JBA)
    vs.                         *
ARTHUR LOVETERE, ET AL          *
            Defendant.          * MARCH 24, 2005

* * * * * * * *


                TRANSCRIPT OF ORAL ARGUMENT

B E F O R E:

        THE HON. JANET BOND ARTERTON, U.S.D.J.


APPEARANCES:

        FOR THE PLAINTIFF:
            GOODWIN PROCTOR
            599 Lexington Avenue
            New York, NY 10022
            BY: RICHARD STASSBERG, ESQ.

            DAY, BERRY & HOWARD
            One Canterbury Green
            Stamford, Ct.  06901
            BY: TERENCE GALLAGHER, ESQ


                        Sharon Montini
                        Official Court Reporter
```

COPY

```
        FOR THE DEFENDANT REFLEXITE:
            ROBINSON & COLE
            280 Trumbull Street
            Hartford, Ct.  06103
            BY: CRAIG RAABE, ESQ.
            JASON KUSELIAS, ESQ

        FOR THE DEFENDANTS LOVETERE,
        BACCEI, RAFFAY, PATLOVICH & LOOMIS
            COWDERY, ECKER & MURPHY
            750 Main Street
            Hartford, Ct.  06103
            SARAH MERRIAM, ESQ.

        FOR THE DEFENDANT CECIL URSPRUNG:
            REID & RIEGE
            One Financial Plaza
            755 Main Street
            Hartford, Ct.  06103
            BY: EDWARD SPINELLA, ESQ.

