UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| H. JONATHAN FRANK and FRANK FAMILY 1996 TRUST, | : : : | Civil Action No.: 3:03-CV-1014(JBA)(JGM) |
| Plaintiffs, | : : | |
| v. | : : | |
| ARTHUR LOVETERE, CECIL URSPRUNG, LOUIS J. BACCEI, WORTH LOOMIS, THEODORE PATLOVICH, STEPHEN J. RAFFAY, WILLIAM P. ROWLAND and PETER EIO, | : : : : : | |
| Defendants. | : | OCTOBER 31, 2005 |

## **PLAINTIFFS' OPPOSITION TO REFLEXITE'S MOTION FOR EXPENSES**

                                                    GOODWIN PROCTER LLP
                                                    Richard A. Strassberg (ct24905)
                                                    Jeffrey A. Simes (ct24906)
                                                    599 Lexington Avenue
                                                    New York, New York 10022
                                                    (212) 813-8800

                                                                 -and-

                                                    DAY, BERRY & HOWARD LLP
                                                    Jonathan B. Tropp (ct11295)
                                                    Terence J. Gallagher (ct22415)
                                                    One Canterbury Green
                                                    Stamford, CT  06901

                                                    *Counsel for Plaintiffs*

-i-

**TABLE OF CONTENTS**

                                                                         **Page**

**PRELIMINARY STATEMENT** ........................................................................................ 1

**FACTUAL BACKGROUND** ............................................................................................ 2

**ARGUMENT** ................................................................................................................. 8

    **I.**     **THE STANDARD FOR FEES AND EXPENSES UNDER CONN. GEN. STAT. § 33-726.** ......................................................................................... 8

    **II.**    **THE DERIVATIVE CLAIM WAS REASONABLE AND FOR A PROPER PURPOSE, AND THE FRANKS DID NOT WITHDRAW THEIR DERIVATIVE CLAIM AS REFLEXITE MISREPRESENTS IN ITS MOTION.** ...................... 9

    **III.**   **REFLEXITE IS NOT ENTITLED TO FEES FOR PREJUDGMENT REMEDY MOTION PRACTICE.** ..................................................................... 11

    **IV.**   **REFLEXITE'S MOTION FOR EXPENSES OVERREACHES, IS DEFECTIVE AND FAILS TO PROVIDE THE REQUIRED EVIDENTIARY SUPPORT.** ....... 13

**CONCLUSION** ............................................................................................................ 16

# **TABLE OF AUTHORITIES**

**Page**

## CASES

Bass v. Walker, 99 S.W.3d 877 (Tex. App. 2003) .......................................................... 13

Blumenthal v. Teets, 745 P.2d 181 (Ariz. 1987) ............................................................ 14

Brady v. Calcote, 2005 WL 65535 (Tenn. Ct. App. Jan. 11, 2005 .................................. 13

Javit Asset Partners, L.P. v. Intercontinental Holding Co., Inc.,
    NO. CV030081629S, 2005 WL 2363100 (Conn. Super.
    Aug. 29, 2005) .......................................................................................................... 14

Kirsch v. Fleet Street, Ltd.,
    148 F.3d 149 (2d Cir. 1997) ..................................................................................... 14

Pridgen v. Andresen,
    NO. 3:94CV851 (DFM), 2000 WL 863053 (D.Conn.
    Mar. 31, 2000) .......................................................................................................... 14

Sletteland v. Roberts, 64 P.3d 979 (Mont. 2003) ........................................................... 13

Wallace on Behalf of Northeast Utilities v. Fox,
    7 F. Supp. 2d 132 (D.Conn. 1998) ........................................................................... 14

## RULES

Federal Rule of Civil Procedure 19 ................................................................................ 10

## STATUTES

Conn. Gen. Stat. § 33-726 .................................................................................... 2, 8, 15

Conn. Gen. Stat. § 33-946 ............................................................................................ 10

**PRELIMINARY STATEMENT**

Plaintiffs H. Jonathan Frank and the Frank Family 1996 Trust (collectively "the Franks") respectfully submit this memorandum in opposition to the "Motion for Expenses" of Reflexite Corporation ("Reflexite"). There is absolutely no basis for Reflexite's motion. The Franks' derivative claims had a more than reasonable grounding in fact and law and, indeed, the undisputed evidence adduced from the limited discovery the Franks were permitted to take strongly suggests that the Defendants committed serious breaches of their fiduciary duties to Reflexite.

