**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

H. Jonathan Frank and          :
Frank Family 1996 Trust,       :
    Plaintiffs,           :
                    :   Civil No. 3:03cv1014(JBA)
                    :
v.                             :
                    :
Arthur LoVetere, et al.,       :
    Defendants.          :

**RULING ON REFLEXITE'S MOTION**
**FOR EXPENSES [DOC. # 137]**

In a ruling dated March 31, 2005 [Doc. # 98], this Court
dismissed the shareholder derivative claim brought by Jonathan
Frank and his family trust ("Frank") against Reflexite
Corporation ("Reflexite"), but declined to dismiss the count for
breach of fiduciary duty against the individual defendants, which
remains pending.  Frank v. LoVetere, 363 F. Supp. 2d 327, 335-41
(D. Conn. 2005).  Reflexite has now moved for attorney's fees and
expenses for the costs of defending the derivative claim.
See Reflexite Corp's Mot. for Expenses [Doc. # 137].  For the
reasons that follow, Reflexite's motion is denied.

**I.   Factual Background**

Familiarity with the factual allegations of the complaint is
presumed.  See Frank, 363 F. Supp. 2d at 330-332.  Briefly, Frank
alleged that Reflexite preferentially allowed some shareholders
to sell their shares, but has offered only to buy back a minimal
number of plaintiff's shares.  Frank also alleged that
Reflexite's directors harmed the company by approving the

1

borrowing of about $8 million to repurchase shares owned by William Rowland, one of Reflexite's founders ("Rowland transaction").  Additionally, Frank alleged that Reflexite had not fully disclosed these transactions to shareholders, and that the company has denied him access to meeting minutes and accounting records that he and his son had demanded.

After a formal demand by Frank, Reflexite's board convened a Special Litigation Committee (SLC), composed of two directors, to investigate these allegations.  The SLC, advised by counsel, decided that the Rowland transaction was lawful and "fair to the Corporation," and that Reflexite "was not, and is not, obligated to offer the Franks an opportunity to sell shares to the Corporation in a manner similar to the Rowland Transaction or the other redemptions" offered to Reflexite executives.  Report of SLC, Mem. of Law in Support of Reflexite's Mot. to Dismiss [Doc. # 69], Ex. A, at 15-16.

Frank filed suit, and Reflexite moved to dismiss the complaint because, among other reasons, the SLC determined that a derivative lawsuit against the individual directors named in the complaint was not in the company's best interest.  Discovery was taken and evidence submitted regarding the nature, thoroughness, reasonableness, and good faith of the SLC's inquiry.

The Court held that the SLC's conclusions were entitled to deference under Conn. Gen. Stat. § 33-724 because "plaintiff

lacks support for his generalized allegations that the SLC's investigation was conducted unreasonably and in bad faith." <u>Frank</u>, 363 F. Supp. 2d at 335. Frank had pointed specifically to two alleged shortcomings in the SLC's investigation: first, that the SLC failed to interview David McDonald, a former Reflexite executive whom Frank identified as a witness and who would have testified that Reflexite President Cecil Ursprung once stated his intention that Frank "will never get his equity out of" Reflexite; and second, that the SLC failed to conduct an independent financial analysis of the effect of the Rowland transaction on the company. <u>Id.</u> at 335-338. Although noting the defendants' "post hoc rationalization for the committee's failure to interview McDonald," which appeared to have resulted from lack of effort to locate him, the Court stated that the SLC already was aware of the ill will between Ursprung and Frank, and Ursprung's alleged threat, and thus plaintiff had not shown that McDonald's testimony "would have provided new information that would have changed the reasonableness of the SLC's decision." <u>Id.</u> at 336. With respect to Frank's second criticism, the Court held that "[w]hile some independent analysis of the financial impact of the Rowland transaction on the company would be optimal where cost was no obstacle, none is required," because it is reasonable for the company to have relied on information from its financial vice president who was involved in the transaction.

3

Id. at 336-37.

Reflexite now argues that the Court's ruling makes evident that Frank's derivative claim was "baseless."  Mem. of Law in Support of Reflexite Mot. for Expenses [Doc. # 138] at 11. Reflexite also argues that at oral argument on the motion to dismiss, plaintiff abandoned his derivative claim against Reflexite as a defendant on Counts One and Two, and therefore Reflexite never should have been named in the suit.  Finally, Reflexite argues that plaintiff's conduct in filing and then withdrawing a motion for prejudgment remedy involving a $10 million tender offer shows bad faith and warrants an award of attorney's fees.

## II.  Standard

Connecticut General Statutes § 33-726 provides:

On termination of [a] derivative proceeding the court may ...