        FOR THE DEFENDANT WILLIAM ROWLAND:
            PULLMAN & COMLEY
            850 Main Street
            Bridgeport, Ct.  06604
            BY: J. TIMOTHY SHEARIN, ESQ.
```

---

THE COURT: Good morning, counsel, ladies and gentlemen. Please be seated. We are here on Frank v. Lovetere, 03cv1014. May I have your appearances, please.

MR. STASSBERG: Your Honor, Richard Stassberg from Goodwin Proctor, as well as Terence Gallagher from Day, Berry and Howard for the plaintiffs.

THE COURT: And who will be arguing?

MR. STASSBERG: I will, your Honor.

THE COURT: Thank you. And for the defendants?

MR. RAABE: Good morning, your Honor. Craig Raabe. With me is Jason Kuselias on behalf of Reflexite.

THE COURT: And who will be arguing?

MR. RAABE: I will, your Honor.

MS. MERRIAM: Good morning, your Honor. Sarah Merriam of Cowdery, Ecker & Murphy on behalf of defendants Lovetere, Baccei, Raffay, Patlovich & Loomis.

MR. SPINELLA: Good morning, your Honor. Edward Spinella from Reid and Riege for Mr. Cecil Ursprung.

THE COURT: All right, and are the

arguments --

MR. SHEARIN: Last, your Honor. Your Honor, sorry.

THE COURT: I'm sorry.

MR. SHEARIN: Timothy Shearin, Pullman & Comley, for defendant William Rowland.

THE COURT: With respect to our arguments today, are they all going to be made on behalf of defendants by one counsel?

MR. RAABE: No, your Honor.

THE COURT: All right then, let's start with the plaintiff, Mr. Stassberg. Let me ask you to address, if you will, this issue of count one and count two, the derivative and individual counts, and although they are currently stated in roughly the same form of allegations, couldn't they be reworked to avoid any inherent conflict by having count one related only to the Rowland transaction and those other interested director transactions, and count two -- and waste of assets, and count two is the unfair treatment of a minority shareholder? Because it seemed to me, as I looked through this, that dividing the allegations up that way avoided the whole analysis on conflict.

MR. STASSBERG: Your Honor, I agree with

5

you, although I would -- our position is, and I think it's a fair position here, and that is correct, you don't need to actually rework the allegations because the allegations as fairly put, and I know we're here as advocates and they've characterized our arguments in a certain way, but I think as fairly put from the amended complaint it actually does just what your Honor suggested needs to be done already.

There are two aspects, and the complaint actually starts off by saying this, I think it's in the first paragraph -- the second paragraph of the amended complaint, it says there are two aspects to the lawsuit we're bringing, one is this derivative claim about self-dealing and the insiders improperly enriching themselves, looting the company by having these transactions without a business purpose, without justification, that enriches them, harms the company, affects all the shareholders, and that's count one. I think your Honor has kind of put her finger right on that count.

The plaintiffs say, well, count two is the same, but that's not what the complaint says -- excuse me, the defendants say that that's not what the complaint says. The complaint alleges, and again it starts right from the beginning, in paragraph two,

6

that count two is the count against the individual directors. And I do want to clarify some pieces here because it seems to be getting confused in the briefing, but count two is against the individual directors for their mistreatment and breach of their fiduciary duties towards the Franks specifically.

Now, these counts, yes, there is some relatedness in that as we allege the conduct, as the Franks began to inquire more and more about some of the self-dealing transactions, the directors began to act out towards the Franks more and more in breach of their fiduciary duties, but they are unique and distinct claims, they are not the same claim, and they also don't implicate what the plaintiffs would hope to implicate, that you have an inconsistent approach in pursuing both claims.

I think there is a little uncertainty that I think perhaps is our fault in terms of our inartful drafting on count two, and let me make clear, the complaint itself makes clear that count two, the personal count, is against the individual directors for their breach of their fiduciary duty. It is not against the company. I think that may be a little unclear, in part because of our wording, but clearly is what is stated in the amended complaint.

7

That I believe -- much along the lines of what your Honor suggested, and we could certainly reword, your Honor, if that would be more clear to all the parties to attempt to put into place what I am articulating here. I think that it's already there sufficiently enough to allow both claims to proceed.

THE COURT: To just construe them in that way.

MR. STASSBERG: That's right, your Honor. And again, it's not complicated. We've tried -- I think we've not just tried, we have explicitly stated this both in our amended complaint and the beginning in our opposition briefs, there are two things going on here. There is this self-dealing conduct, really outrageous conduct. Where we are today, your Honor, in that we are at a motion to dismiss stage, you know, the allegations have to be treated as true, we all know that, I know, but when we get into the briefing, defendants seem to forget that, and --

THE COURT: Well, we have the little wrinkle when we get to the Special Litigation Committee that we did have discovery.

MR. STASSBERG: And I --

THE COURT: So, I do want to ask you,

8

each side, I want to ask what standard we should be using, but I also want to know something that perhaps I missed in the papers, but I can't tell, whether the board is a majority of independent directors or not. Because I think that makes a determination on who bears what burden of proof. Now, if I'm wrong on my perception of how that works, please tell me.

MR. STASSBERG: Well, your Honor, I believe that there is some uncertainty on the standard, but in broad strokes, the standard for the SLC piece is very similar to a summary judgment standard. They are the movants, I believe they have the burden to show that there is no issue of material fact as to the elements they need to show to have the SLC determination be binding upon this Court.

THE COURT: But under the state statute, don't you have the burden if the majority of the board of directors' members are independent?

MR. STASSBERG: Well, your Honor, I think that the direct answer to your question is that I'm not sure of the answer to that, but I think that in this case the allegations against the board members makes very clear that we don't have a majority of board members that are independent. I'll leave for the defendants to actually articulate all the current

9

board members and independentness or not independentness, but the allegations of the complaint are against substantially the members of the board of directors for their self-dealing. It's hard to envision that they could be independent.

THE COURT: All right, what I'm talking about is 33-724(e) says "If a majority of the board of directors does not consist of independent directors at the time the determination is made, the corporation shall have the burden of proving that the requirements of Subsection A have been met. If the majority of the board of directors consisted of independent directors at the time the determination is made, the plaintiff shall have the burden of proving that requirements of Subsection A have not been made."

That's what I'm talking about. That's why I need to know this simple fact, that I would think is not in dispute, which is, is the majority independent or not. You say it is not.