Reflexite's motion is premised on two serious distortions of the record. <u>First</u>, Reflexite asserts that the Franks withdrew their claims against Reflexite at the argument on Reflexite's motion to dismiss. The transcript cited by Reflexite puts the lie to this assertion. Counsel for Reflexite made crystal clear that Reflexite was properly, and necessarily, a nominal defendant to the Franks' derivative action and that the Franks were not withdrawing their claim in that regard. Reflexite, which is obviously directly impacted by the derivative claim and which itself elected to form a Special Litigation Committee to investigate the allegations at issue, cannot credibly suggest that it should never have been named a defendant.

<u>Second</u>, Reflexite seeks to rewrite history by complaining about "expenses" it incurred when the Franks made but later withdrew a motion for prejudgment remedy. <u>Reflexite was not a party to that motion</u>, nor did the Franks seek any relief against it. In any event, Reflexite's recitation of the "facts" is divorced from reality and the contemporaneous documentary record. When Reflexite announced its Tender Offer, the Franks inquired as to how Reflexite's assumption of substantial debt to pay $10 million out to shareholders—a substantial portion of which was to line the Defendants' pockets—was in the best interests of the corporation. The Franks' inquiries were met first with silence, and then an eventual suggestion by Reflexite that it

wanted to discuss the issue more fully. When the Franks' further calls went unreturned, the Franks sent Reflexite a draft of their motion with a request that the proposed dialogue take place. Reflexite, however, remained silent. In short, the Franks acted reasonably at all times.

Finally, even if Reflexite had not badly distorted the record, it still cannot satisfy the standard for the relief it seeks under Conn. Gen. Stat. § 33-726. Aside from seeking "expenses" for a motion that was not addressed to Reflexite, Reflexite also seeks to recoup "expenses" of <u>other Defendants</u> in this lawsuit. Reflexite offers no contemporaneous time records, as is required in such circumstances, nor does it even bother to explain what work was performed or at what rate. Reflexite's overreaching motion, on its face, is a thinly veiled attempt to impose costs on the Franks through frivolous motion practice.

In sum, Reflexite's motion is entirely without basis in either law or fact, and comes nowhere close to meeting the standard for recovery of expenses set forth under Conn. Gen. Stat. § 33-726(2).

**FACTUAL BACKGROUND**

This case involves allegations that the Defendants engaged in massive self-dealing transactions while denying the Franks basic information and opportunities provided to all other shareholders. While the Franks were not permitted to engage in discovery as to their derivative claim that the Defendants plundered Reflexite for their own benefit, the undisputed evidence demonstrates that the Defendants, in fact, caused Reflexite to pay millions of dollars, and borrow millions more, to give certain Defendants "sweetheart deals" not enjoyed by or even explained to other shareholders of the corporation. The evidence available makes clear beyond dispute that the Defendants engaged in various self-dealing sales of Reflexite stock totaling millions of dollars, the details of which were never disclosed to shareholders.

On February 10, 2003, the Franks served a Demand Letter on the Board, and followed up

with additional information and documentary evidence supporting the allegations in April 2004. Declaration of Jeffrey A. Simes, Esq. ("Simes Decl.") at ¶ 2 & Ex. A. Reflexite elected to form a Special Litigation Committee ("SLC") to investigate these allegations. Id. at ¶ 3. After a brief review of the allegations, the SLC, while finding that the transactions alleged by the Franks had in fact occurred, declined to credit the Franks' allegations and recommended that Reflexite terminate the action. Id. at ¶ 4.

### A.     *The Motions to Dismiss*

Reflexite and the individual defendants then moved to dismiss the action based on the SLC's determination and on various other grounds. Significantly, Reflexite's motion did not press its current arguments; in contrast, Reflexite sought to "dismiss the derivative counts" of the Amended Complaint; and argued that count two, a direct claim against the directors of Reflexite, was "really a derivative claim" and thus should be dismissed for an alleged lack of standing. Simes Decl., ¶¶ 4-5 & Ex. C.