(2) Order the plaintiff to pay any defendant's reasonable expenses, including attorney's fees, incurred in defending the proceeding if it finds that the proceeding was commenced or maintained without reasonable cause or for an improper purpose; or

(3) Order a party to pay an opposing party's reasonable expenses, including attorney's fees, incurred because of the filing of a pleading, motion or other paper, if it finds that the pleading, motion or other paper was not well grounded in fact, after reasonable inquiry, or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law and was interposed for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

4

There is no reported Connecticut decision interpreting this provision.  Several other states have applied this language derived from the Model Business Corporation Act (MBCA), or similar language in analogous state statutes.  Some courts have interpreted the statute to create a subjective standard of good faith;[1] others have applied an objective test.[2]

This MBCA section was intended to parallel Rule 11 of the Federal Rules of Civil Procedure, which provides that any party or attorney who files a pleading, motion or other paper certifies "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," it is not being presented "for any improper purpose," it is not frivolous, and it likely has evidentiary support.  See Official Commentary to MBCA § 7.46(2) ("The phrase 'for an improper purpose' has been added to parallel Federal Rule

---

[1]See Sletteland v. Roberts, 64 P.3d 979, 982 (Mont. 2003) (reasoning that plaintiff who was experienced investment banker and licensed attorney would have known that filing a derivative action would have derailed company's refinancing, and finding that such actions were unreasonable.); White v. Banes Co., 866 P.2d 339, 343 (N.M. 1993) (holding that plaintiff may be sanctioned if "he or she subjectively knew at the time the suit was filed that the complaint was groundless."); Lowder v. Doby, 340 S.E.2d 487, 493 (N.C. App. 1986) (assuming without deciding that a subjective test applied).

[2]See Brady v. Calcote, No. M2003-01690, 2005 WL 65535 (Ten. Ct. App., Jan. 11, 2005) (examining whether facts as found by SLC after commencement of derivative action showed that the action was filed without reasonable cause); Bass v. Walker, 99 S.W.3d 877, 885 (Tex. App. 2003) ("[W]e adopt an objective standard and hold that a plaintiff acts without reasonable cause ... if, at the time he brings suit ... (1) plaintiff's claims in the lawsuit are not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; or (2) plaintiff's allegations in the suit are not well grounded in fact after reasonable inquiry."); Blumenthal v. Teets, 745 P.2d 181 (Ariz. 1987) (examining whether content of Wall Street Journal article relied on by plaintiffs objectively supported derivative claim).

5

of Civil Procedure 11 in order to prevent proceedings which may
be brought to harass the corporation or its officers."); _Blumenthal v. Teets_, 745 P.2d 181, 188 (Ariz. 1987) (noting
similarities between MBCA § 7.46, Rule 11, and state rule
requiring "good cause" for filing suit). Under Rule 11, the test
is objective, and sanctions shall be imposed only "when it
appears that a competent attorney could not form the requisite
reasonable belief as to the validity of what is asserted in the
paper." _Oliveri v. Thompson_, 803 F.2d 1265, 1275 (2d Cir. 1986),
_cert. denied_, 480 U.S. 918 (1987)(citing _Eastway Constr. Corp. v.
City of N.Y._, 762 F.2d 243, 254 (2d Cir. 1985)). "With regard to
factual contentions, 'sanctions may not be imposed unless a
particular allegation is utterly lacking in support.'" _Storey v.
Cello Holdings, LLC_, 347 F.3d 370, 388 (2d Cir. 2003) (quoting
_O'Brien v. Alexander_, 101 F.3d 1479, 1489 (2d Cir. 1996)).

This Court concludes that the objective test for Rule 11
appropriately is applied to Conn. Gen. Stat. § 33-726 as well,
for the following reasons. First, the statutory requirements of
"reasonable cause" and "reasonable inquiry" track Rule 11's
certification requirements based on "an inquiry reasonable under
the circumstances." Second, the purposes are similar — to
sanction misuse of civil litigation. Section 33-726 is designed
to discourage baseless suits and filings while encouraging
shareholders to bring well-supported suits that will benefit the

other shareholders of the corporation.  Official Commentary to
MBCA § 7.46(2) (The statutory "purpose is ... to deter strike
suits, on the one hand, and on the other hand to protect
plaintiffs whose suits have a reasonable foundation."); Brady v.
Calcote, No. M2003-01690, 2005 WL 65535 at *8 (Tenn. Ct. App.,
Jan. 11, 2005).  The goal of Rule 11 is to deter frivolous suits
and pleadings but not "chill an attorney's enthusiasm or
creativity in pursuing factual or legal theories."  Fed. R. Civ.
P., Official Commentary to 1983 and 1997 Amends.  An objective
standard best balances these interests.  If a subjective standard
were to be applied, theoretically a party or attorney could avoid
the sanction of attorney's fees for an utterly frivolous lawsuit
by claiming that he or she believed in good faith that his or her
arguments were or would be supported by the facts. Holding
parties and counsel to an objective standard fosters responsible
utilization of civil litigation's process and procedures.