MR. STASSBERG: Certainly I believe that's been the acting presumption that the parties have acted upon in the briefing, and your Honor obviously brings up a very good point with respect to the statute. It was not one that was, for example,

10

relied upon by the defendants in the briefing on the SLC, as I understand.

THE COURT: Let me just see if we have any disagreement.

Mr. Raabe, is there -- is the board not -- is the majority of the board of directors not independent directors?

MR. RAABE: At the time in question, dealing with the SLC report, the majority of the board members were independent.

THE COURT: Were.

MR. RAABE: Were.

THE COURT: They were. So the burden of proof under the statute is on the plaintiff.

MR. RAABE: Yes, your Honor. That's why we relied on this statute, contrary to plaintiffs' claim.

THE COURT: Okay. Now, let's go back. I need to -- Mr. Stassberg, I need to go back to something you said at the very beginning. You said the derivative suit is count one, but the complaint says it's against only the individual defendants. Then you said count two is the individual complaint -- claim, but that that was against only the individual directors.

11

MR. STASSBERG: I misspoke, your Honor. Count one is the derivative claim. It would be on behalf of the company as opposed to in a personal capacity.

THE COURT: But the second one, in your complaint at page 20, it says against all defendants.

MR. STASSBERG: Yes, your Honor, and that is --

THE COURT: And so that is against the individual directors and the corporation.

MR. STASSBERG: Your Honor, that is the part that I referenced as the inartfully pled. If you look at paragraph two, that attempts to explain what the counts are, it says that the direct claim, which is count two, the personal claim, is made against the insider director defendants.

THE COURT: So, the corporation isn't a defendant in this case.

MR. STASSBERG: With respect to count two, your Honor, that is right. And I understand there has been some confusion, I believe, about that, probably due to our inartful drafting on that.

THE COURT: But is it a defendant in count one as well? It says against the individual defendants in the complaint.

12

MR. STASSBERG: Well, no, in count one, your Honor, it would be the nominal plaintiff. Again, we would be standing in the shoes derivatively of Reflexite to be suing on their behalf for the recovery that they would be owed derivatively.

THE COURT: So, that's my question. Is the corporation a defendant in either count one or count two?

MR. STASSBERG: I think the answer to that is no, your Honor, they are not.

THE COURT: All right, let's move on.

MR. STASSBERG: Now, your Honor has put her finger on a significant issue that I suggest is one that's resolved, just as your Honor suggested it could be. Count one, the derivative claim, and, count two, the personal claim, are not in tension. There is not a conflict there. You have allegations that the insider defendants harmed the corporation through their self-dealing. Those allegations state a claim that can be pursued derivatively. You have additional allegations that the insider defendants embarked upon a course of action to harm the Franks specifically, to diminish their rights as shareholders.

There are substantial allegations in the

13

complaint and substantial facts that have been developed through the SLC discovery as well, your Honor, that support this conduct that -- supports that there was activities and statements made by the board members indicating what they were intending to do, but on this motion to dismiss, frankly, all we need to do is put the allegations into play, and we have stated the claim as we have in the personal claim.

THE COURT: And then what's the purpose of the discovery?

MR. MR. STASSBERG: Well, your Honor, I was on count two. Discovery with count one is quite -- and your Honor is quite properly right to focus on the fact that in a derivative claim it's different and you have different sets of rules that apply for the ability to bring the derivative claim that we've sought to bring in count one, and that is the SLC process.

But before I get there, your Honor, and I will get there in just a minute, I think it's worthwhile perhaps to spend a moment on the direct claims just to make sure we are all on the same page with respect to those before we get to, frankly, the SLC and the derivative claim, which tends to be a

14

little more complicated, I think.

As I was saying, your Honor, if we put aside the derivative claim where there has been discovery and there now has to be this determination on the summary judgment-type standard, and we look just to, okay, the direct claims that are alleged in this complaint, have we satisfied our burden to bring an adequate complaint? I think the answer there, your Honor, has to be yes. A fair reading of the complaint has to be yes.

We have alleged that there was an approach by these individual defendant directors to harm a particular shareholder, the Franks. There is no -- the defendants have raised a number of potential arguments. I submit to you that none of them are adequate at the motion to dismiss stage.

They've raised an argument about standing and they've raised an argument here about equal opportunity to sell and business judgment rule. All three of those arguments, your Honor, are ones that do not result in the outcome that they would like, at a motion to dismiss stage certainly.

The standing argument is first. Frankly, in some ways it's easily dismissed. We've talked about the standing issue as if standing is

15

somehow divorced from the facts that are relevant to this case. This is not a case where Mr. Frank has divested himself of his shares and has no interest in the company other than an interest to perhaps file harassing litigation. The cases the defendants cite refer to those types of situations.

This couldn't be further from that situation, your Honor. We have a situation where Mr. Frank has a family trust, where the stock is -- he is still the trustee and the beneficial owner of that stock. All of the interest with respect to the ownership of that stock remained with Mr. Frank and with the trust. There is really no debate that the trust is a proper party. The defendants appear to concede that, but there is really also no debate that Mr. Frank is, both in his personal capacity and as the trustee of the trust, a proper plaintiff to move forward.

We have in this case the instance of the other director defendants forming their own family trusts to put their stock in the trust. That action doesn't divorce them of their rights to maintain their interests in the stock because they still have the beneficial interest in the stock.

In support of our argument, your Honor,

16

it's both based on logic, based on the underlying substance of the relationship between a family trust and the trustor, grantor individual who has the beneficial ownership. It's supported by the statute in the context -- now I'm focused on the personal direct claims, but we're informed how to treat this by Connecticut statutes on how to treat derivative claims.

Derivative claims where there is, frankly, a higher threshold and concern about the claim being inappropriate, the legislature has been very clear if you have stock in a family trust, you have the beneficial ownership of that stock, you are sufficiently considered a shareholder to bring that kind of claim. The same thing certainly should apply for the personal claims.

THE COURT: But Jonathan Frank is argued to have standing as a trustee for the family trust, and that's the basis on which he's asserting the derivative claim. Is that also the basis on which he asserts the individual claim?

MR. STASSBERG: Your Honor, he asserts the individual claims on both bases. What we've done is bring both Mr. Frank and the trust in as named plaintiffs, frankly, to avoid any confusion about who

17

1  was the appropriate plaintiff.