In oral argument on March 24, 2005, counsel for the Franks made clear that while Reflexite was appropriately and necessarily named a nominal defendant as to the derivative action (count one of the Amended Complaint), Reflexite was not a Defendant as to the direct claim (count two). See Exhibit D to Reflexite's Motion (Transcript of Oral Argument) at 53-54. While the direct claim in count two did not contain any allegations specific to Reflexite and, in context, was clearly directed at the director Defendants who owed fiduciary duties to the Franks (Am. Compl., ¶¶ 85-93), counsel for the Franks made clear at the oral argument that this count was not directed to the corporation itself, in contrast to the derivative count. The dialogue between the Franks' counsel and the Court went as follows:

    Court:          [D]oes that mean that in the derivative claim the corporation doesn't
                    have to be a nominal defendant?

> Mr. Strassberg:   I think, Your Honor, that in terms of the nominal sense of the word, <u>they are</u>.  You know, you asked me, Your Honor, are they a defendant.  <u>They are in a nominal sense involved in count one</u>, they are not involved in count two at all.

Transcript, at 53-54 (emphasis added) (attached as Exhibit D to Reflexite's Motion).  At the end of the argument, counsel for Reflexite himself acknowledged that he understood that the Franks had not withdrawn their claim against Reflexite in count one as a nominal defendant:  "I thought I heard them backing up to say no, perhaps the company is a defendant under count one."  <u>Id.</u> at 135.

In an Order dated March 31, 2005, the Court denied the Defendants' motions to dismiss the direct claim (count two) but granted the motion as to the derivative claim (count one) and the other counts of the Amended Complaint.  Simes Decl., ¶ 10 & Ex. D.  The Court found that the SLC investigation had not been demonstrated to have been in bad faith or unreasonable, and thus its decision was entitled to deference from the Court.  <u>See</u> <u>id.</u> at Ex. D.  The Court did not reach the merits of the derivative claim, nor is there any suggestion in the Order that the Franks' claim had no valid basis or was unreasonable.  <u>Id.</u>  The Court concluded that the Franks' direct claims that they were discriminated against and denied access to the corporate records were well pled. <u>Id.</u>

    **B.**    ***Reflexite Seeks to Give Away Millions of Dollars While the Motions to Dismiss Were Pending***

While the motions to dismiss were pending, the directors of Reflexite sought on several occasions to cause Reflexite to pay huge sums out to certain shareholders.  In the summer of 2004, for example, while the parties were briefing the motions, Reflexite's Board of Directors announced the approval of a "2004 Stock Option Plan," under which the Board of Directors would have had unfettered discretion to bestow some $9,000,000 worth of stock options on

themselves and others they favor. See Simes Decl., ¶ 11. The Franks promptly objected to the Plan on the grounds that it constituted a further breach of the Defendants' fiduciary duties at a time when the breaches of those duties were under adjudication. Id. at ¶ 12 & Ex. E. Immediately after the Franks asserted their objections, the Board relented and abandoned the Plan. Id. at ¶ 13 & Ex. F.

Later that year, the Board of Reflexite informed shareholders that it had decided to cause Reflexite to engage in a $10 million Tender Offer on December 17, 2004. Upon learning of the Tender Offer in December 2004, it appeared to the Franks that the Defendants were up to their old tricks. The Tender Offer would require Reflexite to purchase up to $10,000,000 of its own shares from shareholders. Id. at ¶ 14 & Ex. G (Tender Offer Memorandum). The Directors and Executive Officers of Reflexite expressed an intention to tender up to 364,000 shares for millions of dollars of personal gain. Id. at ¶ 15 & Ex. G at 12.[1]

Reflexite did not have the $10 million available to effectuate the Tender Offer. Indeed, $10 million was more than twice the amount of net income Reflexite reported in the prior fiscal year and is well in excess of all of Reflexite's working capital or available cash flow. Id. at 29. Accordingly, Reflexite was to incur $10,000,000 in new debt in order to finance the repurchase of shares from its shareholders. See id. at 11. For a company with nearly $15 million in existing long term debt, it reasonably appeared to the Franks that the Tender Offer was a massive financial commitment that threatened the long term health of the company. See id. The Franks' concerns were exacerbated by the fact that the Defendants previously issued themselves stock options with associated "puts"—i.e., the right to force Reflexite to repurchase those options. In other words, Reflexite already had hundreds of thousands, if not millions, of dollars worth of

---

[1] The Defendants were planning to sell these shares at a price of $35.50 per share—an increase in valuation of more than 30% per share over a one year period. See Frank Decl., Ex. A at 20.

obligations to the Defendants and other insiders even before assuming the millions of dollars of debt the Tender Offer would require. Simes Decl., ¶ 17.