Thus, the Court interprets "reasonable cause" in § 33-726 to
refer to a lawsuit or filing that a reasonable attorney or
litigant would believe after reasonable inquiry was likely
grounded in the evidence, warranted by existing law or a non-
frivolous argument for the extension, modification or reversal of
existing law, or the establishment of new law, and not brought
for an improper purpose.

## III. Discussion

### A.   Naming Reflexite as Defendant

Reflexite argues that Frank's derivative claim was filed without reasonable cause because the plaintiff thereafter "abandoned" it at oral argument, thus acknowledging it lacked merit.  See Reflexite Mem. of Law at 12-13.  The record does not support this contention, however.  Plaintiff admits to "inartful" drafting of the complaint, and indeed there was confusion among the parties and the Court as to whether plaintiff intended to name Reflexite in Counts One and/or Two of the complaint. However, some of the misunderstanding is attributable to the role of the corporation as a nominal defendant in a derivative lawsuit; while named as a defendant, the corporation is also intended to be a beneficiary of the suit.  By the conclusion of oral argument, and as reflected in the March 31, 2005 ruling, it was clear that Frank intended Count One to be the derivative claim and Count Two to be the claim against the individual directors.  Frank did not abandon Count One.

### B.   Factual Support for Plaintiff's Claims

Reflexite also argues that the Court's ruling that the SLC's investigation was reasonable and conducted in good faith requires the conclusion that Frank's claim to the contrary was not supported by reasonable cause.  A lawsuit premised on allegations with no factual support may be grounds for an award of attorney's

fees against the plaintiff.[3]  In this case, plaintiff had factual

support for his contentions that the company had engaged in

favorable transactions for the benefit of William Rowland and

other Reflexite executives and excluded Frank from those same

benefits, facts which Reflexite does not contest.  The company

and the SLC, however, reached a conclusion different from

plaintiff's concerning whether the Rowland transaction was

harmful to Reflexite, and thus whether litigation was warranted

against the individual directors.  The Court found that this

conclusion was not unreasonable or made in bad faith.  However,

this was an issue of business judgment, not a question of whether

certain transactions ever occurred.  Therefore this case is not

one in which the plaintiff failed to make reasonable

investigation and had no factual support for his allegations.

The SLC also decided that Reflexite was not legally required

to offer Frank the same buy-back opportunities that it afforded

other shareholders.  Under the facts of this case, this legal

---

[3]Brady v. Calcote, No. M2003-01690, 2005 WL 65535 at *8 (Tenn. Ct. App.,
Jan. 11, 2005) (affirming award of attorney's fees against a plaintiff who
"had no evidence to support [her] claim other than her own allegations.");
Bass v. Walker, 99 S.W.2d 877, 888-89 (Tex. App. 2003) (affirming award of
attorney's fees where derivative plaintiff, who alleged corporation permitted
its land to be used as a dumping site for hazardous waste, hired an expert who
did a cursory review but little testing to determine the presence of any
hazardous materials, which were never found to exist at the site); Blumenthal
v. Teets, 745 P. 2d 181, 188-89 (Ariz. 1987) (affirming award of attorney's
fees where plaintiffs filed a derivative action against a parent company,
relying on a Wall Street Journal article that set forth "the possibility of
negligence on the part of the officers and employees and perhaps the
directors" of the subsidiary, but only made conclusory statements about the
role of the parent company and therefore did not constitute "reasonable cause
for the filing of this complaint" against both companies.).

conclusion is an issue of first impression in Connecticut and remains at issue in the remaining count of the complaint. Although the Court found that the SLC's decision was not unreasonable or made in bad faith, it also was not unreasonable for Frank to challenge it in his derivative claim. Thus, this case is distinguishable from Lowder v. Doby, 340 S.E.2d 487, 492-93 (N.C. App. 1986), where the court found that the plaintiff, in violation of clearly established state law, brought a series of derivative suits that were essentially a collateral attack on ongoing receivership and bankruptcy proceedings. Here, the question of whether Reflexite engaged in malicious oppression of Frank as a minority shareholder as a matter of law is not settled, and therefore Frank's claim on this basis cannot be found to be "without reasonable cause."

### C.    PJR Motion

Finally, Reflexite argues that it is entitled to attorney's fees, under Conn. Gen. Stat. § 33-726(3), because plaintiff's motion for prejudgment remedy was filed "to harass Reflexite and to cause Reflexite to needlessly devote time and expense in crafting an opposition in the Franks' abusive effort to force a total liquidation of their shares." Reflexite Mem. of Law at 16. Frank filed the PJR motion after Reflexite announced a $10 million tender offer, in which the corporation would buy back 281,690 of its own shares from shareholders, incurring debt to

finance the repurchases, but before any share repurchase took place. After briefing was completed, Frank withdrew the PJR motion and participated in the tender offer, selling over $2.7 million of Reflexite shares. Reflexite argues that the fact that Frank withdrew the motion and then benefitted from the tender offer indicates that the motion was filed for an improper purpose. The company further argues that several claims in the PJR motion -- specifically, that the tender offer would increase Frank's percentage ownership, that the directors and officers would receive a disproportionate share of the benefits, and that the tender offer would require warrants and subordination agreements that would disadvantage shareholders' positions -- turned out not to be true after the tender offer took place.