2      THE COURT: And that's because over time
3  we have Mr. Frank's status changing.
4      MR. STASSBERG: Over time the trust is
5  formed and the stock is placed in the trust for
6  his --
7      THE COURT: So he's the individual
8  shareholder who could bring an individual or
9  derivative suit up to '97, and then after the trust
10 is formed, he is trustee and has standing for either
11 of those claims as trustee of those?
12     MR. STASSBERG: That is correct, your
13 Honor, but in addition, we submit that he has the
14 ability to bring the direct claim directly himself
15 even if we hadn't brought the trust in. For example,
16 he can do that because he still has the ownership
17 interest in the stock that gives him the ability and
18 the tie, the standing, if you will, to make this
19 claim.
20     And what's important here, what is
21 standing attempting to do, your Honor?
22     THE COURT: I need to stop you for just a
23 second. He still owns some of this stock? I thought
24 he put it all in a trust.
25     MR. STASSBERG: Beneficial ownership,

18

1  your Honor. When I use that language, I'm referring
2  to the trust structure. So that despite the fact
3  that it's in a trust, it's not -- it's not a
4  charitable trust for Yale University, it is his
5  family trust. It's still his. It's still within his
6  sphere of interest and ownership.
7      And what is the goal of standing? I
8  think it's important to look back at this. Part of
9  what this is designed to make sure is accomplished is
10 that, for example, there is no double recovery here.
11 Your Honor, there is no scenario in which we would
12 obtain or we are seeking double recovery. We're not
13 saying that Mr. Frank should recover and the trust
14 should recover. We're saying that Mr. Frank and the
15 trust have the same interest. They are both
16 appropriate parties to be plaintiffs to bring the
17 direct claim, and they both are bringing the direct
18 claim appropriately.
19     Again, I think there is -- I don't think
20 the defendants really challenge the trust as the
21 appropriate party, or Frank acting as trustee, but
22 they do challenge him personally, and I submit to
23 you, your Honor, that is a challenge of form over
24 substance. There is no basis for that challenge,
25 because again, there is no threat of double recovery

19

1  here and we have the interests aligned with respect
2  to ownership.
3      THE COURT: So that when the defendants'
4  briefing doesn't dispute Jonathan Frank has standing
5  as trustee of the trust to assert the derivative
6  breach of fiduciary claim, the dispute remains
7  whether he as the beneficial owner of that stock in
8  that trust has that standing; is that how it breaks
9  out?
10     MR. STASSBERG: Right, I think that we
11 are -- with respect to that issue, clearly the claims
12 continue, but I submit to your Honor that the claims
13 continue both as trustee and trust, where there has
14 been a concession, I believe, but also as individual
15 plaintiff, because his interests are so aligned and
16 joined with the family trust, of which he is the
17 beneficial owner, and another way to frame it, your
18 Honor, would be even if the trust hadn't been named
19 as a plaintiff, he could still maintain this action
20 on his own behalf because of his interest in the
21 trust.
22     THE COURT: Tell me why it matters.
23     MR. STASSBERG: Well, your Honor, I would
24 suggest to you it doesn't matter very much in that
25 the -- our argument here is that the claim should

20

1  move forward. It does relate back to some of the
2  claims that we'll get to in just a minute, the
3  contract claim in particular and the promissory
4  estoppel claim.
5      So, we've seen a very broadbrush attack
6  on the complaint by the defendants, but one of the
7  things they've attempted to do with respect to
8  answering the allegations that, hey, we see what
9  appears to be a horrible pattern of self-dealing and
10 another horrible pattern of attempting to
11 discriminate and harm a particular shareholder, the
12 response is, well, hold on, we shouldn't let any of
13 these claims see the light of day, we have standing
14 issues.
15     How this potentially matters as to why
16 he should be an individual plaintiff as well as a --
17 as well as the trustee relates to some of those other
18 claims, and I can get there now, although I think
19 maybe -- and I'll do whatever your Honor would like
20 me to do, but I think it may be helpful to just stay
21 on count two for just another moment until we've
22 finished with that.
23     So beyond standing, they raise this idea
24 of business judgment and equal opportunity, and doing
25 the job that they're supposed to be doing as defense

21

attorneys, they try to characterize the claims that we've put forth in a way that suggests they shouldn't be allowed to move forward, but I submit that's not a fair reading of our claims.

Again, our claims for the personal direct claim in count two is that there was concerted actions by these defendants, these individual defendants, to harm the Franks, to discriminate against them. This was not a situation like the cases they cite where maybe the company will set up an ESOP program and shareholders who are not employees say, well, that doesn't seem fair to me, and the courts say, well, as long as an ESOP program has legitimate reasons to set up, that's perfectly proper. That's some of the authority that they rely upon.

That's not this case at all. We have allegations that there was no business reason, there was no legitimate reason, it was unfair, and we have the allegations not only that say those things, but that support that, and you have allegations that they were told things that were untrue about ability to participate in buy-back programs that resulted in them not being able to participate, that they were denied information about what other insiders were

22

doing.

But my main point of this is only, your Honor, that this claim is more than adequately stated to get over the challenges to it on a motion to dismiss level.

Now, let me talk about the issue your Honor raised. I submit still, as I said, it doesn't matter. In other words, whether it's just the trustee or whether it's Mr. Frank individually or whether it's both of them, as it is right now in our complaint, doesn't matter.

But where does this issue come up again? It comes up again in the contract claim, which is our count three. And it comes up because there -- this is against only defendant Mr. Rowland, but Rowland claims that, well, despite the fact that there was an agreement back in 1979 and another agreement between the shareholders some 10 years later or so, the plaintiffs don't have standing because back in '79, for example, there wasn't a trust, Mr. Frank was Mr. Frank himself individually.

Now, I think our -- I think, Judge, that it's fair to look at this very much the same way, in that either plaintiff, Mr. Frank or the trust, can bring this claim. Both are proper plaintiffs to

23

bring it as well. There is no threat of double recovery. So, the concern that might prompt a standing concern if you had unrelated plaintiffs coming in is not one that exists here.

And, again, you need to look at the underlying substance where you have the family trust, which is the placeholder, and I'm not arguing it's not a distinct entity, yes, we understand that, and it has tax issues, I suppose, but for the purpose of who is an appropriate plaintiff, who can vindicate the rights about Mr. Frank's shareholdings in Reflexite, it seems very clear when that question is asked, which I think is the appropriate question, that it's either Mr. Frank himself or Mr. Frank as trustee for the trust.

THE COURT: You mention in count three the standing arguments made there, but why do we even have to address the standing arguments there if the buy back doesn't change voting control to a third-party?