The Franks appropriately objected to the Tender Offer, and perceived that the formula by which shareholders would be permitted to tender shares would shift financial risk to the Franks and other "outsider" shareholders. Id. at ¶¶ 18-19 & Ex. H. Indeed, as all similar events in the past had used the "fill the pot" method, under which shares are purchased from each tendering shareholder until a shareholder has no more shares to sell or until Reflexite has purchased $400,000 of their shares, thus favoring those with smaller shareholdings, the Franks expected to see their percentage of shares <u>increase</u> as a result of the Tender Offer. See Simes Decl., Ex. G at 8.

### C. *Reflexite was not a target of the Prejudgment Remedy*

The prejudgment remedy did not seek relief against Reflexite. Both the filed version and a draft provided to Reflexite before it was filed, made clear that the goal of the motion was to "attach sufficient property or assets of Defendants Arthur Lovetere, Cecil Ursprung, Louis J. Baccei, Worth Loomis, Theodore Patlovich, Stephen J. Raffay, William P. Rowland and Peter Eio" to protect the Franks' interest. Simes Decl., ¶ 26 & Ex. M. The first sentence of the Franks' memorandum in support of that motion similarly states that it is directed "against Defendants Arthur Lovetere, Cecil Ursprung, Louis J. Baccei, Worth Loomis, Theodore Patlovich, Stephen J. Raffay, William P. Rowland, Peter Eio." Id. at ¶ 27 & Ex. N. Nowhere in the prejudgment remedy papers did the Franks seek any relief against the corporation itself.

Shortly after receiving notice of the Tender Offer, counsel for the Franks contacted counsel for Reflexite to express concerns that the proposed Tender Offer would burden the corporation and affect the status quo between the parties even while litigation was pending.

Simes Decl., ¶ 19 and Ex. H.. A true and correct copy of the December 3, 2004 letter from the Franks' counsel to Reflexite's counsel is attached as Exhibit H to the Simes Declaration.

The Franks' counsel followed up with several telephone calls. After more than a week passed, counsel for the Franks reached counsel for Reflexite who indicated his "belief" that the Franks' claims were without basis and who expressed Reflexite's desire to discuss and address the Franks' concerns in good faith.[2] Simes Decl., ¶ 21.

When the Franks sought to follow up on that offer, however, their telephone calls went unanswered. Counsel for the Franks both telephoned and e-mailed counsel for Reflexite on December 14, 2005, indicating an intention to file the prejudgment remedy motion the following day. See id. at ¶ 21 & Ex. I. The Franks even included a draft copy of their proposed motion in the December 14, 2005 e-mail, in an attempt to set forth all of the issues and try to avoid motion practice. Id.

The Franks did not hear back from Reflexite until late the following day. Simes Decl., ¶ 22. Nonetheless, the Franks elected not to file their prejudgment remedy motion in the interest of avoiding motion practice, and based on Reflexite's representations that it would address the issues raised in the Franks' objection letter and draft motion. Id.

Reflexite's "response" on December 15, 2004, arrived near the close of business that day, and indicated only that Reflexite's counsel had had a "preliminary conversation" with Reflexite and was not prepared to address the issues raised in the Franks' letter and motion. See id. at ¶ 23 & Ex. J. A subsequent e-mail indicated that counsel for Reflexite would call counsel for the Franks shortly after 12:00 p.m. the following day. Id. at ¶ 24 & Ex. K. Having heard nothing

---

[2] Counsel for Reflexite stated his belief that the Franks' proportionate shareholding in Reflexite would not increase. Counsel for Reflexite did not supply an explanation or documents supporting this belief. Simes Decl. ¶ 20.

-7-

from Reflexite's counsel that afternoon as had been promised, the Franks finally filed the prejudgment remedy motion.  Id. at ¶ 25, & Ex. L.

Following the filing of the prejudgment remedy motion, counsel had further discussions concerning the issues raised by the Franks in their letter and motion.  Id. at ¶ 28.  Following these discussions, the Franks elected to withdraw their motion for prejudgment remedy.  Id.  In short, the record makes clear that the Franks acted reasonably and made every effort to avoid motion practice.  Reflexite, in contrast, delayed matters, failed to follow through on promises to discuss the concerns raised by the Franks, and acted in a manner calculated to provoke motion practice.