Frank's memorandum in support of his PJR motion, as well as the preceding correspondence with Reflexite's counsel, see Simes Decl. [Doc. # 142] Exs. H-N, indicate that his two concerns were: that Reflexite would incur so much debt in financing the tender offer that it would harm its financial future and/or its ability to satisfy any judgment in Frank's favor were he to prevail in this case; and that the directors stood to personally gain by selling more of their stock than other shareholders, particularly large "outside" shareholders such as Frank.

According to Reflexite neither of these concerns became a reality. However, Frank's conduct is to be judged by the

circumstances at the time the PJR motion was filed, not by
subsequent developments.  Reflexite states that it "repeatedly
advised [counsel for Frank] to simply read the Tender Offer
because it refuted their assertions that the Franks were being
unfairly omitted and that the Franks would see and increase in
their percentage of ownership."  Reflexite Reply Br. at 8-9.  It
is unclear whether these assurances occurred before or after the
PJR motion was filed, and in any case, the Tender Offer does not
support the company's assertions, as it states:

> Our purchase of shares in our offer will reduce the
> number of shares outstanding and may reduce the number
> of shareholders. ... Shareholders who determine not to
> accept the offer will realize a <u>proportionate increase
> in their relative equity interest</u> in the Company, and
> thus in our future earnings and assets, subject to
> increased risks arising from higher leverage resulting
> from our purchase of shares ....

Tender Offer § 13, Simes Decl. Ex. J at 41 (emphasis supplied).
Thus, the Tender Offer supported Frank's concern that, if he
decided not to participate, he would be left owning a higher
percentage of Reflexite than before the Tender Offer, at a time
when Reflexite was incurring $10 million in debt.  Additionally,
it is clear that under the offer's fill-the-pot procedure,
smaller shareholders would be more likely to be able to sell all
their shares than larger shareholders.  <u>See</u> <u>id.</u> at § 7.  Finally,
given that Frank had potentially valid concerns that the
individual defendants acted with malice toward him and oppressed
him as a minority shareholder at least on prior occasions, it was

12

not beyond the realm of good faith belief for Frank to suspect that the same motivation could be at work in the tender offer.

Although Frank ultimately decided to withdraw his motion and participate in the tender offer, this alone does not show that he was motivated by an improper purpose at the time the motion was filed.  Further, the evidence shows that Frank attempted to communicate with Reflexite about the PJR before it was filed, and the company's response that Frank should "read the Tender Offer" would not have assisted Frank in conducting a "reasonable inquiry."

Finally, as Frank argues, the PJR application sought no remedy against Reflexite, but sought attachment of the individual defendants' assets or property.  The company's opposition to the PJR motion [Doc. # 91] was a one-page filing merely adopting the Outside Directors' brief.  Thus, even though Reflexite apparently handled pre-motion discussions with plaintiff's counsel, the company was not required to respond to the PJR motion, and it is difficult to credit the company's arguments that it wasted extraordinary time and expense opposing the motion.

### D.   Award is Discretionary

The statute governing the award of attorney's fees provides that a "court <u>may</u>" order the plaintiff to pay fees and expenses.  Conn. Gen. Stat. § 33-726 (emphasis supplied).  This permissive language indicates that an award of attorney's fees against a

losing plaintiff is discretionary with the Court.  McCann v. McCann, 61 P.3d 585, 595 (Idaho 2002) ("An award of attorney fees under [MBCA § 7.49(2)] is discretionary and should be subject to review and vacated only upon a showing of an abuse of discretion."); see also Pace v. Jordan, 999 S.W.2d 615, 626 (Tex. App. 1999) (holding, based on "permissive language" of similar statute providing that court "may" award attorney's fees against derivative plaintiff, that "the trial court had discretion in awarding attorneys' fees.").

In this case, the Court holds that Frank's derivative claim was not filed "without reasonable cause or for an improper purpose" to force Frank's stock liquidation, and neither was the PJR motion filed solely to harass Reflexite.  While this litigation evidently has been hotly contested and emotional at times, this is not a situation where a discretionary award of attorney's fees is appropriate.

**IV.  Conclusion**

Accordingly, Reflexite's motion for expenses [Doc. # 137] is DENIED.

IT IS SO ORDERED.

/s/
JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 29th day of December, 2005.**