MR. STASSBERG: Your Honor, fair enough. So, let me talk about some of the arguments. That's one of the arguments that Mr. Rowland advances about the contract.

THE COURT: Is it accurate that when you

24

buy back stock it doesn't -- it can't be voted?

MR. STASSBERG: Your Honor, it's not accurate that that buy back doesn't impact the contract language from the 1979 agreement. The '79 agreement, and let me actually -- let me start, your Honor, with getting, again, perspective on what's alleged about this count because, frankly, it's a little ironic here in the back and forth on these motions; it's alleged that in order to induce Mr. Frank to become a shareholder in Reflexite way back 25 years ago now, these defendants -- not all of these defendants, this is Mr. Rowland, there were a number of other signatories who are no longer part of the board, but they entered into this agreement to address this very concern that now we find ourselves in.

Mr. Frank clearly was sensitive to the idea that, hey, you insiders might try to take advantage of your inside position to my disadvantage, so all I'm asking is that we have an understanding, as reflected in this agreement, that if you are going to sell, I get to know about it.

THE COURT: But it says "selling stock now owned by us that would result in a transfer of voting control to a third-party." Isn't that

25

1  different from just sale of the stock?
2           MR. STASSBERG: Right. I think there are
3  two components of the contract obligations. The
4  first is to inform him about the future sale, but
5  this one you are talking about, your Honor, I suggest
6  that that's not the interpretation that is both the
7  fair interpretation and, more importantly, the only
8  interpretation of the contract, because what you have
9  is the transfer of voting control to a third-party.
10 Mr. Rowland transfers his shares to Reflexite, which
11 is a third-party in that it's not a party to this
12 agreement. So that was their first argument that
13 Reflexite is a party.
14          THE COURT: Reflexite is a third party?
15          MR. STASSBERG: Reflexite is a third
16 party to the 1979 agreement. It's not a party to
17 that, your Honor, and you can see that from the face
18 of the agreement itself. What Mr. Rowland has done
19 is transfer his voting control on his shares to a
20 third party. That satisfies the terms of this
21 agreement. It doesn't say that the third party has
22 to be able to vote the shares. It's, frankly,
23 irrelevant whether they can or can't.
24          THE COURT: Then why does it say
25 "transfer of voting control"?

26

1           MR. STASSBERG: Your Honor, there are a
2  number of reasons why it might in that you could have
3  different types of transfers of shares by Mr.
4  Rowland. He could transfer some economic interest
5  but retain voting control, would be the most obvious
6  way this provision can come into play in a different
7  type of transaction, and given the way people can
8  divide up interest in companies now, there probably
9  are a whole number of variations on that theme that
10 could occur.
11          But the other point that I think is very
12 important, your Honor, is we have alleged that the
13 whole purpose of this was to address this concern
14 which has now since played itself out, you know, some
15 many years later but in real live terms to the Franks
16 that "I not be disadvantaged by you using your
17 position as insiders to take advantage and not inform
18 me about it, take advantage and not allow that
19 opportunity to at least be one, that, if possible, is
20 one that I'm available to have."
21          THE COURT: No, I understand that, but
22 what I'm asking you about is whether what you
23 complain of actually is a breach of this agreement if
24 the third party, which you claim is Reflexite, didn't
25 get voting control.

27

1           MR. STASSBERG: Well, your Honor --
2           THE COURT: And if the shares can't be
3  voted by the corporation, then how could you say that
4  this is a transfer of voting control to a third
5  person? That's what I need help with.
6           MR. STASSBERG: Our argument is that the
7  -- Mr. Rowland has voting control of his shares. He
8  transfers that voting control when he transfers the
9  shares to Reflexite. That satisfies the language of
10 the agreement.
11          THE COURT: And Reflexite can vote those
12 shares?
13          MR. STASSBERG: Frankly, it doesn't
14 matter. Reflexite, typically when they get the
15 shares they're retired or put into treasury, so
16 they're not voted, but under the language of the
17 agreement, it doesn't matter. In other words, there
18 is no requirement in the agreement that third party
19 has to be able to vote. It is talking about what
20 Rowland is going to do with his shares, and because
21 he has transferred his voting control to a third
22 party, it is satisfied.
23          Now, I understand, your Honor, that
24 there may be different interpretations of what this
25 language means, and Mr. Rowland through his counsel

28

1  has advanced that interpretation, and your Honor is
2  right on point with trying to understand that, but my
3  big point is that this is a motion to dismiss. There
4  is a process for understanding ambiguous language in
5  a contract. Connecticut allows for the determination
6  of what was the true meaning. What do these words
7  mean? If there is an ambiguity, for example, about
8  what does transfer of voting control to a third party
9  mean, well, that's what discovery is for. That's
10 what the summary judgment standard ultimately might
11 be able to resolve.
12          THE COURT: Let me understand your theory
13 of this, and that is that what this means is not --
14 is that if Rowland transfers his voting control,
15 transfer of voting control means Rowland's voting
16 control, to Reflexite, it doesn't matter whether
17 Reflexite can exercise -- what happens to those votes
18 after it gets transferred.
19          MR. STASSBERG: That's 100 percent right,
20 your Honor.
21          THE COURT: So that's how you read this,
22 that would result in a transfer of voting control,
23 that is, by the person who currently holds the
24 shares.
25          MR. STASSBERG: That's right. So it is

29

1  the shareholder's voting control that is being
2  transferred to a third party.
3        So why don't we stay, if I may, your
4  Honor, on this particular count, which is the
5  contract count.
6        Again, there has been an argument
7  advanced that the shareholders' agreement, which came
8  substantially later, superseded the 1979 contract.
9  Again, I think there is no basis on this motion to
10 dismiss to have that finding occur. The only support
11 for that is that the shareholder agreement has an
12 integration clause which talks about the fact that
13 that agreement contains all the agreements on that
14 subject matter between the parties to that agreement,
15 but there is no language in that agreement that
16 attempts to say that prior agreements have been
17 superseded, that identifies or addresses anything
18 with respect to an agreement between different
19 parties, as the '79 agreement was, about their own
20 obligations to each other.
21       Now, we also have the shareholder
22 agreement piece, your Honor, and I can -- let me just
23 briefly touch on that. That is --
24       THE COURT: This is the '86.
25       MR. STASSBERG: That's right. So that's

30

1  a separate contractual breach that's alleged. There
2  are two different paragraphs, or several paragraphs
3  in the agreement, but there are two different
4  paragraphs that are at issue, and perhaps not
5  surprisingly, Mr. Rowland focuses on one that has
6  language that is supportive of his position and we
7  focus on another that has language that is supportive