## ARGUMENT

I.   THE STANDARD FOR FEES AND EXPENSES UNDER CONN. GEN. STAT. § 33-726.

Section 33-726 of the Connecticut General Statutes, which Reflexite attempts to invoke here, makes clear that attorneys fees or expenses are a discretionary remedy that the Court may award, in the event that the Court finds that certain specific preconditions are met.  The statute states that

> On termination of the derivative proceeding the court may:
>
> (1) Order the corporation to pay the plaintiff's reasonable expenses, including attorney's fees, incurred in the proceeding if it finds that the proceeding has resulted in a substantial benefit to the corporation;
>
> (2) Order the plaintiff to pay any defendant's reasonable expenses, including attorney's fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose; or
>
> (3) Order a party to pay an opposing party's reasonable expenses, including attorney's fees, incurred because of the filing of a pleading, motion or other paper, if it finds that the pleading, motion or other paper was not well grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith

> argument for the extension, modification or reversal of existing law and was interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

As noted below, Reflexite comes nowhere close to satisfying either subsections (2) or (3) of the statute, as the Franks' derivative claim and prejudgment remedy motion were well-founded and reasonable.

## II. THE DERIVATIVE CLAIM WAS REASONABLE AND FOR A PROPER PURPOSE, AND THE FRANKS DID NOT WITHDRAW THEIR DERIVATIVE CLAIM AS REFLEXITE MISREPRESENTS IN ITS MOTION.

Even though the Franks were never granted the opportunity to engage in merits discovery as to their derivative claim, the small amount of information they have managed to obtain evidences a massive abdication of the Defendants' fiduciary duties to Reflexite. The undisputed documentary and testimonial evidence available in this case makes clear, among other things, that:

- The Defendants approved the payment of some $8.1 million to Defendant Rowland to address Rowland's estate planning issues even though this sum represented twice the company's net income and required it to incur millions of dollars of debt—a transaction that one Defendant himself conceded was "unusual."[3] Simes Decl., Ex. N (See, e.g., Eio Dep. at 123).

- Personnel at Reflexite expressed concerns about leverage and about foregoing product development opportunities as a reason why the company did not engage in larger buybacks of shares from other shareholders, but no reference was made to these concerns in the context of the Rowland or other directors' transactions. Id. (Baccei Dep. Ex. 3 (at CL 01026)).

- The Defendants gave no notice to shareholders of this massive giveaway of corporate assets to a director of Reflexite, and indeed, buried disclosure of the transaction in a financial statement that was not given to shareholders unless specifically requested; since no shareholders were informed of the massive transaction, none knew to make such a request. Id. (Eio Dep. at 99-100; see also

---

[3] Further details concerning the facts supporting the Franks' claim can be found in the materials submitted in opposition to Reflexite's motion to dismiss on the basis of the SLC investigation, which are incorporated herein by reference.

-9-

   Baccei Dep. Ex. 11).

- Although Reflexite Chairman Cecil Ursprung and his wife were also apparently permitted to sell shares of Reflexite stock in self-interested transactions, no information about these transactions appears to have been given to shareholders, nor did the SLC even investigate that issue. Id. (Baccei Dep. Ex. 3 (at CL 01045); Eio Dep. 106-07, 17).

- Despite repeated requests for information under Conn. Gen. Stat. § 33-946, the Franks were denied basic information concerning Reflexite and their shareholdings.[4] Simes Decl., Ex. A & B.

  The record is this case makes clear that the Franks never withdrew the derivative claims against Reflexite or admitted that there was no basis for that claim against Reflexite, as Reflexite now asserts. Quite to the contrary, when the Court asked at oral argument whether Reflexite continued to be a defendant in the derivative action, counsel for the Franks stated "they are. . . . They are in a nominal sense involved in count one. . . ." Transcript at 53-54. Counsel for Reflexite heard this message loud and clear, acknowledging at the very end of the argument that "I thought I heard them backing up to say no, perhaps the company is a defendant under count one." Id. at 135. Counsel for the Franks repeatedly made clear that while no substantive relief was being sought against Reflexite, Reflexite was very much a party to the derivative action.