8  of our position.
9        I think, again, we have to remember
10 where we are in the motion to dismiss stage. The
11 language in the shareholder agreement in paragraph
12 two indicates that when an offer is made or received
13 by -- it's actually received by the shareholder for a
14 sale of his shares, there is a procedure that needs
15 to be done, needs to be followed. That procedure
16 includes notice both to the company and to the
17 shareholders.
18       Now, Mr. Rowland's argument is here that
19 doesn't apply in this case because the company was
20 the one who was buying it back. It wasn't for -- it
21 wasn't a third party who was buying it back, it was
22 the company itself. But, frankly, the answer to that
23 is, your Honor, that's not what the shareholder
24 agreement says. The shareholder agreement doesn't
25 say the offer must be from a party other than the

31

1  company. In fact, the title of the paragraph is
2  "sales to the company." And the language of the
3  paragraph is also fairly straightforward.
4        They may not like it or wish it had been
5  drafted differently, but the way it's drafted, it
6  says any offer to sell your stock results in this
7  process needing to be followed where the company is
8  given notice and that notice is given to the
9  shareholders.
10       That's what we're alleging was breached.
11 That, again, states a claim on a motion to dismiss
12 level. That's not to say they can't attempt to
13 advance their alternative theory as we go through
14 this case, and if appropriate, whether at summary
15 judgment or at the trial stage, but it is not
16 appropriate to say where there are two paragraphs
17 with two different wordings about the same issue,
18 that their version should be followed on a motion to
19 dismiss standard.
20       THE COURT: Can I go back to the '79 --
21       MR. STASSBERG: Yes.
22       THE COURT: -- contract for just a
23 moment. You claim that Reflexite is a third party.
24 How does that work in terms of what Frank's interest
25 was at the time that he wanted to protect -- at the

32

1  time that the contract was entered into. Why would
2  he care about somebody giving up their voting control
3  by virtue of selling it back to the corporation where
4  the shares are then retired?
5        MR. STASSBERG: Well --
6        THE COURT: Why should I read -- isn't
7  there something wrong with considering Reflexite as a
8  third party, the corporation itself?
9        MR. STASSBERG: No, your Honor, I don't
10 think so. I think when we're looking at a contract
11 claim, the first step is we do need to look at the
12 contract, and we have three individual shareholders
13 and Mr. Frank.
14       THE COURT: But what -- why would it
15 serve his purpose to consider a third party to
16 include the corporation?
17       MR. STASSBERG: Well, most directly, your
18 Honor, because, frankly, the situation that later on
19 happens with Mr. Rowland, in that you have a
20 situation like what occurred where the insiders,
21 because of their position as insiders, decide to
22 arrange a favorable transaction for themselves where
23 the company will afford them the liquidity that
24 perhaps they otherwise could not get.
25       So, you have a situation, as has played

33

out, where the concern -- because the concern, remember, your Honor, as we have alleged it, is a very broad one where they're going to be able to do stuff and get themselves out where I'm going to be stuck, that they're going to be in a position to take advantage of my being now a minority shareholder in this closely-held company, and I want to make sure that we're all operating in good faith. And it's significant, your Honor, I mean, even though the focus -- I know your Honor's focus is on this voting control piece, but there is another piece --

THE COURT: That's because the language of the letter doesn't refer to just selling stock, it says "selling stock that would result in." That's why I'm obsessed with it.

MR. STASSBERG: And I agree, your Honor, that it -- I would suggest what it does is it adds ambiguity to the argument. I think what we have alleged, what I have articulated, is a perfectly valid interpretation of the contract, and because I believe that the facts will establish that is what in essence was meant, this was meant to be a broad arching protection, even if it was poorly phrased back in '79 when it was drafted by the shareholders, and not Mr. Frank who drafted it, it is still that --

34

in terms of if we were to look then about the ambiguity of it, we would find, I believe that discovery will show, as we have alleged, that it was intended, the purpose of these words was to give that broadbrush protection.

And so while I don't disagree with your Honor, when we look at that we certainly can come up with a more narrow reading of it, and the defendant I understand urges that narrow reading. I submit that's not appropriate for us on this motion to dismiss, to adopt that narrow reading.

And the other point I was making, your Honor, which doesn't get argued, but is a part of our claim on the '79 contract, is the first sentence, which is clear as a bell, which is that you have to keep him informed about future sales. So, you know, the more substantive piece I agree is the second piece because it talks about having a reasonable opportunity to have a similar sale, but it's not the only piece, and I sort of highlight that as well, your Honor.

If I may now, your Honor, unless you want to direct me someplace else, I'll kind of continue to move through the complaint.

THE COURT: That's fine.

35

MR. STASSBERG: Promissory estoppel is the next count, and let me make sure we are clear about what is and isn't being alleged here, again because we have on this claim Mr. Rowland suggesting perhaps that we are attempting to get dual recovery, and if he is suggesting that, I want to make clear that is not what we're attempting to do.

What the promissory estoppel claim simply does, as it is permissible to do in Connecticut and most jurisdictions, plead in the alternative. We've pled that the contracts exist in count three that were breached, but we've also pled that if for some reason the contract claims are not enforceable or not valid, that promissory estoppel is a separate and independent legal basis on which Mr. Frank can recover from Mr. Rowland.

THE COURT: You did not brief the promissory estoppel claim, and so until this moment I thought that you were agreeing that this wouldn't fly.

MR. STASSBERG: We are not, your Honor, and I want to make clear our position on this so that there is no ambiguity. Mr. Rowland's argument in and of itself acknowledged that it's proper to plead in the alternative, and the cases that he cited

36

acknowledge that it's proper to maintain a promissory estoppel claim if a contract claim is not valid or for some reason the contract can't be enforced. It's, frankly, in his own parentheticals of the cases he cites. So, the argument itself is, in fact, self-defeating.

Remember, his thrust of the argument about the contract claim is that there is this standing, technical standing issue the Court should find means that the contract is valid but it can't be enforced by anyone. So, in his own briefs, if you adopt his own arguments, you are back to the promissory estoppel being a proper claim to advance. And so --

THE COURT: What's the statute of limitation on a promissory estoppel claim?

MR. STASSBERG: Fair enough. And, your Honor, I actually meant to address that with respect to count three, and let me go back and address the statute of limitations since it actually covers almost all the tort claims. I don't believe it was raised with respect to count three. I actually misspoke, but frankly, it's a significant issue that comes up throughout, so let me address that.

Statute of limitations, and I'm trying

37