  Moreover, Reflexite was a <u>necessary</u> nominal party to this action. By the derivative action, the Franks sought to compel Reflexite to police itself, and discipline the board members who had breached their fiduciary duties to the corporation by committing the above-listed conduct. Reflexite's interests are clearly impacted directly and immediately by the derivative claim. Had Reflexite not been named as a nominal defendant, the action could have been dismissed on that ground alone. See Fed. R. Civ. P. 19. Indeed, it makes no sense to suppose

---

[4] Reflexite's brief repeatedly mischaracterizes the Franks' claims as an effort "to gain full liquidity for the Franks," Br. at 1, 3, 9, 10, 14 and 16, when a cursory review of the pleadings makes clear that what the Franks seek is treatment comparable to that the Defendants have given themselves and other shareholders of the corporation.

-10-

that a derivative action could proceed without Reflexite being involved in a real and direct way; Reflexite's claim that it should never have incurred any expenses in this matter is out of touch with the reality of both derivative lawsuits and the specific merits of the claims asserted by the Franks.

Simply put, there was ample basis both for the Franks' derivative claim and for naming Reflexite as a nominal defendant. Reflexite's assertion that there was no reasonable basis for doing so, or that the Franks withdrew their claims at the oral argument, are meritless.

### III.   REFLEXITE IS NOT ENTITLED TO FEES FOR THE PREJUDGMENT REMEDY MOTION.

The Franks' prejudgment remedy motion sought relief as to the individual defendants, not as to Reflexite. The motion itself sought to "attach sufficient property or assets of Defendants Arthur Lovetere, Cecil Ursprung, Louis J. Baccei, Worth Loomis, Theodore Patlovich, Stephen J. Raffay, William P. Rowland and Peter Eio" to protect the Franks' interests. Simes Decl., Ex. M. The very first sentence of the Franks' memorandum in support of that motion similarly states that it is directed "against Defendants Arthur Lovetere, Cecil Ursprung, Louis J. Baccei, Worth Loomis, Theodore Patlovich, Stephen J. Raffay, William P. Rowland, Peter Eio." Simes Decl., Ex. N.

Reflexite's request for expenses is nothing short of remarkable given that no relief of any kind was sought against Reflexite. Reflexite has no standing to assert injury as a result of the prejudgment remedy motion; if it incurred expenses in addressing that motion, that was because it chose to do so.

The Franks filed the motion for prejudgment remedy because they were concerned that the $10 million Tender Offer Reflexite announced for December 17, 2004 was going to alter the status quo among the parties, injure the corporation financially, entrench and increase the

Franks' proportional shareholdings in Reflexite and shift additional investment risk onto the Franks and away from the Defendants. The Franks' concerns in this regard were intensified by the fact that in the summer of 2004, Reflexite's Board of Directors voted to give itself discretion to give away $9,000,000 of stock options to themselves and whomever else the directors chose. See Simes Decl., ¶ 11. When the Franks objected to this scheme, Reflexite relented and announced the cancellation of the plan. Id. at ¶¶ 12-13 & Exs. E & F.

The December 2004 Tender Offer appeared similar in many ways to the aborted stock option plan. Reflexite was to buyback up to $10,000,000 of its own shares from shareholders, with up to 364,000 of the directors' shares being purchased by Reflexite. Id. at ¶ 14 & Ex. G (Tender Offer Memorandum) at 12.[5] Because this sum vastly exceeded Reflexite's net income and available resources, id. at 29, Reflexite was to incur $10,000,000 in new debt in order to finance the repurchase of shares from its shareholders. See id. at 11. The fact that the Franks ultimately withdrew the prejudgment remedy application and participated in the liquidity event neither suggests that the application was improperly filed or without merit, nor that Reflexite, which was never a target of the motion, has any standing to complain.[6]

---

[5] The Defendants were planning to sell these shares at a price of $35.50 per share—an increase in valuation of more than 30% per share over a one year period. See Frank Decl., Ex. A at 20.

[6] The Franks made repeated attempts, prior to moving for prejudgment remedy, to assuage their concerns about the massive $10 million giveaway Reflexite had announced for December 2004.