```
 1  not to be confusing, there are a number of different
 2  arguments here, but I think we need to move back to
 3  count two first, the personal claim for breach of the
 4  fiduciary duty, because they raised a statute of
 5  limitations with respect to that claim, as I
 6  understand it.
 7           And it's clear that that claim alleges
 8  continuing conduct that occurs within the limitations
 9  period, prior to three years before the suit was
10  filed in the complaint. Even the activity about
11  refusing to allow them to participate in the
12  particular buy-back program happened within that time
13  frame. So, I think clearly that falls within the
14  statute of limitations.
15           On the Rowland transaction, which is both
16  part of the contract, part of the other claims as
17  well, and part of the tortious interference claim, in
18  particular they have alleged the statute of
19  limitations. I think one of the things we need to
20  remember, again, is where we are on a motion to
21  dismiss. The statute of limitations argument is
22  typically one where it is not appropriate until the
23  record has been fully developed, but here we already
24  have more than adequate facts to show that the
25  statute of limitations argument can't fly.
```

38

```
 1           The allegations are that this tortious
 2  conduct continued over a course of activity and a
 3  course of time that brought it within the limitations
 4  period. That's what the face of the complaint
 5  alleges, which is the proper area to be looking at to
 6  determine if statute of limitations might be able to
 7  be a bar at a motion to dismiss stage.
 8           And what we've also seen, and is now
 9  part of the record from the SLC discovery, your
10  Honor, is that in fact this Rowland transaction --
11  it's kind of interesting because obviously this did
12  come up in all their motions arguing statute of
13  limitations applied by the defendant, and
14  unfortunately we didn't know this because we hadn't
15  received any discovery at the time, but now we know
16  in fact the Rowland transaction is a transaction that
17  happens over the three-year period. It occurs in
18  installment payments, and over a million -- I think
19  $1.6 million, about this transaction, is not paid to
20  Mr. Rowland until well into 2001.
21           THE COURT: But the letter, going back to
22  the letter, says before actually selling the stock we
23  will do all of these things that you complain of as
24  the breach of contract. And why is that not time
25  barred? That's not something that just keeps on
```

39