The contemporaneous documentary evidence demonstrates that the Franks were reluctant to file their motion and made repeated attempts to work matters out with Reflexite prior to filing that motion. Simes Decl., ¶¶ 19-28 and Ex. H, I, J and K. Prior to seeking a prejudgment remedy, the Franks expressed their concerns to Reflexite in a letter to Reflexite's counsel dated December 3, 2004. Simes Decl., ¶ 19 & Ex. H. After more than a week, counsel for Reflexite told counsel for the Franks that he believed that the Franks had no cause for concern and he stated that Reflexite wished to discuss the matter further with the Franks to address those concerns. Simes Decl., ¶ 20.

Attempts by counsel for the Franks to follow up on that promise were to no avail and repeated telephone calls by the Franks' counsel went unanswered. Id. at ¶ 21. On December 14, 2005, the Franks' counsel e-mailed and called to indicate that the prejudgment remedy motion would be filed the following day. See Simes Decl., ¶ 21 & Ex. I. A courtesy copy of the draft motion was sent to Reflexite's counsel in that December 14, 2005 e-mail. Id. In the interest of avoiding motion practice, however, the Franks did not file the next day, but awaited a response from Reflexite's counsel. Simes Decl., ¶ 22. The response came on December 15, 2004 late in the

If Reflexite had to incur fees and expenses as a result of the Franks' motion, it was a purely self-inflicted wound.[7]

## IV. REFLEXITE'S MOTION FOR EXPENSES OVERREACHES, IS DEFECTIVE AND FAILS TO PROVIDE THE REQUIRED EVIDENTIARY SUPPORT.

Even if Reflexite had met the standard for requesting an extraordinary and discretionary award of fees and expenses, its motion would still have to be denied because it overreaches and fails to satisfy the basic requirements of such a motion.

Reflexite concedes that the relief it seeks is unprecedented in Connecticut. Br. at 12. Reflexite relies on cases from Tennessee, Texas, Montana and Arizona, but even a cursory review of those cases demonstrates their inapplicability to the matter before the Court. In Brady v. Calcote, 2005 WL 65535 (Tenn. Ct. App. Jan. 11, 2005) (attached as Exhibit F to the motion) the court found that the alleged bases for the derivative action -- a bonus to an executive, preferential treatment to the customers of a board member and improper disclosure of confidential information, never actually happened. Similarly, in Bass v. Walker, 99 S.W.3d 877 (Tex. App. 2003) the court found that the plaintiff had alleged that debris dumped on the company's property was toxic waste with absolutely no basis. Here, by contrast, the Reflexite SLC found that multi-million dollar self–dealing transactions consisting of multiples of Reflexite's annual earnings had, in fact, occurred. The other two cases cited by Reflexite are also inapplicable. In Sletteland v. Roberts, 64 P.3d 979 (Mont. 2003) the court found that the action had been brought by a director in an attempt to derail a refinancing and in breach of his fiduciary

---

day, and stated only that there had been a "preliminary conversation" with Reflexite. Simes Decl., ¶ 23 & Ex. J.

[7] Reflexite's brief, without citation, asserts that it had explained "all of the reasons" why the Franks' motion was without basis "both prior to and after it was filed." Br. at 15. This is a falsehood. Prior to the motion, counsel for Reflexite had indicated only a "belief" that the Tender Offer would reduce the Franks' shareholdings. Simes Decl. ¶ 20.

duties. There is no credible suggestion that the Franks brought this action for any purpose than the purposes stated in the Complaint. Finally, Reflexite cites Blumenthal v. Teets, 745 P.2d 181 (Ariz. 1987) where the plaintiff failed to make the required presuit demand. Here, the Franks have complied with the demand requirement.

The Connecticut courts do not grant fee awards based on the self-serving say-so of the moving party. Rather, "[a]pplications for fee awards should generally be documented by <u>contemporaneously created time records</u> that specify for each attorney, the hours expended, and the nature of the work done." Pridgen v. Andresen, NO. 3:94CV851(DFM), 2000 WL 863053, *7 (D.Conn. Mar. 31, 2000) (emphasis added, attached hereto at Tab 1) (quoting Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1997)); see also Javit Asset Partners, L.P. v. Intercontinental Holding Co., Inc., NO. CV030081629S, 2005 WL 2363100, *3 (Conn. Super. Aug. 29, 2005) (rejecting claim for fees for sums as to which "the evidence presented is insufficient for the court to calculate a reasonable estimate," attached hereto at Tab 2). Moreover, "[f]ee applicants must produce satisfactory evidence—<u>in addition to the attorney's own affidavits</u>—that the requested rates are in line with those prevailing in the community for similar service by lawyers of reasonably comparable skill, experience, and reputation." Wallace on Behalf of Northeast Utilities v. Fox, 7 F. Supp. 2d 132, 139 (D.Conn. 1998) (internal quotation marks and citation omitted) (emphasis added).