```
 1  continuing, it stops with this sale.
 2           MR. STASSBERG: Well, your Honor, I think
 3  as we now understand the facts, that the sale is in
 4  fact one that continues for the better part of three
 5  years. The obligation continues right along with
 6  that. You don't have a situation where everything is
 7  done in 1998, it's all finished and complete.
 8           I submit even if you did have that
 9  situation, by their continuous course of conduct to
10  deny him information and hide the facts with respect
11  to this transaction, you would be able to toll the
12  limitations period. But you don't even need to do
13  that because you have the transaction itself being
14  one that occurs over this course of time, and
15  certainly within the statute of limitations period.
16  There is still substantial aspects of that
17  transaction that have not been consummated, like the
18  payment of a substantial amount of money to Mr.
19  Rowland, and therefore, it would be inappropriate,
20  again at this motion to dismiss stage, to be granting
21  a statute of limitations argument.
22           It is likely, your Honor, as we have
23  alleged, that discovery will show further conduct
24  that supports the tolling of the statute of
25  limitations with respect to this particular claim.
```

40

```
 1           THE COURT: But you've not pled tolling.
 2           MR. STASSBERG: I think we have, your
 3  Honor.
 4           THE COURT: Can you show me where that
 5  is.
 6           MR. STASSBERG: Well, I should say we
 7  have pled the facts. Again, the limitations issue
 8  was one brought up on the motion, so it's probably
 9  accurate to say that the amended complaint doesn't
10  plead limitation because the amended complaint sets
11  forth the allegations of what the counts are as
12  opposed to attempting to rebut arguments that
13  defendants may make against, but what we have argued
14  in our opposition is certainly that tolling applies.
15           So, I spoke imprecisely. We have
16  certainly argued that, and the facts in the amended
17  complaint support that because the facts allege, in
18  fact, a continuing course of conduct to deny the
19  Franks access to information about the company's
20  activities.
21           THE COURT: So, if that's the case, how
22  can there be any statute of limitations applicable to
23  these claims?
24           MR. STASSBERG: Well, your Honor, the
25  statute of limitations --
```