Reflexite's moving papers provide none of this essential detail. The Affidavit of Phil Ferrari merely asserts the total amounts of fees and expenses incurred without explaining what work was performed, at what rate, or for which client. No evidence is offered to demonstrate the reasonableness of those fees under the circumstances. Nor is any evidence supplied upon which

the Court could assess whether these fees were in fact expended in defense of the claims at issue, or whether the hours billed were reasonable in light of the circumstances.[8]

More troubling, the Ferrari Affidavit makes clear that Reflexite is disingenuously seeking to foist inappropriate fees and expenses onto the Franks. Included in Reflexite's fee claim are the fees expended on behalf of <u>all of the other Defendants</u>. See Ferrari Affidavit at ¶ 4. While its motion purports to seek relief for the termination of the derivative action—indeed that is the only possible basis for expenses under Conn. Gen. Stat. § 33-726—Reflexite is seeking compensation for the work performed by lawyers who do not represent it, potentially on non-derivative claims that have not been dismissed.[9] Moreover, Reflexite seeks to foist on the Franks the fees it incurred when it elected to form a Special Litigation Committee, even though those expenditures would have to have been incurred regardless of the issues raised in Reflexite's motion. Id.

Even if it were not improper for Reflexite to attempt to foist these fees on the Franks, the Ferrari Affidavit makes clear that Reflexite would have been responsible for paying the fees incurred by the attorneys representing all of the other Defendants regardless of whether the Franks named Reflexite as a Defendant or not. Because Reflexite obviously is obligated to indemnify the other Defendants (none of whom, incidentally, have made a motion for expenses), it cannot reasonably claim to be out-of-pocket as a result of its participation in the motion to dismiss or motion for prejudgment remedy.

---

[8] Indeed, since Robinson & Cole LLP serves as Reflexite's general outside counsel, it is impossible to tell whether Reflexite is seeking, by this motion, an improper recovery of ordinary fees unrelated to the motion practice challenged by Reflexite in its motion.

[9] The Ferrari Affidavit extrapolates that counsel for the other Defendants have spent one third of their time defending against the derivative claim. The basis for this estimate is left a complete mystery.

The logical and procedural deficiencies in Reflexite's motion reveal the true nature of Reflexite's motion—an attempt to impose further improper cost and delay on the Franks. If any party should be made to pay fees and expenses, it is Reflexite, not the Franks.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Reflexite's motion in all respects, and grant such other and further relief as the Court deems appropriate.

>PLAINTIFFS H. JONATHAN FRANK and
>FRANK FAMILY 1996 TRUST
>
>
>By:_____
>   Richard A. Strassberg (ct24905)
>   Jeffrey A. Simes (ct24906)
>   GOODWIN PROCTER LLP
>   599 Lexington Avenue
>   New York, New York 10022
>   (212) 813-8800
>            -and-
>   Jonathan B. Tropp (ct11295)
>   Terence J. Gallagher (ct22415)
>   DAY, BERRY & HOWARD LLP
>   One Canterbury Green
>   Stamford, CT  06901
>   *Their Attorneys*

## **CERTIFICATION**

This is to certify that a copy of the foregoing was sent via overnight courier, postage prepaid, this 31st day of October 2005, to:

       Craig A. Raabe, Esq.
       Jason M. Kuselias, Esq.
       Robinson & Cole LLP
       280 Trumbull Street
       Hartford, CT 06103-3597
       (860) 275-8299

       Sarah Merriam, Esq.
       Cowdery, Ecker & Murphy, L.L.C.
       750 Main Street
       Hartford, CT 06103-2703
       (860) 278-5555

       Edward F. Spinella, Esq.
       Reid and Riege, P.C.
       One Financial Plaza
       Hartford, CT 06103
       (860) 240-1045

                                     _____
                                       Terence J. Gallagher